## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | ) | Case No. 22-30987 (MI) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

## DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) MAINTAIN EXISTING BUSINESS FORMS, AND (C) PERFORM INTERCOMPANY TRANSACTIONS AND (II) <u>GRANTING RELATED RELIEF</u>

**Emergency relief has been requested. A hearing will be conducted on this matter on April 13, 2022 at 1:30 p.m. (prevailing Central Time) in Courtroom 404, 4th floor, 515 Rusk Avenue, Houston, Texas 77002. You may participate in the hearing either in person or by audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing, or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115). The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion"):

### Relief Requested

1.     The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order"):  (a) authorizing the Debtors to (i) continue to operate their cash management system as illustrated in Schedule 1 of the Interim Order and the Final Order, (ii) maintain existing business forms in the ordinary course of business, and (iii) continue to maintain business relationships with each other and with non-debtor affiliates and related parties (the "Intercompany Transactions") consistent with historical practice; and (b) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing approximately 25 days from the date hereof.

### Jurisdiction and Venue

2.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The bases for the relief requested herein are sections 105, 345, 363, and 553 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Rule

6004, and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules").

**Background**

5.     ION Geophysical Corporation (together with its Debtor and non-debtor subsidiaries, collectively, "ION") is an innovative, asset light global technology company that delivers data-driven decision-making offerings to offshore energy and maritime operations markets.  Headquartered in Houston, Texas with regional offices around the world, ION operates through two key business segments—Exploration and Production Technology & Services ("EPTS") and Operations Optimization ("OO").  Within the EPTS segment, ION creates digital data assets on a proprietary and multi-client basis and delivers services to help exploration and production companies improve decision-making, reduce risk, and maximize value.  The OO segment develops mission-critical software and technology that enable operational control and optimization offshore.  In that regard, ION provides survey design, command and control software systems and related services for marine towed and seabed operations and develops intelligent hardware and devices to optimize operations.

6.     On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Mike Morrison, Executive Vice President and Chief Financial Officer of ION Geophysical Corporation, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed contemporaneously with this Motion and incorporated by reference herein.  The Debtors continue

---

[2]     Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to them in the First Day Declaration.

to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

**The Cash Management System**

I.      **Overview.**

7.      In the ordinary course of business, the Debtors operate a complex cash management system, a schematic of which is attached as Schedule 1 to the Interim Order and the Final Order (the "Cash Management System").  The Debtors use their Cash Management System to transfer and distribute funds and to facilitate cash monitoring, forecasting, and reporting.  As of the Petition Date, the Cash Management System includes a total of 20 bank accounts maintained by the Debtors.

8.      The Debtors estimate that their cash receipt collections were approximately $95 million in the aggregate for the 2021 calendar year.  Because of the economic and operational scale of the Debtors' business and the disruption to the business that would result if they were forced to close their existing bank accounts, it is critical that the existing Cash Management System remain in place.

9.      The Cash Management System is comparable to the centralized cash management systems used by similarly situated companies to manage the cash of operating units in a cost-effective, efficient manner.  The Debtors use the Cash Management System in the ordinary course of business to collect, transfer, and disburse funds generated from their operations and to facilitate cash monitoring, forecasting, reporting, ensure cash availability for each operating entity, and reduce administrative costs by facilitating the movement of funds among multiple entities across the globe.  The Debtors' treasury department maintains oversight over the Cash Management

4

System and implements cash management controls for entering, processing, and releasing funds, including in connection with intercompany transactions. Additionally, the Debtors' corporate accounting department regularly updates the Debtors' books and records to ensure that all transfers are accounted for properly.

10.     As described herein, any disruption to the Cash Management System would have an immediate adverse effect on the Debtors' business and operations to the detriment of their estates and stakeholders. Accordingly, to minimize the disruption caused by these chapter 11 cases and to maximize the value of the Debtors' estates, the Debtors request authority to continue to utilize their existing Cash Management System during the pendency of these chapter 11 cases, subject to the terms described herein.

## II.     The Cash Management System

11.     As of the Petition Date, the Cash Management System includes a total of 20 bank accounts (each a "Bank Account" and collectively, the "Bank Accounts"). Each Bank Account is identified in Schedule 2 to the Interim Order and the Final Order.

12.     15 of the Bank Accounts are held at PNC Bank, N.A. ("PNC"). Of the remaining Bank Accounts, two are held at Citibank, N.A. ("Citibank"), two are held at Bank of China Limited ("Bank of China"), and one is held at Texas Capital Bank ("Texas Capital" and together with PNC, Citibank, and Bank of China, collectively, the "Cash Management Banks").

13.     As of the Petition Date, the Debtors have approximately $4,201,557 million in cash in the Bank Accounts.

14.     ***Cash Flow from Operations***. Operational disbursements flow from, and cash generated from the business flow into, a master concentration account (the "Master Concentration Account") maintained by ION Geophysical Corporation. In connection therewith, four zero-balance Bank Accounts maintained by ION Geophysical Corporation, I/O Marine Systems, Inc.,

5

and GX Technology Corporation, respectively, collect customer receipts and transfer such funds to the Master Concentration Account (the "Collections Accounts").  Funds remain in the Master Concentration Account until they are transferred to the main operating account maintained by ION Geophysical Corporation (the "Main Operating Account") to cover disbursements.

15.     The Master Concentration Account, the Main Operating Account, and each of the Collections Accounts are subject to a deposit account control agreement in favor of the collateral agent under the prepetition credit agreement.

16.     *Disbursement Accounts*.  In addition to the Main Operating Account, the Debtors maintain 10 additional Bank Accounts (the "Disbursement Accounts") dedicated to the payment of specific expenses.  The Disbursement Accounts are manually funded by the Debtors from the Main Operating Account on an as-needed basis.  The Disbursement Accounts are utilized to pay employee and payroll obligations, healthcare expenses, vendors for operating expenses, and other expenses in the ordinary course of business.

17.     *Collateral Accounts*.  The Debtors maintain two Bank Accounts that are funded to provide collateral in support of existing letters of credit (the "Collateral Accounts"), one of which is also a Money Market Account (as defined below).

18.     *Money Market Account*. The Debtors maintain one additional Bank Account that holds excess cash in high-credit quality paper, corporate bonds, and money market mutual funds that invest in U.S. government obligations (the "Money Market Account").  The Debtors transfer excess cash from the Main Concentration Account and the Main Operating Account on a discretionary basis.  Likewise, the Debtors transfer cash from the Money Market Account to the Main Operating Account to fund operations at the Debtors' discretion, as needed.

19.     ***Adequate Assurance Account***.   The Debtors also maintain a segregated Bank Account at Citibank that was dormant as of the Petition Date and has no other designated use during these chapter 11 cases.  Accordingly, the Debtors propose that this Bank Account hold the adequate assurance deposits for the benefit of the Debtors' utility providers (the "<u>Adequate Assurance Account</u>").[3]

20.     The Bank Accounts are described in more detail below.

---

[3] Additional details regarding the Debtors' proposed utilities adequate assurance deposit account can be found in the *Debtors' Emergency Motion for Entry of an Order (A)(I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, and (III) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, and (B) Granting Related Relief*, filed contemporaneously herewith.

AmericasActive:16146294.5

| Account Type | Bank Accounts[4] |
|---|---|
| Main Concentration Account | **PNC**<br>ION Geophysical Corporation Bank Account – 9117* |
| Main Operating Account | **PNC**<br>ION Geophysical Corporation Bank Account – 9109* |
| Collections Accounts | **PNC**<br>ION Geophysical Corporation Bank Account – 9168*<br>I/O Marine Systems, Inc. Bank Account – 9141*<br>GX Technology Corporation Bank Account – 9133*<br>GX Technology Corporation Bank Account – 9125* |
| Disbursement Accounts | **PNC**<br>GX Technology Corporation Bank Account – 9029*<br>GX Technology Corporation Bank Account – 9045*<br>I/O Marine Systems, Inc. Bank Account – 9053*<br>I/O Marine Systems, Inc. Bank Account – 9061*<br>ION Exploration Products (USA), Inc. Bank Account – 8825*<br>ION Geophysical Corporation Bank Account – 0286*<br>ION Geophysical Corporation Bank Account – 9088*<br>ION Geophysical Corporation Bank Account – 9096<br><br>**Bank of China**<br>ION Geophysical Corporation Bank Account – 2594<br>ION Geophysical Corporation Bank Account – 9585 |
| Collateral Accounts | **Citibank**<br>ION Geophysical Corporation Bank Account – 2233[5]<br>**Texas Capital**<br>ION Geophysical Corporation Bank Account – 1541* |
| Money Market Account | **PNC**<br>ION Geophysical Corporation Bank Account – 4709* |
| Adequate Assurance Account | **Citibank**<br>ION Geophysical Corporation Bank Account – 1884 |

21.     The Debtors pay their Cash Management Banks, on average, approximately $5,175 per month in the aggregate on account of fees incurred in connection with the Bank Accounts (the

---

[4] Each Bank Account marked with an asterisk is subject to a deposit account control agreement in favor of the collateral agent under the prepetition credit agreement.

[5] This Bank Account is also a Money Market Account that holds excess cash in high-credit quality paper, corporate bonds, and money market mutual funds that invest in U.S. government obligations.

AmericasActive:16146294.5

"Bank Fees").   As of the Petition Date, the Debtors believe that approximately $5,175 is outstanding on account of prepetition Bank Fees.

III.     **Compliance with the Bankruptcy Code and U.S. Trustee Guidelines.**

     A.     **Compliance with Section 345 of the Bankruptcy Code and Certain of the U.S. Trustee Guidelines.**

22.     Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  To comply with section 345 of the Bankruptcy Code, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") generally requires chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with certain requirements set by the U.S. Trustee in accordance with the *Region 7 Guidelines for Debtors-in-Possession* (the "U.S. Trustee Guidelines").

23.     The majority of the Bank Accounts are collectively maintained at PNC, Citibank, and Texas Capital, which are all designated as authorized depositories by the U.S. Trustee.  The Debtors maintain two Bank Accounts with Bank of China, however, which is not an authorized depository.  The Debtors maintain these Bank Accounts with Bank of China on account of a small branch office the Debtors operate in China.   Although Bank of China is not an authorized depository, it is a highly-rated, global financial institution that is recognized as being well-capitalized and financially stable.  Further, the principal basis for excluding Bank of China from compliance with the U.S. Trustee Guidelines is location—not financial soundness or stability. Because Bank of China is based outside of the United States, it is less likely to be identified as an authorized depository by the U.S. Trustee.  Notwithstanding that Bank of China has not qualified for "authorized depository" designation, the Debtors believe Bank of China is well positioned to

9

continue to perform the depository and cash management functions for the Debtors during the chapter 11 cases.  The two Bank Accounts with Bank of China typically have a collective cash balance of between $50,000 and $100,000.

24.     The Debtors believe they can maintain the Bank Accounts at Bank of China without jeopardizing any parties in interest and that any funds deposited in any of the Bank Accounts maintained at Bank of China are secure.  Requiring the Debtors to transfer such Bank Accounts to a designated authorized depository or for the Bank Accounts to post a bond would place a needless administrative burden on the Debtors and likely impose unnecessary costs on the Debtors' estates. Accordingly, the Debtors respectfully submit that cause exists (a) to continue to allow the Debtors to utilize their existing Bank Accounts, subject to any reasonable changes the Debtors may implement to the Cash Management System, and (b) to suspend the deposit requirements of section 345(b) of the Bankruptcy Code for an interim period of 45 days without prejudice to the Debtors' ability to seek further extensions, with respect to the Bank Accounts maintained at Bank of China.

### B.     Compliance with U.S. Trustee Guidelines as to Business.

25.     The Debtors use a variety of preprinted business forms, including checks, letterhead, correspondence forms, invoices, and other business forms in the ordinary course of business (collectively, the "Business Forms").  The Debtors also maintain books and records to document their financial results and a wide array of operating information, including their profits and expenses.  To avoid the distraction and unnecessary expense to their estates, the Debtors request authorization to continue using all Business Forms in existence before the Petition Date, without reference to the Debtors' status as chapter 11 debtors in possession, rather than requiring the Debtors to incur the expense and delay of ordering new Business Forms as required by the U.S. Trustee Guidelines.  The Debtors submit that once they have exhausted their existing stock of Business Forms, they will ensure that any new Business Forms are clearly labelled "Debtor in

AmericasActive:16146294.5

Possession," and with respect to any Business Forms that exist or are generated electronically, the Debtors shall ensure that such electronic Business Forms are clearly labelled "Debtor in Possession."

## IV.   Intercompany Transactions.

26.     In the ordinary course of business, the operation of the Cash Management System results in Intercompany Transactions.   At any given time, as a result of the Intercompany Transactions, there may be claims owing by one Debtor to another Debtor or non-debtor affiliate (collectively, the "Intercompany Claims").   For example, in the ordinary course of business the Debtors may make cash transfers to certain non-Debtor affiliates on account of payroll, rent, and operating expenses.   These Intercompany Transactions occur as part of the ordinary course operation of the Cash Management System in connection with the receipt and disbursement of funds between the Debtors and their non-debtor affiliates.

27.     When a disbursement is made, the Debtor or non-debtor affiliate records a receivable, and the applicable Debtor or non-debtor affiliates records a payable.  The Debtors track all transfers and can ascertain and trace the Intercompany Transactions.  During these chapter 11 cases, the Debtors will continue to closely monitor and record the Intercompany Transactions consistent with prepetition practice.

28.     The Intercompany Transactions are an essential component of the Debtors' complex operations and are crucial to the Debtors' ability to provide enterprise-wide management and support services, and otherwise facilitate operations.  Any interruption of the Intercompany Transactions could severely disrupt the Debtors' operations and result in great harm to the Debtors' estates and their stakeholders.   Accordingly, the Debtors seek authority—and, to the extent applicable, relief from the automatic stay—to continue the Intercompany Transactions in the

11

ordinary course of business on a postpetition basis, in a manner substantially consistent with the Debtors' past practice.[6]

## Basis for Relief

I.   **Maintaining the Existing Cash Management System Is Essential to the Debtors' Operations and Restructuring Efforts.**

29.     The U.S. Trustee Guidelines require debtors in possession to, among other things: (a) close all existing bank accounts and open new debtor in possession bank accounts; (b) establish one debtor in possession bank account for all estate monies required for payment of taxes, including payroll taxes; and (c) use new business forms indicating the debtor-in-possession status of the chapter 11 debtor, including checks that bear the designation "debtor in possession" and reference the bankruptcy case number.  *See Region 7 Guidelines for Debtors-in-Possession.*

30.     These requirements are intended to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent the inadvertent payment of prepetition claims.  Considering, however, that the Debtors' business and financial affairs are complex and require the collection, disbursement, and movement of funds through the Debtors' Bank Accounts, enforcement of these provisions of the U.S. Trustee Guidelines during these chapter 11 cases would severely disrupt the Debtors' operations.  Accordingly, the Debtors respectfully request that the Court allow them to operate each of the Bank Accounts listed in Schedule 2 to the Interim Order and the Final Order, as they were maintained in the ordinary course of business before the Petition Date.

---

[6] This Motion provides an overview of the Debtors' typical Intercompany Transactions.  The relief requested herein is applicable with respect to all Intercompany Transactions and is not limited to those Intercompany Transactions described in this Motion.  To the extent that there are outstanding prepetition obligations related to Intercompany Transactions not described herein, the Debtors, out of an abundance of caution, seek authority to honor such obligations.

AmericasActive:16146294.5

31.     The continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." Bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter[s]." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In addition, in granting such relief, courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3d Cir. 1993). The requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

32.     Here, requiring the Debtors to adopt a new, segmented cash management system during these chapter 11 cases would be expensive, burdensome, and unnecessarily disruptive to the Debtors' operations. Importantly, the Cash Management System provides the Debtors with the ability to quickly track and report the location and amount of funds, which, in turn, allows management to track and control such funds, ensure cash availability, and reduce administrative costs through a centralized method of coordinating the collection and movement of funds. Any disruption of the Cash Management System could have a negative effect on the Debtors' restructuring efforts. Indeed, absent the relief requested herein, requiring the Debtors to adopt a new, segmented cash management system would needlessly jeopardize the Debtors' business enterprise. By contrast, maintaining the current Cash Management System will facilitate the

13

Debtors' transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies. Finally, maintaining the current Cash Management System will allow the Debtors' treasury employees to focus on their daily responsibilities.

33. The Debtors respectfully submit that parties in interest will not be harmed by their continued use of the present Cash Management System, including maintenance of the Bank Accounts and the Intercompany Transactions, because the Debtors have appropriate mechanisms to ensure that unauthorized payments will not be made on account of prepetition obligations. Specifically, with the assistance of their advisors, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior approval of the Debtors' treasury department. In light of such protective measures, the Debtors submit that maintaining the Cash Management System is in the best interest of the Debtors' estates and creditors.

34. Accordingly, the Debtors respectfully request that the Court authorize the continued use of the existing Cash Management System to facilitate the Debtors' transition into chapter 11. Specifically, the Debtors respectfully request that the Court authorize the Cash Management Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption in the ordinary course of business. In this regard, the Cash Management Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto. Notwithstanding the foregoing, any check, draft, or other notification that the Debtors advise the Cash Management Banks to have

14

been drawn, issued, or otherwise presented before the Petition Date may be honored by the Cash Management Banks only to the extent authorized by order of the Court. If the Debtors' ability to conduct transactions by these methods is impaired, the Debtors may be unable to perform under certain contracts, and payments to vendors could be delayed, resulting in unnecessary disruption to their business operations and the incurrence of additional costs.

35.     The Debtors further request that the Court authorize the Cash Management Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date. The Debtors also request that, to the extent a bank honors a prepetition check or other item drawn on any account either (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary item handling procedures, such bank will not be deemed liable to the Debtors, their estates, or any other party on account of such prepetition check or other item honored postpetition. The Debtors respectfully submit that such relief is reasonable and appropriate because the Cash Management Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

## II.     The Court Should Authorize the Debtors to Pay Prepetition Amounts Owed on Account of the Cash Management System.

36.     The Debtors' funds move through the Cash Management System as described above and, at any given time, there may be prepetition amounts outstanding on account of the Cash Management System such as Bank Fees and Intercompany Claims. Any non-payment of prepetition amounts owed could cause serious disruptions to the Debtors' estates. As such, the

Debtors respectfully request that the Court authorize the Debtors to pay any prepetition amounts owed in connection with the Cash Management System.

37.     Courts in the Fifth Circuit have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825-26 (D. Del. 1999); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

38.     Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so.  *See In re Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) of the Bankruptcy Code provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).  In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'"  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ*, LLC, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also In re Equalnet Commc'ns Corp.*, 285 B.R. 368, 269 (Bankr. S.D. Tex. 2000) (noting that courts authorize debtors to pay, outside of a plan, prepetition claims from "business transactions which are at once individually minute but collectively immense and critical to the survival of the business of the debtor").

39.     Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code codifies

AmericasActive:16146294.5

a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses.  *See Just for Feet*, 242 B.R. at 825-26.  Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See, e.g., Ionosphere Clubs*, 98 B.R. at 176 (noting that the necessity of payment rule recognizes the judicial power to authorize a debtor to pay prepetition claims where such payment would be essential to the continued operation of the debtor's business); *In re Lehigh & New England Ry Co.*, 657 F.2d 570 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc*., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that debtors may pay prepetition claims that are essential to the continued operation of the business). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175-76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co*., 106 U.S. 286 (1882)).  Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. at 497.

40.     The Debtors' continued use of the Cash Management System, including payment of Bank Fees and Intercompany Claims, will facilitate their transition into chapter 11 by, among other things, avoiding administrative inefficiencies and expenses and minimizing delays in the payment of postpetition amounts due.  As described above, the Debtors pay Bank Fees to the Cash

Management Banks to facilitate the use of the Bank Accounts.  Non-payment of these fees could cause disruption to their Cash Management System.  Similarly, as described above, the Debtors in the ordinary course of business engage in Intercompany Transactions with Debtors and non-debtor affiliates, which are an essential component of the Debtors' operations and Cash Management System.  Any interruption of the Intercompany Transactions, or non-payment of prepetition amounts due in connection with the Cash Management System, would severely disrupt the Debtors' operations to the detriment of the Debtors and their estates.

41.     Accordingly, the Debtors respectfully submit that a sound business purpose exists to authorize payment of prepetition amounts due in connection with the Cash Management System, including Intercompany Claims and Bank Fees.

**III.     The Court Should Authorize the Debtors to Continue Using the Business Forms.**

42.     To avoid disruption of the Cash Management System and unnecessary expense, the Debtors request that they be authorized to continue to use their Business Forms, substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession.  The Debtors submit that parties in interest will not be prejudiced by this relief. Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, changing forms is unnecessary and unduly burdensome.  Moreover, the Debtors submit that once they have exhausted their existing stock of Business Forms, they will ensure that any new Business Forms are clearly labelled "Debtor in Possession" and with respect to any Business Forms that exist or are generated electronically, the Debtors shall ensure that such electronic Business Forms are clearly labelled "Debtor in Possession.'

**IV.     The Court Should Authorize the Debtors to Continue Engaging in Intercompany Transactions in the Ordinary Course and Grant Administrative Priority Status to Postpetition Intercompany Claims.**

43.     The Debtors' funds move through the Cash Management System as described above.  At any given time, there may be Intercompany Claims owed by one Debtor to another Debtor, or a Debtor to a non-debtor affiliate or related party (or vice versa).  Intercompany Transactions are made between and among Debtors and non-debtor affiliates and related parties in the ordinary course as part of the Cash Management System.[7]  The Debtors track all fund transfers in their accounting system and can ascertain, trace, and account for all Intercompany Transactions previously described.   The Debtors, moreover, will continue to maintain records of such Intercompany Transactions.  If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls would be disrupted to the Debtors' and each of their estates' detriment.

44.     In addition,  granting the Debtors relief to continue Intercompany Transactions between Debtors and non-debtor affiliates is warranted under the circumstances.  If any non-debtor affiliate were to be severed from the Cash Management System, it may not be able to meet its obligations as they come due, which may in turn have adverse, value-destructive consequences across the entire ION corporate structure.  Additionally, the Debtors anticipate that postpetition Intercompany Transaction with non-debtor affiliates will be consistent with prepetition practices.  Accordingly, the Debtors respectfully submit that the continued performance of Intercompany Transactions is in the best interest of the Debtors' estates and their creditors and, therefore, the Debtors should be permitted to continue conducting the Intercompany Transactions in the ordinary course of business without need for further Court order.

---

[7] Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among large enterprises similar to the Debtors, the Debtors submit the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require this Court's approval.  Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis.  Moreover, the continued performance of the ordinary course Intercompany Transactions is integral to ensure the Debtors' ability to operate their businesses as debtors in possession.

45.     The Debtors further request that pursuant to section 503(b)(1) of the Bankruptcy Code, any Intercompany Claims against the Debtors on account of the Intercompany Transactions be accorded administrative expense status.  If all Intercompany Claims against the Debtors are accorded administrative expense status, each entity will continue to bear ultimate payment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions will jeopardize the recoveries available to each Debtor's respective creditors. Additionally, granting administrative expense status to claims of non-debtor affiliates on account of Intercompany Transactions will prevent unnecessary disruptions to the Debtors' business, ensure continued performance under the Debtors' prepetition business arrangements with their non-debtor affiliates and related parties, and indirectly benefit the Debtors through their equity interests in their non-debtor affiliates.  For the avoidance of doubt, the relief requested herein with respect to the postpetition Intercompany Transactions and Intercompany Claims resulting therefrom shall not constitute an admission of the Debtors or any other party as to the validity, priority, or status of any Intercompany Claims or the Intercompany Transaction(s) from which such Intercompany Claims may have arisen.

## V.     Cause Exists to Suspend Section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines to the Cash Management System.

46.     Section 345(a) of the Bankruptcy Code authorizes a debtor's deposit or investment of money, such as cash, that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  For deposits that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of a corporate security, "unless the

court for cause orders otherwise."  Additionally, under the U.S. Trustee Guidelines, debtors in possession must, among other things, close prepetition bank accounts and open new "debtor in possession" operating, payroll, and tax accounts at one or more authorized depositories.

47.     Courts may waive compliance with section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines for "cause."  In evaluating whether "cause" exists, courts have considered a number of factors such as:

a.     the sophistication of the debtor's business;

b.     the size of the debtor's business operations;

c.     the amount of the investments involved;

d.     the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held;

e.     the complexity of the case;

f.     the safeguards in place within the debtor's own business for ensuring the safety of the funds;

g.     the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

h.     the benefit to the debtor;

i.     the harm, if any, to the debtor;

j.     the harm, if any, to the estate; and

k.     the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.

See In re Serv. Merck. Co., Inc., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

48.     The Debtors believe that the Bank Accounts generally comply with section 345 of the Bankruptcy Code.  All but two Bank Accounts are maintained at authorized depositories. While Bank of China is not an authorized depository in the Southern District of Texas, the Bank Accounts at Bank of China typically have a collective cash balance of between $50,000 and

21

$100,000.  In addition, Bank of China is a trustworthy, well-capitalized, and financially stable bank with a strong reputation.  To the extent the Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code, the Debtors submit that cause exists to suspend the U.S. Trustee Guidelines for an interim period of 45 days, without prejudice to the Debtors ability to seek further extensions, to the extent applicable to the Cash Management System.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

49.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and debtor in possession financing.  Under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein.  The Debtors do not believe that checks or wire transfer requests, other than those relating to authorized payments, will be honored inadvertently.  The Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### Emergency Consideration

50.     Pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days of the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm" and Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion.  The Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases could

AmericasActive:16146294.5

severely disrupt the Debtors' operations at this critical juncture and jeopardize the Debtors' restructuring. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

51.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

52.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that

may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### Notice

The Debtors will provide notice of this Motion to:  (a) the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition revolving credit facility and counsel thereto; (d) the indenture trustee for the Debtors' 8.00% secured second priority notes and counsel thereto; (e) the indenture trustee for the Debtors' 9.125% unsecured notes; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for states in which the Debtors conduct business; (j) the Cash Management Banks; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

AmericasActive:16146294.5

WHEREFORE, the Debtors request entry of the Interim Order and the Final Order granting the relief requested herein and such other relief the Court deems appropriate under the circumstances.

Dated:  April 12, 2022
Houston, Texas

**WINSTON & STRAWN LLP**

/s/ *Katherine A. Preston*

Katherine A. Preston (TX Bar No. 24088255)
800 Capitol St., Suite 2400
Houston, Texas 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
Email: kpreston@winston.com

and

Timothy W. Walsh (*pro hac vice* pending)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
E-mail: twwalsh@winston.com

and

Daniel J. McGuire (*pro hac vice* pending)
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-3733
Facsimile: (312) 558-5700
Email: dmcguire@winston.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## **Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

*/s/ Katherine A. Preston*
Katherine A. Preston

## **Certificate of Service**

I certify that on April 12, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Katherine A. Preston*
Katherine A. Preston

## Exhibit A

**Interim Order**

AmericasActive:16146294.5

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | ) Case No. 22-30987 (MI) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |
| | ) **Re:  Docket No. _____** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) MAINTAIN EXISTING
BUSINESS FORMS, AND (C) PERFORM INTERCOMPANY TRANSACTIONS AND
(II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing the Debtors to (i) continue to operate their Cash Management System, (ii) maintain existing Business Forms in the ordinary course of business, and (iii) continue Intercompany Transactions consistent with historical practice; (b) granting related relief as modified as set forth herein; and (c) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is permissible pursuant to 28 U.S.C. §§ 1408 and 1409; and this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115).  The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Court having found that the relief requested in the Motion is in the best interests of the Debtors'

estates, their creditors, and other parties in interest; and this Court having found that the Debtors'

notice of the Motion and opportunity for a hearing on the Motion were appropriate under the

circumstances and no other notice need be provided; and this Court having reviewed the Motion

and having heard the statements in support of the relief requested therein at a hearing before this

Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth

in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of

the proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on

_____, 2022, at ___:___ __.m.,  prevailing Central Time.  Any objections or responses

to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Central

Time, on _____, 2022.  If no objection to entry of the Final Order on the Motion is

received timely, this Court may enter such Final Order without need for the Final Hearing.

3.      The Debtors are authorized, but not directed, to: (a) continue operating the Cash

Management System in the ordinary course of business and consistent with the Debtors' historical

practice, substantially as identified in **Schedule 1** attached hereto and as described in the Motion;

(b) honor their prepetition obligations related thereto in the ordinary course of business and

consistent with the Debtors' historical practice; (c) maintain existing Business Forms as set forth

herein; and (d) continue to perform Intercompany Transactions consistent with historical practice.

4.      In connection with the ongoing utilization of the Cash Management System, the

Debtors shall continue to maintain records with respect to all transfers, including Intercompany

2

Transactions, so that all of the Debtors' transactions may be readily ascertainable, traced, recorded properly, and distinguished between prepetition and postpetition transfers.  The Debtors shall maintain detailed records of all Intercompany Transactions so that all such transactions shall be adequately and promptly documented in and readily ascertainable from the Debtors' books and records.  The Debtors shall make such records available upon request by the U.S. Trustee, the ad hoc group of secured lenders, and any statutory committee appointed in these chapter 11 cases.

5.      The Debtors are authorized, but not directed, to:  (a) designate, maintain, close, and continue to use on an interim basis their existing Bank Accounts, including, but not limited to, the Bank Accounts identified in **__Schedule 2__** attached hereto, in the names and with the account numbers existing immediately before the Petition Date; (b) deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (c) treat their prepetition Bank Accounts for all purposes as debtor in possession accounts; (d) open new debtor in possession bank accounts at banks that (i) have executed a Uniform Depository Agreement with the U.S. Trustee or banks that are willing to execute one and (ii) have agreed to be bound by the terms of this Interim Order; and (e) pay any ordinary course prepetition and postpetition service and other fees, costs, charges and expenses to which the Cash Management Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors, and to otherwise perform their obligations under the documents governing the Bank Accounts. The Debtors shall provide reasonable prior written notice to the U.S. Trustee, the ad hoc group of secured lenders, and any statutory committee appointed these chapter 11 cases of the opening of such account and the closing of any existing Bank Accounts.

6.      No liens on any of the Bank Accounts granted to any creditors shall take priority over the prepetition and postpetition service and other fees, costs, charges and expenses to which

the Cash Management Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors.

7.      The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date; *provided* that once the Debtors have exhausted their existing stock of Business Forms, they shall ensure that any new Business Forms are clearly labeled "Debtor in Possession" as soon as is reasonably practicable to do so.  To the extent the Debtors print any new checks or use any electronic Business Forms, they will include the designation "Debtor in Possession" and the corresponding bankruptcy case number on all such checks within ten (10) days.

8.      Subject to the protections provided to the Cash Management Banks in Paragraph 14 of this Interim Order, the Cash Management Banks are authorized, but not directed, to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business and in accordance with the account agreements governing the Bank Accounts. In this regard, the Cash Management Banks are authorized to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

9.      Subject to the protections provided to the Cash Management Banks in Paragraph 14 of this Interim Order, all Cash Management Banks provided with notice of this Interim Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date except as authorized by an order of this Court and directed by the Debtors in writing.

10.     To the extent any of the  Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code, the Debtors shall have until May 27, 2022 to come into compliance with section 345(b) of the Bankruptcy Code; *provided* that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached.  The Debtors may obtain a further extension by written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

11.     Subject to the terms hereof, the Debtors are authorized, in the ordinary course of business, to open any new Bank Accounts or close any existing Bank Accounts and enter into any ancillary agreements, including new deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate.

12.     Any banks, including the Cash Management Banks, are authorized to honor the Debtors' direction with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations.

13.     The relief granted in this Interim Order is extended to any new bank account opened by the Debtors in the ordinary course of business after the date hereof, which account shall be deemed a "Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Cash Management Bank."

14.     Notwithstanding any other provision of this Interim Order, any bank, including the Cash Management Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, payment, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors any

such prepetition payment drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

15.     The Debtors' Cash Management Banks are authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for all checks drawn on the Debtors' account; *provided* that no checks issued against the Debtor prior to the commencement of these chapter 11 cases shall be honored except as authorized by order of this Court and directed by the Debtors.

16.     The Cash Management Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

17.     The Debtors are authorized to continue engaging in Intercompany Transactions in connection with the Cash Management System in the ordinary course of business and in a manner substantially consistent with the Debtors' historical practice.  All claims arising from postpetition payments from a Debtor under any postpetition Intercompany Transactions authorized hereunder are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.

AmericasActive:16146294.5

18.     The Debtors shall provide reasonable notice to the U.S. Trustee, the ad hoc group of secured lenders, and any statutory committee appointed in these chapter 11 cases of material changes to the Cash Management System and procedures.

19.     Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of the Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien, in favor of any person or entity, that existed as of the Petition Date.

20.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

21.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts that are authorized to be paid under an order of the Court.

22.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim

Order or the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

23.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

24.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

25.     As soon as practicable after entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on each Cash Management Bank.

26.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

27.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

28.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

AmericasActive:16146294.5

Houston, Texas
Dated: _____, 2022

                                                  _____

                                                  UNITED STATES BANKRUPTCY JUDGE

AmericasActive:16146294.5

## Schedule 1

**Cash Management System**

# ION Geophysical Corporation, Et al.
# Cash Management System



# ION Geophysical Corporation, Et al.
## Cash Management System

**Footnotes:**

(1) Master Concentration Account borrows and pays down the revolver

(2) Inclusive of banking fees for any monthly PNC-related cash management fees charged; interest payments on Credit Facility are direct debited from x9109

(3) The debtors in the normal course fund certain AP disbursements, payroll, and other operating requirements to certain non-debtor foreign subsidiaries

(4) GMG/Axis Inc. is not a guarantor in the credit agreement;

(5) Texas Capital Bank

(6) Interest payments for the New Second Lien Notes

(7) Intercompany loans/transfers are made from ION International Holdings LP (Bermuda) to other ION legal entities whether North America or Europe

(8) Foreign collections are occasionally repatriated to the US via ION International Holdings LP (Bermuda) account

(9) TCB and Citi accounts are used to post cash collateral for LCs; LC at Citi account x2233 backs two surety bonds totaling $300k

(10) PNC – The PNC Financial Services Group, Inc.

(11) Texas Capital Bank - Texas Capital Bancshares, Inc.

(12) CitiBank – Citigroup, Inc.

(13) CitiBank account x1884 designated to be repurposed for utility adequate assurance deposit account



**Schedule 2**

**Bank Accounts**

| No. | Entity | Bank Name | Account Type | Account No. (Ending) |
|---|---|---|---|---|
| 1 | GX Technology Corporation | PNC | Disbursement Account | 9029 |
| 2 | GX Technology Corporation | PNC | Disbursement Account | 9045 |
| 3 | GX Technology Corporation | PNC | Collections Account | 9125 |
| 4 | GX Technology Corporation | PNC | Collections Account | 9133 |
| 5 | I/O Marine Systems, Inc. | PNC | Disbursement Account | 9053 |
| 6 | I/O Marine Systems, Inc. | PNC | Disbursement Account | 9061 |
| 7 | I/O Marine Systems, Inc. | PNC | Collections Account | 9141 |
| 8 | ION Exploration Products (USA) Inc. | PNC | Disbursement Account | 8825 |
| 9 | ION Geophysical Corporation | Citibank | Collateral Account | 2233 |
| 10 | ION Geophysical Corporation | Citibank | Adequate Assurance Account | 1884 |
| 11 | ION Geophysical Corporation | PNC | Money Market Account | 4709 |
| 12 | ION Geophysical Corporation | PNC | Master Concentration Account | 9117 |
| 13 | ION Geophysical Corporation | PNC | Disbursement Account | 0286 |
| 14 | ION Geophysical Corporation | PNC | Disbursement Account | 9088 |
| 15 | ION Geophysical Corporation | PNC | Disbursement Account | 9096 |
| 16 | ION Geophysical Corporation | PNC | Main Operating Account | 9109 |

| No. | Entity | Bank Name | Account Type | Account No. (Ending) |
|-----|--------|-----------|--------------|----------------------|
| 17 | ION Geophysical Corporation | PNC | Collections Account | 9168 |
| 18 | ION Geophysical Corporation | Texas Capital | Collateral Account | 1541 |
| 19 | ION Geophysical Corporation | Bank of China | Disbursement Account | 2594 |
| 20 | ION Geophysical Corporation | Bank of China | Disbursement Account | 9585 |

2

**<u>Exhibit B</u>**

**Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | ) | Case No. 22-30987 (MI) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) | **Re: Docket No. _____** |
|  | ) |  |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) MAINTAIN EXISTING
BUSINESS FORMS, AND (C) PERFORM INTERCOMPANY TRANSACTIONS AND
(II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing the Debtors to (i) continue to operate their Cash Management System, (ii) maintain existing Business Forms in the ordinary course of business, and (iii) continue Intercompany Transactions consistent with historical practice; and (b) granting related relief as modified as set forth herein, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is permissible pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115). The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

AmericasActive:16146294.5

Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.       The Motion is granted on a final basis as set forth herein.

2.       The Debtors are authorized, but not directed, to: (a) continue operating the Cash Management System in the ordinary course of business and consistent with the Debtors' historical practice, substantially as identified in **Schedule 1** attached hereto and as described in the Motion; (b) honor their prepetition obligations related thereto in the ordinary course of business and consistent with the Debtors' historical practice; (c) maintain existing Business Forms as set forth herein; and (d) continue to perform Intercompany Transactions consistent with historical practice.

3.       In connection with the ongoing utilization of the Cash Management System, the Debtors shall continue to maintain records with respect to all transfers, including Intercompany Transactions, so that all of the Debtors' transactions may be readily ascertainable, traced, recorded properly, and distinguished between prepetition and postpetition transfers.  The Debtors shall maintain detailed records of all Intercompany Transactions so that all such transactions shall be adequately and promptly documented in and readily ascertainable from the Debtors' books and records.

AmericasActive:16146294.5

4.      The Debtors are authorized, but not directed, to:  (a) designate, maintain, close, and continue to use on a final basis their existing Bank Accounts, including, but not limited to, the Bank Accounts identified in **Schedule 2** attached hereto, in the names and with the account numbers existing immediately before the Petition Date; (b) deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (c) treat their prepetition Bank Accounts for all purposes as debtor in possession accounts; (d) open new debtor in possession bank accounts at banks that have executed a Uniform Depository Agreement with the U.S. Trustee or banks that are willing to execute one; and (e) pay any ordinary course prepetition and postpetition service and other fees, costs, charges and expenses to which the Cash Management Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors, and to otherwise perform their obligations under the documents governing the Bank Accounts.

5.      No liens on any of the Bank Accounts granted to any creditors shall take priority over the prepetition and postpetition service and other fees, costs, charges and expenses to which the Cash Management Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors.

6.      The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date; *provided* that once the Debtors have exhausted their existing stock of Business Forms, they shall ensure that any new Business Forms are clearly labeled "Debtor in Possession." To the extent the Debtors print any new checks or use any electronic Business Forms, they will include the designation "Debtor in Possession" and the corresponding bankruptcy number on all such checks.

3

7.       Subject to the protections provided to the Cash Management Banks in Paragraph 13 of this Final Order, the Cash Management Banks are authorized, but not directed, to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business and in accordance with the account agreements governing the Bank Accounts. In this regard, the Cash Management Banks are authorized to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

8.       Subject to the protections provided to the Cash Management Banks in Paragraph 13 of this Final Order, all Cash Management Banks provided with notice of this Final Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date except as authorized by an order of this Court and directed by the Debtors in writing.

9.       To the extent any of the  Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's Guidelines, the Debtors shall have until a date that is 45 days from the Petition Date through to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's Guidelines; *provided* that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached.  The Debtors may obtain a further extension of the period referenced above by entering into a written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

10.      Subject to the terms hereof, the Debtors are authorized, in the ordinary course of business, to open any new Bank Accounts or close any existing Bank Accounts and enter into any

ancillary agreements, including new deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate.

11.     Any banks, including the Cash Management Banks, are authorized to honor the Debtors' direction with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations.

12.     The relief granted in this Final Order is extended to any new bank account opened by the Debtors in the ordinary course of business after the date hereof, which account shall be deemed a "Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Cash Management Bank."

13.     Notwithstanding any other provision of this Final Order, any bank, including the Cash Management Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, payment, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors any such prepetition payment drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

14.     The Debtors' Cash Management Banks are authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for all

checks drawn on the Debtors' account; provided that no checks issued against the Debtor prior to the commencement of these chapter 11 cases shall be honored except as authorized by order of this Court and directed by the Debtors.

15.     The Cash Management Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

16.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts that are authorized to be paid under an order of the Court.

17.     Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of the Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien, in favor of any person or entity, that existed as of the Petition Date.

18.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

19.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

20.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts that are authorized to be paid under an order of the Court.

21.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

AmericasActive:16146294.5

22.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

23.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

24.     As soon as practicable after entry of this Final Order, the Debtors shall serve a copy of this Final Order on each Cash Management Bank.

25.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Houston, Texas
Dated: _____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

AmericasActive:16146294.5

**Schedule 1**

**Cash Management System**

AmericasActive:16146294.5

# ION Geophysical Corporation, Et al.
## Cash Management System



## ION Geophysical Corporation, Et al.
## Cash Management System

**Footnotes:**
(1) Master Concentration Account borrows and pays down the revolver
(2) Inclusive of banking fees for any monthly PNC-related cash management fees charged; interest payments on Credit Facility are direct debited from x9109
(3) The debtors in the normal course fund certain AP disbursements, payroll, and other operating requirements to certain non-debtor foreign subsidiaries
(4) GMG/Axis Inc. is not a guarantor in the credit agreement;
(5) Texas Capital Bank
(6) Interest payments for the New Second Lien Notes
(7) Intercompany loans/transfers are made from ION International Holdings LP (Bermuda) to other ION legal entities whether North America or Europe
(8) Foreign collections are occasionally repatriated to the US via ION International Holdings LP (Bermuda) account
(9) TCB and Citi accounts are used to post cash collateral for LCs; LC at Citi account x2233 backs two surety bonds totaling $300k
(10) PNC – The PNC Financial Services Group, Inc.
(11) Texas Capital Bank - Texas Capital Bancshares, Inc.
(12) CitiBank – Citigroup, Inc.
(13) CitiBank account x1884 designated to be repurposed for utility adequate assurance deposit account



## Schedule 2

## Bank Accounts

| No. | Entity | Bank Name | Account Type | Account No. (Ending) |
|---|---|---|---|---|
| 1 | GX Technology Corporation | PNC | Disbursement Account | 9029 |
| 2 | GX Technology Corporation | PNC | Disbursement Account | 9045 |
| 3 | GX Technology Corporation | PNC | Collections Account | 9125 |
| 4 | GX Technology Corporation | PNC | Collections Account | 9133 |
| 5 | I/O Marine Systems, Inc. | PNC | Disbursement Account | 9053 |
| 6 | I/O Marine Systems, Inc. | PNC | Disbursement Account | 9061 |
| 7 | I/O Marine Systems, Inc. | PNC | Collections Account | 9141 |
| 8 | ION Exploration Products (USA) Inc. | PNC | Disbursement Account | 8825 |
| 9 | ION Geophysical Corporation | Citibank | Collateral Account | 2233 |
| 10 | ION Geophysical Corporation | Citibank | Adequate Assurance Account | 1884 |
| 11 | ION Geophysical Corporation | PNC | Money Market Account | 4709 |
| 12 | ION Geophysical Corporation | PNC | Master Concentration Account | 9117 |
| 13 | ION Geophysical Corporation | PNC | Disbursement Account | 0286 |
| 14 | ION Geophysical Corporation | PNC | Disbursement Account | 9088 |
| 15 | ION Geophysical Corporation | PNC | Disbursement Account | 9096 |
| 16 | ION Geophysical Corporation | PNC | Main Operating Account | 9109 |

| No. | Entity | Bank Name | Account Type | Account No. (Ending) |
|-----|--------|-----------|--------------|----------------------|
| 17 | ION Geophysical Corporation | PNC | Collections Account | 9168 |
| 18 | ION Geophysical Corporation | Texas Capital | Collateral Account | 1541 |
| 19 | ION Geophysical Corporation | Bank of China | Disbursement Account | 2594 |
| 20 | ION Geophysical Corporation | Bank of China | Disbursement Account | 9585 |

2