## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | Case No. 22-30987 (MI) |
| Debtors. | (Joint Administration Requested)<br>(Emergency Hearing Requested) |

### DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE PAYMENT OF CRITICAL VENDOR CLAIMS, FOREIGN CLAIMS, LIEN CLAIMS, AND 503(B)(9) CLAIMS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING PURCHASE ORDERS, <u>AND (III) GRANTING RELATED RELIEF</u>

---

**Emergency relief has been requested. A hearing will be conducted on this matter on April 13, 2022 at 1:30 p.m. (prevailing Central Time) in Courtroom 404, 4th floor, 515 Rusk Avenue, Houston, Texas 77002. You may participate in the hearing either in person or by audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing, or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are: ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115). The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion"):

## Relief Requested

1.     The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order"):  (a) authorizing, but not directing, the Debtors to pay in the ordinary course of business certain prepetition and postpetition amounts owing on account of (i) Critical Vendor Claims, (ii) Foreign Claims, (iii) Lien Claims, and (iv) 503(b)(9) Claims (each as defined below, and collectively, the "Specified Trade Claims"); (b) confirming the administrative expense priority of Outstanding Purchase Orders (as defined below) and authorizing the payment of such obligations in the ordinary course of business; and (c) granting certain related relief.  In addition, the Debtors request that the Court schedule a final hearing approximately 25 days from the date hereof.

## Jurisdiction and Venue

2.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The bases for the relief requested herein are sections 105(a), 363, 503(b), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"),

Bankruptcy Rules 6003 and 6004, and Rule 9013-1 of the Local Bankruptcy Rules for the Southern

District of Texas (the "Local Rules").

**Background**

5.      ION Geophysical Corporation (together with its Debtor and non-debtor

subsidiaries, collectively, "ION") is an innovative, asset light global technology company that

delivers data-driven decision-making offerings to offshore energy and maritime operations

markets.  Headquartered in Houston, Texas with regional offices around the world, ION operates

through two key business segments—Exploration and Production Technology & Services

("EPTS") and Operations Optimization ("OO").  Within the EPTS segment, ION creates digital

data assets on a proprietary and multi-client basis and delivers services to help exploration and

production companies improve decision-making, reduce risk, and maximize value.  The OO

segment develops mission-critical software and technology that enable operational control and

optimization offshore.  In that regard, ION provides survey design, command and control software

systems and related services for marine towed and seabed operations and develops intelligent

hardware and devices to optimize operations.

6.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts

and circumstances of these chapter 11 cases is set forth in the *Declaration of Mike Morrison,*

*Executive Vice President and Chief Financial Officer of ION Geophysical Corporation, in Support*

*of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed

contemporaneously with this Motion and incorporated by reference herein.  The Debtors continue

to operate their business and manage their properties as debtors in possession pursuant to sections

---

[2] Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to them in the First Day Declaration

1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

### The Specified Trade Claims

7.     A key component of the Debtors business is the processing and imaging of seismic data for customers on a proprietary and multi-client basis.  For the multi-client business, the Debtors create global data assets that are then licensed to multiple exploration and production companies to help optimize their investment decisions.  ION's global data library consists of over 745,000 kilometers of 2D and over 410,000 square kilometers of 3D multi-client seismic data in virtually all major offshore petroleum provinces.  The Debtors are an asset-light enterprise. Accordingly, without vessels of their own, the Debtors rely on third-party acquisition vendors to capture data globally.

8.     The other segment of the Debtors' business focuses on the development and production of mission-critical software, technology, and device offerings to achieve maritime operational control and optimization to drive efficiency and related resource utilization.   In particular, the devices segment features a wide range of core competencies spanning navigation, acoustic communication, sensing, underwater positioning and control, power, telemetry, and battery technology.

9.     The Debtors' businesses are highly specialized and complex.  As a result, the Debtors' vendors and suppliers have unique and technical expertise that is critical to the Debtors' ongoing business operations.  Because of the niche industry in which the Debtors operate, many of the vendors are sole suppliers who cannot be replaced.  Further, many of the vendors and suppliers are located outside of the United States.

10.     Given the nature of the Debtors' business, the Debtors rely on timely and frequent delivery of certain goods and services and any interruption in this supply—however brief—could disrupt the Debtors' operations and cause irreparable harm to the Debtors' estates or their customers.

11.     The following table summarizes the Specified Trade Claims, the Debtors' estimate of the net amounts of the Specified Trade Claims accrued as of the Petition Date, and, of those amounts, the net amounts that are due in the ordinary course of business within 21 days of the Petition Date:

| Category | Description of Services Provided | Amount Outstanding as of Petition Date | Amount Due Within 21 Days (Interim Order) | 503(b)(9) Portion |
|---|---|---|---|---|
| Critical Vendors | Suppliers of goods and services that are essential to the Debtors' business. | $815,539 | $395,737 | $234,313 |
| Foreign Vendors | Suppliers of goods or services that are based outside the United States. | $3,625,055[3] | $571,111 | $0 |
| Lien Claimants | Suppliers of goods or services that may have lien rights under applicable non-bankruptcy law. | $41,380 | $19,239 | $0 |
| § 503(b)(9) Claimants[4] | Suppliers that provided goods to the Debtors that were received within 20 days before the Petition Date. | $11,980 | $11,980 | $11,980 |

---

[3] This amount reflects the estimated amount of outstanding License Claims (as defined below) that will become due and owing during the pendency of these chapter 11 cases.

[4] Most 503(b)(9) Claimants (as defined below) could also be categorized as Lien Claimants but are placed into the 503(b)(9) Claimants category to highlight that these suppliers provided goods within 20 days of the Petition Date.

| Category | Description of Services Provided | Amount Outstanding as of Petition Date | Amount Due Within 21 Days (Interim Order) | 503(b)(9) Portion |
|---|---|---|---|---|
| **Total amount of Specified Trade Claims:** | | $4,493,954 | $998,066 | $246,293 |

## I.    Critical Vendors

12.    In the ordinary course of business, the Debtors incur obligations (the "Critical Vendor Claims") to a limited number of providers for many of the critical materials and services the Debtors depend upon to service their customers (the "Critical Vendors").  Of particular importance are vendors that are irreplaceable due to, among other things, their ability to provide specialized equipment and materials and expertise specific to the Debtors' operations, equipment, and infrastructure.  The Debtors obtain such materials and services from a limited number of highly specialized vendors often on an order-by-order basis and without long-term contracts.  For example, the Critical Vendors may include certain vendors and suppliers who manufacture and develop component parts that are often specifically manufactured for, or tailored to, the Debtors' products.  In addition, many of these vendors are sole source suppliers.  The goods and services provided by the Critical Vendors are nearly impossible to replace on a short timeline and/or would result in substantially higher costs to the Debtors.

13.    Additionally, the Debtors enjoy favorable trade terms with many of the Critical Vendors.  The Debtors believe many of the Critical Vendors may be unfamiliar with the chapter 11 process and unwilling to do business on existing trade terms with a chapter 11 debtor.  Loss of trade terms, whether on account of demands for cash in advance, cash on delivery, or otherwise, would negatively impact the Debtors' available liquidity.

14.    With the assistance of their advisors, the Debtors spent, and will continue to spend,

considerable time reviewing and analyzing their books and records, consulting with management and personnel responsible for operations and purchasing, reviewing contracts and supply agreements, and analyzing applicable laws, regulations, and historical practice to identify certain critical business relationships and/or suppliers of goods and services—the loss of which would materially impair the Debtors' ability to maximize the value of the estates. In this process, the Debtors considered a variety of factors, including:

- whether a vendor is critical to the Debtors' ability to maximize the value of the Debtors' estates;

- whether a vendor is a sole- or limited-source or high-volume supplier for goods or services critical to the Debtors' business operations;

- whether alternative vendors are available that can provide requisite volumes of similar goods or services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

- the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

- whether an agreement exists by which the Debtors could compel a vendor to continue performing on prepetition terms;

- whether certain specifications or contract requirements prevent, directly or indirectly, the Debtors from obtaining goods or services from alternative sources;

- whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship inventory or to provide critical services on a postpetition basis;

- whether the Debtors' inability to pay all or part of the vendor's prepetition claim could trigger financial distress for the applicable vendor; and

- whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation.

15.     As of the Petition Date, the Debtors estimate that approximately $815,539 in Critical Vendor Claims are outstanding and that approximately $395,737 of that amount will come due during the interim period before entry of the Final Order.  To continue to have access to the

goods and services provided by the Critical Vendors, the Debtors request authority, but not the direction, to pay the prepetition Critical Vendor Claims as they become due and to continue paying the Critical Vendor Claims in the ordinary course of business.

## II.    Foreign Vendors.

16.    The Debtors acquire seismic data for customers in major offshore basins of hydrocarbon production around the world.  In addition, given the nature of the Debtors' business, many of the vendors and suppliers who provide specialized goods and services to the Debtors are located outside the United States.  For example, certain vendors and suppliers who develop component parts for the Debtors' devices business are foreign-based sole suppliers.  In addition, the Debtors rely on certain vendors based outside the United States to provide technical support and maintenance to their customers while offshore.  Given the specialized nature of the Debtors' devices, vendors who can perform these support services to preserve customer relationships are not easily replaceable.  Further, because the Debtors are asset-light, they rely on third-party vendors and crews—many of whom are also based outside the United States—to capture offshore data that the Debtors ultimately sell to customers on a proprietary or multi-client basis.

17.    In certain geographies, the Debtors must obtain a license from the jurisdictional authority of the offshore lands pertaining to the seismic data in order to be authorized to sell such data to customers.  Oftentimes these licenses are with foreign entities of the host country that owns the offshore rights.  In certain circumstances, the Debtors may also have a foreign-based commercial partner as a co-licensee of the data.  As part of this arrangement, the Debtors are required to remit payment to the applicable third-party licensor or their commercial partners, as applicable, when they sell data sets to customers that include the licensed data (collectively, the "License Claims").  Absent payment of these fees, the applicable third-party licensor could revoke the license or the applicable commercial partner could assert exclusive rights over the data or

exercise other self-help remedies, which would, in each, case significantly undermine the value of the Debtors' digital data assets.  Without these licenses, the Debtors cannot sell the acquired seismic data to customers.  Accordingly, pursuant to this Motion the Debtors are seeking authority, but not direction, to pay certain of these License Claims that the Debtors believe are critical to the preservation of their business.

18.     For the reasons set forth above, in the ordinary course of business, the Debtors incur obligations (including the License Claims, collectively, the "Foreign Claims") to suppliers of goods and services (including the third-party licensors and commercial partners referenced above, collectively, the "Foreign Vendors") that are based outside the United States and who are not familiar with United States bankruptcy law or principles.  Accordingly, many of the Foreign Vendors may not be comfortable with, understand, or feel themselves bound by, orders of a United States bankruptcy court.

19.     Based on knowledge of the Debtors' personnel and advisors regarding the Foreign Vendors, the Debtors believe there is a material risk that the Foreign Vendors may disregard the automatic stay and engage in conduct that disrupts the Debtors' operations, or may simply be confused by the chapter 11 process, particularly in those countries with liquidation-oriented insolvency procedures.  Notably, Foreign Vendors that believe the automatic stay does not govern their actions may exercise self-help, which could include shutting down the Debtors' access to essential goods and services.

20.     Foreign Vendors may also sue the Debtors in a foreign court to recover prepetition amounts owed to them.  If they are successful in obtaining a judgment against the Debtors, the Foreign Vendors may seek to exercise post-judgment remedies, including seeking to withhold vital supplies and services from the Debtors.  Because the Debtors would have limited, if any, effective

and timely recourse and no practical ability to remedy this situation or, most importantly, the ability to replace these Foreign Vendors, their business could be irreparably harmed by any such action to the detriment of the Debtors' estates and creditors.

21.     Given the importance the Foreign Vendors have in the Debtors' global operations, even a temporary disruption in the Debtors' supply chain could have a negative effect on the operation of the Debtors' business.  Moreover, the vast majority of the Foreign Vendors also satisfy the criteria for consideration as a Critical Vendor set forth above.

22.     As of the Petition Date, the Debtors estimate that approximately $3,625,055[5] in Foreign Claims are outstanding and that approximately $571,111 of that amount will come due during the interim period before entry of the Final Order.  To continue to have access to the goods and services provided by the Foreign Vendors, including the benefits of its third-party licenses, the Debtors request authority, but not the direction, to pay the prepetition Foreign Claims as they become due and to continue paying the Foreign Claims in the ordinary course of business.

**III.     Lien Claims.**

23.     In the ordinary course of business, the Debtors incur obligations to certain third-party suppliers (the "<u>Lien Claimants</u>") whose claims are potentially secured by liens against assets owned and/or operated by the Debtors (the "<u>Lien Claims</u>").  In general, the Lien Claimants include freight forwarders, storage facilities and data centers, offshore seismic acquisition providers, and third-party contractors, repairmen, and manufacturers.

24.     Under most state laws, to the extent the Debtors have not paid for such services, a Lien Claimant may have a lien on the goods in its possession, which secures the charges or expenses incurred in connection with the transportation or storage of the goods.  Further, pursuant

---

[5] This amount reflects the estimated amount of outstanding License Claims that will become due and owing during the pendency of these chapter 11 cases.

to section 363(e) of the Bankruptcy Code, the Lien Claimants, as bailees, may be entitled to adequate protection for any valid possessory lien.  As a result, certain Lien Claimants may refuse to deliver or release the Debtors' inventory or other goods and materials, as applicable, before their liens and claims have been satisfied.  Additionally, to the extent the Lien Claimants provide offshore goods or services, they may be able to assert maritime liens against the goods or products provided.

25.     In addition, pursuant to section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the Bankruptcy Code, or to the extent the act is accomplished within the 30-day period set forth in section 547(e)(2)(A) of the Bankruptcy Code, is expressly excluded from the automatic stay.[6]  These statutory liens often allow such parties to retain possession of equipment, machinery, supplies, and other materials (or impair title to the equipment, machinery, supplies, and other materials, by filing a security interest) until the debtor satisfies the outstanding amounts owed.  Arguably, acts to perfect these statutory liens are not subject to the automatic stay under section 362 of the Bankruptcy Code.

26.     By this Motion, the Debtors do not concede that any asserted liens (whether contractual, possessory, common law, statutory, or otherwise) or actions to seize or arrest any of the Debtors' assets are valid and the Debtors expressly reserve all rights to contest the extent, validity, or perfection, or seek the avoidance of all such liens or the priority of such claims. Nonetheless, it is essential that the commencement of these chapter 11 cases not provide the Lien Claimants any reason or excuse to cease performing their obligations, take possession of the

---

[6] Under section 546(b) of the Bankruptcy Code, a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection." 11 U.S.C. § 546(b)(1)(A).  Under section 547(e)(2)(A) of the Bankruptcy Code, a transfer for preference analysis purposes takes place "at a time such transfer takes effect between the transferor and transferee, if such transfer is perfected at, or within 30 days after, such time."

Debtors' assets, or seek adequate protection for such liens to the detriment of the Debtors, their estates, and all parties in interest.

27.     The  materials, goods, equipment, and services provided by the Lien Claimants are critical to the Debtors' ability to complete ongoing engagements and service customers. Accordingly, any refusal to deliver or return the Debtors' goods and materials by the Lien Claimants would severely disrupt the Debtors' operations and adversely affect revenue.

28.     As of the Petition Date, the Debtors estimate that approximately $41,380 in Lien Claims are outstanding and that approximately $19,239 of that amount will come due during the interim period before entry of the Final Order.  To continue to have access to the Lien Claimant's goods and services, the Debtors request authority, but not the direction, to pay the prepetition Lien Claims as they become due and to continue paying the Lien Claims in the ordinary course of business.

**IV.     503(b)(9) Claims.**

29.     In the 20 days before the Petition Date, the Debtors received certain goods and materials from various vendors (collectively, the "503(b)(9) Claimants" and, together with the Foreign Vendors and Lien Claimants, the "Specified Trade Claimants") in the ordinary course of business.

30.     Many of the Debtors' relationships with the 503(b)(9) Claimants are not governed by long-term contracts.  Rather, the Debtors often obtain supplies on an order-by-order basis.  As a result, a 503(b)(9) Claimant may refuse to supply new orders without payment of its prepetition claims.  The Debtors also believe certain 503(b)(9) Claimants could reduce the Debtors' existing trade credit—or demand payment in cash on delivery—further diminishing the Debtors' available liquidity.  Further, the Debtors believe that the amounts owed to such parties may be entitled to

administrative priority under section 503(b)(9) of the Bankruptcy Code (each, a "503(b)(9) Claim").

31.     As of the Petition Date, the Debtors estimate that approximately $11,980 in 503(b)(9) Claims are outstanding and that approximately $11,980 of that amount will come due during the interim period before entry of the Final Order.  By this Motion, the Debtors request authority, but not direction, to pay the 503(b)(9) Claims as they become due and payable and to continue paying the 503(b)(9) Claims in the ordinary course of business.

**V.     Payment of Outstanding Purchase Orders.**

32.     Prior to the Petition Date and in the ordinary course of business, the Debtors may have ordered goods that will not be delivered until after the Petition Date (the "Outstanding Purchase Orders").  To avoid the risk of becoming general unsecured creditors of the Debtors' estates with respect to such goods, certain suppliers may refuse to ship or transport such goods (or may recall such shipments) with respect to such Outstanding Purchase Orders unless the Debtors issue substitute purchase orders postpetition.  Receiving delivery of Outstanding Purchase Orders may be critical to preventing any disruption to the Debtors' business operations.  Accordingly, the Debtors request that the Court confirm the administrative expense priority status of the Outstanding Purchase Orders and authorize the Debtors to pay the Outstanding Purchase Orders in the ordinary course of business.

**VI.    Proposed Conditions to Payment of Specified Trade Claims.**

33.     Out of an abundance of caution, and in order to successfully implement the relief requested herein and to further their restructuring efforts, the Debtors propose that they be authorized to require the Specified Trade Claimants to provide favorable trade terms for the postpetition procurement of their goods and services.  The Debtors seek authorization to condition payment of the Specified Trade Claims upon each Specified Trade Claimant's written agreement

(substantially in the form attached as <u>Exhibit 1</u> to the Interim Order and the Final Order (a "<u>Trade Agreement</u>")) to:  (a) continue—or recommence—providing goods and services to the Debtors in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtors as those in place during the 12 months prior to the Petition Date, or as otherwise agreed by the Debtors in their reasonable business judgment (the "<u>Customary Trade Terms</u>"); and (b) agree that they shall not be permitted to cancel any contract or agreement pursuant to which they provide services to the Debtors.[7]  The Trade Agreement will be a legally binding contractual arrangement between the parties governing the commercial trade relationship on the terms provided therein.

34.     The Debtors request that if any party accepts payment pursuant to the relief requested by this Motion and thereafter ceases to provide goods and services in accordance with the Customary Trade Terms or honor Trade Agreement, then, subject to the Specified Trade Claimant's rights and the terms of the Trade Agreement:  (a) the Debtors may take any and all appropriate steps to recover from such Specified Trade Claimant any payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such party; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment on account thereof had not been made; and (c) if an outstanding postpetition balance is due from the Debtors to such party, (i) the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this motion to such outstanding postpetition balance, and (ii) such party will be required to repay to the Debtors such

_____

[7] The Debtors also seek authority to pay certain Specified Trade Claims, in the event that no Trade Agreement has been executed, if the Debtors determine, in their business judgment, that a formal Trade Agreement is unnecessary to ensure a vendor's continued performance on Customary Trade Terms and such vendor acknowledges (in writing, which may be email) that it will continue providing services as agreed with the Debtors or otherwise be subject to the provisions of the Interim Order and the Final Order with respect to such payment.

paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

<u>**Basis for Relief**</u>

**I.     The Court Should Authorize Payment of the Specified Trade Claims.**

35.     Courts have recognized that it is appropriate to authorize the payment of certain prepetition obligations where necessary to protect and preserve the estate.  *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  *See also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept"); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.,* (*In re James A. Phillips, Inc.*), 29 B.R. 391, 398 (S.D.N.Y. 1983).  In doing so, these courts acknowledge that several legal theories rooted in sections 105(a), 362(d), 363(b), and 1107(a) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

36.     Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so.  *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).  In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession is given the same rights and powers as a trustee appointed in a bankruptcy case, including the "implied duty of the debtor in possession to 'protect and preserve the estate, including an operating business' going-concern value." *See In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ*, 273 B.R. at 497).

37.     Moreover, under section 105(a) of the Bankruptcy Code, "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the

Bankruptcy Code."   11 U.S.C. § 105(a); *CoServ*, 273 B.R. at 497 (bankruptcy courts have authority, through section 105(a) of the Bankruptcy Code, to grant critical vendor motions in the interest of preservation of a debtor's bankruptcy estate); *CEI Roofing*, 315 B.R. at 56; *In re Mirant Corp.*, 296 B.R. 427 (Bankr. N.D. Tex. 2003).

38.     No provision of the Bankruptcy Code expressly prohibits the postpetition payment of prepetition Specified Trade Claims.  Indeed, the above-referenced sections of the Bankruptcy Code authorize such payments when the payments are critical to preserving and maximizing the value of a debtor's estate, as is the case here.

39.     Moreover, courts have noted that there are instances in which debtors in possession can fulfill their fiduciary duties "only . . . by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.  The *CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," *id.*, and also when the payment was to "sole suppliers of a given product."  *Id.* at 498.  Courts in the Fifth Circuit, including the Southern District of Texas, have followed *CoServ*'s three-part test to determine whether a pre-petition claim of a "critical vendor" may be paid outside of the plan process on a postpetition basis:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's pre-petition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*CoServ, L.L.C.*, 273 B.R. at 498; *see also Mirant Corp.*, 296 B.R. at 429–30.

40.     Here, allowing the Debtors to pay the Specified Trade Claims is especially appropriate because it is consistent with the "two recognized policies" behind chapter 11 of the Bankruptcy Code—preserving the value of the Debtors' estates and maximizing the value

available to satisfy creditors.  *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999); *see also Czyzewski v. Jevic Holding Corp.*, -- U.S. --, 137 S. Ct. 973, 985 (2017) (noting that courts have approved critical vendor orders that serve "significant Code-related objectives"); *CoServ*, 273 B.R. at 497 (noting that "it is only logical that the bankruptcy court be able to use section 105(a) of the [Bankruptcy] Code to authorize satisfaction of the pre-petition claim in aid of preservation or enhancement of the estate").

A.      **Many of the Specified Trade Claimants Are Foreign Vendors Who May Not Comply with the Automatic Stay.**

41.      As discussed above, many of the Specified Trade Claimants are based outside the United States.  These suppliers may, and likely do, lack minimum contacts with the United States. Thus, there is significant risk that these suppliers may consider themselves to be beyond the jurisdiction of this Court and therefore disregard the automatic stay, and failure to make payment to such parties in the ordinary course could lead to a proliferation of lawsuits in non-United States courts and efforts to exercise other detrimental remedies overseas.  In many instances, it would be unduly time-consuming and expensive to seek to enforce an order of the bankruptcy court in the creditor's home country.

42.      Accordingly, the Court should authorize the Debtors to pay the Foreign Vendor Claims as they become due and payable and to continue paying the Foreign Vendor Claims in the ordinary course of business.

B.      **Failure to Make Timely Payment of the Specified Trade Claims Could Subject the Debtors' Assets to the Assertion of Liens.**

43.      Certain Lien Claimants also may be entitled under applicable non-bankruptcy law to assert certain possessory liens on the Debtors' raw materials, goods, or equipment in their possession in an attempt to secure payment of their prepetition claim.  As a result, the Debtors anticipate that certain of the Lien Claimants may assert liens, simply refuse to turn over goods in

17

their possession, or stop performing their ongoing obligations if they were not paid.  Even absent

a valid lien, to the extent certain Lien Claimants, or other third-parties have possession of the

Debtors' inbound inventory, outbound products, or other materials, mere possession or retention

could severely disrupt the Debtors' operations.

44.     According to section 362(b)(3) of the Bankruptcy Code, the act of perfecting

statutory liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly

excluded from the protections afforded by the automatic stay.  11 U.S.C. § 362(b)(3).  As a result,

certain Specified Trade Claimants may be able to perfect liens against the Debtors' assets

notwithstanding the automatic stay.

45.     If certain Specified Trade Claimants assert liens against the assets of the Debtors',

the results would be detrimental to the Debtors and their creditors.  Accordingly, the Debtors

submit that the payment of the Lien Claims is critical to protect the Debtors' assets and preserve

the value of the Debtors' estates.

46.     Further, paying the Lien Claimants should not impair unsecured creditor recoveries

in these chapter 11 cases.  In instances where the amount owed to the Lien Claimant is less than

the value of the goods that could be held to secure a Lien Claim, such parties may be fully-secured

creditors of the Debtors' estates.  In such instances, payment now only provides such parties with

what they might be entitled to receive under a chapter 11 plan, only without any interest costs that

might otherwise accrue during the chapter 11 cases.  Conversely, all creditors will benefit from

the seamless transition of the Debtors' operations into bankruptcy.

**II.     The Court Should Authorize the Payment of Claims Entitled to Priority Pursuant to Section 503(b)(9) of the Bankruptcy Code.**

47.     Section 503(b)(9) of the Bankruptcy Code provides administrative priority for the

"value of any goods received by the debtor within 20 days before the date of commencement of a

case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). These claims must be paid in full for the Debtors to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A). Consequently, payment of such claims now only provides such parties with what they would be entitled to receive under a chapter 11 plan. Additionally, all creditors will benefit from the seamless transition of the Debtors' operations into bankruptcy.

48.     The Bankruptcy Code does not prohibit a debtor from paying such claims prior to confirmation. As these claims are administrative claims incurred in the ordinary course of business, the Debtors believe they may pay such claims in accordance with their business judgment pursuant to section 363(c)(1) of the Bankruptcy Code. *See, e.g., In re Dura Auto. Sys. Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Oct. 31, 2006) Hr'g Tr. 49:21-23 ("I think arguably the debtor could pay its 503(b)(9) claimants without court approval."). The timing of such payments also lies squarely within the Court's discretion. *See In re Global Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of the payment of that administrative expense claim is left to the discretion of the Court").

49.     The Debtors' ongoing ability to obtain goods as provided herein is necessary to preserve the value of their estates. Absent payment of the 503(b)(9) Claims at the outset of these chapter 11 cases—which merely accelerates the timing of payment and not the ultimate treatment of such claims—the Debtors could be denied access to the equipment and goods necessary to maintain the Debtors' business operations. Failure to honor these claims in the ordinary course of business may also cause the Debtors' vendor base to withhold support for the Debtors during the chapter 11 process. Such vendors could accelerate or eliminate favorable trade terms. Needless

to say, such costs and distractions could impair the Debtors' ability to stabilize their operations at this critical juncture to the detriment of all stakeholders.

50.     Accordingly, the Court should authorize the Debtors to pay the 503(b)(9) Claims as they become due and payable and to continue paying the 503(b)(9) Claims in the ordinary course of business.

**III.    The Court Should Confirm that Outstanding Purchase Orders Are Administrative Expense Priority Claims and that Payment of Such Claims Is Authorized.**

51.     Pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of goods and services, including goods ordered prepetition, are in fact, administrative expense priority claims because they benefit the estate postpetition.  *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses); *see also In re John Clay & Co.*, 43 B.R. 797, 809–10 (Bankr. D. Utah 1984) (holding that goods ordered prepetition but delivered postpetition are entitled to administrative priority).  Thus, the granting of the relief sought herein with respect to the Outstanding Purchase Orders will not afford such claimants any greater priority than they otherwise would have if the relief requested herein were not granted, and will not prejudice any other party in interest.

52.     Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Purchase Orders to provide certain suppliers with assurance of such administrative priority.  The attendant disruption to the continuous and timely flow of critical raw materials and other goods to the Debtors would potentially force the Debtors to halt operations and production, disrupt the Debtors' businesses, and lead to a loss of revenue, all to the detriment of the Debtors and their creditors.  Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Purchase

Orders and should authorize the Debtors to pay the Outstanding Purchase Orders in the ordinary course of business.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

53.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and debtor in possession financing.  Under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein.  The Debtors do not believe that checks or wire transfer requests, other than those relating to authorized payments, will be honored inadvertently.  The Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### Emergency Consideration

54.     Pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days of the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm" and Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion.  The Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases could severely disrupt the Debtors' operations at this critical juncture and jeopardize the Debtors' restructuring.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

55.      To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

56.      Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any

particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### <u>Notice</u>

57.     The Debtors will provide notice of this Motion to:  (a) the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition revolving credit facility and counsel thereto; (d) the indenture trustee for the Debtors' 8.00% secured second priority notes and counsel thereto; (e) the indenture trustee for the Debtors' 9.125% unsecured notes and counsel thereto; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for states in which the Debtors conduct business; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*.]

WHEREFORE, WHEREFORE, the Debtors request entry of the Interim Order and Final Order granting the relief requested herein and such other relief the Court deems appropriate under the circumstances.

Dated: April 12, 2022
Houston, Texas

**WINSTON & STRAWN LLP**

/s/ *Katherine A. Preston*
Katherine A. Preston (TX Bar No. 24088255)
800 Capitol St., Suite 2400
Houston, Texas 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
Email: kpreston@winston.com

and

Timothy W. Walsh (*pro hac vice* pending)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
E-mail: twwalsh@winston.com

and

Daniel J. McGuire (*pro hac vice* pending)
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-3733
Facsimile: (312) 558-5700
Email: dmcguire@winston.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## **Certificate of Accuracy**

      I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

*/s/ Katherine A. Preston*
Katherine A. Preston

## **Certificate of Service**

      I certify that on April 12, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Katherine A. Preston*
Katherine A. Preston

**Exhibit A**

**Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | ) Case No. 22-30987 (MI) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |
| | ) **Re: Docket No. _____** |

**INTERIM ORDER (I) AUTHORIZING THE PAYMENT OF CRITICAL VENDOR
CLAIMS, FOREIGN CLAIMS, LIEN CLAIMS, AND 503(B)(9) CLAIMS, (II)
CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING
PURCHASE ORDERS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing,

but not directing, the Debtors to pay in the ordinary course of business certain prepetition and

postpetition amounts owing on account of (i) Critical Vendor Claims, (ii) Foreign Claims, (iii)

Lien Claims, and (iv) 503(b)(9) Claims; (b) confirming the administrative expense priority of

Outstanding Purchase Orders and authorizing the payment of such obligations in the ordinary

course of business; (c) granting related relief, and (d) scheduling a final hearing to consider

approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First

Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334;

and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and that

this Court may enter a final order consistent with Article III of the United States Constitution; and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are:  ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115).  The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

[2] Capitalized terms used but not immediately defined herein have the meanings given to such terms in the Motion.

this Court having found that venue of this proceeding and the Motion in this district is permissible pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2022, at ___:___ __.m., prevailing Central Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time, on _____, 2022.  If no objection to entry of the Final Order on the Motion is received timely, this Court may enter such Final Order without need for the Final Hearing.

3.      The Debtors are authorized, but not directed, in their reasonable discretion, to pay prepetition Specified Trade Claims on an interim basis as they become due and payable in the ordinary course of business and consistent with their prepetition practices in an amount not to exceed $998,066, and to continue paying the postpetition Specified Trade Claims in the ordinary course of business.

4.      Prior to entry of the Final Order, the Debtors shall not pay any obligations under this Interim Order unless they are due or are deemed necessary to be paid in the Debtors'

reasonable business judgment to ensure ongoing provision of goods or services or otherwise to avoid an adverse effect on operations.

5.      As a condition to receiving payment on account of the Specified Trade Claims, the Debtors are authorized to condition payment of Specified Trade Claims upon each Specified Trade Claimant's written agreement (substantially in the form attached to this Interim Order as **Exhibit 1** (a "<u>Trade Agreement</u>")) to (a) continue—or recommence—providing goods and services to the Debtors in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtors as those in place during the 12 months prior to the Petition Date, or as otherwise agreed by the Debtors in their reasonable business judgment (the "<u>Customary Trade Terms</u>"), and (b) agree that such Specified Trade Claimants shall not cancel any contract or agreement pursuant to which they provide goods or services to the Debtors.  The Debtors reserve the right to require additional favorable trade terms with any Specified Trade Claimant as a condition to payment of any Specified Trade Claim.  Any party that accepts payment from the Debtors on account of a Specified Trade Claim shall be provided with a copy of this Interim Order and are deemed to have agreed to the terms and provisions of this Interim Order.

6.      The form of Trade Agreement, substantially in the form attached hereto as **Exhibit 1**, is approved in its entirety, and the Debtors are authorized, but not directed, to negotiate, modify, or amend the Trade Agreement in their reasonable business judgment.

7.      The Debtors are authorized, but not directed, to pay Specified Trade Claims, in the event that no Trade Agreement has been executed if the Debtors determine, in their business judgment that a formal Trade Agreement is unnecessary to ensure a vendor's continued performance on Customary Trade Terms and such vendor acknowledges (in writing, which may

be email) that it will continue providing services as agreed with the Debtors or otherwise be subject to the provisions of the Interim Order and the Final Order with respect to such payment.

8.      If any party accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as the Customary Trade Terms (regardless of whether a Trade Agreement has been executed) then:  (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.  The Debtors shall include a copy of this Interim Order with the first payment made to any party under this Interim Order.

9.      All undisputed obligations related to the Outstanding Purchase Orders are granted administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

10.     The Debtors are authorized to pay all undisputed amounts related to the Outstanding Purchase Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

11.     The Debtors shall not make any payment pursuant to this Interim Order to an insider (as such term is defined in section 101(31) of the Bankruptcy Code), or an affiliate of an insider,

of the Debtors.

12.     The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid pursuant to this Interim Order, including the following information: (a) the name of the payee, (b) the nature, date and amount of the payment, (c) the category or type of service provided in connection with such payment; and (d) the Debtor or Debtors that made the payment. The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, the ad hoc group of secured lenders, and any statutory committee appointed in these chapter 11 cases every 30 on the 15th of each month (or if such day is not a business day, on the next business day thereafter) beginning in May 2022, which matrix or schedule shall include information for the prior month.  The Debtors shall not be required to file or publish such matrix/schedule pursuant to this Interim Order, *provided* that the rights of the U.S. Trustee and any statutory committee appointed in these chapter 11 cases to object to entry of the Final Order on the basis that publication pursuant to the Final Order should be required are expressly preserved.

13.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

14.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's

right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

15.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

16.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

17.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

18.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

19.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim

Order are immediately effective and enforceable upon its entry.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Interim Order in accordance with the Motion.

21.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Interim Order.

Houston, Texas
Dated: _____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Form of Trade Agreement**

**THIS TRADE AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN. ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN. THE INFORMATION IN THIS TRADE AGREEMENT IS SUBJECT TO CHANGE. THIS TRADE AGREEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

<u>**TRADE AGREEMENT**</u>

**[ION Geophysical Corporation]** (the "<u>Company</u>"), on the one hand, and **[VENDOR]** ("<u>Vendor</u>"), on the other hand, hereby enter into the following trade agreement (this "<u>Trade Agreement</u>") dated as of this **[DATE]**.

**Recitals**

WHEREAS on [_____], 2022 (the "<u>Petition Date</u>"), ION Geophysical Corporation and certain of its subsidiaries (collectively, the "<u>Debtors</u>")[1] each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

WHEREAS on [_____], 2022, the Court entered its [*Final / Interim*]*Order (I) Authorizing the Payment of Critical Vendor Claims, Foreign Claims, Lien Claims, and 503(b)(9) Claims, (II) Confirming Administrative Expense Priority of Outstanding Purchase Orders, and (III) Granting Related Relief* (the "<u>Trade Claims [Final / Interim] Order</u>") [Docket No. [__]] authorizing the Debtors on a [final / interim] basis, under certain conditions, to pay the prepetition claims of certain vendors, including Vendor, subject to the terms and conditions set forth therein.

WHEREAS prior to the Petition Date, Vendor delivered goods or provided services to the Company, and the Company paid Vendor for such goods or services, according to Customary Trade Terms (as defined herein).

---

[1] The Debtors in the chapter 11 cases are:  ION Geophysical Corporation; I/O Marine Systems, Inc.; ION Exploration Products (U.S.A.), Inc.; and GX Technology Corporation.

WHEREAS the Company and Vendor (each a "<u>Party</u>," and collectively, the "<u>Parties</u>") agree to the following terms as a condition of payment on account of certain prepetition claims Vendor may hold against the Company.

<strong>Agreement</strong>

A.      <u>Recitals</u>.  The foregoing recitals are incorporated herein by reference as if set forth at length herein.

B.      <u>Vendor Payment</u>.  Vendor represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to Vendor is $[__] (the "<u>Agreed Vendor Claim</u>").  Following execution of this Trade Agreement, the Company shall, in full and final satisfaction of the Agreed Vendor Claim:

1.      Pay Vendor $**[__]** in full satisfaction of its Agreed Vendor Claim (the "<u>Vendor Payment</u>"), as such invoices become due and payable; or

2.      Pay the Vendor Payment on the date which is the later of 30 days after the effective date of a chapter 11 plan and when the invoices become payable in ordinary course.

C.      <u>Agreement to Supply</u>.

1.      Vendor shall supply goods to the Company for the duration of the Debtors' chapter 11 cases based on the following "<u>Customary Trade Terms</u>": the trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts,timing of payments, allowances, product mix, availability, and other programs) in place in the 12 months prior to the Petition Date, or are otherwise acceptable to the Company in light of customary industry practices, except for any partial payments or other payments (or assurances) the Company made with respect to any unfinished product. "Duration of the Debtors' chapter 11 cases" means until the earlier of: (i) the effective date of a chapter 11 plan in the Company's chapter 11 cases; (ii) the closing of a sale of all or a material portion of the Company's assets

2

pursuant to section 363 of the Bankruptcy Code resulting in a cessation of the Company's business operations; or (iii) the liquidation of the Company or conversion of the Debtor's chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

2.      Vendor shall continue all shipments of goods in the ordinary course and shall fill orders for goods requested by the Company in the ordinary course of business for the duration of the Debtors' chapter 11 cases pursuant to the Customary Trade Terms.

3.      The Vendor shall continue to honor any existing allowances, credits, contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

4.      The Vendor shall not be permitted to cancel any contract or agreement to which they provide goods or services to the Debtors.

5.      The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed-to in writing by the Parties.

D.      <u>Other Matters</u>.

1.      Vendor agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 cases on account of any outstanding administrative claims Vendor may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due.  Vendor agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect.

2.      Vendor will not separately seek payment from the Company on account of  any prepetition claim (including, without limitation, any reclamation claim or any claim

3

pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a plan confirmed in the Company's chapter 11 cases.

　　　　　3.　　　Vendor will not file or otherwise assert against the Company, its assets, or any other person or entity, including the Company's customers, or any of their respective assets or property(real or personal), any lien, regardless of the statute or other legal authority upon which the lien isasserted, related in any way to any remaining prepetition amounts allegedly owed to Vendor by the Company arising from prepetition agreements or transactions. Furthermore, if Vendor has taken steps to file or assert such a lien prior to entering into this Trade Agreement, Vendor will promptly take all necessary actions to remove such liens.

　　　　　E.　　　<u>Vendor Breach</u>.

　　　　　1.　　　In the event that Vendor fails to satisfy its undisputed obligations arising under this Trade Agreement (a *"*<u>Vendor Breach</u>"), upon written notice to Vendor, Vendor shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Vendor Payment or any portion of the Vendor Payment which cannot be recovered by the Company from the postpetition receivables then owing to Vendor from the Company.

　　　　　2.　　　In the event that the Company recovers the Vendor Payment pursuant to Section A(1) hereof or otherwise, the full Agreed Vendor Claim shall be reinstated as if the Vendor Payment had not been made.

　　　　　3.　　　Vendor agrees and acknowledges that irreparable damage would occur in the event of a Vendor Breach and remedies at law would not be adequate to compensate the Company. Accordingly, Vendor agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to an injunction or injunctions to prevent breaches

of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief, and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. Vendor hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies.

F.      Notice.

If to Vendor:

[●]

If to Company:

ION Geophysical Corporation
4203 Yoakum Blvd., Suite 100,
Houston, Texas 77006
Attention:      Mike Morrison
Email:  mike.morrison@iongeo.com

and

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Attention:    Daniel J. McGuire and Laura Krucks
Email:         dmcguire@winston.com; lkrucks@winston.com

G.      Representations and Acknowledgements.  The Parties agree, acknowledge, and represent that:

1.      the Parties have reviewed the terms and provisions of the Trade Claims Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Trade Claims Order;

2.      any payments made on account of the Agreed Vendor Claim shall be subject to the terms and conditions of the Trade Claims Order;

3.      if Vendor refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Trade Claims Order, the Bankruptcy Code, or applicable law; and

4.      in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in whichevent, no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from Vendor to the Company, until a ruling of the Court is obtained.

H.      <u>Confidentiality</u>.  Vendor agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Company pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "<u>Confidential Information</u>"); *provided*, *that*, if any party seeks to compel Vendor's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Vendor intends to disclose any or all of the Confidential Information, Vendor shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; *provided*, *further*, that if such remedy is not obtained, Vendor shall furnish only such information as Vendor is legally required to provide.

I.      <u>Miscellaneous</u>.

1.      The Parties hereby represent and warrant that: (a) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (b) the respective Parties have

full knowledge of, and have consented to, this Trade Agreement; and (c) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

2.      This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them.  This Trade Agreement may not be changed, modified, amended, or supplemented, except in a writing signedby both Parties. Moreover, Vendor agrees to vote all claims now or hereafter beneficially ownedby Vendor in favor of, and not take any direct or indirect action to oppose or impede confirmationof, any chapter 11 plan on a timely basis in accordance with the applicable procedures set forth inany related disclosure statement and accompanying solicitation materials, and timely return a duly-executed ballot to the Debtors in connection therewith, if such chapter 11 plan provides for a treatment of any Agreed Vendor Claim that is materially consistent with this Agreement.

3.      Signatures by facsimile or electronic signatures shall count as original signatures forall purposes.

4.      This Trade Agreement may be executed in counterparts, each of which shall be deemedto be an original, but all of which shall constitute one and the same agreement.

5.      The Parties hereby submit to the exclusive jurisdiction of the Court to resolve anydispute with respect to or arising from this Trade Agreement.

6.      This Trade Agreement shall be deemed to have been drafted jointly by the Parties, andany uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[Signature Page Follows]

7

AGREED AND ACCEPTED AS OF THE DATE SET FORTH ABOVE:

**[ION GEOPHYSICAL CORPORATION]**

By:
Title:

**[VENDOR]**

By:
Title:

**<u>EXHIBIT B</u>**

**Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | ) Case No. 22-30987 (MI) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

**FINAL ORDER (I) AUTHORIZING THE PAYMENT OF CRITICAL VENDOR
CLAIMS, FOREIGN CLAIMS, LIEN CLAIMS, AND 503(B)(9) CLAIMS, (II)
CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING
PURCHASE ORDERS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in Possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing, but not directing, the Debtors to pay in the ordinary course of business certain prepetition and postpetition amounts owing on account of (i) Critical Vendor Claims, (ii) Foreign Claims, (iii) Lien Claims, and (iv) 503(b)(9) Claims; (b) confirming the administrative expense priority of Outstanding Purchase Orders and authorizing the payment of such obligations in the ordinary course of business; and (c) granting certain related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are:  ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115).  The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

[2] Capitalized terms used but not immediately defined have the meanings given to them elsewhere in the Motion.

district is permissible pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, in their reasonable discretion, to pay prepetition Specified Trade Claims on a final basis as they become due and payable in the ordinary course of business and to continue paying the postpetition Specified Trade Claims in the ordinary course of business.

3.      As a condition to receiving payment on account of the Specified Trade Claims, the Debtors are authorized to condition payment of Specified Trade Claims upon each Specified Trade Claimant's written agreement (substantially in the form attached to this Final Order as **Exhibit 1** (a "Trade Agreement")) to (a) continue—or recommence—providing goods and services to the Debtors in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtors as those in place during the 12 months prior to the Petition Date, or as otherwise agreed by the Debtors in their reasonable business judgment (the "Customary Trade Terms"), and (b) agree that such Specified Trade

Claimants shall not cancel any contract or agreement pursuant to which they provide goods or services to the Debtors.  The Debtors reserve the right to require additional favorable trade terms with any Specified Trade Claimant as a condition to payment of any Specified Trade Claim.  Any party that accepts payment from the Debtors on account of a Specified Trade Claim shall be provided with a copy of this Final Order and are deemed to have agreed to the terms and provisions of this Final Order.

4.     The form of Trade Agreement, substantially in the form attached hereto as **Exhibit 1**, is approved in its entirety, and the Debtors are authorized, but not directed, to negotiate, modify, or amend the Trade Agreement in their reasonable business judgment.

5.     The Debtors are authorized, but not directed, to pay Specified Trade Claims, in the event that no Trade Agreement has been executed if the Debtors determine, in their business judgment that a formal Trade Agreement is unnecessary to ensure a vendor's continued performance on Customary Trade Terms.

6.     If any party accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as the Customary Trade Terms (regardless of whether a Trade Agreement has been executed) then:  (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to

repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.  The Debtors shall include a copy of this Final Order with the first payment made to any party under this Final Order.

7.    All undisputed obligations related to the Outstanding Purchase Orders are granted administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

8.    The Debtors are authorized to pay all undisputed amounts related to the Outstanding Purchase Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

9.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

10.    Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the

validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

11.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

12.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

13.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

14.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

15.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Houston, Texas
Dated: _____, 2022


_____
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Form of Trade Agreement**

**THIS TRADE AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN. ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN. THE INFORMATION IN THIS TRADE AGREEMENT IS SUBJECT TO CHANGE. THIS TRADE AGREEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## TRADE AGREEMENT

**[ION Geophysical Corporation]** (the "Company"), on the one hand, and **[VENDOR]** ("Vendor"), on the other hand, hereby enter into the following trade agreement (this "Trade Agreement") dated as of this **[DATE]**.

### Recitals

WHEREAS on [_____], 2022 (the "Petition Date"), ION Geophysical Corporation and certain of its subsidiaries (collectively, the "Debtors")[1] each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

WHEREAS on [_____], 2022, the Court entered its [*Final / Interim*]*Order (I) Authorizing the Payment of Critical Vendor Claims, Foreign Claims, Lien Claims, and 503(b)(9) Claims, (II) Confirming Administrative Expense Priority of Outstanding Purchase Orders, and (III) Granting Related Relief* (the "Trade Claims [Final / Interim] Order") [Docket No. [__]] authorizing the Debtors on a [final / interim] basis, under certain conditions, to pay the prepetition claims of certain vendors, including Vendor, subject to the terms and conditions set forth therein.

WHEREAS prior to the Petition Date, Vendor delivered goods or provided services to the Company, and the Company paid Vendor for such goods or services, according to Customary Trade Terms (as defined herein).

---

[1] The Debtors in the chapter 11 cases are: ION Geophysical Corporation; I/O Marine Systems, Inc.; ION Exploration Products (U.S.A.), Inc.; and GX Technology Corporation.

WHEREAS the Company and Vendor (each a "<u>Party</u>," and collectively, the "<u>Parties</u>") agree to the following terms as a condition of payment on account of certain prepetition claims Vendor may hold against the Company.

<b>Agreement</b>

A.      <u>Recitals</u>.  The foregoing recitals are incorporated herein by reference as if set forth at length herein.

B.      <u>Vendor Payment</u>.  Vendor represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to Vendor is $[__] (the "<u>Agreed Vendor Claim</u>").  Following execution of this Trade Agreement, the Company shall, in full and final satisfaction of the Agreed Vendor Claim:

1.      Pay Vendor $**[__]** in full satisfaction of its Agreed Vendor Claim (the "<u>Vendor Payment</u>"), as such invoices become due and payable; or

2.      Pay the Vendor Payment on the date which is the later of 30 days after the effective date of a chapter 11 plan and when the invoices become payable in ordinary course.

C.      <u>Agreement to Supply</u>.

1.      Vendor shall supply goods to the Company for the duration of the Debtors' chapter 11 cases based on the following "<u>Customary Trade Terms</u>": the trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts,timing of payments, allowances, product mix, availability, and other programs) in place in the 12 months prior to the Petition Date, or are otherwise acceptable to the Company in light of customary industry practices, except for any partial payments or other payments (or assurances) the Company made with respect to any unfinished product. "Duration of the Debtors' chapter 11 cases" means until the earlier of: (i) the effective date of a chapter 11 plan in the Company's chapter 11 cases; (ii) the closing of a sale of all or a material portion of the Company's assets

2

pursuant to section 363 of the Bankruptcy Code resulting in a cessation of the Company's business operations; or (iii) the liquidation of the Company or conversion of the Debtor's chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

2.     Vendor shall continue all shipments of goods in the ordinary course and shall fill orders for goods requested by the Company in the ordinary course of business for the duration of the Debtors' chapter 11 cases pursuant to the Customary Trade Terms.

3.     The Vendor shall continue to honor any existing allowances, credits, contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

4.     The Vendor shall not be permitted to cancel any contract or agreement to which they provide goods or services to the Debtors.

5.     The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed-to in writing by the Parties.

D.     <u>Other Matters</u>.

1.     Vendor agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 cases on account of any outstanding administrative claims Vendor may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. Vendor agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect.

2.     Vendor will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim

pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a plan confirmed in the Company's chapter 11 cases.

3.      Vendor will not file or otherwise assert against the Company, its assets, or any other person or entity, including the Company's customers, or any of their respective assets or property(real or personal), any lien, regardless of the statute or other legal authority upon which the lien isasserted, related in any way to any remaining prepetition amounts allegedly owed to Vendor by the Company arising from prepetition agreements or transactions. Furthermore, if Vendor has taken steps to file or assert such a lien prior to entering into this Trade Agreement, Vendor will promptly take all necessary actions to remove such liens.

E.      <u>Vendor Breach</u>.

1.      In the event that Vendor fails to satisfy its undisputed obligations arising under this Trade Agreement (a *"*<u>Vendor Breach</u>"), upon written notice to Vendor, Vendor shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Vendor Payment or any portion of the Vendor Payment which cannot be recovered by the Company from the postpetition receivables then owing to Vendor from the Company.

2.      In the event that the Company recovers the Vendor Payment pursuant to Section A(1) hereof or otherwise, the full Agreed Vendor Claim shall be reinstated as if the Vendor Payment had not been made.

3.      Vendor agrees and acknowledges that irreparable damage would occur in the event of a Vendor Breach and remedies at law would not be adequate to compensate the Company. Accordingly, Vendor agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to an injunction or injunctions to prevent breaches

of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief, and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. Vendor hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies.

     F.    <u>Notice</u>.

    If to Vendor:

    [●]

    If to Company:

    ION Geophysical Corporation
    4203 Yoakum Blvd., Suite 100,
    Houston, Texas 77006
    Attention:    Mike Morrison
    Email:  mike.morrison@iongeo.com

    and

    Winston & Strawn LLP
    35 W. Wacker Drive
    Chicago, Illinois 60601
    Attention:    Daniel J. McGuire and Laura Krucks
    Email:    dmcguire@winston.com; lkrucks@winston.com

     G.    <u>Representations and Acknowledgements</u>.  The Parties agree, acknowledge, and represent that:

    1.    the Parties have reviewed the terms and provisions of the Trade Claims Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Trade Claims Order;

2.       any payments made on account of the Agreed Vendor Claim shall be subject to the terms and conditions of the Trade Claims Order;

3.       if Vendor refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Trade Claims Order, the Bankruptcy Code, or applicable law; and

4.       in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in whichevent, no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from Vendor to the Company, until a ruling of the Court is obtained.

H.       <u>Confidentiality</u>.  Vendor agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Company pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "<u>Confidential Information</u>"); *provided*, *that*, if any party seeks to compel Vendor's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Vendor intends to disclose any or all of the Confidential Information, Vendor shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; *provided*, *further*, that if such remedy is not obtained, Vendor shall furnish only such information as Vendor is legally required to provide.

I.       <u>Miscellaneous</u>.

1.       The Parties hereby represent and warrant that: (a) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (b) the respective Parties have

full knowledge of, and have consented to, this Trade Agreement; and (c) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

2.      This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them.  This Trade Agreement may not be changed, modified, amended, or supplemented, except in a writing signedby both Parties. Moreover, Vendor agrees to vote all claims now or hereafter beneficially ownedby Vendor in favor of, and not take any direct or indirect action to oppose or impede confirmationof, any chapter 11 plan on a timely basis in accordance with the applicable procedures set forth inany related disclosure statement and accompanying solicitation materials, and timely return a duly-executed ballot to the Debtors in connection therewith, if such chapter 11 plan provides for a treatment of any Agreed Vendor Claim that is materially consistent with this Agreement.

3.      Signatures by facsimile or electronic signatures shall count as original signatures forall purposes.

4.      This Trade Agreement may be executed in counterparts, each of which shall be deemedto be an original, but all of which shall constitute one and the same agreement.

5.      The Parties hereby submit to the exclusive jurisdiction of the Court to resolve anydispute with respect to or arising from this Trade Agreement.

6.      This Trade Agreement shall be deemed to have been drafted jointly by the Parties, andany uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[Signature Page Follows]

7

AGREED AND ACCEPTED AS OF THE DATE SET FORTH ABOVE:

**[ION GEOPHYSICAL CORPORATION]**

By:
Title:

**[VENDOR]**

By:
Title: