## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | ) Case No. 22-30987 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) (Emergency Hearing Requested) |
| | ) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER APPROVING (I) (A) BIDDING PROCEDURES AND (B) ASSUMPTION AND ASSIGNMENT PROCEDURES; (II) SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; AND (III) <u>GRANTING RELATED RELIEF</u>**

> **Emergency relief has been requested. Relief is requested not later than April 26, 2022.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), respectfully represent as follows in support of this motion (the "<u>Motion</u>"):

### <u>Introduction</u>[2]

1.     The Debtors have commenced these chapter 11 cases to maximize the value of their assets, permit their business operations to continue as a going concern, and expeditiously distribute value to their stakeholders.   Prior to the commencement of these chapter 11 cases, ION

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are:  ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115).  The location of the Debtors' service address is:  2105 CityWest Blvd, Suite 100, Houston, Texas 77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration, the Mleczko Declaration, and the Bidding Procedures, each as defined herein.

Geophysical Corporation (together with its subsidiaries, collectively, "ION") initiated a process in September 2021 to evaluate a range of strategic alternatives to strengthen its financial position and maximize stakeholder value. To assist with this evaluation process, ION engaged Perella Weinberg Partners LP (together with its corporate advisory affiliates, "PWP").

2.       As part of this strategic alternatives process, PWP conducted a prepetition marketing process, targeting a broad range of potential counterparties, with a focus on strategic bidders interested in either bidding on ION as a whole or pursuing a transaction for its individual operating segments. As described in the *Declaration of Jakub Mleczko in Support of (I) Motion for Entry of Order Authorizing Debtors to Obtain Senior Secured Superpriority Postpetition Financing and Use Cash Collateral and (II) Motion for Entry of Order Approving Bid Procedures*, filed contemporaneously herewith in support of the Motion (the "Mleczko Declaration"), external outreach commenced the week of September 20, 2021, with an initial deadline of October 20, 2021 for non-binding indications of interest. In connection with this solicitation, ION and its advisors prepared, among other things, comprehensive marketing materials and an electronic data room to provide potential investors and bidders with adequate information upon which to make a proposal

3.       Of the 67 potential bidders canvassed, 19 parties executed non-disclosure agreements and were granted access to the electronic data room, which contains significant diligence and other confidential information regarding ION's businesses and assets. This process initially yielded one formal bid for ION's software business segment, one informal bid for ION's marine data assets, and one informal bid for ION's devices business segment. Based on the outcomes of the prepetition marketing process, discussions with key stakeholders, real-time business results, and available liquidity, ION, with guidance from the board of directors, ultimately

concluded that filing these chapter 11 cases was necessary to overcome its liquidity impediments.

4.       In parallel, the Debtors engaged in discussions with an ad hoc group (the "Ad Hoc Group") of holders of the Debtors' 8.00% senior secured second priority notes (the "Second Lien Notes") regarding potential alternative restructuring transactions. To facilitate continued discussions, on March 7, 2022, certain members of the Ad Hoc Group purchased all outstanding loans, advances, rights, duties, obligations, and commitments under the Debtors' prepetition first lien revolving credit facility (the "Revolving Credit Facility") from PNC Bank, National Association ("PNC"), as agent and lender thereunder.

5.       After months of extensive negotiations, the Debtors ultimately negotiated a comprehensive restructuring transaction with the Ad Hoc Group, pursuant to which such lenders have agreed to (a) provide the Debtors with a $2.5 million debtor-in-possession financing facility and continued access to cash collateral and (b) to the extent the prepetition claims under the Revolving Credit Facility are not paid in full in cash, convert their remaining claims into an exit facility and (ii) convert their claims under the Second Lien Notes into 97.75% of the equity of the reorganized company, subject to dilution on account of the management incentive plan, in each case as set forth in that certain Restructuring Support Agreement, dated as of April 12, 2022 (the "Restructuring Support Agreement") and the chapter 11 plan of reorganization filed contemporaneously herewith (the "Plan").

6.       The Plan includes a sale "toggle" feature allowing for potential sales to third parties supported by the lenders.  As noted herein, ION has three primary business lines:  software, marine data assets, and devices.  Accordingly, one or more of the business lines could be sold pursuant to the sale process with any remaining assets reorganized pursuant to the Plan.  In the event all assets are sold pursuant to the sale process, the Debtors would not move forward with the plan of

reorganization as it would no longer be necessary.  This process will allow the Debtors to market test the transaction contemplated by the RSA and the Plan and run a comprehensive marketing process to ensure the Debtors obtain the highest or otherwise best offer, or combination of offers, for the Debtors' assets.

7.      In support of ION's marketing and sale process (the "Marketing Process"), ION and its advisors have developed bidding and auction procedures for the orderly and value-maximizing marketing and sale of ION's businesses (the "Bidding Procedures").  The Bidding Procedures provide—with agreement of the non-debtor parties—that interested parties will have the opportunity to bid for the assets of the direct and indirect subsidiaries of the Debtors (each a "Non-Debtor" and, collectively, the "Non-Debtors") in addition to the assets of the Debtors (together with the Non-Debtors, collectively, the "Sellers").  The Bidding Procedures are designed to continue to promote a competitive and robust bidding process, and to generate the highest or otherwise best value for the Debtors' estates, while allowing ION to implement the proposed transaction on an expedited basis.

8.      The Bidding Procedures are also intended to provide the flexibility to solicit proposals, negotiate transactions, hold an auction, and proceed to consummate the proposed sale transactions for the highest or otherwise best offers for the assets (collectively, the "Sale Transactions"), all while protecting the due process rights of all interested parties and ensuring that there is a full and fair opportunity to review and consider proposed transactions.  The Debtors propose to establish the following key dates and deadlines for the sale process (subject to court approval and availability):

| Key Event | Deadline |
|---|---|
| Bidding Procedures Hearing | **April 26, 2022** |

| Key Event | Deadline |
|---|---|
| Deadline to Submit Bids | **June 2, 2022 at 5:00 p.m. (prevailing Central Time)** |
| Auction (if necessary) | **June 6, 2022 at 10:00 a.m.(prevailing Central Time)** |
| Deadline to File Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) | **As soon as possible following conclusion of Auction** |
| Deadline to file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties | **June 7, 2022** |
| Deadline to File Objections to the Sale Transactions (the "Sale Objection Deadline") | **June 8, 2022, at 4:00 p.m. (prevailing Central Time)** |
| Deadline to File Contract Objections (the "Contract Objection Deadline") | **June 13, 2022, at 4:00 p.m. (prevailing Central Time)** |
| Sale Hearing | **June 16, 2022 at [_:__] [a.m./p.m.] (prevailing Central Time)** |

9.      Given the exigencies of ION' business operations and financial condition, it is vital that ION consummate any sale transactions as soon as possible.   While ION believes it has conducted a comprehensive outreach in the market to prospective bidders, the Debtors would like to use the postpetition Marketing Process to allow additional or existing interested bidders to offer higher or better terms.  ION intends to continue its discussions with bidders who expressed interest in ION's businesses or assets.   At the same time, the Debtors and their creditors have the benefit of the Restructuring Support Agreement and Plan, which provides for an alternative reorganization transaction in the event certain assets are not sold pursuant to the sale process.  As such, the Debtors have determined that it is in their best interest to (i) continue marketing the Debtors' businesses and assets postpetition, (ii) continue the ongoing diligence with all interested parties, and (iii)

continue/complete the Marketing Process in chapter 11, to maximize value of the Debtors' estates. Accordingly, the Debtors request approval of a comprehensive set of procedures that will facilitate a potential sale transaction in a timely and efficient manner.

**Relief Requested**

10.     The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Bidding Procedures Order"):

    a.     authorizing and approving the Bidding Procedures substantially in the form attached to the Bidding Procedures Order as Exhibit 1;

    b.     authorizing the Debtors to designate one or more Stalking Horse Bidders (as defined below) and offer each such bidder certain Bid Protections (as defined below);

    c.     setting the deadline for potential bidders to submit a Qualified Bid (as defined below) (the "Bid Deadline"), authorizing and scheduling an auction (the "Auction"), and scheduling hearings with respect to the approval of a proposed sale transaction (each, an applicable "Sale Hearing"); (vi) authorizing and approving the form and manner of notice of the sale of the Debtors' business, the Auction, and the applicable Sale Hearing, substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "Sale Notice");

    d.     approving the procedures set forth in the Bidding Procedures Order (the "Assumption and Assignment Procedures") for the assumption and assignment of the Debtors' executory contracts and unexpired leases (the "Assigned Contracts") and the determination of the amount necessary to cure any monetary defaults under such Assigned Contracts (the "Cure Costs"); and

    e.     authorizing and approving the form and manner of notice to each relevant non-Debtor counterparty to an executory contract or unexpired lease (each, a "Contract Counterparty", and collectively, the "Contract Counterparties") regarding the Debtors' potential assumption and assignment of certain executory contracts and unexpired leases of the Debtors and of the Debtors' calculation of the Cure Costs, substantially in the form attached to the Bidding Procedures Order as Exhibit 3 (the "Cure Notice"); and

entry of separate orders (each, a "Sale Order") approving sales to the bidders who submit the highest or otherwise best offers for the assets.

## Jurisdiction and Venue

11.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.     The bases for the relief requested herein are sections 105, 363, 365, and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and rules 2002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules").

## Background

14.     ION is an innovative, asset light global technology company that delivers powerful data-driven decision-making offerings to offshore energy and maritime operations markets. Headquartered in Houston, Texas with regional offices around the world, ION operates through two key business segments—exploration and production technology and services and operations optimization.  Within the technology segment, ION creates digital data assets on a proprietary and multi-client basis and delivers services to help exploration and production companies improve decision-making, reduce risk, and maximize value.  The operations optimization segment develops mission-critical software and technology that enable operational control and optimization offshore. In that regard, ION provides survey design, command and control software systems and related services for marine towed seabed operations and develops intelligent hardware and devices to

optimize operations.

15.     On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Mike Morrison, Executive Vice President and Chief Financial Officer of ION Geophysical Corporation, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

**<u>Need for a Timely Sale Process</u>**

16.     The Debtors believe that the time periods set forth in the Bidding Procedures are reasonable and will provide all Potential Bidders with sufficient time and information to submit a bid for the Debtors' business and does not prejudice parties in interest.  In formulating the procedures and time periods set forth therein, ION balanced the need to provide adequate and appropriate notice to parties in interest and potential bidders with the need to quickly and efficiently run a sale process.  The Bidding Procedures are designed to encourage all prospective bidders to submit bids, including for all or part of ION's businesses or assets (each, a "Partial Bid"), at the outset of these chapter 11 cases to provide the highest or otherwise best available recoveries to the Debtors' stakeholders.

17.     The formulation of the Bidding Procedures was also informed by the Marketing Process.  Potential Bidders have had, and will, in accordance with the Bidding Procedures, continue to have access to comprehensive information prepared by ION and its advisors that is

compiled in an electronic data room. Upon the commencement of these chapter 11 cases, ION and its advisors will continue soliciting competing offers for the Debtors' businesses while a hearing to approve the Bidding Procedures is pending, to quickly and efficiently run a sale process.  In light of the foregoing, the Debtors have determined that pursuing the Bidding Procedures is in the best interests of the Debtors' estates, will establish whether and to what extent a market exists for the Debtors' business, and provides interested parties with sufficient opportunity to participate.

### Designation of Stalking Horse Bidders

18.     Based on the progress achieved thus far in the Marketing Process, and on the advice and counsel of ION's advisors, the Sellers have determined, in their reasonable business judgment, that having the flexibility to designate one or more Stalking Horse Bidders (as defined below) for assets of the Sellers, in whole or in part, will enhance the Sellers' ability to maximize the value of the assets and is in the best interests of their estates.

19.     Accordingly, the Debtors request authority to enter into purchase agreements (each such agreement, a "Stalking Horse Agreement") with one or more stalking horse bidders (a "Stalking Horse Bidder"), pursuant to which the Debtors would provide Stalking Horse Bidders with bid protections (subject to notice and an opportunity to object) where the Debtors determine, in the exercise of their reasonable business judgment, that setting a floor for such assets is in the best interests of their estates and their creditors (a "Stalking Horse Bid").  Specifically, the Debtors propose to offer any Stalking Horse Bidder a break-up fee, minimum overbid requirements, and bid increments (the " "Bid Protections"), subject to notice and an opportunity for parties in interest to object.  Upon the designation of one or more Stalking Horse Bidders, the Debtors shall file with the Court and serve on the parties that received this Motion a notice containing such information (each, a "Notice of Stalking Horse Bidder") no later than seven (7) calendar days before the Bid Deadline (as defined below), unless otherwise ordered by the Court.

20.     Parties in interest who wish to object to the Bid Protections will be afforded an opportunity to file with the Court an objection (each, a "Bid Protection Objection") within seven (7) calendar days after service of the Notice of Stalking Horse Bidder.  If a timely Bid Protection Objection is filed, the Bid Protections will not be approved until either the Bid Protection Objection is resolved or it has been approved upon further order of the Court.  Under the Bidding Procedures Order, in the absence of a Bid Protection Objection, the Debtors' entry into the applicable Stalking Horse Agreement and provision of the Bid Protections, including any break-up fee upon entry of an order by this Court.

21.     Given the urgency of the Debtors' need to maximize value for creditors through timely and efficient Sale Transactions, the ability to designate Stalking Horse Bidders and offer such bidders Bid Protections is justified and appropriate.

## Bidding Procedures[3]

### A.     Overview

22.     The Bidding Procedures are designed to promote a competitive and robust sale process for the Debtors' businesses and assets.  As noted above, the Bidding Procedures provide— with agreement of the non-debtor parties—that interested parties will have the opportunity to bid for the assets of the direct and indirect subsidiaries of the Non-Debtors in addition to the assets of the Debtors.  If approved, the Bidding Procedures will allow the Sellers to solicit and identify bids from potential bidders that constitute the highest or otherwise best offers (or any combination of Partial Bids comprising one Qualified Bid) for the Sellers' business on a timeline that is consistent with the Debtors' solicitation timeline.  The Debtors believe that the time periods set forth in the

---

[3] In the event of any inconsistencies between the provisions of the Bidding Procedures and the description of the Bidding Procedures in the Motion, the Bidding Procedures shall control.

Bidding Procedures are reasonable and appropriate under the circumstances.

23.     The Bidding Procedures are attached to the Bidding Procedures Order and therefore are not restated herein in their entirety.  Certain of the key terms of the Bidding Procedures are highlighted below.  The Sellers will have the ability to alter the Bidding Procedures based upon the exigencies of a given situation if the Sellers determine, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, that it is reasonable to do so.

a.  **Bid Deadline**. A Potential Bidder that desires to make a bid shall deliver electronic copies of its bid so as to be received no later than **June 2, 2022 at 5:00 p.m. (prevailing Central Time**) (the "Bid Deadline"); *provided, that,* the Sellers may, in consultation with the Consultation Parties, extend the Bid Deadline without further order of the Court subject to providing notice to all Potential Bidders and any Stalking Horse Bidders.

b.  **Proposed Agreement**. Each Bid must include an executed agreement (the "Proposed Agreement") for the acquisition of all or some of the businesses or assets of the Sellers, together with a redline comparing the Proposed Agreement to any applicable Stalking Horse Agreement or, if there is no applicable Stalking Horse Agreement, a form of asset purchase agreement, in each case distributed by the Sellers to Potential Bidders.

c.  **Form of Consideration**

1.  Purchase Price. Each Bid must clearly identify the purchase price to be paid (the "Purchase Price") and specify the aggregate amount of cash and other consideration being offered.

2.  Cash Requirements. Each Bid, including any Credit Bid (as defined below) must provide cash consideration sufficient to satisfy the payment of the Bid Protections, if any, in cash in full (the "Cash Consideration Amount") and, with respect to any Credit Bid, must also pay all obligations secured by senior liens on the applicable assets.

3.  Assets / Business Purchased. Each Bid must, in the Proposed Agreement, clearly identify the particular assets or business the Potential Bidder seeks to acquire from the Sellers. The Bid must clearly state the allocation of Purchase Price among the Debtor Assets and the Non-Debtor Assets, as applicable.

4.  Assumed Liabilities. Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the Bidder seeks to assume.

5.  Credit Bid.  Persons or entities holding a valid and perfected security interest in the Sellers' assets may submit a credit bid (a "Credit Bid") on such assets, to the extent permitted by applicable law or, with respect to any Debtor Assets, any Court order, and the documentation governing the Sellers' prepetition or postpetition secured credit facilities, and subject to any applicable limitations set forth in the Intercreditor Agreement.[4]

d.  **Good Faith Deposit**. A Good Faith Deposit must be deposited, prior to the Bid Deadline, with an escrow agent selected by the Sellers (the "Escrow Agent") pursuant to a customary and reasonable escrow agreement to be provided by the Sellers. To the extent a Qualified Bid is modified before, during, or after the Auction, the Sellers reserve the right to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the Purchase Price. If a Qualified Bidder is required to increase its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment.

e.  **Financing Information**.

1.  A Qualified Bid must include:

a.  Proof of Financial Ability to Perform. Each Bid must contain such financial and other information that allows the Sellers, in consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Sale Transactions including, without limitation, ability to post replacement letters of credit, as applicable, and, with respect to any Debtor Assets, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party. Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to, in the Sellers' reasonable business judgment, any unreasonable conditions), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Sellers or the Consultation

---

[4] "Intercreditor Agreement" means that certain Intercreditor Agreement, dated as of April 20, 2021, by and among PNC Bank, National Association, as First Lien Representative and First Lien Collateral Agent for the First Lien Secured Parties, UMB Bank, National Association, as Second Lien Representative and Second Lien Collateral Agent for the Second Lien Secured Parties, and acknowledged and agreed by ION Geophysical Corporation and the guarantors party thereto.

Parties necessary to demonstrate adequate assurance of future performance and to demonstrate that such Potential Bidder has the ability to consummate the Sale Transactions in a timely manner.

f.  **Designation of Stalking Horse Bidders**. In the event that the Sellers determine to designate one or more Stalking Horse Bidders for Debtor Assets, pursuant to the Bidding Procedures Order, the Debtors shall file with the Court and serve on the parties that received this Motion the Notice of Stalking Horse Bidder containing the material terms of the Stalking Horse Agreement, including a description of any Bid Protections.

g.  **Auction**. If the Sellers receive two or more Qualified Bids with respect to the applicable assets, the Sellers shall conduct the Auction on **June 6, 2022, beginning at 10:00 a.m. (prevailing Central Time) at (i) the offices of Winston & Strawn LLP, 800 Capital Street, Suite 2400, Houston, TX 77002, or (ii) virtually, pursuant to procedures to be announced to bidders, or such other later date as may be determined by the Sellers in consultation with the Consultation Parties and upon notice to all parties in interest**. Only Qualified Bidders will be eligible to participate at the Auction, subject to such limitations as the Sellers may impose in good faith and in consultation with the Consultation Parties. In addition, only the professionals and/or other representatives of the Qualified Bidders, the Sellers, and the Consultation Parties shall be permitted to attend and observe the Auction.

h.  **No Collusion**. Each Bid must include a statement that the Potential Bidder has not (i) engaged in any collusion with respect to the submission of any bid or the Auction, (ii) coordinated or joined with any other party on a bid or bids, or (iii) taken any other action to prevent a transparent and competitive auction process; *provided*, *that*, certain joint bids may be permitted in accordance with the Bidding Procedures.

i.  **Auction Not Necessary**. If no Qualified Bid (other than any Stalking Horse Bids) is received by the Qualified Bid Deadline, the Sellers will not conduct the Auction with respect to the assets subject to such Stalking Horse Bid, and, to the extent such Stalking Horse Bid includes Debtor Assets, shall file a notice with the Court indicating that no Auction will be held and the Stalking Horse Bidder will be named the Successful Bidder.

j.  **Reservation of Rights**. Except as otherwise set forth in the Bidding Procedures, the Sellers reserve the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law to modify these Bidding Procedures; waive terms and conditions set forth herein with respect to all Potential Bidders (as defined below); extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; *provided*, *that*, the Sellers shall not be authorized to make material modifications to these Bidding Procedures with respect to the Debtor Assets without further order of the Court.  The Sellers may provide reasonable

accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Sellers' businesses, in each case, to the extent not materially inconsistent with these Bidding Procedures and the Bidding Procedures Order, as applicable. All parties reserve their rights to seek Court relief with regard to the Auction, these Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline). In addition, the Debtors reserve their right to cancel the bidding procedures and the Auction with respect to any of the Debtors' assets if the Debtors determine, in their reasonable business judgment, in a manner consistent with their fiduciary duties, and in consultation with the Consultation Parties, to proceed with a private sale of such assets.

### Assumption and Assignment Procedures

24.      The Assumption and Assignment Procedures set forth in the Bidding Procedures Order will, among other things, govern the Debtors' provision of notice to all Contract Counterparties of Cure Costs in the event the Debtors decide to transfer the Assigned Contracts in connection with the Sale Transactions. On or before **June 7, 2022**, the Debtors will file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties, which will be specified in the Cure Notice.

25.      Objections, if any, to any proposed assumption or assignment of an Assigned Contract, including but not limited to any objection to the proposed Cure Cost, the provision of adequate assurance of future performance, an Assignment Objection (as defined in the Bidding Procedures Order), or a Rights Objection (as defined in the Bidding Procedures Order) (collectively, the "Contract Objections") must: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; and (v) be filed with the Court no later than the Contract Objection Deadline.

26.      If (a) the Debtors identify (i) additional contracts or leases to be assumed and

assigned to a Successful Bidder or (ii) modifications that need to be made to a proposed Cure Cost previously stated in the Cure Notice, or (b) a Successful Bidder designates any additional contracts or leases not previously included on the Cure Notice for assumption and assignment, the Debtors shall promptly file with the Court and serve by first class mail on the applicable Contract Counterparty a supplemental Cure Notice (each, a "<u>Supplemental Cure Notice</u>").  Any Contract Objection with respect to additional contracts or leases set forth in a Supplemental Cure or any modifications to a proposed Cure Cost set forth in a Supplemental Cure Notice must be filed on the later of (a) within seven (7) days of service of that Supplemental Cure Notice or (b) the Contract Objection Deadline.

27.     The Debtors request that any party failing to file a timely Contract Objection be deemed to consent to the treatment of its executory contract and/or unexpired lease under section 365 of the Bankruptcy Code and be forever barred from asserting any objection with respect to the treatment of such executory contract and/or unexpired lease.

<u><strong>Relief Requested Should Be Granted</strong></u>

**A.      Bidding Procedures are Fair and Reasonable**

28.     The Bidding Procedures are reasonable and appropriate and should be approved as proposed. Section 363 of the Bankruptcy Code permits the sale of all or some of a debtor's assets. Moreover, under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In essence, the Court may enter an order that safeguards the value of the debtor's estate if doing so is consistent with the Bankruptcy Code. *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code*."); In re Cooper Props. Liquidating Tr., Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (acknowledging that "the [b]ankruptcy

15

[c]ourt is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws").

29.     To that end, courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate, and, therefore, are appropriate in the context of bankruptcy sales. *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *see also Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures and their constructs may serve to "encourage bidding and [] maximize the value of the debtor's assets").

30.     The Bidding Procedures provide for an orderly, uniform, and competitive process through which interested parties may submit offers to purchase the Debtors' business. The Debtors, with the assistance of their advisors, have structured the Bidding Procedures to promote active bidding by interested parties and to reach the highest or otherwise best offers reasonably available for the Debtors' business. Additionally, the Bidding Procedures will allow the Debtors to conduct the Auction, if necessary, in a fair and transparent manner that will encourage participation by financially capable bidders with demonstrated ability to timely consummate the Sale Transactions. The Bidding Procedures provide the Debtors with an adequate opportunity to consider competing bids and to select the highest or otherwise best offers for the potential completion of the Sale Transactions.

31.     Moreover, an orderly and expeditious sale process is critical to preserve and realize the Debtors' value and maximize recoveries for the Debtors' stakeholders. In formulating the

16

Bidding Procedures, the Debtors balanced the need to provide adequate and appropriate notice to parties in interest and potential bidders with the need to quickly and efficiently run a sale process in parallel with a solicitation process. Accordingly, the Bidding Procedures should be approved.

**B.      Bid Protections are Reasonable and Appropriate**

32.      The Debtors also seek authority to provide standard bid protections to any Stalking Horse Bidder, subject to the Notice of  Stalking Horse Bidder and the opportunity for parties in interest to object as set forth above.  Bid protections have become commonplace in connection with sales under chapter 11. Moreover, approval of break-up fees as superpriority administrative expense claims as a form of bidder protections in connection with a sale has become a recognized practice in chapter 11 cases because it enables a debtor to ensure a sale to a contractually committed buyer at a price the debtor believes is fair, while providing the debtor with the potential of obtaining an enhanced recovery through an auction process.

33.      Further, the Debtors believe that having the ability to provide bid protections to any Stalking Horse Bidders is fair and reasonable under the circumstances. Courts have acknowledged that the approval of break-up fees and expenses in connection with substantial sales in bankruptcy is warranted to compensate an unsuccessful acquirer whose initial offer served as the basis and catalyst for higher or better offers. *See ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C)*, 650 F.3d 593, 597–98, 601–03 & n.9 (5th Cir. 2011); *In re JW Res., Inc.*, 536 B.R. 193, 195–96 (Bankr. E.D. Ky. 2015); *In re Hupp Indus., Inc.*, 140 B.R. 191, 195 (Bankr. N.D. Ohio 1992). As listed in *Hupp Industries*, courts consider various factors in determining whether to authorize break-up fees, such as:

- whether the fee requested correlates with a maximization of value to the debtor's estate;

- whether the transaction in the negotiated agreement is an arms'-length transaction between the debtor's estate and the negotiating acquirer;

- whether the principal secured creditors are supportive of the concession;

- whether the subject break-up fee constitutes a fair and reasonable percentage of the proposed purchase price;

- the existence of available safeguards beneficial to the debtor's estate; and

- whether there exists a substantial adverse impact upon unsecured creditors, where such creditors are in opposition to the break-up fee.

*Hupp Indus.*, 140 B.R. at 194–96.

34.     To warrant court approval of such break-up fees and expenses, the Fifth Circuit in *ASARCO* required a showing that the requested fees and expenses must be supported by a sound business justification. *ASARCO*, 650 F.3d at 602–03 (favoring business judgment standard governing use of assets outside of the ordinary course of business, rather than the standard for administrative expenses, in assessing propriety of fees and expenses incurred by bidders).

35.     Here, any Bid Protections would satisfy the foregoing tests because they are: (i) actual and necessary costs and expenses of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefit conferred upon the Debtors' estates by any Stalking Horse Bidder; (iii) reasonable and appropriate, in light of the commitments made and the efforts that will be expended, by any Stalking Horse Bidder; (iv) necessary to induce the Stalking Horse Bidders to continue to pursue any Sale Transaction and to continue to be bound by any purchase agreement; and (v) subject to all parties-in-interests' rights to object and be heard with respect to approval of the Bid Protections.

36.     First, the Bid Protections will only be provided after good faith, arms' length negotiations with the Sellers acting in the interest of their estates, consistent with their fiduciary duties. Parties in interest will be given notice and an opportunity to object if they do not believe that the Bid Protections are in the best interests of the Debtors' estates.

37.     Second, the Bid Protections promote more competitive bidding for the Sellers' business by inducing any Stalking Horse Bidder to hold their offer open as a minimum bid on which other bidders and the Sellers can rely. In doing so, any Stalking Horse Bidder is laying the foundation for the Sellers' sale process and serving as a catalyst for other Qualified Bids.

38.     Third, the Bid Protections are reasonable in view of the substantial benefits the Sellers would receive from having a Stalking Horse Bid serve as the floor for potential bidders, which would confirm that the Sellers receive the highest and best offer for their business. Moreover, any Stalking Horse Bid will provide the Sellers with an opportunity to move forward with a Sale Transaction that has a high likelihood of consummation with a contractually committed party at a fair and reasonable purchase price. Accordingly, the Bid Protections will not deter bidding, are reasonable, and maximize the value of the Debtors' estates.

39.     Indeed, the Bid Protections help enable the Sellers to secure an adequate floor price for the Sellers' businesses or assets, thereby ensuring that competing bids will be materially higher or otherwise better than the bids reflected in any Stalking Horse Agreement, providing a clear benefit to the Debtors' estates. Moreover, it is unlikely that any Stalking Horse Bidder would agree to act as stalking horse bidder without being granted Bid Protections. Without the ability to provide Bid Protections, the Sellers might lose the opportunity to obtain the highest and best offer for the Sellers' businesses or assets and would certainly lose the downside protection that are afforded by the existence of the Stalking Horse Bidders.

40.     Further, any Bid Protections should be afforded superpriority administrative expense status pursuant to section 364(c)(1) of the Bankruptcy Code. Section 364(c)(1) states:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt— (1) with priority over any or all

> administrative expenses of the kind specified in section 503(b) or
> 507(b) of this title.

11 U.S.C. 364(c)(1). Section 101(12) further defines "debt" to mean "liability on a claim" and section 101(5) defines "claim" to mean any "right to payment," including a contingent right of payment. 11 U.S.C. 101(5), (12). Nothing in section 364(c)(1) or the foregoing definitions limits superiority status to funded debt or suggests that a contingent claim for expense reimbursement cannot be a superpriority administrative expense claim. *See* Hr'g Tr. at 105:5-18, *In re Exide Holdings, Inc.*, No. 20-11157 (CSS) (Bankr. D. Del. June 18, 2020) (Court: "[I]f the trustee is unable to obtain unsecured credit allowable under Section 503(b)(1) of this title as an admin expense, the court, after noticing and a hearing, may authorize the obtaining of credit or the incurring of debt with priority over...all admin expenses. By entering into this transaction, the debtors are agreeing to pay an amount of money in the future to the Stalking Horse Bidders in the event certain circumstances don't occur. So by definition they are obtaining credit[.]"); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 25, 2019) (ECF No. 177) (explaining the statutory basis in the Bankruptcy Code for affording superpriority status to bid protections).

41.     For all of the foregoing reasons, the Debtors believe that having the ability to grant Bid Protections will maximize the value realized for the benefit of the Debtors' estates, their creditors, and other parties-in-interest.

### C.     Assumption and Assignment of Assigned Contracts Should be Approved

42.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The Debtors' decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. *See, e.g., Richmond*

*Leasing Co. v. Cap. Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (applying a business judgment standard to debtor's determination to assume an unexpired lease); *COR Route 5 Co. v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 383 (2d Cir. 2008) (explaining that the business judgment test "rather obviously presupposes that the estate will assume a contract only where doing so will be to its economic advantage"); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990) ("[T]he standard to be applied for approval of the assumption [of an executory contract] is the business judgment standard "). Accordingly, any assumption of the Assigned Contracts is an exercise of the Debtors' sound business judgment because the transfer of such contracts or leases is necessary to the Debtors' ability to obtain the best value for their businesses or assets. Moreover, the Assigned Contracts will be assumed and assigned in accordance with the Assumption and Assignment Procedures approved by the Court pursuant to the Bidding Procedures Order, which will be reviewed by the Debtors' key stakeholders. Accordingly, the Debtors' assumption of the Assigned Contracts is an exercise of sound business judgment and should be approved.

43.     Further, the consummation of the Sale Transactions, which will involve the assignment of the Assigned Contracts, will be contingent upon the Debtors' compliance with the applicable requirements of section 365 of the Bankruptcy Code. Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the Assigned Contracts must be cured or that adequate assurance be provided that such defaults will be promptly cured. As set forth above, the Debtors propose to file with the Court and serve on each Contract Counterparty, the Cure Notice indicating the Debtors' calculation of the Cure Cost for each such contract. The Contract Counterparties will have the opportunity to file objections to the proposed assumption and assignment of the Assigned Contracts to the Successful Bidder, including the proposed Cure

Costs.

44.     Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2)(B). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (finding that adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance"). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (noting that adequate assurance of future performance is present when the prospective assignee of a lease has financial resources and expressed a willingness to devote sufficient funding to the business to give it a strong likelihood of succeeding).

45.     As set forth in the Bidding Procedures, for a bid to qualify as a "Qualified Bid," a Potential Bidder must include with its bid information regarding its ability (and the ability of its designated assignee, if applicable) to perform under the Assigned Contracts (the "Adequate Assurance Information"). The Debtors will provide Adequate Assurance Information to all counterparties to the Assigned Contracts and counterparties will have an opportunity to object to such Adequate Assurance Information in advance of the applicable Sale Hearing.  Based on the

foregoing, the Debtors' assumption and assignment of the Assigned Contracts satisfy the requirements under section 365 of the Bankruptcy Code and should be approved.

46.     In addition, to facilitate the assumption and assignment of the Assigned Contracts, the Debtors further request that the Court find that all anti-assignment provisions in the Assigned Contracts, whether such provisions expressly prohibit or have the effect of restricting or limiting assignment of such contract or lease, to be unenforceable under section 365(f) of the Bankruptcy Code.[5]

47.     The Debtors believe that the Assumption and Assignment Procedures are fair and reasonable, provide sufficient notice, and provide certainty to all parties-in-interest regarding their obligations and rights in respect thereof. Accordingly, the Debtors request that the Court approve the Assumption and Assignment Procedures.

**D.     Sale of the Debtors' Businesses and Assets**

*I.     The Sale Transactions Should be Approved as an Exercise of the Debtors'
        Sound Business Judgment*

48.     Section 363(b) of the Bankruptcy Code provides that a debtor may sell property of the estate outside the ordinary course of business after notice and a hearing. Although section 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts have found that a debtor's sale or use of assets outside the ordinary course of business should be approved if the debtor can demonstrate "some articulated

---

[5] Section 365(f)(1) provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease[.]" 11 U.S.C. § 365(f)(1). Section 365(f)(3) further provides that, "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3).

business justification," as established by the Second Circuit in *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983), which decision has been adopted in this circuit. *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also ASARCO*, 650 F.3d at 601; *In re Cowin*, No. 13-30984, 2014 WL 1168714, at *38 (Bankr. S.D. Tex. Mar. 21, 2014); *West v. Flores (In re St. Marie Clinic PA)*, No. 10-70802, 2013 WL 5221055, at *9 (Bankr. S.D. Tex. Sept. 17, 2013); *In re Particle Drilling Techs., Inc.*, No. 09-33744, 2009 WL 2382030, at *2 (Bankr. S.D. Tex. July 29, 2009); *In re San Jacinto Glass Indus., Inc.*, 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988).

49.     Once the Debtors articulate a valid business justification, "the business judgment rule . . . 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995); *see also Integrated Res.*, 147 B.R. at 656; *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[A] presumption of reasonableness attaches to a debtor's management decisions.").

50.     The Debtors have a sound business justification for selling the Debtors' businesses and assets pursuant to a competitive-bidding process consistent with the Bidding Procedures. Based upon an analysis of the Debtors' ongoing business, the Debtors' concluded that a sale of the Debtors' businesses and assets pursuant to a competitive-bidding process would likely be the best way to maximize recoveries for creditors in connection with the Debtors' chapter 11 cases.

51.    The Debtors submit that a Successful Bid resulting from the Bidding Procedures will constitute the highest or best offer for the Debtors' applicable business or assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. As such, the Debtors' determination to sell their businesses and assets pursuant to a competitive-bidding process as provided for in the Bidding Procedures is a valid and sound exercise of the Debtors' business judgment. The Debtors believe that they have proposed a fair process for obtaining the highest and best offer and sale of their businesses and assets for the benefit of the Debtors' estates and their creditors. The fairness and reasonableness of the consideration to be received by the Debtors will be demonstrated by a "market check" through the process outlined in the Bidding Procedures.

II.    *Adequate and Reasonable Notice of the Sale Transactions Will Be Provided*

52.    As set forth above, the Sale Notice (a) informs interested parties of the deadlines for objecting to the applicable Sale Transaction, and (b) otherwise includes all information relevant to parties interested in, or affected by, the applicable Sale Transaction. Significantly, the form and manner of the Sale Notice will have been approved by this Court pursuant to the Bidding Procedures Order, after notice and a hearing, before it is served and, as such, the Debtors are confident that the Sale Notice will be properly vetted by the time of service thereof.

III.    *The Sale Transactions Should Be Approved "Free and Clear" Under Section 363(f) of the Bankruptcy Code*

53.    Section 363(f) of the Bankruptcy Code permits the Debtors to sell assets free and clear of all liens, claims, interests, charges, and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets). As section 363(f) is stated in the disjunctive, when proceeding pursuant to section 363(f), it is only necessary to meet one of the five conditions of

section 363(f). *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied."). The Debtors believe that they will be able to demonstrate at the applicable Sale Hearing that they have satisfied one or more of these conditions.

54.     Additionally, the Court also may authorize the sale of a debtor's assets free and clear of any liens pursuant to section 105 of the Bankruptcy Code, even if section 363(f) did not apply. *See In re Ditech Holding Corp.*, 606 B.R. 544, 591 (Bankr. S.D.N.Y. 2019) ("[P]lan sales can be free and clear of claims without invoking section 363(f)."); *In re Trans World Airlines, Inc., No. 01–0056 (PJW)*, 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001) ("[B]ankruptcy courts have long had the authority to authorize the sale of estate assets free and clear even in the absence of § 363(f)."); *see also Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

55.     The Debtors believe that one or more of the tests of section 363(f) will be satisfied with respect to the transfer of the Debtors' businesses and assets pursuant to the applicable Sale Transaction. For example, certain of the Debtors' creditors may consent to the sale free and clear under section 363(f)(2). In the event such creditors do not consent, a sale free and clear may proceed pursuant to section 363(f)(5) of the Bankruptcy Code because such creditors may be paid from the proceeds of the sale and the Debtors will establish at the applicable Sale Hearing that such creditors can be compelled to accept a monetary satisfaction of its claims.

> IV.     *The Sale Transactions Have Been Proposed in Good Faith and Without Collusion, and Each Successful Bidder Will Be a "Good Faith Buyer"*

56.     Pursuant to section 363(m) of the Bankruptcy Code, a good-faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *O'Dwyer v. O'Dwyer (In re O'Dwyer)*, 611 F. App'x 195, 200 (5th Cir. 2015); *Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assocs., Ltd. (In re Mark Bell Furniture Warehouse)*, Inc., 992 F.2d 7, 9 (1st Cir. 1993); In re Willemain v. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, No. 03-51524, 2007 WL 1428477, at *2 (Bankr. D.N.J. May 11, 2007); *see also In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (to constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud, collusion between the buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders).

57.     In other words, a party would have to show fraud or collusion between the successful bidder and the debtor-in-possession or trustee or other bidders in order to demonstrate a lack of good faith. An appropriate characterization of good faith in a bankruptcy sale is a lack of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Bleaufontaine, Inc. v. Roland International (In re Bleaufontaine, Inc.)*, 634 F.2d 1383, 1388 n.7 (5th Cir. 1981) (*quoting In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

58.     The Debtors submit that the Successful Bidder(s) arising from the Auction, if any, will be a "good faith" purchaser within the meaning of section 363(m) and the terms of a purchase agreement with any successful bidder will be negotiated at arms'-length and in good faith without any collusion or fraud.[6] The Bidding Procedures are designed to produce a fair, transparent, and

---

[6] Section 363(m) provides that:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased

competitive bidding process. All parties in interest will have an opportunity to evaluate and object, if necessary, to any particular party's conduct or the satisfaction of the requirements of section 363(m) of the Bankruptcy Code. Accordingly, the Debtors will be prepared to show, at the Sale Hearing, that the applicable Successful Bidder is entitled to the full protections of section 363(m) and will seek a finding that any Successful Bidder is a good faith purchaser and is entitled to the full protections of the Bankruptcy Code.

## **Basis for Emergency Relief**

59.     The Debtors respectfully request emergency consideration of the Motion in accordance with Local Rule 9013-1. The relief requested in the Motion is critical to preserving the Debtors' ability to receive the highest or otherwise best value for the Debtors' businesses and assets, thereby enhancing enterprise value. Accordingly, the Debtors respectfully request that the Court approve the relief requested in this motion on an emergency basis.

## **Notice**

60.     The Debtors will provide notice of this Motion to:  (a) the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition revolving credit facility and counsel thereto; (d) the indenture trustee for the Debtors' 8.00% secured second priority notes and counsel thereto; (e) the indenture trustee for the Debtors' 9.125% unsecured notes; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state

---

such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

attorneys general for states in which the Debtors conduct business; (j) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in any of the Debtors' assets; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request entry of the Order granting the relief requested herein

and such other relief the Court deems appropriate under the circumstances.

Dated: April 12, 2022
Houston, Texas

**WINSTON & STRAWN LLP**

/s/ *Katherine A. Preston*

Katherine A. Preston (TX Bar No. 24088255)
800 Capitol St., Suite 2400
Houston, Texas 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
Email: kpreston@winston.com

and

Timothy W. Walsh (*pro hac vice* pending)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
E-mail: twwalsh@winston.com

and

Daniel J. McGuire (*pro hac vice* pending)
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-3733
Facsimile: (312) 558-5700
Email: dmcguire@winston.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## **Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

*/s/Katherine A. Preston*
Katherine A. Preston


## **Certificate of Service**

I certify that on April 12, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/Katherine A. Preston*
Katherine A. Preston

## **Exhibit A**

**Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | ) | Case No. 22-30987 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING (A) BIDDING PROCEDURES AND (B) ASSUMPTION AND**
**ASSIGNMENT PROCEDURES AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (the "Bidding Procedures Order")

(i)(a) approving the Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**;

(b) authorizing the Debtors to designate stalking horse bidders (the "Stalking Horse Bidders," and

such bidders' bids, the "Stalking Horse Bids") and offer such bidders certain bid protections

(the "Stalking Horse Bid Protections"); (d) setting the deadline for potential bidders to submit a

proposal to purchase the Debtors' businesses or assets (the "Bid Deadline"), authorizing and

scheduling an auction (the "Auction"), authorizing and scheduling a hearing with respect to the

approval of a proposed sale transaction (the "Sale Hearing"); (e) authorizing and approving the

form and manner of the Sale Notice; (f) authorizing and approving the Cure Notice to Contract

Counterparties regarding the Debtors' potential assumption and assignment of the Assigned

Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115).  The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

(the "Cure Costs"); (g) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "Assumption and Assignment Procedures"); (ii) authorizing the sale of certain of the Debtors' assets (collectively, the "Assets") free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code following the sale process and completion of the Auction (collectively, the "Sale Transactions"); and (iii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion, the First Day Declaration, and the Mleczko Declaration filed contemporaneously therewith; and this Court having held a hearing to consider the relief requested in the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.    <u>Statutory and Legal Predicates</u>.  The predicates for relief granted herein are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Bankruptcy Rules, and Rules 2002-1 and 9013-1 of the Local Rules.

B.    <u>Bidding Procedures</u>.  The Debtors have articulated good and sufficient business reasons for the Court to approve the Bidding Procedures.  The Bidding Procedures are fair, reasonable, and appropriate.  The Bidding Procedures are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Debtors' business resulting in the highest or otherwise best offers.

C.    <u>Designation of Stalking Horse Bidders</u>.  The Debtors have articulated good and sufficient business reasons for the Court to approve the procedures for the designation of Stalking Horse Bidders and the provision of Bid Protections.

D.    <u>Good Faith Negotiations</u>.  The Bidding Procedures were negotiated in good faith and at arms' length and are reasonably designed to promote participation and active bidding and ensure that the highest or best value is generated for the Debtors' assets or businesses.

E.    <u>Assumption and Assignment Procedures</u>.  The Debtors have articulated good and sufficient business reasons for the Court to approve the Assumption and Assignment Procedures.  The Assumption and Assignment Procedures, including the form of Sale Notice attached hereto as **Exhibit 2** and the form of Cure Notice attached hereto as **Exhibit 3**, are fair, reasonable, and appropriate.  The Assumption and Assignment Procedures provide an adequate opportunity for all

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Contract Counterparties to raise any objections to the proposed assumption and assignment or to the proposed Cure Costs.  The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

F.      <u>Cure Notice</u>.  The Cure Notice, the form of which is attached hereto as **<u>Exhibit 3</u>**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures, as well as any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion and the procedures described therein, except as expressly required herein.

G.      <u>Notice</u>.  All other notices to be provided pursuant to the procedures set forth in the Motion are good and sufficient notice to all parties in interest of all matters pertinent hereto.  No further notice is required.

H.      <u>Relief is Warranted</u>.  The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are hereby overruled and denied on the merits with prejudice.

2.      The Debtors are authorized to implement the Bidding Procedures in accordance with the following timeline (as may be modified in accordance with the Bidding Procedures):

| Key Event | Deadline |
|---|---|
| Deadline to Submit Bids | **June 2, 2022 at 5:00 p.m. (prevailing Central Time)** |
| Auction (if necessary) | **June 6, 2022 at 10:00 a.m.(prevailing Central Time)** |

| Key Event | Deadline |
|---|---|
| Deadline to File Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) | **As soon as possible following conclusion of Auction** |
| Deadline to file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties | **June 7, 2022** |
| Deadline to File Objections to the Sale Transactions (the "<u>Sale Objection Deadline</u>") | **June 8, 2022, at 4:00 p.m. (prevailing Central Time)** |
| Deadline to File Contract Objections (the "<u>Contract Objection Deadline</u>") | **June 13, 2022, at 4:00 p.m. (prevailing Central Time)** |
| Sale Hearing | **June 16, 2022 at ___:___ __.m. (prevailing Central Time)** |

3.       The dates and deadlines set forth in this Bidding Procedures Order are subject to modification by the Debtors without further order of this Court.

<u>**Designation of Stalking Horse Bidders**</u>

4.       The Debtors are authorized, in the exercise of their reasonable business judgment, and in consultation with the Consultation Parties, to designate one or more stalking horse bidders (a "<u>Stalking Horse Bidder</u>"), for one or more of the Debtors' assets (an "<u>Additional Stalking Horse Bid</u>"), and enter into purchase agreements with Stalking Horse Bidders (each such agreement, a "<u>Stalking Horse Agreement</u>"), for the sale of such assets, in each case, in accordance with the terms of this Bidding Procedures Order and the Bidding Procedures.

5.       Subject to the terms of this Bidding Procedures Order and the Bidding Procedures, the Debtors are authorized to offer each Stalking Horse Bidder additional protections, including a break-up fee (the "<u>Bid Protections</u>"); *provided*, *that*, all Bid Protections must be negotiated by the Debtors, subject to notice and an opportunity for parties in interest to object.

6.     If the Debtors select a Stalking Horse Bidder, the Debtors shall file with the Court and serve on the parties that received the Motion, (a) a notice setting forth the identity of the Stalking Horse Bidder and the material terms of such Stalking Horse Agreement, including the terms of the applicable Bid Protections (each, a "Notice of Stalking Horse"), (b) a copy of the Stalking Horse Agreement, and (c) a proposed order authorizing and approving the Debtors' provision of the Bid Protections pursuant to the terms and provisions of the applicable Stalking Horse Agreement and the Bidding Procedures (the "Proposed Order"), in each case no later than seven (7) calendar days before the Bid Deadline, unless otherwise ordered by the Court.

7.     Objections to the provision of Bid Protections, if any, for any Stalking Horse Bidder (each, a "Bid Protection Objection") shall (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court and served on (i) proposed counsel to the Debtors, Winston & Strawn LLP, 35 West Wacker Drive, Chicago, IL 60601, Attn: Daniel J. McGuire (dmcguire@winston.com) and Laura Krucks (lkrucks@winston.com), (ii) counsel to any statutory committee appointed in the chapter 11 cases, and (iii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas, 77002, Attn: Hector Duran, Esq. and Stephen Statham, Esq. within seven (7) calendar days after service of the applicable Notice of Stalking Horse.

8.     If a timely Bid Protection Objection is filed and served with respect to a Stalking Horse Agreement in accordance with the Bidding Procedures and this Bidding Procedures Order, any Bid Protections provided for under such agreement shall not be deemed approved until the Bid Protection Objection is resolved, either by agreement of the objecting party and the Debtors, or by

order of the Court resolving such objection and approving the provision of the Bid Protections. Nothing herein shall alter the burden of proof with respect to the Bid Protections.

9.      If no timely Bid Protection Objection is filed and served with respect to a Stalking Horse Agreement in accordance with the Bidding Procedures and this Bidding Procedures Order, the Debtors may file with the Court, upon certification of counsel, the Proposed Order, which may be entered by the Court without further notice of hearing.

10.     Except as specifically authorized in paragraphs 4-5 hereof, absent further order of the Court, no person or entity shall be entitled to any Bid Protections, expense reimbursement or break-up fee, "topping," termination, or other similar fee or payment by the Debtors for submitting a bid for the Assets, or in any way participating in the Auction or the Debtors' sale process.

## Bidding Procedures

11.     The Bidding Procedures, attached hereto as **Exhibit 1**, are hereby approved.

12.     The Bidding Procedures are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Debtors' businesses and assets.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Bidding Procedures Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Bidding Procedures Order.  If there is a conflict between the terms of this Bidding Procedures Order and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

13.     The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a Qualified Bid, are fair, reasonable and appropriate, and are

designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and all parties in interest.

14.     The Debtors are authorized to take all reasonable actions necessary or appropriate to implement the Bidding Procedures in accordance with the terms of this Bidding Procedures Order and the Bidding Procedures.

**Objections to Sale Transactions**

15.     The objection deadline for the Sale Transactions will be **June 8, 2022 at 4:00 p.m. (prevailing Central Time)**.

16.     Objections to the Sale Transactions (each, a "Sale Objection"), must:  (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; and (iv) conform to the Bankruptcy Rules and the Local Rules.  In addition, subject to the terms of this Bidding Procedures Order and the Bidding Procedures, the Debtors may extend any objection date specified in the applicable notice, as the Debtors deem appropriate in the exercise of their reasonable business judgement.  If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the applicable Sale Hearing.

17.     An appropriate representative of each Successful Bidder shall appear at the applicable Sale Hearing and be prepared, if necessary, to have such representative(s) testify in support of a Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder as part of the proposed transaction.

18.     Any party who fails to timely file with the Court a Sale Objection will be forever barred from asserting any Sale Objection to the applicable sale, or to the consummation and performance of a sale transaction contemplated by a purchase agreement between the Debtors and a Successful Bidder, including the transfer of the Debtors' business to a Successful Bidder, free and clear of all claims and interests pursuant to section 363(f) or 1141(c) of the Bankruptcy Code. Failure to object shall constitute consent for the purposes of section 363(f) or 1141(c) of the Bankruptcy Code.

### **Sale Notice**

19.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved. As soon as reasonably practicable after entry of this Bidding Procedures Orders, the Debtors will cause the Sale Notice to be served on the following parties or their respective counsel, if known (collectively, the "Notice Parties"):  (a) the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition revolving credit facility and counsel thereto; (d) the indenture trustee for the Debtors' 8.00% secured second priority notes and counsel thereto; (e) the indenture trustee for the Debtors' 9.125% unsecured notes; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for states in which the Debtors conduct business; (j) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in any of the Debtors' assets; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.   The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

20.     The Sale Notice contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

21.     The following notice of the Sale Objection Deadline and the Contract Objection Deadline, as applicable, to holders of Consent Rights (as defined below) and Preferential Purchase Rights (as defined below) is reasonable and appropriate under the circumstances, fair to all Contract Counterparties, comply in all respects with the Bankruptcy Code, and are approved.

22.     The Debtors may assign to a Successful Bidder, pursuant to an asset purchase agreement and Sale Order, certain contracts, agreements, leases and other assets, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of all liens, claims, interests, and encumbrances.  Subject to approval by the Court, if any party objects to such assignment, including any objection based on any alleged approval or consent right or anti-assignment provision contained in or applicable to any contract, lease, or other agreement (a "Consent Right") then such party must file with the Court an objection identifying (i) the contract(s), lease(s), or other agreement(s), (ii) the basis for objecting to the assignment of such contract(s), lease(s), or other agreement(s), and (iii) all supporting documentation (each, an "Assignment Objection"), no later than the Sale Objection Deadline or the Contract Objection Deadline, as applicable.

23.     In addition, the Debtors may assign to a Successful Bidder, pursuant to an asset purchase agreement and Sale Order, certain contracts, agreements, leases or other assets, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use

permits or agreements), free and clear of any preferential purchase rights, rights of first refusal, drag-along rights, tag-along rights, and other similar rights, if any, that are applicable to the transfer of the Debtors' assets in connection with a Sale Transaction (each a "Preferential Purchase Right"). Subject to approval by the Court, if any purported holder of a Preferential Purchase Right objects to such transfer, including on account of any alleged Preferential Purchase Right contained in or applicable to any contract, lease, or other agreement, then such holder must file with the Court an objection identifying (i) the assets subject to such Preferential Purchase Right(s), (ii) the applicable agreement, document, or statute giving rise to such Preferential Purchase Right(s), (iii) the portion of the agreement, document, or statute giving rise to such Preferential Purchase Right(s), and (iv) all other supporting documentation (a "Rights Objection"), no later than the Sale Objection Deadline or the Contract Objection Deadline, as applicable.

24.    If a party files an Assignment Objection or Rights Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute  prior to the Sale Hearing, such objection will be heard by the Court at the Sale Hearing or such other scheduled hearing.

25.    Any person failing to timely file an Assignment Objection or Rights Objection, as applicable, will be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the assets to be sold, assumed, and/or assigned in connection with a Sale Transaction, free and clear of all liens, claims, interests, and encumbrances, including Consent Rights and Preferential Purchase Rights, and from asserting any alleged Preferential Purchase Rights with respect to a Sale Transaction, and (ii) deemed to consent to and approve the transfer, sale, and assumption and/or assignment of the Debtors' right, title, and interest in, to and under such assets free and clear of all liens, claims, interests, and

encumbrances, including Consent Rights and Preferential Purchase Rights, regardless of whether such consent must be in writing pursuant to the terms of any contract, lease, or other agreement.

26.     If any person files an Assignment Objection or Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Assignment Objection or Rights Objection, as applicable (and serving such response on the objecting party). Upon the filing of such response to such objection, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted. Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such objections, and all such rights of the Debtors are expressly preserved.

## Assumption and Assignment Procedures

27.     The following Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all Contract Counterparties, comply in all respects with the Bankruptcy Code, and are approved.

28.     The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is reasonable, fair, and appropriate, contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and is hereby approved.

29.     The Cure Notice, including any Supplemental Cure Notice (as defined below), is reasonably calculated to provide sufficient notice to the Contract Counterparties of the Debtors' proposed assumption and assignment of the Assigned Contracts in connection with the Sale Transactions and constitutes adequate notice thereof, and no other or further notice of the Debtors'

proposed Cure Costs or the proposed assumption and assignment of the Assigned Contracts shall be required if the Debtors file and serve such notice in accordance with the Assumption and Assignment Procedures and this Bidding Procedures Order.

30.     On or before **June 7, 2022**, the Debtors shall file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties.  Service of the Cure Notice in accordance with this Bidding Procedures Order on all Contract Counterparties is hereby deemed to be good and sufficient notice of the Cure Costs for, and the proposed assumption and assignment of, the Assigned Contracts.

31.     In accordance with the Bidding Procedures, each Bid must contain such financial and other information that allows the Debtors, in consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a sale transaction including, without limitation, ability to post replacement letters of credit, as applicable, and such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party (such information, "Adequate Assurance Information").

32.     The Debtors shall provide, or cause to be provided, to applicable Contract Counterparties Adequate Assurance Information on a strictly confidential basis once a Potential Bidder is deemed a Qualified Bidder.  Contract Counterparties shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether the adequate assurance requirements under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), have been satisfied, and (ii)  support any objection regarding adequate assurance of future performance filed by the Contract Counterparty; *provided, that,* if a Contract

13

Counterparty seeks to disclose confidential, non-public information included in the Adequate Assurance Information, it shall request Court authority to redact such information, unless disclosure of such confidential, non-public information is authorized by the Debtors, the Successful Bidder, and any known proposed assignee(s) of the relevant Assigned Contracts (if different from the Successful Bidder), or ordered by the Court.

33.     Objections, if any, to any proposed assumption or assignment of an Assigned Contract, including but not limited to any objection to the proposed Cure Cost, the provision of adequate assurance of future performance, an Assignment Objection, or a Rights Objection (collectively, the "Contract Objections") must:  (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; and (v) be filed with the Court.

34.     Any Contract Objection in respect of an Assigned Contract must be filed and served by the Contract Objection Deadline.  If a timely Contract Objection is received and such objection cannot otherwise be resolved by the parties, such objection shall be heard at the applicable Sale Hearing or such other hearing scheduled prior to any scheduled closing of the applicable Sale Transaction.

35.     If a Contract Objection cannot otherwise by resolved by the parties, the Debtors may assume and assign the Contract(s) or Lease(s) pending resolution of the Contract Objection.

36.     If (a) the Debtors identify (i) additional contracts or leases to be assumed and assigned to a Successful Bidder or (ii) modifications that need to be made to a proposed Cure Cost previously stated in the Cure Notice, or (b) a Successful Bidder designates any additional contracts

or leases not previously included on the Cure Notice for assumption and assignment, the Debtors shall promptly file with the Court and serve by first class mail on the applicable Contract Counterparty a supplemental Cure Notice (each, a "<u>Supplemental Cure Notice</u>," the form of which shall be substantially similar to the form of Cure Notice attached hereto as **Exhibit 3**).   Any Contract Objection with respect to additional contracts or leases set forth in a Supplemental Cure or any modifications to a proposed Cure Cost set forth in a Supplemental Cure Notice must be filed on the later of (a) within seven (7) days of service of that Supplemental Cure Notice or (b) the Contract Objection Deadline.

37.     If no timely Contract Objection is filed and served with respect to an Assigned Contract: (i)  the Cure Cost identified on the Cure Notice or a Supplemental Cure Notice, as applicable, will be the only amount necessary under section 365(b) of the Bankruptcy Code to cure all defaults under such Assigned Contract; (ii) the Contract Counterparty shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their estates, and a Successful Bidder; (iii) the Debtors will be deemed to have provided adequate assurance of future performance for such Assigned Contract in accordance with section 365(f)(2)(B); (iv) the Contract Counterparty shall be forever barred from asserting against the Debtors, their estates, and a Successful Bidder, any additional obligation to provide adequate assurance of future performance; (v) the Contract Counterparty to such Assigned Contract shall be deemed to have consented to the assumption by the Debtors and assignment to Successful Bidder of the Assigned Contract, and be forever barred from asserting any objection with regard to such assumption and assignment; (vi) the Contract Counterparty shall be forever barred from asserting any other claims related to such Assigned Contract against the Debtors and their estates or the

Successful Bidder, or the property of any of them, that existed prior to the entry of an order resolving such Contract Objection and any sale order.

38.     Absent entry of an order approving the applicable Sale Transaction, the Assigned Contracts shall not be deemed assumed or assigned, and shall in all respects be subject to further administration under the Bankruptcy Code.

39.     The inclusion of a contract, lease, or other agreement on the Cure Notice or any Supplemental Cure Notice shall not constitute or be deemed a determination or admission by the Debtors or any other party in interest that such contract or other document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Cost is due (all rights with respect thereto being expressly reserved).  The Debtors reserve all of their rights, claims, defenses, and causes of action with respect to each contract or other document listed on the Cure Notice or any Supplemental Cure Notice.

### General Provisions

40.     All persons or entities (whether or not Qualified Bidders) that participate in the bidding process for the Debtors' assets shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Bidding Procedures Order (including any disputes relating to the bidding process, the Auction, and/or any sale transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

41.     The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without

further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

42.     The Debtors may cancel the bidding procedures and the Auction with respect to any of the Debtors' assets if the Debtors determine, in their reasonable business judgment, in a manner consistent with their fiduciary duties, and in consultation with the Consultation Parties, to proceed with a private sale of such assets.

43.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, or any applicable provisions of the Local Rules or otherwise, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Bidding Procedures Order.

44.     The Debtors are authorized to take all reasonable steps necessary or appropriate to carry out the relief granted in this Bidding Procedures Order.

45.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Bidding Procedures Order.

Dated: _____, 2022
           Houston, Texas

_____
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

### **Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | Case No. 22-30987 (MI) |
| Debtors. | (Jointly Administered) |

**BIDDING PROCEDURES**

**Overview**

On April 12, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). These chapter 11 cases have been consolidated for procedural purposes under the lead case: *In re ION Geophysical Corporation*, Case No. 22-30987.

On [____], 2022, the Bankruptcy Court entered an order [Docket No. [__]] (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (the "Bidding Procedures") for the consideration of the highest or otherwise best bids (or any combination of Partial Bids (as defined below) comprising one Qualified Bid (as defined below) for the Debtors' businesses and assets on the terms and conditions set forth herein.[2] By agreement of the non-debtor parties, these Bidding Procedures shall also apply to the sale of the assets and businesses of the direct and indirect subsidiaries of the Debtors (each a "Non-Debtor" and, collectively, the "Non-Debtors"). The Debtors and Non-Debtors shall be collectively referred to herein as the "Sellers".

The Sellers, in consultation with the Consultation Parties (as defined below), may designate one or more stalking horse bidders (the "Stalking Horse Bidders") and enter into separate stalking horse agreements (the "Stalking Horse Agreements") for the purchase of any business or assets, with such bid protections determined by the Sellers, in consultation with the other Consultation Parties, in accordance with the Bidding Procedures Order.

For all purposes under these Bidding Procedures, any Stalking Horse Bidder approved as such pursuant to the Bidding Procedures Order shall be considered a Qualified Bidder (as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115). The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order.

AmericasActive:16352465.7

defined below), and any Stalking Horse Bid shall be considered a Qualified Bid.  Subject to the other provisions of these Bidding Procedures, in the event that a Stalking Horse Bid is the only Qualified Bid received by the Sellers by the Bid Deadline (as defined below), such Stalking Horse Bidder shall be deemed a Successful Bidder (as defined below).

The Bidding Procedures describe, among other things: (i) the procedures for bidders to submit bids for an investment in, or other acquisition of, the Sellers' businesses or assets, subject to an order of the Bankruptcy Court approving such potential sale transactions to the extent such sale transactions include Debtor Assets (as defined below); (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids; (iii) the process for negotiating the bids received; (iv) the conduct of the Auction if the Sellers receive Qualified Bids; (v) the procedure for the ultimate selection of any Successful Bidder and any Back-Up Bidder (as defined below); and (vi) the process for approval of the Sale Transactions at the applicable Sale Hearing.

As used herein, assets and business of the Debtors shall be referred to as "Debtor Assets" and assets and businesses of the Non-Debtors shall be referred to as "Non-Debtor Assets".

## Reservation of Rights

**Except as otherwise set forth herein, the Sellers reserve the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law to modify these Bidding Procedures; waive terms and conditions set forth herein with respect to all Potential Bidders (as defined below); extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; *provided*, *that*, the Sellers shall not be authorized to make material modifications to these Bidding Procedures with respect to the Debtor Assets without further order of the Court.  The Sellers may provide reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Sellers' businesses, in each case, to the extent not materially inconsistent with these Bidding Procedures and the Bidding Procedures Order, as applicable.  All parties reserve their rights to seek Court relief with regard to the Auction, these Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline).  In addition, the Debtors reserve their right to cancel the bidding procedures and the Auction with respect to any of the Debtors' assets if the Debtors determine, in their reasonable business judgment, in a manner consistent with their fiduciary duties, and in consultation with the Consultation Parties, to proceed with a private sale of such assets.**

## Fiduciary Out

Nothing in these Bidding Procedures will require the board of directors, board of managers, or such similar governing body of a Seller to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body reasonably determines in good faith, in consultation with outside counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law (the "Fiduciary Out").

## Summary of Important Dates

| Key Event | Deadline |
|---|---|
| Deadline to Submit Bids | **June 2, 2022 at 5:00 p.m. (prevailing Central Time)** |
| Auction (if necessary) | **June 6, 2022 at 10:00 a.m.(prevailing Central Time)** |
| Deadline to File Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) | **As soon as possible following conclusion of Auction** |
| Deadline to file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties | **June 7, 2022** |
| Deadline to File Objections to the Sale Transactions (the "Sale Objection Deadline") | **June 8, 2022, at 4:00 p.m. (prevailing Central Time)** |
| Deadline to File Contract Objections | **June 13, 2022, at 4:00 p.m. (prevailing Central Time)** |
| Sale Hearing | **June 16, 2022 at [_:__] [a.m./p.m.] (prevailing Central Time)** |

## Businesses to be Acquired

The Sellers' businesses consist of three (3) primary areas of operations: (i) seismic data assets; (ii) software; and (iii) devices. Parties may submit bids for one or more of the Sellers' businesses or assets, including for all or part of the Sellers' businesses or assets (each, a "Partial Bid"), *provided*, *that*, when combined, such Partial Bids must be higher or better than any Stalking Horse Bids (as determined by the Sellers in their sole discretion), in accordance with the terms and conditions set forth herein.

## Designation of Stalking Horse Bidders

The Sellers, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, may designate one or more Stalking Horse Bidders, for one or more of the Sellers' assets, and enter into purchase agreements with Stalking Horse Bidders, for the sale of such assets (each such group of assets, an "Stalking Horse Package"), in each case, in accordance with the terms of the Bidding Procedures Order and these Bidding Procedures, as applicable. If the Sellers designate a Stalking Horse Bidder for assets that include Debtor Assets, the Sellers shall file with the Court and serve on the parties that received the Motion, (a) a notice setting forth the identity of the Stalking Horse Bidder and the material terms of such Stalking Horse Agreement, including the terms of the applicable Bid Protections (each, a "Notice of

3

Additional Stalking Horse"), (b) a copy of the Stalking Horse Agreement, and (c) a proposed order authorizing and approving the Debtors' provision of the Bid Protections pursuant to the terms and provisions of the applicable Stalking Horse Agreement and the Bidding Procedures (the "Proposed Order"), in each case no later than seven (7) calendar days before the Bid Deadline (as defined below), unless otherwise ordered by the Court.

Bid Protections. The Sellers may offer each Stalking Horse Bidder additional protections, including a break-up fee (the "Bid Protections"); *provided*, *that*, all Bid Protections must be negotiated by the Sellers, subject to notice and an opportunity for parties in interest to object solely with respect to Bid Protections offered by a Debtor (the "Debtor Bid Protections"). The amount and calculation of such Debtor Bid Protections shall be described in the Notice of Stalking Horse; *provided*, *further*, that any Debtor Bid Protections shall not be inconsistent with the Bidding Procedures Order or these Bidding Procedures.

Objections to and Approval of Designation of Stalking Horse Bidder.  Any objections (each, a "Stalking Horse Objection") to the designation of a Stalking Horse Bidder for assets that include Debtor Assets, including any Debtor Bid Protections to be provided pursuant to the terms and provisions of a Stalking Horse Agreement, must (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court within seven (7) calendar days after service of the applicable Notice of Stalking Horse.

If a timely Stalking Horse Objection is filed and served in accordance with the preceding paragraph, the proposed designation of a Stalking Horse Bidder and the Bid Protections will not be approved until either the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors or by order of the Bankruptcy Court.

## Due Diligence

The Sellers have posted copies of all material documents related to the Sellers' businesses and assets to the Sellers' confidential electronic data room (the "Data Room"). To access the Data Room, a party must submit to the Sellers' advisors:

(A)     an executed confidentiality agreement in a form and substance that is satisfactory to the Sellers (unless such party is already a party to an existing customary confidentiality agreement with the Sellers that is acceptable to the Sellers for this due diligence process, in which case such agreement shall govern); and

(B)     sufficient information, as reasonably determined by the Sellers, to allow the Sellers to determine, in their reasonable business judgment, that the interested party (i) has the financial wherewithal to consummate the Sale Transactions, and (ii) intends to access the Data Room for a bona fide purpose consistent with these Bidding Procedures.

An interested party that meets the aforementioned requirements to the reasonable satisfaction of the Sellers shall be a "Potential Bidder." As soon as practicable, the Sellers will provide such Potential Bidder access to the Data Room; *provided*, *that*, such access may be

4

terminated by the Sellers in their reasonable discretion at any time for any reason whatsoever, including that a Potential Bidder does not become a Qualified Bidder, these Bidding Procedures are terminated, the Potential Bidder breaches any obligations under its confidentiality agreement or the Sellers become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading. The Sellers may restrict or limit access of a Potential Bidder to the Data Room if the Debtors determine, based on their reasonable business judgment that certain information in the Data Room is sensitive, proprietary, or otherwise not appropriate for disclosure to such Potential Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Sellers or their advisors regarding the ability of such Potential Bidder to consummate the Sale Transactions.

Until the Bid Deadline, and except as otherwise provided herein, the Sellers will provide any Potential Bidder with reasonable access to the Data Room and any additional information requested by Potential Bidders (subject to any restrictions pursuant to applicable law or these Bidding Procedures) that the Sellers believe in their reasonable business judgment to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to the Sellers' investment bankers, Perella Weinberg Partners, Attn: Douglas McGovern (dmcgovern@pwpartners.com), Jakub Mleczko (jmleczko@pwpartners.com) and BJ Walker (BWalker@tphco.com). In the event that any such additional information is in written form and provided to a Potential Bidder, the Sellers shall simultaneously provide such additional information to all other Potential Bidders by posting it in the Data Room. Unless prohibited by law or otherwise determined by the Sellers, the availability of additional due diligence to a Potential Bidder may be terminated if (i) the Potential Bidder does not become a Qualified Bidder, (ii) these Bidding Procedures are terminated, (iii) the Potential Bidder breaches any obligations under its confidentiality agreement, or (iv) the Sellers become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading.

Neither the Sellers nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Sellers' businesses or assets to any person or entity who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth herein, or (iii) in the case of competitively sensitive information, is a competitor of the Sellers, in the reasonable business judgment of the Sellers.

Each Qualified Bidder shall be deemed to acknowledge and represent (i) that it has had an opportunity to (x) conduct any and all due diligence regarding the applicable assets prior to making a bid and (y) investigate and/or inspect any documents and the applicable assets in making its bid; (ii) that it has relied solely upon its own independent review in making its bid; and (iii) that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the applicable assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures. The Sellers and their respective estates are not responsible for, and will have no liability with respect to, any information obtained by, or provided to, any Potential Bidders in connection with these Bidding Procedures and the Sale Transactions.

## Bid Deadline

A Potential Bidder that desires to make a bid shall deliver electronic copies of its bid so as to be received no later than **June 2, 2022 at 5:00 p.m. (prevailing Central Time)** (the "Bid Deadline"); *provided*, *that*, the Sellers may, in consultation with the Consultation Parties, extend the Bid Deadline without further order of the Court subject to providing notice to all Potential Bidders and any Stalking Horse Bidders. **The submission of a bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the Sellers' businesses or assets specified in such bid**. Any party that does not submit a bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction.

Bids should be submitted by email to the following Seller representatives:

<table>
<tr><td>Winston & Strawn LLP</td><td>Perella Weinberg Partners</td></tr>
<tr><td>Timothy W. Walsh:  twwalsh@winston.com</td><td>Douglas McGovern: dmcgovern@pwpartners.com</td></tr>
<tr><td>Daniel J. McGuire: dmcguire@winston.com</td><td>Jakub Mleczko: jmleczko@pwpartners.com</td></tr>
<tr><td>Eric Johnson:  jejohnson@winston.com</td><td>BJ Walker:  BWalker@tphco.com</td></tr>
</table>

## Consultation Parties

Throughout the bidding process, the Sellers and their advisors will regularly and timely consult with (i) Ropes & Gray LLP, as advisors to an ad hoc group of (a) lenders under the Debtors' first lien revolving credit facility and (b) holders of the Debtors' 8.00% senior secured second priority notes (the "Ad Hoc Group") and (ii) the advisors to any official committee of unsecured creditors (each, a "Consultation Party," and collectively, the "Consultation Parties"). In the event that a Consultation Party submits a Bid in the Auction, such party shall no longer be a Consultation Party with respect to the bidding and auction relating to the assets subject to such Bid until such time as such party withdraws such Bid.

The Sellers shall promptly provide copies of all Bids (as defined below) received by the Sellers to the Consultation Parties, but in no event later than the next business day after such Bid is received; *provided*, *that*, the Consultation Parties must treat such Bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Sellers and the applicable Bidder.

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Bidding Procedures shall not limit the Sellers' discretion in any way and shall not include the right to veto any decision made by the Sellers in the exercise of their reasonable business judgment.  Further, for the avoidance of doubt, any rights that the Consultation Parties may have pursuant to the terms of other agreements, any orders of the Court, or the Bankruptcy Code are hereby reserved and shall not be affected by these Bidding Procedures or the Bidding Procedures Order. All rights of the Consultation Parties with respect to the proposed Sale Transactions are fully reserved.

In the event that any Consultation Party or an affiliate of the foregoing submits a bid that is a Qualified Bid, any obligation of the Sellers to consult with the bidding party or its affiliates established under these Bidding Procedures will be waived, discharged, and released without

further action; *provided*, *that*, the bidding party will have the same rights as any other Qualified Bidder set forth in the Bidding Procedures

### Form and Content of Qualified Bid

A bid is a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and any other party that will be participating in connection with the bid (a "Bid"). To constitute a "Qualified Bid" a Bid must include, at a minimum, the following:[3]

i. Proposed Agreement. Each Bid must include an executed agreement (the "Proposed Agreement") for the acquisition of all or some of the businesses or assets of the Sellers, together with a redline comparing the Proposed Agreement to any applicable Stalking Horse Agreement or, if there is no applicable Stalking Horse Agreement, a form of asset purchase agreement, in each case distributed by the Sellers to Potential Bidders. The Proposed Agreement shall:

(a) include a complete set of all disclosure schedules and exhibits thereto marked to show the specific changes to the disclosure schedules and exhibits to the applicable Stalking Horse Agreement (if any) distributed by the Sellers to Potential Bidders; and

(b) not condition the closing of the proposed Sale Transaction on the receipt of any third party approvals (excluding such approvals required by the Court or governmental and/or regulatory approvals).

ii. Purchase Price; Form of Consideration; Cash Requirements; Assets; Assumed Liabilities; Credit Bid. Each Bid must clearly set forth, as applicable:

(a) Purchase Price. Each Bid must clearly identify the purchase price to be paid (the "Purchase Price") and specify the aggregate amount of cash and other consideration being offered.

(b) Cash Requirements. Each Bid, including any Credit Bid (as defined below), must provide cash consideration sufficient to satisfy the payment of any applicable Bid Protections in cash in full (the "Cash Consideration Amount") and, with respect to any Credit Bid, must also pay all obligations secured by senior liens on the applicable assets.

(c) Assets / Business Purchased: Each Bid must, in the Proposed

---

[3] The Sellers may waive any of the following requirements for a Bid to constitute a Qualified Bid to the extent reasonably necessary to promote bids and a robust auction so long as any such waiver is not materially inconsistent with these Bidding Procedures.

AmericasActive:16352465.7

Agreement, clearly identify the particular assets or business the Potential Bidder seeks to acquire from the Sellers. The Bid must clearly state the allocation of Purchase Price among the Debtor Assets and the Non-Debtor Assets, as applicable.

(d)  <u>Assumed Liabilities</u>: Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the Bidder seeks to assume.

(e)  <u>Credit Bid</u>: Persons or entities holding a valid and perfected security interest in the Sellers' assets may submit a credit bid (a "<u>Credit Bid</u>") on such assets, to the extent permitted by applicable law or, with respect to any Debtor Assets, any Court order, and the documentation governing the Sellers' prepetition or postpetition secured credit facilities, and subject to any applicable limitations set forth in the Intercreditor Agreement.[4]

iii.  <u>Unconditional Offer / Contingencies</u>. A statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and is irrevocable until the Sellers notify the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid, or until the first business day after the close of the Sale Transactions.

iv.  <u>Proof of Financial Ability to Perform</u>. Each Bid must contain such financial and other information that allows the Sellers, in consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Sale Transactions including, without limitation, ability to post replacement letters of credit, as applicable, and, with respect to any Debtor Assets, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party. Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to, in the Sellers' reasonable business judgment, any unreasonable conditions), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Sellers or the Consultation Parties necessary to demonstrate adequate assurance of future performance

---

[4] "<u>Intercreditor Agreement</u>" means that certain Intercreditor Agreement, dated as of April 20, 2021, by and among PNC Bank, National Association, as First Lien Representative and First Lien Collateral Agent for the First Lien Secured Parties, UMB Bank, National Association, as Second Lien Representative and Second Lien Collateral Agent for the Second Lien Secured Parties, and acknowledged and agreed by ION Geophysical Corporation and the guarantors party thereto.

and to demonstrate that such Potential Bidder has the ability to consummate the Sale Transactions in a timely manner.

v.      <u>Designation of Contracts and Leases</u>. Each Bid must identify with particularity (i) each and every executory contract and unexpired lease that the Potential Bidder seeks to assume and receive an assignment of; and (ii) each and every other contract and lease of the Sellers that the Potential Bidder seeks to assume and receive an assignment of.

vi.     <u>Required Approvals</u>. A statement or evidence (i) that the Potential Bidder has not conditioned their Bid on (a) obtaining financing, (b) any internal approval, (c) the outcome or review of unperformed due diligence, or (d) regulatory contingencies (except as otherwise provided in this section), (ii) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott- Rodino Antitrust Improvements Act of 1976, as amended, or other antitrust laws, as applicable, and pay the fees associated with such filings; (iii) identifying each governmental and regulatory third-party approvals required for the Potential Bidder to consummate the applicable Sales Transaction, if any, and the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals; and (iv) that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid or as the Back-Up Bid, within a time frame acceptable to the Sellers. A Potential Bidder further agrees that its legal counsel will coordinate in good faith with the Sellers' legal counsel to discuss and explain such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable.

vii.   <u>Disclosure of Identity and Corporate Authorization</u>. Each Bid must (i) fully disclose the identity of the Potential Bidder of each entity that will be bidding or otherwise participating in such Bid (including any equity owners or sponsors, if the Potential Bidder is an entity formed for the purpose of consummating the Sale Transactions), and the complete terms of any such participation, and (ii) include evidence of corporate authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid, participation in the Auction, and closing of the transactions contemplated by the Potential Bidder's Proposed Agreement in accordance with the terms of the Bid and these Bidding Procedures.

viii.  <u>No Entitlement to Expense Reimbursement or Other Amounts</u>. With the exception of any Stalking Horse Bid, expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver

of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

ix.     <u>Disclosure of Connections</u>. Each Bid must fully disclose any connections or agreements with the Sellers, any other known Potential Bidder and/or any officer or director of the Sellers.

x.      <u>Joint Bids</u>. The Sellers may, in consultation with the Consultation Parties, approve joint Bids in their sole and reasonable business judgment on a case-by-case basis.

xi.     <u>Representations and Warranties</u>. Each Bid must include the following representations and warranties.

a.      a statement that the Potential Bidder has had an opportunity to conduct, and has completed, any and all due diligence regarding the applicable business or asset prior to submitting its Bid;

b.      a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the businesses or assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the businesses or assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed Agreement ultimately accepted and executed by the Sellers;

c.      a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid (or any combination of Partial Bids comprising one Qualified Bid) after the Successful Bid with respect to the applicable business or asset;

d.      a statement that the Potential Bidder has not (i) engaged in any collusion with respect to the submission of any bid or the Auction, (ii) coordinated or joined with any other party on a bid or bids, or (iii) took any other action to prevent a transparent and competitive auction process; *provided*, *that*, certain joint bids may be permitted as set forth herein;

e.      a statement that all proof of financial ability to consummate the Sale Transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

       f.       a statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

A Potential Bidder must also accompany its Bid with:

     xii.    a cash deposit in the amount of 10% of the proposed purchase price (a "Good Faith Deposit"), unless otherwise agreed to by the Sellers and a Potential Bidder (but in no event less than 5% of the proposed purchase price); *provided, that,* a Potential Bidder submitting a Credit Bid will not be required to accompany its Bid with a Good Faith Deposit for any portion of the Purchase Price that is a Credit Bid;

    xiii.    the contact information of the specific person(s) whom the Sellers or their advisors should contact in the event that the Sellers have any questions or wish to discuss the Bid submitted by the Potential Bidder; and

    xiv.    a covenant to cooperate with the Sellers and the Consultation Parties to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements.

## Good Faith Deposit

A Good Faith Deposit must be deposited, prior to the Bid Deadline, with an escrow agent selected by the Sellers (the "Escrow Agent") pursuant to a customary and reasonable escrow agreement to be provided by the Sellers. To the extent a Qualified Bid is modified before, during, or after the Auction, the Sellers reserve the right to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the Purchase Price. If a Qualified Bidder is required to increase its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment. For the avoidance of doubt, and notwithstanding anything to the contrary in these Bidding Procedures or any Court order to the contrary, any Good Faith Deposit by any Stalking Horse Bidders or other Qualified Bidders shall only be for purposes of this process. No party, including any prepetition lenders or postpetition lenders, shall have any lien, claim, or right with respect to the Good Faith Deposit, and such funds shall not be available for distribution to the Sellers' creditors, unless and until such funds become property of the Sellers' estates in accordance with the terms of these Bidding Procedures.

## Review of Bids; Designation of Qualified Bids

The Sellers, in consultation with the Consultation Parties, will evaluate Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Sellers deem appropriate in the exercise of their reasonable business judgment, based upon the Sellers' evaluation of the content of each Bid.

A Bid that is reasonably determined by the Sellers, in consultation with the Consultation Parties, to meet the requirements set forth herein will be considered a "Qualified Bid" and any bidder that submits a Qualified Bid (including any Stalking Horse Bids) will be considered a

AmericasActive:16352465.7

"Qualified Bidder."

By no later than **one (1) business day prior to the Auction** (the "Qualified Bid Deadline"), the Sellers shall determine, in their reasonable business judgment, and in consultation with the Consultation Parties, which of the Bids received by the Bid Deadline qualifies as a Qualified Bid. The Sellers shall notify each Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline.

In evaluating the Bids, the Sellers may take into consideration the following non-exhaustive factors:

1.  the amount of the purchase price and Credit Bid, as applicable, set forth in the Bid (provided, that, for purposes of evaluating competing bids, and except with respect to the requirement that each Bid must provide the Cash Consideration Amount, every dollar of a Credit Bid shall be treated the same as a dollar from a cash or other non-cash Bid, and a Credit Bid shall not be considered inferior to a comparable cash or other non-cash Bid because it is a Credit Bid);

2.  the assets and liabilities excluded from the Bid and any executory contracts or leases or other liabilities proposed to be assumed;

3.  the value to be provided to the Sellers under the Bid, including the net economic effect upon the Sellers' estates, taking into account any Stalking Horse Bidder's rights to the Bid Protections;

4.  any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities, including replacement letters of credit;

5.  the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; tax leakage; and required governmental or other approvals;

6.  the impact on employees and employee claims against the Sellers;

7.  the impact on trade creditors; and

8.  any other factors the Sellers may deem relevant, consistent with their fiduciary duties.

A Bid that contemplates the liquidation of some or all the Sellers' businesses or assets shall not be disqualified from being a Qualified Bid solely for that reason. The Sellers reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.

Without the written consent of the Sellers, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid for the Sellers during the period that such

Qualified Bid remains binding as specified herein; *provided*, *that*, any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures. For the avoidance of doubt, any amendment to any Stalking Horse Agreement, shall be filed with the Bankruptcy Court within one (1) business day of such amendment, or as soon as reasonably practicable thereafter, and the Sellers will take into account all such amendments or modifications at the Auction.

Subject to the terms of these Bidding Procedures, any Qualified Bidder who has a valid and perfected lien on any Non-Debtor Assets and the right under applicable nonbankruptcy law to credit bid claims secured by such liens, shall have the right to credit bid all or a portion of the value of such Qualified Bidder's claims with respect to the collateral by which such Qualified Bidder's claim is secured. Subject to the terms of the Bidding Procedures Order and these Bidding Procedures, any Qualified Bidder who has a valid and perfected lien on any Debtor Assets and the right under applicable nonbankruptcy law to credit bid claims secured by such liens shall have the right to credit bid all or a portion of the value of such Qualified Bidder's claims pursuant to section 363(k) of the Bankruptcy Code with respect to the collateral by which such Qualified Bidder's claim is secured. Any Qualified Bidder intending to credit bid all or a portion of the value of such Qualified Bidder's claim shall provide notice thereof to the Sellers and any Stalking Horse Bidders at least two (2) business days prior to the Auction. For the avoidance of doubt, such Qualified Bidder that provides notice of intent to submit a Credit Bid will no longer be a Consultation Party with respect to the bidding and auction relating to the assets subject to such Bid until such time as such party withdraws such Bid.

### Failure to Receive Qualified Bids Other Than Stalking Horse Bid

If no Qualified Bid (other than a Stalking Horse Bid) is received by the Qualified Bid Deadline, the Sellers will not conduct the Auction with respect to the assets subject to such Stalking Horse Bid, and, to the extent such Stalking Horse Bid includes Debtor Assets, shall file a notice with the Court indicating that no Auction will be held and the Stalking Horse Bidder will be named the Successful Bidder.

### Auction Procedures

If the Sellers receive two or more Qualified Bids with respect to the applicable assets, the Sellers shall conduct the Auction on **June 6, 2022, beginning at 10:00 a.m. (prevailing Central Time) at (i) the offices of Winston & Strawn LLP, 800 Capital Street, Suite 2400, Houston, TX 77002, or (ii) virtually, pursuant to procedures to be announced to bidders, or such other later date as may be determined by the Sellers in consultation with the Consultation Parties and upon notice to all parties in interest**. Only Qualified Bidders will be eligible to participate at the Auction, subject to such limitations as the Sellers may impose in good faith and in consultation with the Consultation Parties. In addition, only the professionals and/or other representatives of the Qualified Bidders, the Sellers, and the Consultation Parties shall be permitted to attend and observe the Auction.

The following auction rules shall apply to the Auction to promote a spirited and robust auction (the "Auction Rules"). All bids in the Auction will be made and received on an open basis, and all other Qualified Bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder placing a

bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of a bid submitted in response to any successive bids made at the Auction (each, an "Overbid") will be disclosed to all other Qualified Bidders participating in the Auction. Each Qualified Bidder will be permitted what the Sellers reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction. The Auction will be conducted openly and shall be transcribed or recorded. The starting bid (the "Starting Bid") shall be the highest or best Qualified Bid, as determined by the Sellers in consultation with the Consultation Parties. If a Stalking Horse Bid is selected as the Starting Bid, any Overbid shall include the amount provided for in the Stalking Horse Bid(s), *plus* the Bid Protections, plus a minimum overbid increment of $500,000 or a lesser amount to be determined by the Sellers in their business judgment, in consultation with the Consultation Parties.

Pursuant to 18 U.S.C. §§ 156 and 157, bidders and their representatives may not communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction. All parties are prohibited from (i) engaging in any collusion with respect to the submission of any bid or the Auction, (ii) coordinating or joining with any other party on a bid or bids, or (iii) taking any other action to prevent a transparent and competitive auction process; *provided*, *that*, certain joint bids may be permitted as set forth herein. Each Qualified Bidder participating in the Auction shall confirm in writing and on the record at the Auction that (i) it has not engaged in any of the foregoing prohibited actions and (ii) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder.

All parties attending the Auction must keep the proceedings and results of the Auction confidential until the Sellers have closed the Auction; *provided*, *that*, parties may speak with clients or parties necessary to place their bid or increase it so long as such individuals are advised of the confidentiality restriction.

The Sellers shall conduct an Auction for the Sellers' businesses and assets on a consolidated or semi- consolidated basis pursuant to the Auction Rules. To the extent the Sellers conduct multiple auctions for different subgroupings of the Sellers' assets/businesses (each, a "Sub-Auction") at any Auction and a Qualified Bidder declines to participate in any specific Sub-Auction or Sub-Auctions, or any round of bidding for such specific Sub-Auctions, such Qualified Bidder shall still be permitted to offer a Bid in subsequent Sub-Auctions, including bids that include assets/businesses subject to a prior Sub-Auction, which includes the right to bid on groupings of assets/businesses that may include specific assets or businesses which were the subject of an earlier Sub-Auction. The Sellers may, in the exercise of their reasonable business judgment and in consultation with the other Consultation Parties, identify the highest or otherwise best Qualified Bid as the reserve bid for each Sub-Auction (each, a "Reserve Sub-Auction Bid" and the bidder submitting such bid, a "Reserve Sub-Auction Bidder"). The Sellers may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid in each Sub-Auction as a back-up bid (each, a "Back-Up Sub-Auction Bid" and the bidder submitting such bid, a "Back-Up Sub-Auction Bidder").

If the Sellers, in the exercise of their reasonable business judgment and in consultation with the other Consultation Parties, determine that pursuing a Sale Transaction pursuant to the Reserve Sub-Auctions Bid(s) will result in a higher or otherwise better value of the Sellers' businesses than pursuing a Sale Transaction pursuant to the highest or otherwise best Bid

14

received in the Auction of the Sellers' assets or business on a consolidated or semi- consolidated basis, then the Sellers may declare the Reserve Sub-Auction Bid(s) as Successful Bid(s) (and the Reserve Sub-Auction Bidder(s) as Successful Bidders) and the Back-Up Sub-Auction Bid(s) as the Back-Up Bid(s) (and the Back-up Sub-Auction Bidder(s) as Back-Up Bidder(s)).

The Sellers may, in the exercise of their business judgment and in consultation with the other Consultation Parties, identify the highest or otherwise best Qualified Bid (or any combination of Partial Bids comprising one Qualified Bid, as specified above) as the successful bid for the respective business or assets to be acquired (each, a "<u>Successful Bid</u>" and the bidder submitting such bid, a "<u>Successful Bidder</u>"). The Sellers may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid (or any combination of Partial Bids comprising one Qualified Bid, as specified above) as a back-up bid (a "<u>Back- Up Bid</u>" and the bidder submitting such bid, a "<u>Back-Up Bidder</u>").

Within one (1) business day after the Auction, or as soon as reasonably practicable thereafter, each Successful Bidder shall (i) submit to the Sellers fully executed documentation memorializing the terms of the Successful Bid such Successful Bidder submitted and (ii) unless otherwise agreed in the purchase agreement between the Sellers and a Successful Bidder, submit by transfer of immediately available funds to an account identified by the Sellers any amount required to increase the Successful Bidder's Good Faith Deposit to an amount equal to ten percent (10%) of the Purchase Price contained in the Successful Bid, if the amount of the Good Faith Deposit previously delivered by the Successful Bidder is less than such amount. For the avoidance of doubt, and notwithstanding anything to the contrary in these Bidding Procedures or any Court order to the contrary, any such increase to the Good Faith Deposit by any Stalking Horse Bidders or other Qualified Bidders to such designated account shall only be for purposes of this process. No party, including any prepetition lender or postpetition lender, have or shall have any lien, claim, or right with respect to such funds which shall not be available for distribution to the Sellers' creditors, unless and until such funds become property of the Sellers' estates in accordance with the terms of these Bidding Procedures. A Successful Bid may not be assigned to any party without the consent of the Sellers.

At any time before the designation of a Successful Bid and Back-Up Bid, if any, the Sellers, in consultation with the Consultation Parties, reserve the right to and may reject such Qualified Bid(s) (other than any Stalking Horse Bids) if such Qualified Bid(s), in the Sellers' reasonable business judgment, is/are: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the applicable Sale Transaction; or (iii) contrary to the best interests of the Sellers and their estates.

### Post-Auction Process

Within one (1) business day after the conclusion of the Auction, or as soon as reasonably practicable thereafter, the Sellers shall file with the Court a notice of the Successful Bid(s), Successful Bidder(s), Back-Up Bid(s), and Back-Up Bidder(s).

Within two (2) business days after the Auction, the Sellers shall direct the Escrow Agent to return the Good Faith Deposit of any bidder (including any Stalking Horse Bidder), together

with interest accrued thereon, who is not declared a Successful Bidder or Back-Up Bidder. The Good Faith Deposit of each Back-Up Bidder shall be returned, together with interest accrued thereon, within two (2) business days after the consummation of the Sale Transaction with the Successful Bidder for the assets bid upon by such Back-Up Bidder. Upon the authorized return of any such Good Faith Deposit, the bid of such Potential Bidder, Qualified Bidder or Back-Up Bidder, as applicable, shall be deemed revoked and no longer enforceable.

Each Successful Bidder's Good Faith Deposit shall be applied against the cash portion of the purchase price of such bidder's Successful Bid upon the consummation of the Sale Transactions.

In addition to the foregoing, the Good Faith Deposit of a Qualified Bidder will be forfeited to the Sellers if (i) the Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted herein, during the time the Qualified Bid remains binding and irrevocable or (ii) the Qualified Bidder is selected as a Successful Bidder or Back-Up Bidder and refuses or fails to enter into the required definitive documentation or to consummate the Sale Transactions according to these Bidding Procedures. In addition to receipt of a Good Faith Deposit, the Sellers specifically reserve the right to seek all additional available damages from a defaulting Successful Bidder or Back-Up Bidder.

Notwithstanding the foregoing, the Good Faith Deposit, including the amount thereof, and any remedies against a Stalking Horse Bidder shall be governed by the applicable Stalking Horse Agreement, if any.

## Notices Regarding Assumption and Assignment

The Debtors shall provide all notices regarding the proposed assumption and assignment of contracts and leases of the Debtors in accordance with the Assumption and Assignment Procedures included in the Bidding Procedures Order.

## Sale Objections and Hearing

With respect to Debtor Assets, objections to the Sale Transactions (each, a "Sale Objection"), shall: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and if applicable, provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court; and (vi) be served upon (a) proposed counsel to the Debtors, Winston & Strawn LLP, 35 West Wacker Drive, Chicago, IL 60601, Attn: Daniel J. McGuire (dmcguire@winston.com) and Laura Krucks (lkrucks@winston.com), (b) counsel to any statutory committee appointed in the chapter 11 cases, and (c) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas, 77002, Attn: Hector Duran, Esq. and Stephen Statham, Esq. by **June 8, 2022 at 4:00 p.m. (prevailing Central Time)**; *provided*, *that*, the Debtors may extend the Sale Objection Deadline as the Debtors deem appropriate in the exercise of their reasonable business judgment. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the applicable Sale Hearing.

16

An appropriate representative of each Successful Bidder shall appear at the applicable Sale Hearing and be prepared, if necessary, to have such representative(s) testify in support of a Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder as part of the proposed transaction.

Any party who fails to timely file with the Court a Sale Objection will be forever barred from asserting any objection to the applicable sale of Debtor Assets, or to the consummation and performance of a sale transaction contemplated by a purchase agreement with a Debtor and a Successful Bidder, including the transfer of the Debtor Assets to a Successful Bidder, free and clear of all claims and interests pursuant to section 363(f) of the Bankruptcy Code. Failure to object shall constitute consent for the purposes of section 363(f) of the Bankruptcy Code. Any objection filed after the Sale Objection Deadline will not be considered by the Court.

## Consent to Jurisdiction and Authority as Condition to Bidding

All Potential Bidders (including any Stalking Horse Bidders) that participate in the bidding process with respect to Debtor Assets shall be deemed to have (i) consented to the core jurisdiction of the Court to enter any order or orders, which shall be binding in all respects, in any way related to these Bidding Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transactions; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transactions; and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transactions if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

AmericasActive:16352465.7

## **Exhibit 2**

**Sale Notice**

|  | ) |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | ) | Case No. 22-30987 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## <u>NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.     On April 12, 2022, ION Geophysical Corporation and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "<u>Debtors</u>") filed with the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") a motion [Docket No. [ __ ]] (the "<u>Motion</u>") for the entry of an order (the "<u>Bidding Procedures Order</u>")[2] (i) approving (a) the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as <u>Exhibit 1</u>; (b) authorizing the Debtors to designate one or more stalking horse bidders (the "<u>Stalking Horse Bidders</u>") and offer each such bidder certain Bid Protections (as defined in the Motion); (c) setting the deadline for potential bidders to submit a proposal to purchase the Debtors' businesses or assets (the "<u>Bid Deadline</u>"), authorizing and scheduling an auction (the "<u>Auction</u>"), and authorizing and scheduling hearings with respect to the approval of a proposed sale transaction (the applicable "<u>Sale Hearing</u>"); (d) authorizing and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115).  The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Bidding Procedures Order, and the Bidding Procedures, as applicable. Any summary of the Bidding Procedures Order or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

approving the form and manner of the Sale Notice; (e) authorizing and approving the Cure Notice to Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "Cure Costs"); and (f) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "Assumption and Assignment Procedures"); (ii) authorizing the sale of certain of the Debtors' assets, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code following the sale process and completion of the Auction (collectively, the "Sale Transactions"); and (iii) granting related relief.

2.      On [____], 2022, the Court entered the Bidding Procedures Order [Docket No. [____]].

### Important Dates and Deadlines

- **Bid Deadline. Any person or entity interested in participating in the Auction must submit a Qualified Bid on or before June 2, 2022 at 5:00 p.m. (prevailing Central Time) (the "Bid Deadline").**

- **Auction. An Auction, if necessary, has been scheduled for June 6, 2022 at 10:00 a.m. (prevailing Central Time).**

- **Sale Objection Deadline. Objections to the Sale Transactions, including any objection to the sale of the Debtors' business free and clear of all claims and interests must be (i) filed in accordance with the Bidding Procedures and (ii) filed with the Court by no later than June 8, 2022 at 4:00 p.m. (prevailing Central Time) (the "Sale Objection Deadline").**

- **Contract Objection Deadline.  Objections to any proposed assumption or assignment of an Assigned Contract must be (i) filed in accordance with the Bidding Procedures and (ii) filed with the Court by no later than June 13, 2022 at 4:00 p.m. (prevailing Central Time) (the "Contract Objection Deadline").**

- **Sale Hearing. A hearing to approve the Sale Transactions shall be held before the Court before the Honorable Marvin Isgur on June 16, 2022 at [_]:00 [a.m./p.m.] (prevailing Central Time) (the "Sale Hearing").**

### Notice to Holders of Consent Rights, Preferential Purchase Rights and Similar Rights of

## Sale Objection Deadline and Contract Objection Deadline

3.      The Debtors may assign to a Successful Bidder, pursuant to an asset purchase agreement, certain contracts, agreements, leases and other assets, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of all **liens, claims, interests, and encumbrances** (other than certain permitted post-closing liabilities, liens, or as otherwise provided in the applicable purchase agreement). Subject to approval by the Court, if any party objects to such assignment, including any objection based on any alleged approval or consent right or anti-assignment provision contained in or applicable to any contract, lease, or other agreement (a "Consent Right"), then such party must file with the Court an objection identifying (i) the contract(s), lease(s), or other agreement(s), (ii) the basis for objecting to the assignment of such contract(s), lease(s), or other agreement(s), and (iii) all supporting documentation (each, an "Assignment Objection"), no later than the Sale Objection Deadline or the Contract Objection Deadline, as applicable.

4.      In addition, the Debtors may assign to a Successful Bidder, pursuant to an asset purchase agreement, certain contracts, agreements, leases or other assets, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of any preferential purchase rights, rights of first refusal, drag-along rights, tag-along rights, and other similar rights, if any, that are applicable to the transfer of the Debtors' assets in connection with a Sale Transaction (each a "Preferential Purchase Right"). Subject to approval by the Court, if any purported holder of a Preferential Purchase Right objects to such transfer, including on account of any alleged Preferential Purchase Right contained in or applicable to any contract, lease, or other agreement, then such holder must file with the Court an

objection identifying (i) the assets subject to such Preferential Purchase Right(s), (ii) the applicable agreement, document, or statute giving rise to such Preferential Purchase Right(s), (iii) the portion of the agreement, document, or statute giving rise to such Preferential Purchase Right(s), and (iv) all other supporting documentation (a "Rights Objection"), no later than the Sale Objection Deadline or the Contract Objection Deadline, as applicable.

5.     **IF A PARTY FILES AN ASSIGNMENT OBJECTION OR RIGHTS OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH ABOVE, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE SALE HEARING, SUCH OBJECTION WILL BE HEARD BY THE COURT AT THE SALE HEARING.**

6.     **Any person failing to timely file an Assignment Objection or Rights Objection, as applicable, will be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the assets to be sold, assumed, and/or assigned in connection with a Sale Transaction, free and clear of all liens, claims, interests, and encumbrances, including Consent Rights and Preferential Purchase Rights (other than certain permitted liens), and from asserting any alleged Preferential Purchase Rights with respect to a Sale Transaction, and (ii) deemed to consent to and approve the transfer, sale, and assumption and/or assignment of the Debtors' right, title, and interest in, to and under such assets free and clear of all liens, claims, interests, and encumbrances, including Consent Rights and Preferential Purchase Rights (other than certain permitted liens), regardless of whether such consent must be in writing pursuant to the terms of any contract, lease, or other agreement.**

7.     If any person files an Assignment Objection or Rights Objection in accordance

herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Assignment Objection or Rights Objection, as applicable (and serving such response on the objecting party) at any time prior to the Sale Hearing. Upon the filing of such response to such objection, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted. Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such objections, and all such rights of the Debtors are expressly preserved.

**Additional Information**

8. Any party interested in submitting a bid should contact the Debtors' investment banker, Perella Weinberg Partners, Attn: Douglas McGovern (dmcgovern@pwpartners.com), Jakub Mleczko (jmleczko@pwpartners.com) and BJ Walker (BWalker@tphco.com). Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Epiq Corporate Restructuring LLC, located at https://dm.epiq11.com/IONGeophysical.

9. Copies of the Motion, the Bidding Procedures Order, and the Bidding Proceduresmay be obtained free of charge from the Case Website.

**Reservation of Rights**

10. Except as otherwise set forth in the Bidding Procedures, the Sellers reserve the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law to modify these Bidding Procedures; waive terms and conditions set forth herein with respect to all Potential Bidders (as defined below); extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the

5

assumptions set forth herein; *provided*, *that*, the Sellers shall not be authorized to make material modifications to these Bidding Procedures with respect to the Debtor Assets without further order of the Court. The Sellers may provide reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Sellers' businesses, in each case, to the extent not materially inconsistent with these Bidding Procedures and the Bidding Procedures Order, as applicable. All parties reserve their rights to seek Court relief with regard to the Auction, these Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline). In addition, the Debtors reserve their right to cancel the bidding procedures and the Auction with respect to any of the Debtors' assets if the Debtors determine, in their reasonable business judgment, in a manner consistent with their fiduciary duties, and in consultation with the Consultation Parties, to proceed with a private sale of such assets.

11.     **FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

12.     **THE FAILURE OF ANY PERSON OR ENTITY TO FILE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER BY THE SALE OBJECTION DEADLINE SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, THE ORDER APPROVING THE SALE TRANSACTIONS, THE PROPOSED SALE TRANSACTIONS, OR ANY OTHER AGREEMENT EXECUTED BY THE DEBTORS AND A SUCCESSFUL BIDDER AT THE AUCTION.**

Dated: [_____], 2022
Houston, Texas

**WINSTON & STRAWN LLP**

Katherine A. Preston (TX Bar No. 24088255)
800 Capitol St., Suite 2400
Houston, Texas 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
Email: kpreston@winston.com

and

Timothy W. Walsh (*pro hac vice* pending)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
E-mail: twwalsh@winston.com

and

Daniel J. McGuire (*pro hac vice* pending)
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-3733
Facsimile: (312) 558-5700
Email: dmcguire@winston.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Exhibit 3**

**Cure Notice**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | ) | Case No. 22-30987 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.       On April 12, 2022, ION Geophysical Corporation and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Court") a motion [Docket No. [___]] (the "Motion") for the entry of an order (the "Bidding Procedures Order")[2] (i) approving (a) the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as Exhibit 1; (b) authorizing the Debtors to designate one or more stalking horse bidders (the "Stalking Horse Bidders") and offer each such bidder certain Bid Protections (as defined in the Motion); (c) setting the deadline for potential bidders to submit a proposal to purchase the Debtors' businesses or assets (the "Bid Deadline"), authorizing and scheduling an auction (the "Auction"), and authorizing and scheduling hearings with respect to the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115).  The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Bidding Procedures Order, and the Bidding Procedures, as applicable. Any summary of the Bidding Procedures Order or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

approval of a proposed sale transaction (the applicable "Sale Hearing"); (d) authorizing and approving the form and manner of the Sale Notice; (e) authorizing and approving the Cure Notice to Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "Cure Costs"); and (f) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "Assumption and Assignment Procedures"); (ii) authorizing the sale of certain of the Debtors' assets, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code following the sale process and completion of the Auction (collectively, the "Sale Transactions"); and (iii) granting related relief.(d) setting the deadline for potential bidders to submit a proposal to purchase the Debtors' businesses or assets (the "Bid Deadline"), authorizing and scheduling an auction (the "Auction"), authorizing and scheduling hearings with respect to the approval of a proposed sale transaction (the applicable "Sale Hearing"); (e) authorizing and approving the form and manner of the Sale Notice; (f) authorizing and approving the Cure Notice to Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "Cure Costs"); (g) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "Assumption and Assignment Procedures"); (ii) authorizing the sale of certain of the Debtors' assets, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code following the sale process and completion of the Auction (collectively, the "Sale Transactions"); and (iii) granting related relief.

2.       Each of the Assigned Contracts that may be assumed and assigned in connection with the Sale Transactions with a Successful Bidder and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A** and **Exhibit B** hereto.  The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Assigned Contracts.

3.       The inclusion of any contract or lease on **Exhibit A** or **Exhibit B** shall not constitute or be deemed a determination or admission by the Debtors that such contract or other document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

4.       Notwithstanding the inclusion of any lease or contract on **Exhibit A** or **Exhibit B**, a Successful Bidder is not bound to accept assignment of any Assigned Contract, and may amend the schedule of Assigned Contracts to remove any contract or lease.

5.       If (a) the Debtors identify (i) additional contracts or leases to be assumed and assigned to a Successful Bidder or (ii) modifications that need to be made to a proposed Cure Cost previously stated in the Cure Notice, or (b) a Successful Bidder designates any additional contracts or leases not previously included on this Cure Notice for assumption and assignment, the Debtors shall promptly file with the Court and serve by first class mail on the applicable Contract Counterparty a Supplemental Cure Notice in accordance with the Bidding Procedures Order.

## **Objections**

6.       Any objection to the proposed assumption or assignment of an Assigned Contract identified on **Exhibit A** or **Exhibit B**, including any objection to the proposed Cure Cost, the provision of adequate assurance of future performance, an Assignment Objection (as defined in the Bidding Procedures Order), or a Rights Objection (as defined in the Bidding Procedures Order) must:

(a)       be in writing;

3

(b)     state the name and address of the objecting party and the amount and nature of the claim or interest of such party;

(c)     state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection;

(d)     conform to the Bankruptcy Rules and the Local Rules; and

(e)     be filed with the Court no later than **[_____], 2022 at 4:00 p.m. (prevailing Central Time)**.

7.      **IF NO OBJECTION IS TIMELY RECEIVED WITH RESPECT TO AN ASSIGNED CONTRACT (THE "CONTRACT OBJECTION"): (I) THE CONTRACT COUNTERPARTY TO SUCH ASSIGNED CONTRACT SHALL BE DEEMED TO HAVE CONSENTED TO THE ASSUMPTION BY THE DEBTORS AND ASSIGNMENT TO SUCCESSFUL BIDDER OF THE ASSIGNED CONTRACT, AND BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO SUCH ASSUMPTION AND ASSIGNMENT (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE BY THE SUCCESSFUL BIDDER); (II) ANY AND ALL DEFAULTS UNDER THE ASSIGNED CONTRACT AND ANY AND ALL PECUNIARY LOSSES RELATED THERETO SHALL BE DEEMED CURED AND COMPENSATED PURSUANT TO BANKRUPTCY CODE SECTION 365(B)(1)(A) AND UPON PAYMENT OF THE CURE COSTS SET FORTH IN THE CURE NOTICE FOR SUCH ASSIGNED CONTRACT; AND (III) THE CONTRACT COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OTHER CLAIMS RELATED TO SUCH ASSIGNED CONTRACT AGAINST THE DEBTORS AND THEIR ESTATES OR THE SUCCESSFUL BIDDER, OR THE PROPERTY OF ANY OF THE THEM, THAT EXISTED PRIOR TO THE ENTRY OF THE ORDER RESOLVING SUCH CONTRACT OBJECTION AND ANY SALE ORDER.**

**<u>Sale Hearing</u>**

8.      The Debtors will seek to assume and assign the Assigned Contracts at the applicable

hearing to approve the Sale Transactions (the applicable "<u>Sale Hearing</u>") that is scheduled to

commence on **June 16, 2022 at [_]:00 [a.m./p.m.] (prevailing Central Time)** before the

Honorable [_____] of the United States Bankruptcy Court for the Southern District of Texas (the

"<u>Court</u>"), 515 Rusk Street, Houston, TX 77002. Objections, if any, that cannot otherwise be

resolved by the parties, will be heard at a hearing scheduled prior to any scheduled closing of the

Sale Transactions, as determined by the Debtors in accordance with the Bidding Procedures Order.

**Additional Information**

9.       Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures, may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by the Debtors' claims and noticing agent, Epiq Corporate Restructuring LLC, located at https://dm.epiq11.com/IONGeophysical.

Dated: [____], 2022
Houston, Texas

**WINSTON & STRAWN LLP**

Katherine A. Preston (TX Bar No. 24088255)
800 Capitol St., Suite 2400
Houston, Texas 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
Email: kpreston@winston.com

and

Timothy W. Walsh (*pro hac vice* pending)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
E-mail: twwalsh@winston.com

and

Daniel J. McGuire (*pro hac vice* pending)
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-3733
Facsimile: (312) 558-5700
Email: dmcguire@winston.com

*Proposed Counsel to the Debtors and Debtors in Possession*