**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | ) Case No. 22-30987 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. _____** |
| | ) |

**JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ION GEOPHYSICAL CORPORATION AND ITS DEBTOR AFFILIATES**

Houston, Texas
April 12, 2022

**WINSTON & STRAWN LLP**
Katherine A. Preston (TX Bar No. 2968884)
800 Capitol Street, Suite 2400
Houston, Texas 77002
Telephone:      (713) 651-2600
Facsimile:      (713) 651-2700
Email:   kpreston@winston.com

– and –

Timothy W. Walsh (*pro hac vice* pending)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
E-mail:   twwalsh@winston.com

– and –

Daniel J. McGuire (*pro hac vice* pending)
Laura Krucks (*pro hac vice* pending)
35 W Wacker Drive
Chicago, IL 60601
Telephone:      (312) 558-5600
Facsimile:      (312) 558-5700
Email:   dmcguire@winston.com
         lkrucks@winston.com

*Proposed Counsel for the Debtors and Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax-identification number are:  ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115).  The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,  COMPUTATION OF
     TIME, GOVERNING LAW, AND OTHER REFERENCES ............................ 1
    A.    Defined Terms ................................................................................... 1
    B.    Rules of Interpretation ................................................................... 15
    C.    Computation of Time ...................................................................... 16
    D.    Governing Law ............................................................................... 16
    E.    Reference to Monetary Figures ...................................................... 16
    F.    Reference to the Debtors or the Reorganized Debtors .................... 16
    G.    Controlling Document .................................................................... 17
    H.    Consultation, Information, Notice, and Consent Rights .................. 17

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY CLAIMS ....... 17
    A.    Administrative Claims .................................................................... 17
    B.    Professional Fee Claims ................................................................. 18
    C.    DIP Claims ..................................................................................... 20
    D.    Priority Tax Claims ........................................................................ 20
    E.    Payment of Statutory Fees ............................................................. 20
    F.    Payment of Restructuring Expenses ............................................... 20

ARTICLE III. CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND
     INTERESTS ................................................................................... 20
    A.    Classification In General ................................................................ 20
    B.    Formation of Debtor Groups for Convivence Only ......................... 21
    C.    Summary of Classification of Claims and Interest .......................... 21
    D.    Treatment of Classes of Claims and Interests ................................ 22
    E.    Special Provision Governing Unimpaired Claims ........................... 26
    F.    Elimination of Vacant Classes ....................................................... 26
    G.    Voting Classes; Presumed Acceptance by Non-Voting Classes ....... 26
    H.    Intercompany Interests ................................................................... 26
    I.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
     Code ............................................................................................... 26
    J.    Controversy Concerning Impairment .............................................. 27
    K.    Subordinated Claims and Interests ................................................. 27
    L.    No Waiver ...................................................................................... 27

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN ............................ 27
    A.    General Settlement of Claims and Interests .................................... 27
    B.    Restructuring Transactions ............................................................ 28
    C.    Reorganized Debtors ...................................................................... 28
    D.    Sources of Consideration for Plan Distributions ............................ 28
    E.    Vesting of Assets in the Reorganized Debtors ................................ 30
    F.    Exemption from Registration Requirements ................................... 30
    G.    Cancellation of Existing Securities and Agreements ....................... 30
    H.    Corporate Action ............................................................................ 31
    I.    Corporate Existence ....................................................................... 31

J.      New Organizational Documents ....................................................... 32
K.      Indemnification Provisions .............................................................. 32
L.      Effectuating Documents; Further Transactions ............................... 32
M.      Section 1146 Exemption .................................................................. 33
N.      Directors and Officers of the Reorganized Debtors ......................... 33
O.      Director and Officer Liability Insurance ......................................... 33
P.      Management Incentive Plan ............................................................. 34
Q.      Employee Obligations ..................................................................... 34
R.      Preservation of Causes of Action .................................................... 34

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
        ........................................................................................................... 35
A.      Assumption and Rejection of Executory Contracts and Unexpired Leases ...... 35
B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases ........ 36
C.      Cure of Defaults and Objections to Cure and Assumption ............... 37
D.      Royalty Cure Claims ....................................................................... 38
E.      Preexisting Obligations to the Debtors under Executory Contracts and
        Unexpired Leases ............................................................................ 38
F.      Insurance Policies ........................................................................... 38
G.      Reservation of Rights ...................................................................... 39
H.      Nonoccurrence of Effective Date .................................................... 39
I.      Contracts and Leases Entered into after the Petition Date ............... 39

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............................... 39
A.      Distributions on Account of Claims and Interests Allowed as of the Effective
        Date ................................................................................................. 39
B.      Disbursing Agent ............................................................................ 40
C.      Delivery of Distributions and Undeliverable or Unclaimed Distributions ........ 40
D.      Manner of Payment ......................................................................... 42
E.      Compliance with Tax Requirements ................................................ 43
F.      Allocations ...................................................................................... 43
G.      No Postpetition Interest on Claims .................................................. 43
H.      Foreign Currency Exchange Rate .................................................... 43
I.      Setoffs and Recoupment ................................................................. 43
J.      Claims Paid or Payable by Third Parties ......................................... 44

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
        DISPUTED CLAIMS ......................................................................... 45
A.      Allowance of Claims ....................................................................... 45
B.      Claims Administration Responsibilities ........................................... 45
C.      Estimation of Claims and Interests .................................................. 45
D.      Adjustment to Claims or Interests without Objection ....................... 46
E.      Time to File Objections to Claims ................................................... 46

F.      Disallowance of Claims ................................................................... 46
G.      Amendments to Claims or Interests ................................................. 46
H.      No Distributions Pending Allowance .............................................. 46

I.     Distributions After Allowance ........................................................................ 47
J.     No Interest.................................................................................................... 47

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS
........................................................................................................................ 47
    A.     Discharge of Claims and Termination of Interests ........................................... 47
    B.     Release of Liens ............................................................................................ 48
    C.     Releases by the Debtors ................................................................................. 48
    D.     Releases by the Releasing Parties ................................................................... 50
    E.     Exculpation .................................................................................................. 51
    F.     Injunction .................................................................................................... 52
    G.     Protections Against Discriminatory Treatment ................................................. 52
    H.     Document Retention ...................................................................................... 53
    I.     Reimbursement or Contribution ..................................................................... 53

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN ......... 53
    A.     Conditions Precedent to the Effective Date ...................................................... 53
    B.     Waiver of Conditions .................................................................................... 54
    C.     Effect of Failure of Conditions ...................................................................... 54
    D.     Substantial Consummation ............................................................................ 55

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN ...... 55
    A.     Modification and Amendments........................................................................ 55
    B.     Effect of Confirmation on Modifications ......................................................... 55
    C.     Revocation or Withdrawal of Plan .................................................................. 55

ARTICLE XI. RETENTION OF JURISDICTION.................................................................. 56

ARTICLE XII. MISCELLANEOUS PROVISIONS ............................................................... 58
    A.     Immediate Binding Effect............................................................................... 58
    B.     Additional Documents ................................................................................... 58
    C.     Statutory Committee and Cessation of Fee and Expense Payment ..................... 58
    D.     Reservation of Rights..................................................................................... 59
    E.     Successors and Assigns................................................................................... 59
    F.     Notices ........................................................................................................ 59
    G.     Term of Injunctions or Stays.......................................................................... 60
    H.     Entire Agreement .......................................................................................... 60
    J.     Plan Supplement ........................................................................................... 61
    K.     Nonseverability of Plan Provisions.................................................................. 61
    L.     Votes Solicited in Good Faith......................................................................... 61
    M.     Closing of Chapter 11 Cases.......................................................................... 62
    N.     Waiver or Estoppel ....................................................................................... 62

## **INTRODUCTION**

ION Geophysical Corporation, I/O Marine Systems, Inc., ION Exploration Products (U.S.A.), Inc., and GX Technology Corporation (each a "<u>Debtor</u>" and, collectively, the "<u>Debtors</u>") jointly propose this chapter 11 plan of reorganization (the "<u>Plan</u>") pursuant to section 1121(a) of the Bankruptcy Code and for the resolution of the outstanding claims against, and equity interests in, the Debtors.  Although proposed jointly for administrative purposes, the Plan constitutes a separate plan for each of the foregoing entities and each of the foregoing entities is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Holders of Claims or Interests may refer to the *Disclosure Statement Relating to the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* for a discussion of the Debtors' history, businesses, properties, assets, results of operations, projections, historical financial information, risk factors, a summary and analysis of the Plan, the Restructuring Transactions, and certain related matters.

**ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.**

## **ARTICLE I.**
## **DEFINED TERMS, RULES OF INTERPRETATION,**
## **COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES**

A.    *Defined Terms*

As used in the Plan, capitalized terms have the meanings set forth below.

1.    "*Administrative Claim*" means a Claim for the costs and expenses of administration of the Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

2.    "*Administrative Claim Bar Date*" means the deadline for filing requests for payment of Administrative Claims, which shall be 30 days after the Effective Date.

3.    "*Affiliate*" means affiliate as defined in section 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

4.    "*Allowed*" means with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date or the Administrative Claim Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the

Plan or a Final Order of the Bankruptcy Court; provided that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. For the avoidance of doubt: (x) a Proof of Claim Filed after the Claims Bar Date or the Administrative Claim Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. "Allow" and "Allowing" shall have correlative meanings.

5.     "*Asset Purchase Agreement(s)*" means any asset purchase agreements executed by and between the Debtors or their Affiliates and any Purchaser thereunder for the sale of certain of the Debtors' or their Affiliates assets or equity interests to any Purchaser, together with all exhibits, appendices, supplements, documents, and agreements ancillary thereto, in each case as amended, modified, or supplemented from time to time, which agreement(s) shall be subject to approval of the Bankruptcy Court.

6.     "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other Claims, actions, remedies, or Causes of Action that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law to avoid, recover, or subordinate a prepetition transaction, including actions, remedies, or Claims and Causes of Action under sections 502, 510, 542, 544, 545, 547 through and including 553, and 724(a) of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

7.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

8.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas or such other court having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of the Judicial Code, the United States District Court for the Southern District of Texas.

9.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and the general, local, and chambers rules of the Bankruptcy Court.

10.      "*Business Day*" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or other day on which commercial banks in the State of New York are closed for business as a result of a federal, state, or local holiday.

11.      "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and other similar items.

12.      "*Cause of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, choate or inchoate, foreseen or unforeseen, existing or hereinafter arising, contingent or noncontingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

13.      "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for all of the Debtors in the Bankruptcy Court.

14.      "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

15.      "*Claims Bar Date*" means the dates established by the Bankruptcy Court by which Proofs of Claim must be Filed with respect to such Claims, other than Claims required to be Filed by the Administrative Claims Bar Date or other Claims or Interests for which the Bankruptcy Court entered an order excluding the Holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

16.      "*Claims Objection Deadline*" means the deadline for objecting to a Claim asserted against a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by an order of the Bankruptcy Court for objecting to such Claims.

17.      "*Claims Register*" means the official register of Claims maintained by the Solicitation Agent or the clerk of the Bankruptcy Court.

18.     "*Class*" means a category of Holders of Claims or Interests as set forth in <u>Article III</u> of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

19.     "*Committee*" means any official committee of unsecured creditors appointed in the Chapter 11 Cases.

20.     "*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

21.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

22.     "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

23.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and providing final approval of the Disclosure Statement.

24.     "*Consummation*" means the occurrence of the Effective Date.

25.     "*Cure*" or "*Cure Claim*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or an Unexpired Lease) that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

26.     "*Cure Notice*" means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include:  (a) procedures for objection to proposed assumptions of Executory Contacts and Unexpired Leases; (b) Cure Claims to be paid in connection therewith; and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

27.     "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") maintained by the Debtors as of the Petition Date for liabilities against any of the Debtors' current or former directors, managers, and officers.

28.     "*Definitive Documents*" means the definitive documents and agreements governing the Restructuring Transactions (including any related orders, agreements, instruments, schedules, or exhibits) that are contemplated by and referenced in the Plan (as amended, modified, or supplemented from time to time), including but not limited to: (a) the DIP Documents; (b) the Plan; (c) the Disclosure Statement; (d) the Plan Supplement; (e) the Asset Purchase Agreement(s), if any; (f) the Confirmation Order; (g) the Disclosure Statement Order; (h) the New Common Stock Documents, (i) the Exit Facility Documents, if any; and (j) any other documents, instruments,

schedules or exhibits described in, related to, contemplated in, or necessary to implement, each of the foregoing.

29.     "*DIP Agent*" means Ankura Trust Company, LLC, or any successor thereto, as administrative and collateral agent under the DIP Term Sheet and the other DIP Documents, solely in its capacity as such.

30.     "*DIP Claims*" means, collectively, the New Money DIP Claims and any other Claims derived from or based upon the DIP Documents.

31.     "*DIP Documents*" means the DIP Term Sheet, the DIP Orders, and any amendments, modifications, supplements thereto, and together with any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, amendments and restatements, supplements or modifications of any of the foregoing) executed pursuant thereto.

32.     "*DIP Facility*" means the New Money DIP Loans.

33.     "*DIP Motion*" means the motion seeking approval by the Bankruptcy Court of the DIP Facility and the use of cash collateral and entry of the DIP Orders.

34.     "*DIP Lenders*" means those Supporting RCF Lenders that have provided the DIP Facility.

35.     "*DIP Orders*" means, collectively, the interim and final orders entered by the Bankruptcy Court authorizing the Debtors to enter into the DIP Facility on the terms set forth in the DIP Term Sheet and the other DIP Documents and incur postpetition obligations thereunder.

36.     "*DIP Term Sheet*" means the term sheet setting forth the terms of the DIP Facility attached as Exhibit C to the Restructuring Support Agreement; as the same may be amended, modified, restated, or supplemented from time to time.

37.     "*Disbursing Agent*" means, as applicable, the Reorganized Debtors or the Entity or Entities selected by the Debtors or the Reorganized Debtors to make or facilitate distributions pursuant to the Plan.

38.     "*Disclosure Statement*" means the *Disclosure Statement For Joint Chapter 11 Plan of ION Geophysical Corporation and Its Affiliated Debtors*, including all exhibits and schedules thereto, in each case, as may be amended, supplemented, or modified from time to time, to be finally approved by the Confirmation Order.

39.     "*Disclosure Statement Order*" means the order of the Bankruptcy Court conditionally approving the Disclosure Statement and the Solicitation Materials.

40.     "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

41.     "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Effective Date, with the first such date occurring on or as soon as is reasonably practicable after the Effective Date, upon which the Disbursing Agent shall make distributions to Holders of Allowed Claims and Interests entitled to receive distributions under the Plan.

42.     "*Distribution Record Date*" means, other than with respect to Holders of public Securities the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive distributions under the Plan, which date shall be the Effective Date, or such other date as is announced by the Debtors or designated in a Final Order.  The Distribution Record Date shall not apply to any public Securities the Holders of which shall receive a distribution in accordance with the customary procedures of the DTC.

43.     "*DTC*" means The Depository Trust Company.

44.     "*Effective Date*" means the date that is the first Business Day on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan; and (c) the Plan is declared effective by the Debtors.

45.     "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

46.     "*Estate*" means as to each Debtor, the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

47.     "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors, (c) any official committees appointed in the Chapter 11 Cases and each of their respective members; and (d) with respect to each of the foregoing, such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

48.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

49.     "*Exit Facility*" means a new facility of no less than $[●] to be provided to the Reorganized Debtors by certain of the RCF Lenders pursuant to the Exit Facility Documents.

50.     "*Exit Facility Documents*" means the loan agreement governing the Exit Facility (which shall be included in the Plan Supplement) including any amendments, modifications, supplements thereto, and any related notes, guarantees, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, amendments and restatements, supplements or modifications of any of the foregoing) executed pursuant thereto.

51. "*Federal Judgment Rate*" means the federal judgment rate in effect pursuant to 28 U.S.C. § 1961 as of the Petition Date, compounded annually.

52. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Solicitation Agent.

53. "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

54. "*Final Order*" means an order, ruling or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter which has: (a) not been reversed, vacated, stayed, modified, or amended, as entered on the docket in any Chapter 11 Case or on the docket of any court of competent jurisdiction, and as to which the time to appeal, petition for certiorari or move for reargument, reconsideration or rehearing has expired and no appeal, petition for certiorari or motion for reargument, reconsideration or rehearing has been timely filed or as to which any appeal, petition for certiorari or motion for reargument, reconsideration or rehearing has been withdrawn; or (b) as to which any appeal, petition for certiorari or motion for reargument, reconsideration or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, reargument, reconsideration or rehearing was sought, which resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order and will not preclude such order from being a Final Order.

55. "*General Unsecured Claim*" means any Claim that is not Secured and is not (a) an Administrative Claim, (b) a Professional Fee Claim, (c) an Other Secured Claim, (d) a Priority Tax Claim, (e) an Other Priority Claim, (f) a RCF Claim, (g) a Second Lien Notes Secured Claim, or (h) a DIP Claim.  For the avoidance of doubt, the Unsecured Notes Claims and the Second Lien Notes Deficiency Claims shall be treated as General Unsecured Claims.

56. "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

57. "*GUC Recovery Pool*" means Cash in the amount of $125,000 (the "Initial GUC Recovery Pool"); provided, that (i) if the aggregate fees and expenses of the advisors to the Committee incurred during the Chapter 11 Cases (the "Incurred Committee Professional Fees") is less than the aggregate fees and expenses for the advisors to the Committee set forth in the Initial DIP Budget (the "Committee Professional Fee Allocation"), then the Initial GUC Recovery Pool shall be increased by the difference between the Committee Professional Fee Allocation and the Incurred Committee Professional Fees and (ii) if the Incurred Committee Professional Fees is greater than the Committee Professional Fee Allocation, then the Initial GUC Recovery Pool shall be reduced by the difference between the Incurred Committee Professional Fees and the Committee Professional Fee Allocation (in each case, the results of the foregoing calculations shall be referred to as the "Final GUC Recovery Pool"); provided, further that the Final GUC Recovery Pool shall never be less than $0.

58. "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor, as applicable.

59.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

60.     "*Indemnification Provisions*" means each of the Debtors' indemnification provisions in place immediately prior to the Effective Date whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, or contracts for the current and former directors, officers, managers, employees, attorneys, other professionals, and agents of the Debtors and such current and former directors, officers, and managers' respective Affiliates.

61.     "*Initial DIP Budget*" has the meaning set forth in the DIP Orders.

62.     "*Intercompany Claim*" means any Claim held by a Debtor or an Affiliate of a Debtor against another Debtor arising before the Petition Date.

63.     "*Intercompany Interest*" means an Interest in any Debtor, or a direct or indirect subsidiary of any Debtor, other than an Interest in ION Geophysical.

64.     "*Interest*" means any interest, equity, or share in the Debtors, including all issued, unissued, authorized, or outstanding shares of capital stock and any other common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profit interests of an Entity, including all options, warrants, rights, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable Securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in an Entity whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, whether vested or unvested as of the Effective Date, including any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

65.     "*ION Geophysical*" means ION Geophysical Corporation.

66.     "*ION Geophysical Preferred Interests*" means all existing securities issued in the form of preferred stock by ION Geophysical.

67.     "*ION Geophysical Common Interests*" means all existing securities issued in the form of common stock by ION Geophysical.

68.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time.

69.     "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

70.     "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

71.     "*Management Incentive Plan*" means that certain management incentive plan of Reorganized ION Geophysical, which management incentive plan shall provide for up to 10.00% of the New Common Stock, determined on a fully diluted basis as of the Effective Date, for grants of equity and equity-based awards to officers, management, key employees, and directors of Reorganized ION Geophysical, and approved at the discretion of the New Board.

72.     "*Minimum Liquidity Threshold*" means that, as of the Effective Date, the Debtors balance sheet cash, excluding availability under the Exit Facility (if any), shall not be less than $4,000,000.

73.     "*New Board*" means the board of directors or the board of managers, as applicable, as of the Effective Date of Reorganized ION Geophysical, which shall include four (4) directors, three (3) of which shall be independent directors.  The identities of directors on the New Board shall be set forth in the Plan Supplement, to the extent known at the time of filing of the Plan Supplement.

74.     "*New Common Stock*" means the common equity interests in Reorganized ION Geophysical issued, distributed, or otherwise transferred pursuant to the Plan.

75.     "*New Common Stock Documents*" means any and all documents required to implement, issue, and distribute the New Common Stock.

76.     "*New Money DIP Claim*" means any Claim derived from or based upon the New Money DIP Loans.

77.     "*New Money DIP Loans*" means the new money term loans extended to the Debtors pursuant to the DIP Term Sheet, the DIP Orders, and the other DIP Documents, in an aggregate original principal amount up to $2,500,000.

78.     "*New Organizational Documents*" means the form of the certificates or articles of incorporation, bylaws, or such other applicable formation documents of the Reorganized Debtors.

79.     "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

80.     "*Other Secured Claim*" means any Secured Claim against the Debtors, including any Secured Tax Claim, other than a RCF Claim, a Second Lien Notes Claim, or a DIP Claim.

81.     "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

82.     "*Petition Date*" means the date on which each Debtor commences its Chapter 11 Case.

83.     "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims, Allowed Interests, or other eligible Entities under the Plan.

84.     "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules) to be Filed prior to the Confirmation Hearing, and any additional documents Filed prior to the Effective Date as amendments to the Plan Supplement, including the following, as applicable: (a) the New Organizational Documents; (b) the New Common Stock Documents; (c) to the extent known, the identities of the members of the New Board; (d) the Schedule of Rejected Executory Contracts and Unexpired Leases; (e) the Schedule of Assumed Executory Contracts and Unexpired Leases, (f) the Schedule of Retained Causes of Action, (g) the loan agreement for the Exit Facility, if any; and (h) a liquidation analysis and financial projections related to any assets not sold pursuant to any Asset Purchase Agreements.  The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement up to the Effective Date as set forth in the Plan. The Plan Supplement shall be deemed incorporated into and part of the Plan as if set forth herein in full, *provided* that in the event of a conflict between the Plan and the Plan Supplement, the Plan Supplement shall control in accordance with <u>Article I.G</u>.

85.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

86.     "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

87.     "*Professional*" means an Entity retained in the Chapter 11 Cases pursuant to and in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

88.     "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors as set forth in <u>Article II.B.3</u> of the Plan.

89.     "*Professional Fee Claim*" means all Administrative Claims for the compensation of retained professionals and the reimbursement of expenses incurred by such retained professionals through and including the Confirmation Date under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.

90.     "*Professional Fee Escrow Account*" means an account funded by the Debtors with Cash on the Effective Date in an amount equal to the total estimated Professional Fee Amount.

91.     "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

92.     "*Proof of Interest*" means a proof of Interest filed in any of the Debtors Chapter 11 Cases.

93. "*Purchaser*" means any entities identified as the proposed purchaser of any of the Debtors' or their Affiliates assets in accordance with the Asset Purchase Agreement(s), if any.

94. "*RCF Agent*" means Ankura Trust Company, LLC, or any successor thereto, as administrative and collateral agent under the Prepetition Revolving Credit Facility, solely in its capacity as such.

95. "*RCF Claim*" means any Claim derived from or based upon the RCF Credit Documents.

96. "*RCF Credit Agreement*" means that certain credit agreement, dated as of August, 2014, among the Debtors, GX Geoscience Corporation S. De R.L. De C.V., the RCF Lenders, and the RCF Agent, as amended, modified, restated, or supplemented from time to time.

97. "*RCF Credit Documents*" means the RCF Credit Agreement and the "Other Documents" as defined in the RCF Credit Agreement.

98. "*RCF Lenders*" means the lenders party to the RCF Credit Agreement.

99. "*RCF Loans*" means the loans outstanding under the RCF Credit Agreement.

100. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to a Claim or Interest, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

101. "*Related Party*" means, collectively, current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns, subsidiaries, affiliates, managed accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors, in each case solely in their capacities as such.

102. "*Released Claims*" means any Claims or Interests that have been released, satisfied, stayed, terminated, discharged, or are subject to exculpation pursuant to the Plan.

103. "*Released Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the RCF Agent, (d) the DIP Agent; (e) the RCF Lenders; (f) the DIP Lenders; (g) the Second Lien Notes Trustee; (h) the Second Lien Noteholders; (i) the Supporting Creditors; (j) each lender under the Exit Facility; (k) the current and former Affiliates of each Entity in clause (a) through (j); and (l) all Related Parties of each Entity in clause (a) through (k); *provided* that any Holder of a Claim or Interest that opts out of the releases shall not be a "Released Party."

104. "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Lenders; (d) the RCF Agent, (e) the Second Lien Notes Trustee; (f) the RCF Lenders; (g) the Second Lien Noteholders; (h) the

Supporting Creditors; (k) each lender under the Exit Facility; (l) all Holders of Claims or Interests that vote to accept the Plan; (m) all Holders of Claims or Interests that are deemed to accept the Plan who do not affirmatively opt out of the releases provided by the Plan; (n) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (o) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (p) all current and former Affiliates of each Entity in clause (a) through (p); and (q) all Related Parties of each Entity in clause (a) through (p).

105. "*Reorganized Debtors*" means the Debtors, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, amalgamation, consolidation, or otherwise, on the Effective Date.

106. "*Reorganized ION Geophysical*" means ION Geophysical, as reorganized pursuant to the Plan, or any successor or assign thereto, by merger, consolidation, or otherwise, on the Effective Date.

107. "*Required Supporting Creditors*" means, as of any date of determination, the Supporting Creditors who own or control as of such date at least 66.67% of the aggregate outstanding principal amount of the Second Lien Notes Claims held by the Supporting Creditors.

108. "*Restructuring Expenses*" shall have the meaning set forth in Article II.F of the Plan.

109. "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of April 12, 2022, by and among the Debtors, the Supporting Creditors, and any subsequent Entity that becomes party thereto, including all exhibits, schedules and other attachments thereto, as such agreement may be amended, modified, or supplemented from time to time.

110. "*Restructuring Transactions*" means the transactions described in <u>ARTICLE IV.B</u> of the Plan.

111. "*Royalty Contract*" means an Executory Contract pursuant to which the Debtors owe a royalty or a license fee to a third-party licensor in order to sell particular data sets to customers that include the licensed data.

112. "*Royalty Cure Claims*" means a Cure Claim on account of a Royalty Contract.

113. "*Rules*" means Rule 501(a)(1), (2), (3), and (7) of the Securities Act.

114. "*Sale Proceeds*" means all proceeds of the Sale Transaction(s) that the Debtors receive in accordance with the Asset Purchase Agreement(s), if any.

115. "*Sale Transactions*" means any sale of certain of the Debtors' or their Affiliates' assets to the Purchaser(s) that may be realized in accordance with the Asset Purchase Agreement(s), if any.

116.   "*Sale Transaction Closing*" means "Closing" as defined in the Asset Purchase Agreement(s), if any.

117.   "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any amendments, supplements, or modifications thereto) of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, which schedule shall be included in the Plan Supplement.

118.   "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule (including any amendments, supplements, or modifications thereto) of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, which schedule shall be included in the Plan Supplement.

119.   "*Schedule of Retained Causes of Action*" means the schedule of Causes of Action that shall vest in the Reorganized Debtors on the Effective Date, which, for the avoidance of doubt, shall not include any of the Causes of Action that are settled, released, or exculpated under the Plan.

120.   "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as such schedules may be amended, modified, or supplemented from time to time.

121.   "*Secured*" means when referring to a Claim: (a) secured by a lien on property in which any of the Debtors has an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a secured claim.

122.   "*Second Lien Noteholder*" means any Holder of a Second Lien Notes Claim.

123.   "*Second Lien Notes*" means those certain 8.00% senior secured second priority notes, due December 15, 2025, issued by ION Geophysical, with UMB Bank, National Association as Agent and Trustee.

124.   "*Second Lien Notes Claim*" means any Claim against a Debtor derived from or based upon the Second Lien Notes Indenture or any other agreement, instrument or document executed at any time in connection therewith and any guaranty thereof.

125.   "*Second Lien Notes Deficiency Claim*" means any Second Lien Notes Claim, or portion thereof, that is not Secured.

126.   "*Second Lien Notes Indenture*" means that certain instrument, dated as of April 20, 2021, between ION Geophysical, certain guarantors, and the Second Lien Notes Trustee, as amended, modified, restated, or supplemented from time to time.

127.    "*Second Lien Notes Secured Claim*" means any Second Lien Notes Claim, or portion thereof, that is Secured.

128.    "*Second Lien Notes Trustee*" means UMB Bank, National Association, as collateral agent and trustee under the Second Lien Notes Indenture.

129.    "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

130.    "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time, or any similar federal, state, or local law.

131.    "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

132.    "*Solicitation Agent*" means Epiq Corporate Restructuring, LLC, the notice, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases by Bankruptcy Court order.

133.    "*Solicitation Materials*" means, collectively, the solicitation materials with respect to the Plan.

134.    "*Supporting Creditors*" means, collectively, the Supporting RCF Lenders and the Supporting Second Lien Noteholders.

135.    "*Supporting Creditor Advisors*" means Ropes & Gray LLP, in its capacity as legal advisor to the Supporting Creditors.

136.    "*Supporting Second Lien Noteholders*" means, collectively, the Holders of, or investment advisors, sub-advisors, or managers of discretionary accounts that hold, Second Lien Notes Claims that are party to the Restructuring Support Agreement or that have executed a joinder or transfer agreement to the Restructuring Support Agreement.

137.    "*Supporting RCF Lenders*" means, collectively, the Holders of, or investment advisors, sub-advisors, or managers of discretionary accounts that hold, RCF Claims that are party to the Restructuring Support Agreement or that have executed a joinder or transfer agreement to the Restructuring Support Agreement.

138.    "*Trustee*" means any indenture trustee, collateral trustee, or other trustee or similar entity under the Second Lien Notes or Unsecured Notes, including any successors thereto.

139.    "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim or an Allowed Interest to a Holder that has not:  (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or the Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (d) timely taken any other action necessary to facilitate such distribution.

140.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

141.    "*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

142.    "*Unsecured Noteholder*" means any Holder of an Unsecured Notes Claim.

143.    "*Unsecured Notes*" means those certain 9.125% unsecured notes, due December 15, 2021, issued by ION Geophysical, with Wilmington Savings Fund Society, FSB, as Agent and Trustee.

144.    "*Unsecured Notes Claim*" means any Claim against a Debtor derived from or based upon the Unsecured Notes Indenture or any other agreement, instrument or document executed at any time in connection therewith and any guaranty thereof.

145.    "*Unsecured Notes Indenture*" means that certain instrument, dated as of April 28, 2016, between ION Geophysical, certain guarantors, and the Unsecured Notes Trustee, as amended by that certain First Supplemental Indenture, dated as of April 20, 2021, and as may be further amended, modified, restated, or supplemented from time to time.

146.    "*Unsecured Notes Trustee*" means Wilmington Savings Fund Society, FSB, as collateral agent and trustee under the Unsecured Notes Indenture.

B.    *Rules of Interpretation*

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, charters, bylaws, partnership agreements, limited liability company agreements, operating agreements, or other organizational documents or shareholders' agreements, as applicable, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and

15

Bankruptcy Rules; (9) any immaterial effectuating provisions may be interpreted by the Debtors or the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (15) captions and headings are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (16) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (17) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective Person or Entity that have such consent, acceptance, or approval rights, including by electronic mail.

C.      *Computation of Time*

Unless otherwise specifically stated herein, in computing any period of time prescribed or allowed by the Plan, unless otherwise set forth in the Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

D.      *Governing Law*

Except to the extent that the Bankruptcy Code or other federal law is applicable or to the extent that the Plan or the Plan Supplement document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflicts of laws thereof; *provided* that corporate or limited liability company governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.    *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, including the schedules or exhibits, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). The provisions of the Plan,  the Definitive Documents, and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; provided, that if there is determined to be any inconsistency between any provision of the Plan, the Definitive Documents, and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern.

H.    *Consultation, Information, Notice, and Consent Rights*

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights of the parties to the Restructuring Support Agreement with respect to the form and substance of the Plan, all exhibits to the Plan, the Plan Supplement, and all other Definitive Documents, including any amendments, restatements, supplements,  or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A of the Plan) and fully enforceable as if stated in full herein.

Failure to reference the rights referred to in the immediately preceding paragraph as such rights relate to any document referenced in the Restructuring Support Agreement shall not impair such rights and obligations.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

A.    *Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following: (1) if such Administrative Claim is Allowed on or prior to the Effective Date, no later than 30 days after the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed

Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except for Professional Fee Claims and DIP Claims (which are addressed in <u>Article II.B</u> and <u>Article II.C</u>, respectively), and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Objections to such requests must be Filed and served on the Reorganized Debtors (if the Reorganized Debtors are not the objecting party) and the requesting party on or before the Claims Objection Deadline. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order of the Bankruptcy Court that becomes a Final Order.

Except for Professional Fee Claims and DIP Claims, Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors, the Estates, or the property of any of the foregoing, and such Administrative Claims shall be deemed released as of the Effective Date without the need for any objection from the Debtor or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

B.    *Professional Fee Claims*

1.    <u>Final Fee Applications and Payment of Professional Fee Claims</u>

All final requests for the allowance and payment of Professional Fee Claims shall be Filed no later than forty-five (45) days after the Effective Date unless such date is extended by order of the Bankruptcy Court. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Reorganized Debtors shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

2.    <u>Professional Fee Escrow Account</u>

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall

be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders.  No liens, claims, or interest shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates, the Debtors, or the Reorganized Debtors.

The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtors or the Reorganized Debtors, as applicable, from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account.  When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court,  any remaining funds held in the Professional Fee Escrow Account shall promptly be transferred to the Debtors or the Reorganized Debtors, as applicable, without any further notice to or action, order, or approval of the Bankruptcy Court.

3.     Professional Fee Amount

The Professionals shall provide a reasonable and good-faith estimate of their fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date and shall deliver such estimate to the Debtors no later than five (5) days before the anticipated Effective Date; *provided* that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professionals final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

4.     Post-Confirmation Fees and Expenses

On and after the Confirmation Date, the Debtors or Reorganized Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors or the Reorganized Debtors.  The Debtors and Reorganized Debtors, as applicable, shall pay, within ten (10) Business Days after submission of a detailed invoice to the Debtors or Reorganized Debtors, as applicable, such reasonable claims for compensation or reimbursement of expenses incurred by the retained Professionals of the Debtors or the Reorganized Debtors, as applicable. If the Debtors or Reorganized Debtors, as applicable, dispute the reasonableness of any such invoice, the Debtors or Reorganized Debtors, as applicable, or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors and Reorganized Debtors, as applicable, may employ and pay any Professional in the ordinary

course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      *DIP Claims*

Except to the extent that a Holder of an Allowed New Money DIP Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed New Money DIP Claim, each Holder thereof shall be repaid in full in Cash on the Effective Date.  Upon the indefeasible payment or satisfaction in full in Cash of the Allowed DIP Claims in accordance with the terms of this Plan, or such other treatment as contemplated by this Article II.C of the Plan, on the Effective Date all Liens and security interests granted to secure such obligations shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

D.      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.      *Payment of Statutory Fees*

All fees due and payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Reorganized Debtors (or the Disbursing Agent on behalf of each of the Reorganized Debtors) for each quarter (including any fraction thereof) until the earlier of entry of a final decree closing such Chapter 11 Cases or an order of dismissal or conversion, whichever occurs first.

F.      *Payment of Restructuring Expenses*

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Reorganized Debtors, as applicable, shall pay in full (to the extent not previously paid during the course of the Chapter 11 Cases) all outstanding reasonable and documented fees and expenses billed through the Effective Date and incurred in connection with the Restructuring Transaction of the DIP Agent, the RCF Agent, and  Ropes & Gray LLP as the Supporting Creditors' Advisors and as counsel to the DIP Agent and RCF Agent (collectively, the "Restructuring Expenses").

## ARTICLE III.
## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

A.      *Classification in General*

Except for Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the

Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied or disallowed prior to the Effective Date.

B.    *Formation of Debtor Groups for Convenience Only*

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan, and making Plan Distributions in respect of Claims against and Interests in the Debtors under the Plan. Such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal entities, or cause the transfer of any assets; and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal entities. For the avoidance of doubt, the Plan does not provide for the substantive consolidation of any of the Debtors and the Plan is a separate Plan for each Debtor.

C.    *Summary of Classification of Claims and Interest*

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims shall be treated as set forth in Article III.D hereof. For all purposes under the Plan, each Class will contain sub-Classes for each of the debtors, except that Classes 8 and 9 shall be vacant at each Debtor other than ION Geophysical.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | RCF Claims | Impaired | Entitled to Vote |
| Class 4 | Second Lien Notes Secured Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 7 | Intercompany Interests | Unimpaired | Not Entitled to Vote |

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| | | / Impaired | (Presumed to Accept or Deemed to Reject) |
| Class 8 | ION Geophysical Preferred Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 9 | ION Geophysical Common Interests[2] | Impaired | Not Entitled to Vote (Deemed to Reject) |

D.   *Treatment of Classes of Claims and Interests*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, as applicable, except to the extent different treatment is agreed to in writing by the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date (or, if payment is not then due, in accordance with such Claim's or Interest's terms in the ordinary course of business) or as soon as reasonably practicable thereafter.

   1.   <u>Class 1 – Other Secured Claims</u>

      a.   *Classification*:  Class 1 consists of all Allowed Other Secured Claims.

      b.   *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Other Secured Claim, each Holder thereof shall receive, at the option of the applicable Debtor or Reorganized Debtor either (i) payment in full in Cash of its Allowed Other Secured Claim; (ii) the collateral securing its Allowed Other Secured Claim; (iii) Reinstatement of its Allowed Other Secured Claim; or (iv) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code; provided, that any Allowed Other Secured Claim assumed by the Purchaser pursuant to the Asset Purchase Agreement(s) shall be solely an obligation of the Purchaser and the Holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Reorganized Debtors or their assets and properties.

      c.   *Voting*:  Class 1 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of

---

[2] **NTD**: Combine Class 8 and Class 9.

Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

2. <u>Class 2 – Other Priority Claims</u>

    a.   *Classification*:  Class 2 consists of all Allowed Other Priority Claims.

    b.   *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Other Priority Claim, each Holder thereof shall (i) be paid in full in Cash or (ii) otherwise receive such treatment rendering its Allowed Other Priority Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code; *provided*, that any Allowed Other Priority Claim assumed by the Purchaser pursuant to the Asset Purchase Agreement(s) shall be solely an obligation of the Purchaser and the Holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Reorganized Debtors or their assets and properties.

    c.   *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

3. <u>Class 3 – RCF Claims</u>

    a.   *Classification*:  Class 3 consists of all Allowed RCF Claims.

    b.   *Allowance*:  On the Effective Date, the RCF Claims shall be Allowed in the aggregate principal amount of $15,600,000, plus all accrued and unpaid interest thereon, fees, expenses, charges, and all other obligations arising under the RCF Credit Documents.

    c.   *Treatment*:  Except to the extent that a Holder of an Allowed RCF Claim agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed RCF Claim, each Holder thereof shall receive: (i) Cash in full on the Effective Date from the available Cash; (ii) to the extent not paid in full in Cash on the Effective Date, its Pro Rata share of the loans under the Exit Facility; or (iii) reinstatement or modification of its Allowed RCF Claim as agreed to by the Debtors and the Required Supporting Creditors.

    d.   *Voting*:  Class 3 is Impaired under the Plan.  Therefore, Holders of Allowed RCF Claims are entitled to vote to accept or reject the Plan.

4. <u>Class 4 – Second Lien Notes Secured Claims</u>

    a.     *Classification*:  Class 4 consists of all Allowed Second Lien Notes Secured Claims.

    b.     *Allowance*:  On the Effective Date, the Second Lien Notes Secured Claims shall be Allowed in the aggregate amount of $116,193,000 plus all accrued and unpaid interest thereon, fees, expenses, charges, and all other obligations arising under the Second Lien Notes Indenture.

    c.     *Treatment*:  Except to the extent that a Holder of an Allowed Second Lien Notes Secured Claim agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Second Lien Notes Secured Claim, each Holder thereof shall receive its Pro Rata share of 99.75% of the New Common Stock, subject to dilution by any New Common Stock issued pursuant to the Management Incentive Plan.

    d.     *Voting*:  Class 4 is Impaired under the Plan. Therefore, Holders of Allowed Second Lien Notes Secured Claims are entitled to vote to accept or reject the Plan.

5. <u>Class 5 – General Unsecured Claims</u>

    a.     *Classification*:  Class 5 consists of all Allowed General Unsecured Claims.

    b.     *Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, each Holder thereof shall receive its Pro Rata share of the GUC Recovery Pool.

    c.     *Voting*:  Class 5 is Impaired under the Plan.  Therefore, Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

6. <u>Class 6 – Intercompany Claims</u>

    a.     *Classification*:  Class 6 consists of all Intercompany Claims.

    b.     *Treatment*:  On the Effective Date, Intercompany Claims shall be, at the option of the applicable Debtor or Reorganized Debtor, either Reinstated or cancelled and released without any distribution.

    c.     *Voting*:  Class 6 is Unimpaired, and Holders of Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code if Intercompany Claims are Reinstated, or

Impaired, and Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Code if Intercompany Claims are cancelled.

7. Class 7 – Intercompany Interests

    a. *Classification*: Class 7 consists of all Intercompany Interests.

    b. *Treatment*: On the Effective Date, Intercompany Interests shall be, at the option of the applicable Debtor or Reorganized Debtor, either Reinstated or cancelled and released without any distribution.

    c. *Voting*: Class 7 is Unimpaired, and Holders of Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code if Intercompany Interests are Reinstated, or Impaired, and Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Code if Intercompany Interests are cancelled.

8. Class 8 – ION Geophysical Preferred Interests

    a. *Classification*: Class 8 consists of all ION Geophysical Preferred Interests.

    b. *Treatment*: On the Effective Date, all ION Geophysical Preferred Interests will be cancelled, released, and extinguished, and will be of no further force or effect. The Second Lien Notes Trustee, the only Holder of an ION Geophysical Preferred Interest, has waived its right to receive a distribution hereunder solely on account of its ION Geophysical Preferred Interests.

    c. *Voting*: Class 8 is Impaired under the Plan.  Holders of ION Geophysical Preferred Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of ION Geophysical Preferred Interests are not entitled to vote to accept or reject the Plan.

9. Class 9 – ION Geophysical Common Interests

    a. *Classification*: Class 9 consists of all ION Geophysical Common Interests.

    b. *Treatment:* On the Effective Date, or as soon as reasonably practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each ION Geophysical Common Interest, each Holder thereof shall receive its Pro Rata share of and interest in 0.25% of the New Common Stock, subject to dilution on account of the Management Incentive Plan.

    c. *Voting*: Class 9 is Impaired under the Plan. Holders of ION Geophysical Common Interests are for purposes of satisfying the requirements of section

1129 of the Bankruptcy Code, being treated as if they are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, ION Geophysical Common Interests are not being solicited to vote to accept or reject the Plan.

E.   *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors' or the Reorganized Debtors', as applicable, regarding any Unimpaired Claim, including, all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

F.   *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

G.   *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote on the Plan and no Holder of Claims or Interests eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be deemed to be accepted by the Holders of such Claims or Interests in such Class.

H.   *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the prepetition corporate structure for the ultimate benefit of the holders of New Common Stock, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the Holders of Allowed Claims.  For the avoidance of doubt, to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Interests shall be owned by the same Reorganized Debtor that corresponds with the Debtor that owned such Intercompany Interests immediately prior to the Effective Date.

I.   *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by (a) modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the

extent permitted by the Bankruptcy Code and the Bankruptcy Rules or (b) withdrawing the Plan as to an individual Debtor at any time before the Confirmation Date.

J.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

K.      *Subordinated Claims and Interests*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

L.      *No Waiver*

Nothing contained in the Plan shall be construed to waive a Debtor's or other Person's right to object on any basis to any Disputed Claim.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

A.      *General Settlement of Claims and Interests*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.  Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.    *Restructuring Transactions*

On or before the Effective Date, the Debtors may take any actions consistent with the Plan and the Confirmation Order, as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, reorganization, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the and having other terms for which the applicable Entities may agree; (3) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan (collectively, the "*Restructuring Transactions*").  The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

C.    *Reorganized Debtors*

On the Effective Date, the New Board shall be established, and the Reorganized Debtors shall adopt the New Organizational Documents. The Reorganized Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan.  Cash payments to be made pursuant to the Plan will be made by the Debtors or the Reorganized Debtors. The Debtors and Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Debtors or the Reorganized Debtors, as applicable, to satisfy their obligations under the Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

D.    *Sources of Consideration for Plan Distributions*

The Debtors and the Reorganized Debtors shall fund distributions under the Plan with: (1) Cash on hand, including any Sale Proceeds, (2) the New Common Stock, and (3) the proceeds from the Exit Facility, if any.

Each distribution and issuance referred to in this Article VI in the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

1.      Cash on Hand

The Reorganized Debtors shall use Cash on hand to fund distributions to certain Holders of Allowed Claims in accordance with the Plan.

2.      Sale Proceeds

The Reorganized Debtors shall use any Sale Proceeds pursuant to the terms of any Asset Purchase Agreement(s) and the Plan to fund distributions to certain Holders of Allowed Claims in accordance with the Plan.

3.      Issuance of New Common Stock

The issuance of the New Common Stock under the Plan, including stock options (or their equivalent) or other equity or equity-based awards, if any, reserved for issuance under the Management Incentive Plan, is duly authorized without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person. All of the shares of the New Common Stock issued pursuant to the Plan shall be duly authorized, fully paid, non-assessable, and validly issued and distributed free and clear of all Liens, Claims and other Interest. Each distribution and issuance of the New Common Stock shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

The Debtors and the Reorganized Debtors currently intend to cause the New Common Stock to become publicly traded and listed on a national securities exchange on or as soon as reasonably practicable after the Effective Date.

4.      Exit Facility

On the Effective Date, the Reorganized Debtors may enter into the Exit Facility on the terms and conditions set forth in the Exit Facility Documents. Confirmation of the Plan shall be deemed approval of the Exit Facility and the Exit Facility Documents and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of fees, expenses, and indemnities provided for therein, and authorization of the Reorganized Debtors to enter into, execute, and deliver the Exit Facility Documents and such other documents as may be required to effectuate the Exit Facility.

On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents (a) shall be deemed to be granted in good faith, for legitimate business purposes, and for reasonably equivalent value, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents, (c) shall be deemed automatically perfected on the Effective Date, and (d) shall not be subject to avoidance, recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, voidable transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy

law. In establishing the register of lenders, commitments, and loans for the Exit Facility, the administrative and collateral agent under the Exit Facility Documents shall be entitled to conclusively rely upon (without further inquiry) any certificate, schedule, register, list, or other document provided by the Debtors, the Reorganized Debtors and/or the Distribution Agent.

E.    *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

F.    *Exemption from Registration Requirements*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Common Stock issued to Holders of Allowed Second Lien Notes Claims pursuant to the Plan is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of Securities.

The shares of New Common Stock to be issued under the Plan (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) are freely tradable and transferable by any initial recipient thereof that (i) is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within 90 days of such transfer, and (iii) is not an entity that is an "underwriter" as defined in section 2(a)(11) of the Securities Act and in section 1145 of the Bankruptcy Code.

G.    *Cancellation of Existing Securities and Agreements*

On the Effective Date, except to the extent otherwise provided in the Plan or the Confirmation Order, all notes, instruments, certificates, credit agreements, indentures, and other documents evidencing Claims or Interests shall be cancelled and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan. Notwithstanding such cancellation and discharge or anything to the contrary in the Plan or the Confirmation Order, the DIP Documents and the RCF Credit Documents and any other agreement, instrument, or document related to the foregoing shall continue in full force and effect to the extent necessary to: (1) allow Holders of Claims to receive Plan Distributions; (2) allow the DIP Agent and the RCF Agent to seek and/or receive compensation and/or reimbursement of fees and expenses in accordance with the Plan, the DIP Orders, or any other order of the Bankruptcy

Court; (3) preserve all rights, remedies, indemnities, powers, and protections of the DIP Agent and the RCF Agent for their own respective accounts (including all rights to payment of fees and expenses) and any exculpations of the DIP Agent and the RCF Agent (which rights, remedies, indemnities, powers, protections and exculpations shall survive and remain in full force and effect, and not be released, discharged or affected in any way by the terms of the Plan or the Confirmation Order); (4) allow the DIP Agent and the RCF Agent to enforce any rights and obligations owed to each of them under the DIP Orders, this Plan, or the Confirmation Order, and (5) permit the DIP Agent and the RCF Agent to perform any functions that are necessary to effectuate any of the foregoing. On the Effective Date, the DIP Agent and the RCF Agent and their respective agents, successors, and assigns shall be fully relieved and discharged from all of their duties and obligations under the DIP Documents and RCF Credit Documents.

H.      *Corporate Action*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken on or prior to the Effective Date, ratified (without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtors, the Reorganized Debtors, or any other Entity), including:  (a) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; (c) selection of the directors, managers, and officers for the Reorganized Debtors, including the appointment of the New Board; (d) the entry into the Exit Facility and the execution, entry into, delivery and/or filing of the Exit Facility Documents, as applicable; (e) the adoption and/or filing of or entry into the New Organizational Documents and the New Common Stock Documents, if any; (f) the issuance and distribution, or other transfer, of the New Common Stock as provided herein; (g) implementation of the Restructuring Transactions; and (h) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated, by the Plan. All matters provided for in the Plan involving the corporate structure of the Debtors and any corporate action required by the Debtors or Reorganized Debtors in connection therewith shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by Holders of Claims or Interests, the security holders, directors, managers, authorized persons, or officers of the Debtors or Reorganized Debtors.  On or before the Effective Date, the appropriate officers of the Debtors or the other Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effectuate the Restructuring Transactions) in the name of and on behalf of the Reorganized Debtors, as applicable, including any and all other agreements, documents, Securities, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under non-bankruptcy law.

I.      *Corporate Existence*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the appliable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of

incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

J.    *New Organizational Documents*

On the Effective Date, each of the Reorganized Debtors shall file its New Organizational Documents with the applicable Secretary of State and/or other applicable authorities in its respective state of incorporation or formation in accordance with the applicable laws of the respective state of incorporation or formation, to the extent required for such New Organizational Documents to become effective. After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective states of incorporation and their respective New Organizational Documents. The New Organizational Documents shall be in form and substance acceptable to the Debtors and Required Supporting Creditors. After the Effective Date, the New Organizational Documents may be amended or restated as permitted by such documents and the laws of their respective states, provinces, or countries of incorporation or organization.

The New Organizational Documents shall be binding on all parties receiving, and all holders of, New Common Stock.

K.    *Indemnification Provisions*

On and as of the Effective Date, the Indemnification Provisions will be assumed and irrevocable and will survive the effectiveness of the Plan, and the New Organizational Documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Debtors' and the Reorganized Debtors' current directors, officers, employees and agents to the fullest extent permitted by law and at least to the same extent as the organizational documents of each of the respective Debtors on the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, except to the extent such claims or Causes of Action were the result of gross negligence or willful misconduct. None of the Reorganized Debtors will amend and/or restate their respective New Organizational Documents before or after the Effective Date to terminate or adversely affect any of the Reorganized Debtors' obligation to provide such indemnification rights or such directors', officers', employees', or agents' indemnification rights.

L.    *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors and managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Exit Facility, the New Organizational

Documents, and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

M.      *Section 1146 Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors, including the New Common Stock and the Exit Facility; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for the Reorganized Debtors' obligations under and in connection with the Exit Facility, as applicable; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

N.      *Directors and Officers of the Reorganized Debtors*

As of the Effective Date, the term of the current members of the board of directors of the Debtors shall expire and the New Board, and the officers of each of the Reorganized Debtors, shall be appointed in accordance with the New Organizational Documents and each other constituent document of each Reorganized Debtor.  To the extent known, the identities of the members of the New Board and any Person proposed to serve as an officer of ION Geophysical will be disclosed in the Plan Supplement or prior to the Confirmation Hearing consistent with section 1129(a)(5) of the Bankruptcy Code.

O.      *Director and Officer Liability Insurance*

On or before the Effective Date, the Debtors, on behalf of the Reorganized Debtors, shall be authorized to and shall purchase and maintain directors, officers, managers, and employee liability tail coverage for the six-year period following the Effective Date for the benefit of the

Debtors' current and former directors, managers, officers, and employees on terms no less favorable to such persons than their existing coverage under the D&O Liability Insurance Policies with available aggregate limits of liability upon the Effective Date of no less than the aggregate limit of liability under the existing D&O Liability Insurance Policies.

After the Effective Date, none of the Debtors or the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including, if applicable, any "tail policy"), and all officers, directors, managers, and employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy for the full six-year term of such policy regardless of whether such officers, directors, managers, or employees remain in such positions after the Effective Date.

P.   *Management Incentive Plan*

On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall adopt the Management Incentive Plan.  The Management Incentive Plan shall provide for up to 10.00% of the New Common Stock, determined on a fully diluted basis as of the Effective Date (subject to dilution on account of future issuances of securities, as applicable), to be issued to officers, management, key employees  and directors of Reorganized ION Geophysical on or after the Effective Date, solely at the discretion of the New Board and on terms and conditions to be determined by the New Board.

Q.   *Employee Obligations*

Notwithstanding anything herein to the contrary, including in Article V, all agreements regarding employee wages, compensation, benefit, and incentive programs, and employment or severance agreements in place as of the Effective Date unless expressly assumed, shall be deemed rejected.   The Reorganized Debtor shall continue to honor such assumed agreements, arrangements, programs, and plans except that (1) the New Board will have typical authority and oversight regarding changes to compensation, incentives, and benefits and (2) any plans, programs, arrangements or corresponding awards with respect to Interests (such as stock, options, warrants, or restricted stock units) shall be deemed to be no longer valid, binding, or effective with respect to the Reorganized Debtors.

Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

R.   *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases

and exculpations contained in the Plan, including in <u>Article VIII</u> of the Plan, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action of the Debtors against it. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided herein.** Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in <u>Article V.H</u> and elsewhere herein, all Executory Contracts or Unexpired Leases will be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of the Bankruptcy Court, as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, other than those that are: (1) identified on the Schedule of Rejected Executory Contracts and Unexpired Leases, which Schedule of Rejected Executory Contracts and Unexpired Leases will identify executory contracts or unexpired leases for assumption and assignment to the Purchaser in accordance with the Asset Purchase Agreement; (2) previously expired or terminated pursuant to their own terms or agreement of the parties thereto; (3) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (4) the subject of a motion to reject that is pending on the Effective Date; or (5) subject to an ordered or requested effective date of rejection that is after the Effective Date.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the above-described assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the Schedule of Assumed Executory Contracts and Unexpired Leases, and the Schedule of Rejected Executory Contracts and Unexpired Leases, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date.   Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its

assumption under applicable federal law. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under, or any other transaction or matter that would result in a violation, breach or default under, or increase, accelerate or otherwise alter any obligations, rights or liabilities of the Debtors or the Reorganized Debtors under, or result in the creation or imposition of a Lien upon any property or asset of the Debtors or the Reorganized Debtors pursuant to, the applicable Executory Contract or Unexpired Lease, and any consent or advance notice required under such Executory Contract or Unexpired Lease shall be deemed satisfied by Confirmation. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases and the Schedule of Assumed Executory Contracts and Unexpired Leases the at any time up to forty-five (45) days after the Effective Date.

To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules require the Debtors to assume or reject an Executory Contract or Unexpired Lease, such requirement shall be satisfied if the Debtors make an election to assume or reject such Executory Contract or Unexpired Lease prior to the deadline set forth by the Bankruptcy Code or the Bankruptcy Rules, as applicable, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

If certain, but not all, of a contract counterparty's Executory Contracts and/or Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts and/or Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Confirmation Hearing (to the extent not resolved by the parties prior to the Confirmation Hearing).

B.     *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory**

**Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.**

All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to section 365 of the Bankruptcy Code shall be treated in Class 5 (General Unsecured Claims) pursuant to Article III.D of the Plan and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules; provided that, no more than $500,000 shall be on account of Royalty Cure Claims within the first 30 days after the Effective Date without the prior consent of the Required Supporting Creditors.

C.      *Cure of Defaults and Objections to Cure and Assumption*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or as soon as reasonably practicable thereafter or as provided in the Cure Notices or any Asset Purchase Agreement(s), with the amount and timing of payment of any such Cure dictated by the Debtors' ordinary course of business, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Prior to the Confirmation Hearing, the Debtors shall provide Cure Notices of proposed Cures to counterparties to Executory Contracts and Unexpired Leases, which shall include a description of the procedures for objecting to assumption thereof based on the proposed Cures or the Reorganized Debtors' ability to provide "adequate assurance of future performance thereunder" (within the meaning of section 365 of the Bankruptcy Code). Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure must be filed, served, and received by counsel to the Debtors by the objection deadline set forth in the applicable Cure Notice. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure will be deemed to have consented to such assumption or Cure.

In the event of a dispute regarding: (1) the amount of any payments to Cure a default; (2) the ability of the Reorganized Debtors or any assignee to provide adequate assurance of future performance under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption, subject to the terms of any Asset Purchase Agreement(s), the Cure required by section 365(b)(1) of the Bankruptcy Code shall be made following either (a) the entry of a Final Order or orders resolving the dispute and approving the assumption or (b) the settlement of the dispute between the parties which may be entered into without further order of the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this <u>Article V.C</u> in the amount and at the time dictated by the Debtors ordinary course of business, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree, shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article V.C in the amount and at the time dictated by the Debtors ordinary course of business, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.**

D.       *Royalty Cure Claims*

Notwithstanding anything to the contrary herein, Royalty Cure Claims shall be paid in installments over time in the ordinary course of business as set forth in the applicable Cure Notice or any Asset Purchase Agreement(s).  **Any counterparty to a Royalty Contract that fails to timely object to the proposed assumption of a Royalty Contract under the Plan in accordance with the applicable Cure Notice or any Asset Purchase Agreement(s) will be deemed to have consented to such assumption and the payment of the Royalty Cure Claims in accordance with provisions of Article V.C of the Plan.**

E.       *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, or continued maintenance obligations with respect to goods previously purchased by the Debtors.

F.       *Insurance Policies*

Each of the Debtors' insurance policies, and any agreements, documents, or instruments relating thereto shall be treated as Executory Contracts under the Plan.  Unless otherwise provided in the Plan, on the Effective Date:  (a) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims; and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the applicable Reorganized Debtor.

G.    *Reservation of Rights*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease; provided, that, subject to the terms of any Asset Purchase Agreement(s), the Debtors or Reorganized Debtors, as applicable, may settle any assumption dispute without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

H.    *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.    *Contracts and Leases Entered into after the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business and subject to the terms of any Asset Purchase Agreement(s).

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Distributions on Account of Claims and Interests Allowed as of the Effective Date*

Except as otherwise provided herein, in a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors, as the case may be, and the Holder of the applicable Allowed Claim or Allowed Interest on the first Distribution Date, the Disbursing Agent shall make initial distributions under the Plan on account of Allowed Claims or Allowed Interests on or before the Effective Date, subject to the Reorganized Debtors' right to object to Claims; *provided*, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims shall be paid in accordance with ARTICLE II.D of the Plan. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

B.    *Disbursing Agent*

Except as otherwise set forth in this Article VI.B of the Plan, all distributions under the Plan shall be made by the Reorganized Debtors or the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

1.    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), shall be paid in Cash by the Reorganized Debtors.

C.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Record Date for Distribution

On the Distribution Record Date, the Claims Register, and the registers maintained by the RCF Agent and the DIP Agent (collectively, the "Loan Registers") shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register or the Loan Registers, as applicable, as of the close of business on the Distribution Record Date.  If a Claim, other than one based on a publicly traded Security, is transferred twenty (20) or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.    Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors; *provided further*, that the address for each Holder of an Allowed Claim or Allowed Interest shall be deemed to be the address set forth in any Proof of Claim or Proof of Interest Filed by such Holder. Notwithstanding any provision to the contrary

40

herein and except as otherwise agreed by the relevant parties no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Disputed Interest until all such disputes in connection with such Disputed Claim or Disputed Interest have been resolved by settlement or Final Order. Any dividends or other distributions arising from property distributed to Holders of Allowed Claims or Allowed Interests in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim or Disputed Interest in such Class that becomes an Allowed Claim or Allowed Interest, after the date such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest and after the date or dates that such dividends or other distributions were earlier paid to holders of Allowed Claims or Allowed Interests in such Class.

All distributions to Holders of DIP Claims and RCF Claims shall be deemed complete when made to such Holders as reflected on the applicable Loan Registers, and not when made to the DIP Agent or the RCF Agent, as applicable. The RCF Agent and the DIP Agent (in their capacities as such) shall not be required to act as the Distribution Agent with respect to any distributions of the Exit Facility (if any) and shall have no responsibility or liability for such distributions.

3.    Minimum Distributions

No fractional shares of New Common Stock shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an applicable Allowed Claim or Allowed Interest would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the actual distribution of shares of the New Common Stock shall be rounded as follows; (a) fractions of one-half ($^{1}/_{2}$) or greater shall be rounded to the next highest whole number and (b) fractions of less than ($^{1}/_{2}$) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of New Common Stock shall be adjusted as necessary to account for the foregoing rounding.

4.    Undeliverable and Unclaimed Distributions

If any distribution to a Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder on the next Distribution Date without interest. Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors or is cancelled pursuant to this Article VI.C.4, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

Any distribution under the Plan that is an Unclaimed Distribution or remains undeliverable for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution or undeliverable distribution shall revest in the applicable Reorganized Debtor and, to the extent such Unclaimed Distribution is comprised of New Common Stock, such New Common Stock shall be cancelled. Upon such revesting, the Claim or Interest of the Holder or its successors with respect to such property shall

be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

5.      Satisfaction of Claims

Unless otherwise provided herein, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

6.      De Minimis Cash Distributions

The Disbursing Agent shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Record Date of Cash in an amount less than one-hundred dollars ($100); *provided, however*, that if any distribution is not made pursuant to this Article VI, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim. The Disbursing Agent shall not be required to make any final distributions of Cash in an amount less than fifty dollars ($50) to any holder of an Allowed Claim. If the amount of any final distributions to holders of Allowed Claims would be fifty dollars ($50) or less, then no further distribution shall be made by the Disbursing Agent.

7.      Surrender of Cancelled Instruments or Securities

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Interest that has been cancelled in accordance with ARTICLE IV.G of the Plan shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent. Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument.

D.      *Manner of Payment*

1.      Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, all distributions of the New Common Stock to the Holders of the applicable Allowed Claims or Interests under the Plan shall be made by the Disbursing Agent on behalf of the Debtors or Reorganized Debtors, as applicable.

2.      All distributions of Cash to the Holders of the applicable Allowed Claims under the Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor or Reorganized Debtor.

3.      At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

E.      *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors, Reorganized Debtors, Disbursing Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

F.      *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

G.      *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or the DIP Orders, and notwithstanding any documents that govern the Debtors' prepetition indebtedness to the contrary, (1) postpetition and/or default interest shall not accrue or be paid on any Claims and (2) no Holder of a Claim shall be entitled to:  (a) interest accruing on or after the Petition Date on any such Claim; or (b) interest at the contract default rate, as applicable.

H.      *Foreign Currency Exchange Rate*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

I.      *Setoffs and Recoupment*

Unless otherwise provided in the Plan or the Confirmation Order, each Debtor and each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled as of the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*,

that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or Reorganized Debtor of any such claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder.

In no event shall any Holder of Claims be entitled to set off or recoup any such Claim against any claim, right, or Cause of Action of the Debtor or Reorganized Debtor (as applicable), unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff or recoupment on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to section 553 of the Bankruptcy Code or otherwise.

J.      *Claims Paid or Payable by Third Parties*

      1.      <u>Claims Paid by Third Parties</u>

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. To the extent that a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall repay, return, or deliver any distribution held by or transferred to the Holder to the applicable Reorganized Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

      2.      <u>Claims Payable by Third Parties</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

      3.      <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

A.   *Allowance of Claims*

After the Effective Date, each of the Reorganized Debtors shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim or Interest immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

B.   *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority to:  (1) File and prosecute objections to Claims; (2) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims or Interests, regardless of whether such Claims are in a Class or otherwise; (3) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (4) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.R of the Plan.

C.   *Estimation of Claims and Interests*

Before, on, or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the pendency of any appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      *Adjustment to Claims or Interests without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors without the Reorganized Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed by the Debtors or the Reorganized Debtors before the Claims Objection Deadline, as such deadline may be extended from time to time.

F.      *Disallowance of Claims*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as any objection to those Claims or Interests have been settled or a Bankruptcy Court order with respect thereto has been entered.

All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Claims Bar Date or Administrative Claims Bar Date, as appropriate, shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

G.      *Amendments to Claims or Interests*

On or after the Claims Bar Date or the Administrative Claims Bar Date, as appropriate, a Claim or Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors and any such new or amended Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action.

H.      *No Distributions Pending Allowance*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be

made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

I.      *Distributions After Allowance*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

J.      *No Interest*

Interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a

judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date occurring.

B.    *Release of Liens*

**Except as otherwise provided in the Plan, the DIP Documents, the Exit Facility Documents, the Asset Purchase Agreement(s), if any, or in any contract, instrument, release, or other agreement or document created or entered into pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take, at the Reorganized Debtors' sole cost and expense, any and all steps requested by the Debtors or the Reorganized Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.**

C.    *Releases by the Debtors*

**Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, the Reorganized Debtors, their Estates, and any person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because**

of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or noncontingent, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors, or their Estates, including any successors to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b) of the Bankruptcy Code, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part: (a) the Debtors (including the capital structure, management, ownership, or operation thereof), the business or contractual arrangement between the Debtors and any Released Party, any Securities issued by the Debtors and the ownership thereof, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among the Debtors, the DIP Documents, the RCF Credit Documents, the Second Lien Notes Indenture, the Unsecured Notes Indenture, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Exit Facility Documents, the Asset Purchase Agreement(s), if any, or the Plan (including, for the avoidance of doubt, the Plan Supplement); (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Definitive Documents, the Asset Purchase Agreement(s), if any, the Exit Facility Documents, or the Plan Supplement, before or during the Chapter 11 Cases; (c) the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (d) any related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, the Asset Purchase Agreement(s), if any, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) the rights of any Holder of Allowed Claims or ION Geophysical Common Interests to receive distributions under the Plan, or (iii) any Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing Debtor release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the foregoing Debtor release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the foregoing Debtor release; (c) in the best interests of the Debtors and their Estates and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the foregoing Debtor release.

D.    *Releases by the Releasing Parties*

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the Releasing Parties, from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or noncontingent, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Releasing Party would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors (including the capital structure, management, ownership, or operation thereof), the business or contractual arrangement between the Debtors and any Releasing Party, any Securities issued by the Debtors and the ownership thereof, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among the Debtors, the DIP Documents, the RCF Credit Documents, the Second Lien Notes Indenture, the Unsecured Notes Indenture, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Definitive Documents, the Exit Facility Documents, the Asset Purchase Agreement(s), if any, or the Plan (including, for the avoidance of doubt, the Plan Supplement); (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the DIP Documents, the Exit Facility Documents, the

Asset Purchase Agreement(s), if any, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases; (c) the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (d) any related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, any Definitive Document or any agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (ii) the rights of Holders of Allowed Claims or ION Geophysical Common Interests to receive distributions under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing third-party release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the foregoing third-party release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for a substantial contribution and for the good and valuable consideration provided by the Released Parties that is important to the success of the Plan; (d) a good faith settlement and compromise of the Claims released by the foregoing third-party release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the foregoing third-party release.

E.      *Exculpation*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any Claims and Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Restructuring Support Agreement and related prepetition transactions (including the RCF Credit Agreement, the Second Lien Notes Indenture, and the Unsecured Notes Indenture), the Disclosure Statement, the Plan, the Definitive Documents, the Exit Facility Documents, the Asset Purchase Agreement(s), if any, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), including any Definitive Document, created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of

the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties and other parties set forth above have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.     *Injunction*

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold the Released Claims are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Released Claims; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Released Claims; (3) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property of such Entities on account of or in connection with or with respect to any Released Claims; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any Released Claims unless such holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Released Claims released or settled pursuant to the Plan.

G.     *Protections Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the

Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because such Reorganized Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.    *Document Retention*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

I.    *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim is no longer contingent.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN**

A.    *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.    the Bankruptcy Court shall have entered the Confirmation Order;

2.    the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein, and all other schedules, documents, supplements and exhibits to the Plan, shall have been Filed;

3.    the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents (other than any such authorization, consent, regulatory approval, ruling, or document that is customarily obtained or completed after assignment, conveyance or vesting of an applicable asset) that, after giving effect to the entry of the Confirmation Order, are necessary to implement and effectuate the Plan, including Bankruptcy Court approval, and each of the other transactions contemplated by the Restructuring, and such authorizations, consents, regulatory approvals, rulings, or documents shall not be subject to unfulfilled conditions and shall be in full force and effect, and all applicable regulatory waiting periods shall have expired;

4.      the Definitive Documents shall be consistent with the Restructuring Support Agreement and otherwise acceptable to the Required Supporting Creditors consistent with their respective consent and approval rights as set forth in the Restructuring Support Agreement;

5.      the Restructuring Support Agreement shall not have been terminated and shall remain in full force and effect;

6.      the occurrence of the Sale Transaction Closing pursuant to the terms of any Asset Purchase Agreement(s);

7.      the Debtors shall have implemented the Restructuring Transactions and all other transactions contemplated by the Plan and the Restructuring Support Agreement in a manner consistent in all respects with the Plan and Restructuring Support Agreement;

8.      any New Organizational Documents and New Common Stock Documents, as applicable, shall be in full force and effect (with all conditions precedent thereto having been satisfied or waived), subject to any applicable post-closing execution and delivery requirements; and

9.      all Professional fees and expenses of retained Professionals that require the Bankruptcy Court's approval shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been placed in a Professional Fee Escrow Account pending the Bankruptcy Court's approval of such fees and expenses;

10.     the Royalty Cure Claims shall not exceed $12,800,000 in the aggregate and no more than $500,000 shall be required to be paid within the first 30 days after the Effective Date without the prior consent of the Required Supporting Creditors;

11.     all Restructuring Expenses shall have been indefeasibly paid in full in accordance with Article II.F; and

12.     the Debtors shall satisfy the Minimum Liquidity Threshold.

B.      *Waiver of Conditions*

The Debtors, with the consent of the Required Supporting Creditors, may waive any of the conditions to the Effective Date set forth in this Article IX at any time, without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceedings to confirm or consummate the Plan.

C.      *Effect of Failure of Conditions*

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by or against the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission,

acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

D.    *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN

A.    *Modification and Amendments*

Subject to the limitations contained in the Plan, and with the consent of the Required Supporting Creditors, the Debtors reserve the right to modify the Plan prior to Confirmation and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the  Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.    *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications or amendments to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity; provided, however, that all orders of the Bankruptcy Court and all documents executed pursuant thereto, except the Confirmation Order, shall remain in full force and effect.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

a.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

b.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

c.      resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

d.      ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan and to adjudicate any and all disputes arising from or relating to distributions under the Plan;

e.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

f.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

g.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

h.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

i.      resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions, or any Entity's obligations incurred in connection with the foregoing, including disputes arising

56

under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions;

    j.  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

    k.  issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

    l.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

    m.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.J hereof;

    n.  enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

    o.  determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement, including the Restructuring Support Agreement;

    p.  adjudicate any and all disputes arising from or relating to distributions under the Plan;

    q.  consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

    r.  determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

    s.  hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

    t.  hear and determine matters concerning exemptions from state and local federal registration requirements in accordance with section 1145 of the Bankruptcy Code;

    u.  hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan,

including under Article VIII hereof, regardless of whether such termination occurred prior to or after the Effective Date;

v.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

w.      enter an order or Final Decree concluding or closing the Chapter 11 Cases;

x.      enforce all orders previously entered by the Bankruptcy Court;

y.      hear and determine all disputes involving the obligations or terms of the Exit Facility; and

z.      hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*

Subject to Article IX.A hereof, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

B.      *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Statutory Committee and Cessation of Fee and Expense Payment*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases. The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date. Any statutory committee shall continue in existence and have standing

and a right to be heard for the following limited purposes: (a) Claims and/or applications, and any relief related thereto, for compensation by Professional Persons retained in the Chapter 11 Cases pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code and requests for allowance of Administrative Expense Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (b) any appeals of the Confirmation Order or other appeals to which the any statutory committee is a party.

D.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

E.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

F.      *Notices*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| If to the Debtors: | If to the Counsel to the Debtors: |
|---|---|
| ION Geophysical Corporation<br>4203 Yoakum Blvd., Suite 100<br>Houston, Texas 77006<br>Attn: Matthew Powers, General Counsel<br>Email: matt.powers@iongeo.com | Winston & Strawn LLP<br>800 Capitol Street, Suite 2400<br>Houston, Texas 77002<br>Attention:    Katherine A. Preston<br>E-mail:        kpreston@winston.com<br><br>and<br><br>35 W Wacker Drive<br>Chicago, Illinois 60601<br>Attention:    Daniel J. McGuire<br>                    Laura Krucks<br>E-mail:        dmcguire@winston.com<br>                    lkrucks@winston.com |

| | –and |
| | 200 Park Avenue<br>New York, New York 10166<br>Attention: Timothy W. Walsh<br>E-mail: twwalsh@winston.com |
| **If to the U.S. Trustee:** | **If to the Counsel to the Supporting Creditors** |
| United States Trustee<br>for the Southern District of Texas<br>515 Rusk Street, Suite 3516<br>Houston, TX 77002 | Ropes & Gray LLP<br>1211 Avenue of the Americas<br>New York, NY 10036-8704<br>Attention:  Ryan Preston Dahl<br>            Matthew Roose<br>            Uchechi Egeonuigwe<br>            Katharine Scott<br><br>E-mail:     Ryan.Dahl@ropesgray.com<br>            Matthew.Roose@ropesgray.com<br>            Uchechi.Egeonuigwe@ropesgray.com<br>            Katharine.Scott@ropesgray.com |

After the Effective Date, the Reorganized Debtors shall have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002 requiring such Entity to file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

G.      *Term of Injunctions or Stays*

**Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

H.      *Entire Agreement*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.      *Request for Expedited Determination of Taxes*

The Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

J.      *Plan Supplement*

All exhibits and documents included in the Plan Supplement are an integral part of the Plan and are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://dm.epiq11.com/IONGeophysical or the Bankruptcy Court's website at www.txs.uscourts.gov/bankruptcy. To the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the Plan Supplement document or exhibit shall control (unless stated otherwise in such Plan Supplement document or exhibit or in the Confirmation Order).

K.      *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' consent, as applicable (but subject to the terms of the Restructuring Support Agreement); and (3) nonseverable and mutually dependent.

L.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, no such parties nor individuals nor the Reorganized Debtors will have any liability for the violation of any applicable

law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

M.      *Closing of Chapter 11 Cases*

On and after the Effective Date, the Debtors or Reorganized Debtors shall be permitted to close all of the Chapter 11 Cases of the Debtors except for the Chapter 11 Case of Debtor ION Geophysical and all contested matters relating to any of the Debtors, including objections to Claims and any adversary proceedings, shall be administered and heard in the Chapter 11 Case of Debtor ION Geophysical, irrespective of whether such Claim(s) were Filed or such adversary proceeding was commenced against a Debtor whose Chapter 11 Case was closed.

When all Disputed Claims have become Allowed or disallowed and all distributions have been made in accordance with the Plan, the Reorganized Debtors shall seek authority to close any remaining Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

N.      *Waiver or Estoppel*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

*[Remainder of page intentionally left blank]*

Dated: April 12, 2022

**ION GEOPHYSICAL CORPORATION**

on behalf of itself and all other Debtors


*/s/ Mike Morrison*
Mike Morrison
ION Geophysical Corporation
Authorized Signatory