United States Bankruptcy Court
Southern District of Texas
ENTERED
May 03, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | ) | Case No. 22-30987 (MI) |
| Debtors. | ) | (Jointly Administered) |

**ORDER (I) APPROVING (A) BIDDING PROCEDURES AND (B) ASSUMPTION AND ASSIGNMENT PROCEDURES AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (the "Bidding Procedures Order") (i)(a) approving the Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**; (b) authorizing the Debtors to designate stalking horse bidders (the "Stalking Horse Bidders," and such bidders' bids, the "Stalking Horse Bids") and offer such bidders certain bid protections (the "Stalking Horse Bid Protections"); (d) setting the deadline for potential bidders to submit a proposal to purchase the Debtors' businesses or assets (the "Bid Deadline"), authorizing and scheduling an auction (the "Auction"), authorizing and scheduling a hearing with respect to the approval of a proposed sale transaction (the "Sale Hearing"); (e) authorizing and approving the form and manner of the Sale Notice; (f) authorizing and approving the Cure Notice to Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115). The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

(the "Cure Costs"); (g) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "Assumption and Assignment Procedures"); (ii) authorizing the sale of certain of the Debtors' assets (collectively, the "Assets") free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code following the sale process and completion of the Auction (collectively, the "Sale Transactions"); and (iii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion, the First Day Declaration, and the Mleczko Declaration filed contemporaneously therewith; and this Court having held a hearing to consider the relief requested in the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A. Statutory and Legal Predicates. The predicates for relief granted herein are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Bankruptcy Rules, and Rules 2002-1 and 9013-1 of the Local Rules.

B. Bidding Procedures. The Debtors have articulated good and sufficient business reasons for the Court to approve the Bidding Procedures. The Bidding Procedures are fair, reasonable, and appropriate. The Bidding Procedures are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Debtors' business resulting in the highest or otherwise best offers.

C. Designation of Stalking Horse Bidders. The Debtors have articulated good and sufficient business reasons for the Court to approve the procedures for the designation of Stalking Horse Bidders and the provision of Bid Protections, as set forth herein.

D. Good Faith Negotiations. The Bidding Procedures were negotiated in good faith and at arms' length and are reasonably designed to promote participation and active bidding and ensure that the highest or best value is generated for the Debtors' assets or businesses.

E. Assumption and Assignment Procedures. The Debtors have articulated good and sufficient business reasons for the Court to approve the Assumption and Assignment Procedures. The Assumption and Assignment Procedures, including the form of Sale Notice attached hereto as **Exhibit 2** and the form of Cure Notice attached hereto as **Exhibit 3**, are fair, reasonable, and appropriate. The Assumption and Assignment Procedures provide an adequate opportunity for all

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Contract Counterparties to raise any objections to the proposed assumption and assignment or to the proposed Cure Costs.  The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

F.      Cure Notice.  The Cure Notice, the form of which is attached hereto as **Exhibit 3**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures, as well as any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion and the procedures described therein, except as expressly required herein.

G.      Notice.  All other notices to be provided pursuant to the procedures set forth in the Motion are good and sufficient notice to all parties in interest of all matters pertinent hereto.  No further notice is required.

H.      Relief is Warranted.  The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are hereby overruled and denied on the merits with prejudice.

2.      The Debtors are authorized to implement the Bidding Procedures in accordance with the following timeline (as may be modified in accordance with the Bidding Procedures):

| Key Event | Deadline |
|---|---|
| Deadline to Submit Bids | **June 13, 2022 at 5:00 p.m. (prevailing Central Time)** |
| Auction (if necessary) | **June 16, 2022 at 10:00 a.m.(prevailing Central Time)** |

| Key Event | Deadline |
|---|---|
| Deadline to File Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) | **As soon as possible following conclusion of Auction** |
| Deadline to file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties | **June 14, 2022** |
| Deadline to File Objections to the Sale Transactions (the "Sale Objection Deadline") | **June 20, 2022, at 4:00 p.m. (prevailing Central Time)** |
| Deadline to File Contract Objections (the "Contract Objection Deadline") | **June 20, 2022, at 4:00 p.m. (prevailing Central Time)** |
| Sale Hearing | **June 21, 2022 at 1:30 p.m. (prevailing Central Time)** |

3. The dates and deadlines set forth in this Bidding Procedures Order are subject to modification by the Debtors, in consultation with the Consultation Parties, without further order of this Court.

**Designation of Stalking Horse Bidders**

4. The Debtors are authorized, in the exercise of their reasonable business judgment, and in consultation with the Consultation Parties, to designate one or more stalking horse bidders (a "Stalking Horse Bidder"), for one or more of the Debtors' assets (an "Additional Stalking Horse Bid"), and enter into purchase agreements with Stalking Horse Bidders (each such agreement, a "Stalking Horse Agreement"), for the sale of such assets, in each case, in accordance with the terms of this Bidding Procedures Order and the Bidding Procedures.

5. Subject to the terms of this Bidding Procedures Order and the Bidding Procedures, the Debtors are authorized to offer each Stalking Horse Bidder additional protections, including a break-up fee (the "Bid Protections"); *provided*, *that*, all Bid Protections must be negotiated by the

Debtors, in consultation with the Consultation Parties, subject to notice and an opportunity for parties in interest to object.

6.      If the Debtors select a Stalking Horse Bidder, the Debtors shall file with the Court and serve on the Notice Parties (as defined below), (a) a notice setting forth the identity of the Stalking Horse Bidder and the material terms of such Stalking Horse Agreement, including the terms of the applicable Bid Protections (each, a "Notice of Stalking Horse"), (b) a copy of the Stalking Horse Agreement, and (c) a proposed order authorizing and approving the Debtors' provision of the Bid Protections pursuant to the terms and provisions of the applicable Stalking Horse Agreement and the Bidding Procedures (the "Proposed Order"), in each case no later than seven (7) calendar days before the Bid Deadline, unless otherwise ordered by the Court.

7.      Objections to the provision of Bid Protections, if any, for any Stalking Horse Bidder (each, a "Bid Protection Objection") shall (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court and served on (i) proposed counsel to the Debtors, Winston & Strawn LLP, 35 West Wacker Drive, Chicago, IL 60601, Attn: Daniel J. McGuire (dmcguire@winston.com) and Laura Krucks (lkrucks@winston.com), (ii) counsel to any statutory committee appointed in the chapter 11 cases, and (iii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas, 77002, Attn:  Hector Duran, Esq. and Stephen Statham, Esq. within seven (7) calendar days after service of the applicable Notice of Stalking Horse.

8.      If a timely Bid Protection Objection is filed and served with respect to a Stalking Horse Agreement in accordance with the Bidding Procedures and this Bidding Procedures Order, any Bid Protections provided for under such agreement shall not be deemed approved until the Bid

Protection Objection is resolved, either by agreement of the objecting party and the Debtors, or by order of the Court resolving such objection and approving the provision of the Bid Protections. Nothing herein shall alter the burden of proof with respect to the Bid Protections.

9. If no timely Bid Protection Objection is filed and served with respect to a Stalking Horse Agreement in accordance with the Bidding Procedures and this Bidding Procedures Order, the Debtors may file with the Court, upon certification of counsel, the Proposed Order, which may be entered by the Court without further notice of hearing.

10. Except as specifically authorized in paragraphs 4-5 hereof, absent further order of the Court, no person or entity shall be entitled to any Bid Protections, expense reimbursement or break-up fee, "topping," termination, or other similar fee or payment by the Debtors for submitting a bid for the Assets, or in any way participating in the Auction or the Debtors' sale process.

**Bidding Procedures**

11. The Bidding Procedures, attached hereto as **Exhibit 1**, are hereby approved.

12. The Bidding Procedures are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Debtors' businesses and assets. The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Bidding Procedures Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Bidding Procedures Order. If there is a conflict between the terms of this Bidding Procedures Order and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

13. The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a Qualified Bid, are fair, reasonable and appropriate, and are

designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and all parties in interest.

14. The Debtors are authorized to take all reasonable actions necessary or appropriate to implement the Bidding Procedures in accordance with the terms of this Bidding Procedures Order and the Bidding Procedures.

**Objections to Sale Transactions**

15. The objection deadline for the Sale Transactions will be **June 20, 2022 at 4:00 p.m.** (**prevailing Central Time**).

16. Objections to the Sale Transactions (each, a "Sale Objection"), must: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; and (iv) conform to the Bankruptcy Rules and the Local Rules. In addition, subject to the terms of this Bidding Procedures Order and the Bidding Procedures, the Debtors may extend any objection date specified in the applicable notice, as the Debtors deem appropriate in the exercise of their reasonable business judgement. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the applicable Sale Hearing.

17. An appropriate representative of each Successful Bidder shall appear at the applicable Sale Hearing and be prepared, if necessary, to have such representative(s) testify in support of a Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder as part of the proposed transaction.

18. Any party who fails to timely file with the Court a Sale Objection will be forever barred from asserting any Sale Objection to the applicable sale, or to the consummation and performance of a sale transaction contemplated by a purchase agreement between the Debtors and a Successful Bidder, including the transfer of the Debtors' business to a Successful Bidder, free and clear of all claims and interests pursuant to section 363(f) or 1141(c) of the Bankruptcy Code. Failure to object shall constitute consent for the purposes of section 363(f) or 1141(c) of the Bankruptcy Code.

**Sale Notice**

19. The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved. As soon as reasonably practicable after entry of this Bidding Procedures Orders, the Debtors will cause the Sale Notice to be served on the following parties or their respective counsel, if known (collectively, the "Notice Parties"): (a) the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition revolving credit facility and counsel thereto; (d) the indenture trustee for the Debtors' 8.00% secured second priority notes and counsel thereto; (e) the indenture trustee for the Debtors' 9.125% unsecured notes; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for states in which the Debtors conduct business; (j) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in any of the Debtors' assets; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

20.    The Sale Notice contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

21.    The following notice of the Sale Objection Deadline and the Contract Objection Deadline, as applicable, to holders of Consent Rights (as defined below) and Preferential Purchase Rights (as defined below) is reasonable and appropriate under the circumstances, fair to all Contract Counterparties, comply in all respects with the Bankruptcy Code, and are approved.

22.    The Debtors may assign to a Successful Bidder, pursuant to an asset purchase agreement and Sale Order, certain contracts, agreements, leases and other assets, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of all liens, claims, interests, and encumbrances.  Subject to approval by the Court, if any party objects to such assignment, including any objection based on any alleged approval or consent right or anti-assignment provision contained in or applicable to any contract, lease, or other agreement (a "Consent Right"), then such party must file with the Court an objection identifying (i) the contract(s), lease(s), or other agreement(s), (ii) the basis for objecting to the assignment of such contract(s), lease(s), or other agreement(s), and (iii) all supporting documentation (each, an "Assignment Objection"), no later than the Sale Objection Deadline or the Contract Objection Deadline, as applicable.

23.    In addition, the Debtors may assign to a Successful Bidder, pursuant to an asset purchase agreement and Sale Order, certain contracts, agreements, leases or other assets, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use

permits or agreements), free and clear of any preferential purchase rights, rights of first refusal, drag-along rights, tag-along rights, and other similar rights, if any, that are applicable to the transfer of the Debtors' assets in connection with a Sale Transaction (each a "Preferential Purchase Right"). Subject to approval by the Court, if any purported holder of a Preferential Purchase Right objects to such transfer, including on account of any alleged Preferential Purchase Right contained in or applicable to any contract, lease, or other agreement, then such holder must file with the Court an objection identifying (i) the assets subject to such Preferential Purchase Right(s), (ii) the applicable agreement, document, or statute giving rise to such Preferential Purchase Right(s), (iii) the portion of the agreement, document, or statute giving rise to such Preferential Purchase Right(s), and (iv) all other supporting documentation (a "Rights Objection"), no later than the Sale Objection Deadline or the Contract Objection Deadline, as applicable.

24.     If a party files an Assignment Objection or Rights Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute  prior to the Sale Hearing, such objection will be heard by the Court at the Sale Hearing or such other scheduled hearing.

25.     Any person failing to timely file an Assignment Objection or Rights Objection, as applicable, will be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the assets to be sold, assumed, and/or assigned in connection with a Sale Transaction, free and clear of all liens, claims, interests, and encumbrances, including Consent Rights and Preferential Purchase Rights, and from asserting any alleged Preferential Purchase Rights with respect to a Sale Transaction, and (ii) deemed to consent to and approve the transfer, sale, and assumption and/or assignment of the Debtors' right, title, and interest in, to and under such assets free and clear of all liens, claims, interests, and

encumbrances, including Consent Rights and Preferential Purchase Rights, regardless of whether such consent must be in writing pursuant to the terms of any contract, lease, or other agreement.

26. If any person files an Assignment Objection or Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Assignment Objection or Rights Objection, as applicable (and serving such response on the objecting party). Upon the filing of such response to such objection, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted. Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such objections, and all such rights of the Debtors are expressly preserved.

**Assumption and Assignment Procedures**

27. The following Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all Contract Counterparties, comply in all respects with the Bankruptcy Code, and are approved.

28. The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is reasonable, fair, and appropriate, contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and is hereby approved.

29. The Cure Notice, including any Supplemental Cure Notice (as defined below), is reasonably calculated to provide sufficient notice to the Contract Counterparties of the Debtors' proposed assumption and assignment of the Assigned Contracts in connection with the Sale Transactions and constitutes adequate notice thereof, and no other or further notice of the Debtors'

proposed Cure Costs or the proposed assumption and assignment of the Assigned Contracts shall be required if the Debtors file and serve such notice in accordance with the Assumption and Assignment Procedures and this Bidding Procedures Order.

30.    On or before **June 14, 2022**, the Debtors shall file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties.  Service of the Cure Notice in accordance with this Bidding Procedures Order on all Contract Counterparties is hereby deemed to be good and sufficient notice of the Cure Costs for, and the proposed assumption and assignment of, the Assigned Contracts.

31.    In accordance with the Bidding Procedures, each Bid must contain such financial and other information that allows the Debtors, in consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a sale transaction including, without limitation, ability to post replacement letters of credit, as applicable, and such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party (such information, "Adequate Assurance Information").

32.    The Debtors shall provide, or cause to be provided, to applicable Contract Counterparties Adequate Assurance Information on a strictly confidential basis once a Potential Bidder is deemed a Qualified Bidder.  Contract Counterparties shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether the adequate assurance requirements under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), have been satisfied, and (ii)  support any objection regarding adequate assurance of future performance filed by the Contract Counterparty; *provided, that,* if a Contract

Counterparty seeks to disclose confidential, non-public information included in the Adequate Assurance Information, it shall request Court authority to redact such information, unless disclosure of such confidential, non-public information is authorized by the Debtors, the Successful Bidder, and any known proposed assignee(s) of the relevant Assigned Contracts (if different from the Successful Bidder), or ordered by the Court.

33.     Objections, if any, to any proposed assumption or assignment of an Assigned Contract, including but not limited to any objection to the proposed Cure Cost, the provision of adequate assurance of future performance, an Assignment Objection, or a Rights Objection (collectively, the "Contract Objections") must:  (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; and (v) be filed with the Court.

34.     Any Contract Objection in respect of an Assigned Contract must be filed and served by the Contract Objection Deadline.  If a timely Contract Objection is received and such objection cannot otherwise be resolved by the parties, such objection shall be heard at the applicable Sale Hearing or such other hearing scheduled prior to any scheduled closing of the applicable Sale Transaction.

35.     If a Contract Objection cannot otherwise by resolved by the parties, the Debtors may assume and assign the Contract(s) or Lease(s) pending resolution of the Contract Objection.

36.     If (a) the Debtors identify (i) additional contracts or leases to be assumed and assigned to a Successful Bidder or (ii) modifications that need to be made to a proposed Cure Cost previously stated in the Cure Notice, or (b) a Successful Bidder designates any additional contracts

or leases not previously included on the Cure Notice for assumption and assignment, the Debtors shall promptly file with the Court and serve by first class mail on the applicable Contract Counterparty a supplemental Cure Notice (each, a "Supplemental Cure Notice," the form of which shall be substantially similar to the form of Cure Notice attached hereto as **Exhibit 3**).  Any Contract Objection with respect to additional contracts or leases set forth in a Supplemental Cure or any modifications to a proposed Cure Cost set forth in a Supplemental Cure Notice must be filed on the later of (a) within seven (7) days of service of that Supplemental Cure Notice or (b) the Contract Objection Deadline.

37.     If no timely Contract Objection is filed and served with respect to an Assigned Contract: (i)  the Cure Cost identified on the Cure Notice or a Supplemental Cure Notice, as applicable, will be the only amount necessary under section 365(b) of the Bankruptcy Code to cure all defaults under such Assigned Contract; (ii) the Contract Counterparty shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their estates, and a Successful Bidder; (iii) the Debtors will be deemed to have provided adequate assurance of future performance for such Assigned Contract in accordance with section 365(f)(2)(B); (iv) the Contract Counterparty shall be forever barred from asserting against the Debtors, their estates, and a Successful Bidder, any additional obligation to provide adequate assurance of future performance; (v) the Contract Counterparty to such Assigned Contract shall be deemed to have consented to the assumption by the Debtors and assignment to Successful Bidder of the Assigned Contract, and be forever barred from asserting any objection with regard to such assumption and assignment; (vi) the Contract Counterparty shall be forever barred from asserting any other claims related to such Assigned Contract against the Debtors and their estates or the

Successful Bidder, or the property of any of them, that existed prior to the entry of an order resolving such Contract Objection and any sale order.

38. Absent entry of an order approving the applicable Sale Transaction, the Assigned Contracts shall not be deemed assumed or assigned, and shall in all respects be subject to further administration under the Bankruptcy Code.

39. The inclusion of a contract, lease, or other agreement on the Cure Notice or any Supplemental Cure Notice shall not constitute or be deemed a determination or admission by the Debtors or any other party in interest that such contract or other document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Cost is due (all rights with respect thereto being expressly reserved). The Debtors reserve all of their rights, claims, defenses, and causes of action with respect to each contract or other document listed on the Cure Notice or any Supplemental Cure Notice.

**General Provisions**

40. All persons or entities (whether or not Qualified Bidders) that participate in the bidding process for the Debtors' assets shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Bidding Procedures Order (including any disputes relating to the bidding process, the Auction, and/or any sale transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

41. The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without

further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, in accordance with the terms of the Bidding Procedures.

42. The Debtors may cancel the bidding procedures and the Auction with respect to any of the Debtors' assets if the Debtors determine, in their reasonable business judgment, in a manner consistent with their fiduciary duties to proceed with a private sale of such assets in accordance with the terms of the Bidding Procedures.

43. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, or any applicable provisions of the Local Rules or otherwise, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Bidding Procedures Order.

44. The Debtors are authorized to take all reasonable steps necessary or appropriate to carry out the relief granted in this Bidding Procedures Order.

45. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Bidding Procedures Order.

Signed: May 03, 2022

Marvin Isgur
United States Bankruptcy Judge

# Exhibit 1

## Bidding Procedures

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | ) | Case No. 22-30987 (MI) |
| Debtors. | ) | (Jointly Administered) |

**BIDDING PROCEDURES**

**Overview**

On April 12, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). These chapter 11 cases have been consolidated for procedural purposes under the lead case: *In re ION Geophysical Corporation*, Case No. 22-30987.

On [____], 2022, the Bankruptcy Court entered an order [Docket No. [__]] (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (the "Bidding Procedures") for the consideration of the highest or otherwise best bids (or any combination of Partial Bids (as defined below) comprising one Qualified Bid (as defined below) for the Debtors' businesses and assets on the terms and conditions set forth herein.[2] By agreement of the non-debtor parties, these Bidding Procedures shall also apply to the sale of the assets and businesses of the direct and indirect subsidiaries of the Debtors (each a "Non-Debtor" and, collectively, the "Non-Debtors"). The Debtors and Non-Debtors shall be collectively referred to herein as the "Sellers".

The Sellers, in consultation with the Consultation Parties (as defined below), may designate one or more stalking horse bidders (the "Stalking Horse Bidders") and enter into separate stalking horse agreements (the "Stalking Horse Agreements") for the purchase of any business or assets, with such bid protections determined by the Sellers, in consultation with the other Consultation Parties, in accordance with the Bidding Procedures Order.

For all purposes under these Bidding Procedures, any Stalking Horse Bidder approved as such pursuant to the Bidding Procedures Order shall be considered a Qualified Bidder (as

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115). The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order.

defined below), and any Stalking Horse Bid shall be considered a Qualified Bid. Subject to the other provisions of these Bidding Procedures, in the event that a Stalking Horse Bid is the only Qualified Bid received by the Sellers by the Bid Deadline (as defined below), such Stalking Horse Bidder shall be deemed a Successful Bidder (as defined below).

The Bidding Procedures describe, among other things: (i) the procedures for bidders to submit bids for an investment in, or other acquisition of, the Sellers' businesses or assets, subject to an order of the Bankruptcy Court approving such potential sale transactions to the extent such sale transactions include Debtor Assets (as defined below); (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids; (iii) the process for negotiating the bids received; (iv) the conduct of the Auction if the Sellers receive Qualified Bids; (v) the procedure for the ultimate selection of any Successful Bidder and any Back-Up Bidder (as defined below); and (vi) the process for approval of the Sale Transactions at the applicable Sale Hearing.

As used herein, assets and business of the Debtors shall be referred to as "Debtor Assets" and assets and businesses of the Non-Debtors shall be referred to as "Non-Debtor Assets".

**Reservation of Rights**

**Except as otherwise set forth herein, the Sellers reserve the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, to: (i) modify these Bidding Procedures; (ii) waive terms and conditions set forth herein with respect to all Potential Bidders (as defined below); (iii) extend the deadlines set forth herein; (iv) announce at the Auction modified or additional procedures for conducting the Auction; or (v) alter the assumptions set forth herein; *provided*, *that*, the Sellers shall not be authorized to make material modifications to these Bidding Procedures with respect to the Debtor Assets without further order of the Court. The Sellers may, in consultation with the Consultation Parties, provide reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Sellers' businesses, in each case, to the extent not materially inconsistent with these Bidding Procedures and the Bidding Procedures Order, as applicable. All parties reserve their rights to seek Court relief with regard to the Auction, these Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline).**

**In addition, the Debtors reserve their right to cancel the bidding procedures and the Auction with respect to any of the Debtors' assets if the Debtors determine, in their reasonable business judgment, in a manner consistent with their fiduciary duties to proceed with a private sale of such assets. If the Debtors receive a bid for a private sale of assets and intend to cancel the bidding procedures and the Auction with respect to such assets, the Debtors shall first notify and consult with the advisors to the Creditors' Committee (as defined below) and then notify and consult with Ropes & Gray LLP and the Ad Hoc Group.**

**Fiduciary Out**

Nothing in these Bidding Procedures will require the board of directors, board of

managers, or such similar governing body of a Seller to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body reasonably determines in good faith, in consultation with outside counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

**Summary of Important Dates**

| Key Event | Deadline |
|---|---|
| Deadline to Submit Bids | **June 13, 2022 at 5:00 p.m. (prevailing Central Time)** |
| Auction (if necessary) | **June 16, 2022 at 10:00 a.m.(prevailing Central Time)** |
| Deadline to File Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) | **As soon as possible following conclusion of Auction** |
| Deadline to file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties | **June 14, 2022** |
| Deadline to File Objections to the Sale Transactions (the "Sale Objection Deadline") | **June 20, 2022, at 4:00 p.m. (prevailing Central Time)** |
| Deadline to File Contract Objections | **June 20, 2022, at 4:00 p.m. (prevailing Central Time)** |
| Sale Hearing | **June 21, 2022 at 1:30 p.m. (prevailing Central Time)** |

**Businesses to be Acquired**

The Sellers' businesses consist of three (3) primary areas of operations: (i) seismic data assets; (ii) software; and (iii) devices. Parties may submit bids for one or more of the Sellers' businesses or assets, including for all or part of the Sellers' businesses or assets (each, a "Partial Bid"), *provided*, *that*, when combined, such Partial Bids must be higher or better than any Stalking Horse Bids (as determined by the Sellers in their sole discretion), in accordance with the terms and conditions set forth herein.

**Designation of Stalking Horse Bidders**

The Sellers shall promptly provide copies of any Stalking Horse Bids received by the Sellers to the Consultation Parties. The Sellers, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, may designate one or more Stalking Horse Bidders, for one or more of the Sellers' assets, and enter into purchase agreements with

Stalking Horse Bidders, for the sale of such assets (each such group of assets, an "Stalking Horse Package"), in each case, in accordance with the terms of the Bidding Procedures Order and these Bidding Procedures, as applicable. If the Sellers designate a Stalking Horse Bidder for assets that include Debtor Assets, the Sellers shall file with the Court and serve on the parties that received the Motion, (a) a notice setting forth the identity of the Stalking Horse Bidder and the material terms of such Stalking Horse Agreement, including the terms of the applicable Bid Protections (each, a "Notice of Additional Stalking Horse"), (b) a copy of the Stalking Horse Agreement, and (c) a proposed order authorizing and approving the Debtors' provision of the Bid Protections pursuant to the terms and provisions of the applicable Stalking Horse Agreement and the Bidding Procedures (the "Proposed Order"), in each case no later than seven (7) calendar days before the Bid Deadline (as defined below), unless otherwise ordered by the Court.

Bid Protections. The Sellers may offer each Stalking Horse Bidder additional protections, including a break-up fee (the "Bid Protections"); *provided*, *that*, all Bid Protections must be negotiated by the Sellers, in consultation with the Consultation Parties, subject to notice and an opportunity for parties in interest to object solely with respect to Bid Protections offered by a Debtor (the "Debtor Bid Protections"). The amount and calculation of such Debtor Bid Protections shall be described in the Notice of Stalking Horse; *provided*, *further*, that any Debtor Bid Protections shall not be inconsistent with the Bidding Procedures Order or these Bidding Procedures.

Objections to and Approval of Designation of Stalking Horse Bidder. Any objections (each, a "Stalking Horse Objection") to the designation of a Stalking Horse Bidder for assets that include Debtor Assets, including any Debtor Bid Protections to be provided pursuant to the terms and provisions of a Stalking Horse Agreement, must (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court within seven (7) calendar days after service of the applicable Notice of Stalking Horse.

If a timely Stalking Horse Objection is filed and served in accordance with the preceding paragraph, the proposed designation of a Stalking Horse Bidder and the Bid Protections will not be approved until either the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors or by order of the Bankruptcy Court.

**Due Diligence**

The Sellers have posted copies of all material documents related to the Sellers' businesses and assets to the Sellers' confidential electronic data room (the "Data Room"). To access the Data Room, a party must submit to the Sellers' advisors:

(A) an executed confidentiality agreement in a form and substance that is satisfactory to the Sellers (unless such party is already a party to an existing customary confidentiality agreement with the Sellers that is acceptable to the Sellers for this due diligence process, in which case such agreement shall govern); and

(B) sufficient information, as reasonably determined by the Sellers, to allow

the Sellers to determine, in their reasonable business judgment, that the interested party (i) has the financial wherewithal to consummate the Sale Transactions, and (ii) intends to access the Data Room for a bona fide purpose consistent with these Bidding Procedures.

An interested party that meets the aforementioned requirements to the reasonable satisfaction of the Sellers shall be a "Potential Bidder" and such Bid (as defined below) shall be a "Potential Bid". As soon as practicable, the Sellers will provide such Potential Bidder access to the Data Room; *provided*, *that*, such access may be terminated by the Sellers in their reasonable discretion at any time for any reason whatsoever, including that a Potential Bidder does not become a Qualified Bidder, these Bidding Procedures are terminated, the Potential Bidder breaches any obligations under its confidentiality agreement or the Sellers become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading. The Debtors shall provide prompt notice to counsel to the Creditors' Committee if access to the Data Room is terminated for any Qualified Bidder as set forth herein. The Sellers may restrict or limit access of a Potential Bidder to the Data Room if the Debtors determine, based on their reasonable business judgment that certain information in the Data Room is sensitive, proprietary, or otherwise not appropriate for disclosure to such Potential Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Sellers or their advisors regarding the ability of such Potential Bidder to consummate the Sale Transactions.

Until the Bid Deadline, and except as otherwise provided herein, the Sellers will provide any Potential Bidder with reasonable access to the Data Room and any additional information requested by Potential Bidders (subject to any restrictions pursuant to applicable law or these Bidding Procedures) that the Sellers believe in their reasonable business judgment to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to the Sellers' investment bankers, Perella Weinberg Partners, Attn: Douglas McGovern (dmcgovern@pwpartners.com), Jakub Mleczko (jmleczko@pwpartners.com) and BJ Walker (BWalker@tphco.com).  In the event that any such additional information is in written form and provided to a Potential Bidder, the Sellers shall simultaneously provide such additional information to all other Potential Bidders by posting it in the Data Room. Unless prohibited by law or otherwise determined by the Sellers, the availability of additional due diligence to a Potential Bidder may be terminated, with prompt notice to the Creditors' Committee's counsel, if (i) the Potential Bidder does not become a Qualified Bidder, (ii) these Bidding Procedures are terminated, (iii) the Potential Bidder breaches any obligations under its confidentiality agreement, or (iv) the Sellers become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading.

Neither the Sellers nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Sellers' businesses or assets to any person or entity who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth herein, or (iii) in the case of competitively sensitive information, is a competitor of the Sellers, in the reasonable business judgment of the Sellers.

Each Qualified Bidder shall be deemed to acknowledge and represent (i) that it has had an opportunity to (x) conduct any and all due diligence regarding the applicable assets prior to making a bid and (y) investigate and/or inspect any documents and the applicable assets in making its bid; (ii) that it has relied solely upon its own independent review in making its bid; and (iii) that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the applicable assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures. The Sellers and their respective estates are not responsible for, and will have no liability with respect to, any information obtained by, or provided to, any Potential Bidders in connection with these Bidding Procedures and the Sale Transactions.

**Bid Deadline**

A Potential Bidder that desires to make a bid shall deliver electronic copies of its bid so as to be received no later than **June 13, 2022 at 5:00 p.m. (prevailing Central Time)** (the "Bid Deadline"); *provided*, *that*, the Sellers may, in consultation with the Consultation Parties, extend the Bid Deadline without further order of the Court subject to providing notice to all Potential Bidders and any Stalking Horse Bidders. **The submission of a bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the Sellers' businesses or assets specified in such bid**. Any party that does not submit a bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction.

Bids should be submitted by email to the following Seller representatives:

Winston & Strawn LLP
Timothy W. Walsh: twwalsh@winston.com
Daniel J. McGuire: dmcguire@winston.com
Eric Johnson: jejohnson@winston.com

Perella Weinberg Partners
Douglas McGovern: dmcgovern@pwpartners.com
Jakub Mleczko: jmleczko@pwpartners.com
BJ Walker: BWalker@tphco.com

**Consultation Parties**

Throughout the bidding process, the Sellers and their advisors will regularly and timely consult with (i) Ropes & Gray LLP, as advisors to an ad hoc group of (a) lenders under the Debtors' first lien revolving credit facility and (b) holders of the Debtors' 8.00% senior secured second priority notes (the "Ad Hoc Group") and (ii) the advisors to any official committee of unsecured creditors (the "Creditors' Committee") (each, a "Consultation Party," and collectively, the "Consultation Parties"); provided, that, the Debtors shall not provide Ropes & Gray LLP or the Ad Hoc Group copies of any term sheets or documentation relating to a Potential Bid, or information regarding the amount of any Potential Bids or the financial terms of any Potential Bids during the bidding process. In the event that a Consultation Party submits a Bid in the Auction, such party shall no longer be a Consultation Party with respect to the bidding and any Auction relating to the assets subject to such Bid until such time as such party withdraws such Bid.

The Sellers shall promptly provide copies of all Bids (as defined below) received by the

Sellers to the Consultation Parties, but in no event later than the next business day after such Bid is received; *provided*, *that*, the Consultation Parties must treat such Bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Sellers and the applicable Bidder. For the avoidance of doubt, if the Ad Hoc Group submits a Bid or Credit Bid on or prior to the Bid Deadline, the Sellers shall not provide copies of the Bids to Ropes & Gray LLP or the Ad Hoc Group.

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Bidding Procedures shall not limit the Sellers' discretion in any way and shall not include the right to veto any decision made by the Sellers in the exercise of their reasonable business judgment. Further, for the avoidance of doubt, any rights that the Consultation Parties may have pursuant to the terms of other agreements, any orders of the Court, or the Bankruptcy Code are hereby reserved and shall not be affected by these Bidding Procedures or the Bidding Procedures Order. All rights of the Consultation Parties with respect to the proposed Sale Transactions are fully reserved.

In the event that any Consultation Party or an affiliate of the foregoing submits a bid that is a Qualified Bid, any obligation of the Sellers to consult with the bidding party or its affiliates established under these Bidding Procedures will be waived, discharged, and released without further action; *provided*, *that*, the bidding party will have the same rights as any other Qualified Bidder set forth in the Bidding Procedures.

Notwithstanding anything to the contrary herein, the Consultation Parties shall not share any inside information received from the Debtors related to the bid procedures with any of their respective members unless and until such member (a) affirmatively declares to the Debtors in writing via email that it will not submit a Bid, (b) does not submit a Bid by the Bid Deadline, or (c) affirmatively withdraws its Bid (collectively, the "Bid Declaration Date"); provided that prior to the applicable Bid Declaration Date, the Debtors may provide information to the Consultation Parties in accordance with these Bidding Procedures on a professional eyes' only basis.

## **Form and Content of Qualified Bid**

A bid is a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and any other party that will be participating in connection with the bid (a "Bid"). To constitute a "Qualified Bid" a Bid must include, at a minimum, the following:[3]

i. Proposed Agreement. Each Bid must include an executed agreement (the "Proposed Agreement") for the acquisition of all or some of the businesses or assets of the Sellers, together with a redline comparing the Proposed Agreement to any applicable Stalking Horse Agreement or, if there is no applicable Stalking Horse Agreement, a form of asset purchase agreement, in each case distributed by the Sellers to Potential Bidders. The Proposed Agreement shall:

[3] The Sellers may waive any of the following requirements for a Bid to constitute a Qualified Bid to the extent reasonably necessary to promote bids and a robust auction so long as any such waiver is not materially inconsistent with these Bidding Procedures.

(a) include a complete set of all disclosure schedules and exhibits thereto marked to show the specific changes to the disclosure schedules and exhibits to the applicable Stalking Horse Agreement (if any) distributed by the Sellers to Potential Bidders; and

(b) not condition the closing of the proposed Sale Transaction on the receipt of any third party approvals (excluding such approvals required by the Court or governmental and/or regulatory approvals).

ii. Purchase Price; Form of Consideration; Cash Requirements; Assets; Assumed Liabilities; Credit Bid. Each Bid must clearly set forth, as applicable:

(a) Purchase Price. Each Bid must clearly identify the purchase price to be paid (the "Purchase Price") and specify the aggregate amount of cash and other consideration being offered.

(b) Cash Requirements. Each Bid, including any Credit Bid (as defined below), must provide cash consideration sufficient to satisfy the payment of any applicable Bid Protections in cash in full (the "Cash Consideration Amount") and, with respect to any Credit Bid, must also pay all obligations secured by senior liens on the applicable assets.

(c) Assets / Business Purchased: Each Bid must, in the Proposed Agreement, clearly identify the particular assets or business the Potential Bidder seeks to acquire from the Sellers. The Bid must clearly state the allocation of Purchase Price among the Debtor Assets and the Non-Debtor Assets, as applicable. For the avoidance of doubt, any such allocation of the Purchase Price among the Debtor Assets and the Non-Debtor Assets shall not be binding on the Sellers or any third-party and shall remain subject to determination by the Court.

(d) Assumed Liabilities: Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the Bidder seeks to assume.

(e) Credit Bid: Persons or entities holding a valid and perfected security interest in the Sellers' assets may submit a credit bid (a "Credit Bid") on such assets, to the extent permitted by applicable law or, with respect to any Debtor Assets, any Court order, and the documentation governing the Sellers' prepetition or postpetition secured credit facilities, and subject to any applicable limitations

set forth in the Intercreditor Agreement.[4]

iii. Unconditional Offer / Contingencies. A statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and is irrevocable until the Sellers notify the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid, or with respect to a Back-Up Bid until the earlier of (a) the first business day after the close of the Sale Transaction with the Successful Bidder for the assets bid upon by such Back-up Bidder or (b) 60 days after entry of an order approving the Sale Transaction with the Successful Bidder for the assets bid upon by such Back-up Bidder.

iv. Proof of Financial Ability to Perform. Each Bid must contain such financial and other information that allows the Sellers, in consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Sale Transactions including, without limitation, ability to post replacement letters of credit, as applicable, and, with respect to any Debtor Assets, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party. Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to, in the Sellers' reasonable business judgment, any unreasonable conditions), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Sellers or the Consultation Parties necessary to demonstrate adequate assurance of future performance and to demonstrate that such Potential Bidder has the ability to consummate the Sale Transactions in a timely manner.

v. Designation of Contracts and Leases. Each Bid must identify with particularity (i) each and every executory contract and unexpired lease that the Potential Bidder seeks to assume and receive an assignment of; and (ii) each and every other contract and lease of the Sellers that the Potential Bidder seeks to assume and receive an assignment of.

vi. Required Approvals. A statement or evidence (i) that the Potential Bidder has not conditioned their Bid on (a) obtaining financing, (b) any internal

[4] "Intercreditor Agreement" means that certain Intercreditor Agreement, dated as of April 20, 2021, by and among PNC Bank, National Association, as First Lien Representative and First Lien Collateral Agent for the First Lien Secured Parties, UMB Bank, National Association, as Second Lien Representative and Second Lien Collateral Agent for the Second Lien Secured Parties, and acknowledged and agreed by ION Geophysical Corporation and the guarantors party thereto.

approval, (c) the outcome or review of unperformed due diligence, or (d) regulatory contingencies (except as otherwise provided in this section), (ii) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott- Rodino Antitrust Improvements Act of 1976, as amended, or other antitrust laws, as applicable, and pay the fees associated with such filings; (iii) identifying each governmental and regulatory third-party approvals required for the Potential Bidder to consummate the applicable Sales Transaction, if any, and the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals; and (iv) that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid or as the Back-Up Bid, within a time frame acceptable to the Sellers. A Potential Bidder further agrees that its legal counsel will coordinate in good faith with the Sellers' legal counsel to discuss and explain such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable.

vii. Disclosure of Identity and Corporate Authorization. Each Bid must (i) fully disclose the identity of the Potential Bidder of each entity that will be bidding or otherwise participating in such Bid (including any equity owners or sponsors, if the Potential Bidder is an entity formed for the purpose of consummating the Sale Transactions), and the complete terms of any such participation, and (ii) include evidence of corporate authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid, participation in the Auction, and closing of the transactions contemplated by the Potential Bidder's Proposed Agreement in accordance with the terms of the Bid and these Bidding Procedures.

viii. No Entitlement to Expense Reimbursement or Other Amounts. With the exception of any Stalking Horse Bid, expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

ix. Disclosure of Connections. Each Bid must fully disclose any connections or agreements with the Sellers, the Debtors' prepetition secured creditors (including any member of the Ad Hoc Group), and DIP lender, other known Potential Bidders, and/or any officer or director of the Sellers.

x. Joint Bids. The Sellers may, in consultation with the Consultation Parties, approve joint Bids in their sole and reasonable business judgment on a case-by- case basis.

xi.   Representations and Warranties. Each Bid must include the following representations and warranties.

   a.   a statement that the Potential Bidder has had an opportunity to conduct, and has completed, any and all due diligence regarding the applicable business or asset prior to submitting its Bid;

   b.   a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the businesses or assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the businesses or assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed Agreement ultimately accepted and executed by the Sellers;

   c.   a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid (or any combination of Partial Bids comprising one Qualified Bid) after the Successful Bid with respect to the applicable business or asset;

   d.   a statement that the Potential Bidder has not (i) engaged in any collusion with respect to the submission of any bid or the Auction, (ii) coordinated or joined with any other party on a bid or bids, or (iii) took any other action to prevent a transparent and competitive auction process; *provided*, *that*, certain joint bids may be permitted as set forth herein;

   e.   a statement that all proof of financial ability to consummate the Sale Transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

   f.   a statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

A Potential Bidder must also accompany its Bid with:

xii.   a cash deposit in the amount of 10% of the proposed purchase price (a "Good Faith Deposit"), unless otherwise agreed to by the Sellers, in consultation with the Consultation Parties, and a Potential Bidder (but in no event less than 5% of the proposed purchase price); *provided, that,* a Potential Bidder submitting a Credit Bid will not be required to accompany its Bid with a Good Faith Deposit for any portion of the

Purchase Price that is a Credit Bid;

xiii. the contact information of the specific person(s) whom the Sellers or their advisors should contact in the event that the Sellers have any questions or wish to discuss the Bid submitted by the Potential Bidder; and

xiv. a covenant to cooperate with the Sellers and the Consultation Parties to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements.

**Credit Bids for Unencumbered Assets of the Debtors**

If any Potential Bidder (i) seeks to acquire (a) any causes of action arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code or any other state or federal law or (b) any other assets of the Debtors that are unencumbered by liens (collectively, "Unencumbered Assets"); (ii) such Potential Bidder is named a Successful Bidder in accordance with these Bid Procedures; and (iii) any portion of such Successful Bid is a Credit Bid, then the Court shall determine the value of any such Unencumbered Assets at the Sale Hearing and such Successful Bidder may be required to provide additional cash consideration to the Debtors equal to the value of such Unencumbered Assets as determined by the Court.

**Good Faith Deposit**

A Good Faith Deposit must be deposited, prior to the Bid Deadline, with an escrow agent selected by the Sellers (the "Escrow Agent") pursuant to a customary and reasonable escrow agreement to be provided by the Sellers. To the extent a Qualified Bid is modified before, during, or after the Auction, the Sellers reserve the right to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the Purchase Price. If a Qualified Bidder is required to increase its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment. For the avoidance of doubt, and notwithstanding anything to the contrary in these Bidding Procedures or any Court order to the contrary, any Good Faith Deposit by any Stalking Horse Bidders or other Qualified Bidders shall only be for purposes of this process. No party, including any prepetition lenders or postpetition lenders, shall have any lien, claim, or right with respect to the Good Faith Deposit, and such funds shall not be available for distribution to the Sellers' creditors, unless and until such funds become property of the Sellers' estates in accordance with the terms of these Bidding Procedures.

**Review of Bids; Designation of Qualified Bids**

The Sellers, in consultation with the Consultation Parties, will evaluate Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Sellers deem appropriate in the exercise of their reasonable business judgment, based upon the Sellers' evaluation of the content of each Bid.

A Bid that is reasonably determined by the Sellers, in consultation with the Consultation Parties, to meet the requirements set forth herein will be considered a "Qualified Bid" and any

bidder that submits a Qualified Bid (including any Stalking Horse Bids) will be considered a "Qualified Bidder."

By no later than **one (1) business day prior to the Auction** (the "Qualified Bid Deadline"), the Sellers shall determine, in their reasonable business judgment, and in consultation with the Consultation Parties, which of the Bids received by the Bid Deadline qualifies as a Qualified Bid. The Sellers shall notify each Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline.

In evaluating the Bids, the Sellers may take into consideration the following non-exhaustive factors:

1. the amount of the purchase price and Credit Bid, as applicable, set forth in the Bid (provided, that, for purposes of evaluating competing bids, and except with respect to the requirement that each Bid must provide the Cash Consideration Amount, every dollar of a Credit Bid shall be treated the same as a dollar from a cash or other non-cash Bid, and a Credit Bid shall not be considered inferior to a comparable cash or other non-cash Bid because it is a Credit Bid);

2. the assets and liabilities excluded from the Bid and any executory contracts or leases or other liabilities proposed to be assumed;

3. the value to be provided to the Sellers under the Bid, including the net economic effect upon the Sellers' estates, taking into account any Stalking Horse Bidder's rights to the Bid Protections;

4. any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities, including replacement letters of credit;

5. the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; tax leakage; and required governmental or other approvals;

6. the impact on employees and employee claims against the Sellers;

7. the impact on trade creditors; and

8. any other factors the Sellers may deem relevant, consistent with their fiduciary duties.

A Bid that contemplates the liquidation of some or all the Sellers' businesses or assets shall not be disqualified from being a Qualified Bid solely for that reason. The Sellers reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.

Without the written consent of the Sellers, in consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed

amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid for the Sellers during the period that such Qualified Bid remains binding as specified herein; *provided*, *that*, any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures. For the avoidance of doubt, any amendment to any Stalking Horse Agreement, shall be shared with the Creditors' Committee's counsel as promptly as possible and filed with the Bankruptcy Court within one (1) business day of such amendment, or as soon as reasonably practicable thereafter, and the Sellers will take into account all such amendments or modifications at the Auction.

Subject to the terms of these Bidding Procedures, any Qualified Bidder who has a valid and perfected lien on any Non-Debtor Assets and the right under applicable nonbankruptcy law to credit bid claims secured by such liens, shall have the right to credit bid all or a portion of the value of such Qualified Bidder's claims with respect to the collateral by which such Qualified Bidder's claim is secured. Subject to the terms of the Bidding Procedures Order and these Bidding Procedures, any Qualified Bidder who has a valid and perfected lien on any Debtor Assets and the right under applicable law to credit bid claims secured by such liens shall have the right to credit bid all or a portion of the value of such Qualified Bidder's claims pursuant to section 363(k) of the Bankruptcy Code with respect to the collateral by which such Qualified Bidder's claim is secured. For the avoidance of doubt, any Credit Bid for the Debtor Assets shall be subject to any lien challenge rights of the Creditors' Committee set forth in any Court order. Any Qualified Bidder intending to credit bid all or a portion of the value of such Qualified Bidder's claim shall provide notice thereof to the Sellers and any Stalking Horse Bidders by the Bid Deadline. For the avoidance of doubt, such Qualified Bidder that provides notice of intent to submit a Credit Bid will no longer be a Consultation Party with respect to the bidding and auction relating to the assets subject to such Bid until such time as such party withdraws such Bid.

**Failure to Receive Qualified Bids Other Than Stalking Horse Bid**

If no Qualified Bid (other than a Stalking Horse Bid) is received by the Qualified Bid Deadline, the Sellers will not conduct the Auction with respect to the assets subject to such Stalking Horse Bid, and, to the extent such Stalking Horse Bid includes Debtor Assets, shall file a notice with the Court indicating that no Auction will be held and the Stalking Horse Bidder will be named the Successful Bidder.

**Auction Procedures**

If the Sellers receive two or more Qualified Bids with respect to the applicable assets, the Sellers shall conduct the Auction on **June 16, 2022, beginning at 10:00 a.m. (prevailing Central Time) at (i) the offices of Winston & Strawn LLP, 800 Capital Street, Suite 2400, Houston, TX 77002, or (ii) virtually, pursuant to procedures to be announced to bidders, or such other later date as may be determined by the Sellers in consultation with the Consultation Parties and upon notice to all parties in interest**. Only Qualified Bidders will be eligible to participate at the Auction, subject to such limitations as the Sellers may impose in good faith and in consultation with the Consultation Parties. In addition, only the professionals and/or other representatives of the Qualified Bidders, the Sellers, and the Consultation Parties shall be permitted to attend and observe the Auction.

The following auction rules shall apply to the Auction to promote a spirited and robust auction (the "Auction Rules"). All bids in the Auction will be made and received on an open basis, and all other Qualified Bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of a bid submitted in response to any successive bids made at the Auction (each, an "Overbid") will be disclosed to all other Qualified Bidders participating in the Auction. Each Qualified Bidder will be permitted what the Sellers reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction. The Auction will be conducted openly and shall be transcribed or recorded. The starting bid (the "Starting Bid") shall be the highest or best Qualified Bid, as determined by the Sellers in consultation with the Consultation Parties. If a Stalking Horse Bid is selected as the Starting Bid, any Overbid shall include the amount provided for in the Stalking Horse Bid(s), *plus* the Bid Protections, plus a minimum overbid increment of $500,000 or a lesser amount to be determined by the Sellers in their business judgment, in consultation with the Consultation Parties.

Pursuant to 18 U.S.C. §§ 156 and 157, bidders and their representatives may not communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction. All parties are prohibited from (i) engaging in any collusion with respect to the submission of any bid or the Auction, (ii) coordinating or joining with any other party on a bid or bids, or (iii) taking any other action to prevent a transparent and competitive auction process; *provided*, *that*, certain joint bids may be permitted as set forth herein. Each Qualified Bidder participating in the Auction shall confirm in writing and on the record at the Auction that (i) it has not engaged in any of the foregoing prohibited actions and (ii) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder.

All parties attending the Auction must keep the proceedings and results of the Auction confidential until the Sellers have closed the Auction; *provided*, *that*, parties may speak with clients or parties necessary to place their bid or increase it so long as such individuals are advised of the confidentiality restriction.

The Sellers shall conduct an Auction for the Sellers' businesses and assets on a consolidated or semi- consolidated basis pursuant to the Auction Rules. To the extent the Sellers conduct multiple auctions for different subgroupings of the Sellers' assets/businesses (each, a "Sub-Auction") at any Auction and a Qualified Bidder declines to participate in any specific Sub-Auction or Sub-Auctions, or any round of bidding for such specific Sub-Auctions, such Qualified Bidder shall still be permitted to offer a Bid in subsequent Sub-Auctions, including bids that include assets/businesses subject to a prior Sub-Auction, which includes the right to bid on groupings of assets/businesses that may include specific assets or businesses which were the subject of an earlier Sub-Auction. The Sellers may, in the exercise of their reasonable business judgment and in consultation with the other Consultation Parties, identify the highest or otherwise best Qualified Bid as the reserve bid for each Sub-Auction (each, a "Reserve Sub-Auction Bid" and the bidder submitting such bid, a "Reserve Sub-Auction Bidder"). The Sellers may also identify, in consultation with the Consultation Parties, a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid in each Sub-Auction as a back-up bid (each, a "Back-Up Sub-Auction Bid" and the bidder submitting such bid, a "Back-Up Sub-Auction Bidder").

If the Sellers, in the exercise of their reasonable business judgment and in consultation with the other Consultation Parties, determine that pursuing a Sale Transaction pursuant to the Reserve Sub-Auctions Bid(s) will result in a higher or otherwise better value of the Sellers' businesses than pursuing a Sale Transaction pursuant to the highest or otherwise best Bid received in the Auction of the Sellers' assets or business on a consolidated or semi- consolidated basis, then the Sellers may declare the Reserve Sub-Auction Bid(s) as Successful Bid(s) (and the Reserve Sub-Auction Bidder(s) as Successful Bidders) and the Back-Up Sub-Auction Bid(s) as the Back-Up Bid(s) (and the Back-up Sub-Auction Bidder(s) as Back-Up Bidder(s)).

The Sellers may, in the exercise of their business judgment and in consultation with the other Consultation Parties, identify the highest or otherwise best Qualified Bid (or any combination of Partial Bids comprising one Qualified Bid, as specified above) as the successful bid for the respective business or assets to be acquired (each, a "Successful Bid" and the bidder submitting such bid, a "Successful Bidder"). The Sellers may also identify a Qualified Bidder, in consultation with the Consultation Parties, that submitted the next highest or otherwise best Qualified Bid (or any combination of Partial Bids comprising one Qualified Bid, as specified above) as a back-up bid (a "Back- Up Bid" and the bidder submitting such bid, a "Back-Up Bidder").

Within one (1) business day after the Auction, or as soon as reasonably practicable thereafter, each Successful Bidder shall (i) submit to the Sellers fully executed documentation memorializing the terms of the Successful Bid such Successful Bidder submitted and (ii) unless otherwise agreed in the purchase agreement between the Sellers and a Successful Bidder, submit by transfer of immediately available funds to an account identified by the Sellers any amount required to increase the Successful Bidder's Good Faith Deposit to an amount equal to ten percent (10%) of the Purchase Price contained in the Successful Bid, if the amount of the Good Faith Deposit previously delivered by the Successful Bidder is less than such amount. For the avoidance of doubt, and notwithstanding anything to the contrary in these Bidding Procedures or any Court order to the contrary, any such increase to the Good Faith Deposit by any Stalking Horse Bidders or other Qualified Bidders to such designated account shall only be for purposes of this process. No party, including any prepetition lender or postpetition lender, have or shall have any lien, claim, or right with respect to such funds which shall not be available for distribution to the Sellers' creditors, unless and until such funds become property of the Sellers' estates in accordance with the terms of these Bidding Procedures. A Successful Bid may not be assigned to any party without the consent of the Sellers, in consultation with the Consultation Parties.

At any time before the designation of a Successful Bid and Back-Up Bid, if any, the Sellers, in consultation with the Consultation Parties, reserve the right to and may reject such Qualified Bid(s) (other than any Stalking Horse Bids) if such Qualified Bid(s), in the Sellers' reasonable business judgment, is/are: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the applicable Sale Transaction; or (iii) contrary to the best interests of the Sellers and their estates.

As set forth above, the Sellers reserve their right, in their reasonable business judgment and in consultation with the Consultation Parties, to announce at the Auction modified or

additional procedures for conducting the Auction.

**Post-Auction Process**

Within one (1) business day after the conclusion of the Auction, or as soon as reasonably practicable thereafter, the Sellers shall file with the Court a notice of the Successful Bid(s), Successful Bidder(s), Back-Up Bid(s), and Back-Up Bidder(s).

Within two (2) business days after the Auction, the Sellers shall direct the Escrow Agent to return the Good Faith Deposit of any bidder (including any Stalking Horse Bidder), together with interest accrued thereon, who is not declared a Successful Bidder or Back-Up Bidder. The Good Faith Deposit of each Back-Up Bidder shall be returned, together with interest accrued thereon, within two (2) business days after the earlier of (a) consummation of the Sale Transaction with the Successful Bidder for the assets bid upon by such Back-Up Bidder or (b) 60 days after entry of an order approving the Sale Transaction with the Successful Bidder for the assets bid upon by such Back-Up Bidder. Upon the authorized return of any such Good Faith Deposit, the bid of such Potential Bidder, Qualified Bidder or Back-Up Bidder, as applicable, shall be deemed revoked and no longer enforceable.

Each Successful Bidder's Good Faith Deposit shall be applied against the cash portion of the purchase price of such bidder's Successful Bid upon the consummation of the Sale Transactions.

In addition to the foregoing, the Good Faith Deposit of a Qualified Bidder will be forfeited to the Sellers if (i) the Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted herein, during the time the Qualified Bid remains binding and irrevocable or (ii) the Qualified Bidder is selected as a Successful Bidder or Back-Up Bidder and refuses or fails to enter into the required definitive documentation or to consummate the Sale Transactions according to these Bidding Procedures. In addition to receipt of a Good Faith Deposit, the Sellers specifically reserve the right to seek all additional available damages from a defaulting Successful Bidder or Back-Up Bidder.

Notwithstanding the foregoing, the Good Faith Deposit, including the amount thereof, and any remedies against a Stalking Horse Bidder shall be governed by the applicable Stalking Horse Agreement, if any.

**Notices Regarding Assumption and Assignment**

The Debtors shall provide all notices regarding the proposed assumption and assignment of contracts and leases of the Debtors in accordance with the Assumption and Assignment Procedures included in the Bidding Procedures Order.

**Sale Objections and Hearing**

With respect to Debtor Assets, objections to the Sale Transactions (each, a "Sale Objection"), shall: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and if applicable, provide proposed language that, if accepted and

incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court; and (vi) be served upon (a) proposed counsel to the Debtors, Winston & Strawn LLP, 35 West Wacker Drive, Chicago, IL 60601, Attn: Daniel J. McGuire (dmcguire@winston.com) and Laura Krucks (lkrucks@winston.com), (b) counsel to any statutory committee appointed in the chapter 11 cases, and (c) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas, 77002, Attn: Hector Duran, Esq. and Stephen Statham, Esq. by **June 20, 2022 at 4:00 p.m. (prevailing Central Time**); *provided*, *that*, the Debtors may extend the Sale Objection Deadline as the Debtors deem appropriate in the exercise of their reasonable business judgment. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the applicable Sale Hearing.

An appropriate representative of each Successful Bidder shall appear at the applicable Sale Hearing and be prepared, if necessary, to have such representative(s) testify in support of a Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder as part of the proposed transaction.

Any party who fails to timely file with the Court a Sale Objection will be forever barred from asserting any objection to the applicable sale of Debtor Assets, or to the consummation and performance of a sale transaction contemplated by a purchase agreement with a Debtor and a Successful Bidder, including the transfer of the Debtor Assets to a Successful Bidder, free and clear of all claims and interests pursuant to section 363(f) of the Bankruptcy Code. Failure to object shall constitute consent for the purposes of section 363(f) of the Bankruptcy Code. Any objection filed after the Sale Objection Deadline will not be considered by the Court.

**Consent to Jurisdiction and Authority as Condition to Bidding**

All Potential Bidders (including any Stalking Horse Bidders) that participate in the bidding process with respect to Debtor Assets shall be deemed to have (i) consented to the core jurisdiction of the Court to enter any order or orders, which shall be binding in all respects, in any way related to these Bidding Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transactions; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transactions; and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transactions if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

**Exhibit 2**

**Sale Notice**

| In re: | ) | Chapter 11 |
|---|---|---|
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | ) | Case No. 22-30987 (MI) |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On April 12, 2022, ION Geophysical Corporation and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Court") a motion [Docket No. 21] (the "Motion") for the entry of an order (the "Bidding Procedures Order")[2] (i) approving (a) the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as Exhibit 1; (b) authorizing the Debtors to designate one or more stalking horse bidders (the "Stalking Horse Bidders") and offer each such bidder certain Bid Protections (as defined in the Motion); (c) setting the deadline for potential bidders to submit a proposal to purchase the Debtors' businesses or assets (the "Bid Deadline"), authorizing and scheduling an auction (the "Auction"), and authorizing and scheduling hearings with respect to the approval of a proposed sale transaction (the applicable "Sale Hearing"); (d) authorizing and

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115). The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Bidding Procedures Order, and the Bidding Procedures, as applicable. Any summary of the Bidding Procedures Order or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

approving the form and manner of the Sale Notice; (e) authorizing and approving the Cure Notice to Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "Cure Costs"); and (f) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "Assumption and Assignment Procedures"); (ii) authorizing the sale of certain of the Debtors' assets, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code following the sale process and completion of the Auction (collectively, the "Sale Transactions"); and (iii) granting related relief.

2. On [___], 2022, the Court entered the Bidding Procedures Order [Docket No. [___]].

**Important Dates and Deadlines**

- **Bid Deadline. Any person or entity interested in participating in the Auction must submit a Qualified Bid on or before June 13, 2022 at 5:00 p.m. (prevailing Central Time) (the "Bid Deadline").**

- **Auction. An Auction, if necessary, has been scheduled for June 16, 2022 at 10:00 a.m. (prevailing Central Time).**

- **Sale Objection Deadline. Objections to the Sale Transactions, including any objection to the sale of the Debtors' business free and clear of all claims and interests must be (i) filed in accordance with the Bidding Procedures and (ii) filed with the Court by no later than June 20, 2022 at 4:00 p.m. (prevailing Central Time) (the "Sale Objection Deadline").**

- **Contract Objection Deadline. Objections to any proposed assumption or assignment of an Assigned Contract must be (i) filed in accordance with the Bidding Procedures and (ii) filed with the Court by no later than June 20, 2022 at 4:00 p.m. (prevailing Central Time) (the "Contract Objection Deadline").**

- **Sale Hearing. A hearing to approve the Sale Transactions shall be held before the Court before the Honorable Marvin Isgur on June 21, 2022 at 1:30 p.m. (prevailing Central Time) (the "Sale Hearing").**

**Notice to Holders of Consent Rights, Preferential Purchase Rights and Similar Rights of**

**Sale Objection Deadline and Contract Objection Deadline**

3. The Debtors may assign to a Successful Bidder, pursuant to an asset purchase agreement, certain contracts, agreements, leases and other assets, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of all **liens, claims, interests, and encumbrances** (other than certain permitted post-closing liabilities, liens, or as otherwise provided in the applicable purchase agreement). Subject to approval by the Court, if any party objects to such assignment, including any objection based on any alleged approval or consent right or anti-assignment provision contained in or applicable to any contract, lease, or other agreement (a "Consent Right"), then such party must file with the Court an objection identifying (i) the contract(s), lease(s), or other agreement(s), (ii) the basis for objecting to the assignment of such contract(s), lease(s), or other agreement(s), and (iii) all supporting documentation (each, an "Assignment Objection"), no later than the Sale Objection Deadline or the Contract Objection Deadline, as applicable.

4. In addition, the Debtors may assign to a Successful Bidder, pursuant to an asset purchase agreement, certain contracts, agreements, leases or other assets, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of any preferential purchase rights, rights of first refusal, drag-along rights, tag-along rights, and other similar rights, if any, that are applicable to the transfer of the Debtors' assets in connection with a Sale Transaction (each a "Preferential Purchase Right"). Subject to approval by the Court, if any purported holder of a Preferential Purchase Right objects to such transfer, including on account of any alleged Preferential Purchase Right contained in or applicable to any contract, lease, or other agreement, then such holder must file with the Court an

objection identifying (i) the assets subject to such Preferential Purchase Right(s), (ii) the applicable agreement, document, or statute giving rise to such Preferential Purchase Right(s), (iii) the portion of the agreement, document, or statute giving rise to such Preferential Purchase Right(s), and (iv) all other supporting documentation (a "Rights Objection"), no later than the Sale Objection Deadline or the Contract Objection Deadline, as applicable.

5.      **IF A PARTY FILES AN ASSIGNMENT OBJECTION OR RIGHTS OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH ABOVE, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE SALE HEARING, SUCH OBJECTION WILL BE HEARD BY THE COURT AT THE SALE HEARING.**

6.      **Any person failing to timely file an Assignment Objection or Rights Objection, as applicable, will be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the assets to be sold, assumed, and/or assigned in connection with a Sale Transaction, free and clear of all liens, claims, interests, and encumbrances, including Consent Rights and Preferential Purchase Rights (other than certain permitted liens), and from asserting any alleged Preferential Purchase Rights with respect to a Sale Transaction, and (ii) deemed to consent to and approve the transfer, sale, and assumption and/or assignment of the Debtors' right, title, and interest in, to and under such assets free and clear of all liens, claims, interests, and encumbrances, including Consent Rights and Preferential Purchase Rights (other than certain permitted liens), regardless of whether such consent must be in writing pursuant to the terms of any contract, lease, or other agreement.**

7.      If any person files an Assignment Objection or Rights Objection in accordance

herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Assignment Objection or Rights Objection, as applicable (and serving such response on the objecting party) at any time prior to the Sale Hearing. Upon the filing of such response to such objection, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted. Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such objections, and all such rights of the Debtors are expressly preserved.

**Additional Information**

8. Any party interested in submitting a bid should contact the Debtors' investment banker, Perella Weinberg Partners, Attn: Douglas McGovern (dmcgovern@pwpartners.com), Jakub Mleczko (jmleczko@pwpartners.com) and BJ Walker (BWalker@tphco.com). Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Epiq Corporate Restructuring LLC, located at https://dm.epiq11.com/IONGeophysical.

9. Copies of the Motion, the Bidding Procedures Order, and the Bidding Proceduresmay be obtained free of charge from the Case Website.

**Reservation of Rights**

10. Except as otherwise set forth in the Bidding Procedures, the Sellers reserve the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, to: (i) modify these Bidding Procedures; (ii) waive terms and conditions set forth herein with respect to all Potential Bidders (as defined below); (iii) extend the deadlines set forth herein; (iv) announce at the Auction

modified or additional procedures for conducting the Auction; or (v) alter the assumptions set forth herein; *provided*, *that*, the Sellers shall not be authorized to make material modifications to these Bidding Procedures with respect to the Debtor Assets without further order of the Court. The Sellers may, in consultation with the Consultation Parties, provide reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Sellers' businesses, in each case, to the extent not materially inconsistent with these Bidding Procedures and the Bidding Procedures Order, as applicable. All parties reserve their rights to seek Court relief with regard to the Auction, these Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

11.     In addition, the Debtors reserve their right to cancel the bidding procedures and the Auction with respect to any of the Debtors' assets if the Debtors determine, in their reasonable business judgment, in a manner consistent with their fiduciary duties to proceed with a private sale of such assets. If the Debtors receive a bid for a private sale of assets and intend to cancel the bidding procedures and the Auction with respect to such assets, the Debtors shall first notify and consult with the advisors to the Creditors' Committee (as defined below) and then notify and consult with Ropes & Gray LLP and the Ad Hoc Group.

12.     **FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

13.     **THE FAILURE OF ANY PERSON OR ENTITY TO FILE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER BY THE SALE OBJECTION DEADLINE SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM**

**ASSERTING ANY OBJECTION TO THE MOTION, THE ORDER APPROVING THE SALE TRANSACTIONS, THE PROPOSED SALE TRANSACTIONS, OR ANY OTHER AGREEMENT EXECUTED BY THE DEBTORS AND A SUCCESSFUL BIDDER AT THE AUCTION.**

Dated: [_____], 2022
Houston, Texas

**WINSTON & STRAWN LLP**

Katherine A. Preston (TX Bar No. 24088255)
800 Capitol St., Suite 2400
Houston, Texas 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
Email: kpreston@winston.com

and

Timothy W. Walsh (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
E-mail: twwalsh@winston.com

and

Daniel J. McGuire (admitted *pro hac vice*)
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-3733
Facsimile: (312) 558-5700
Email: dmcguire@winston.com

*Proposed Counsel to the Debtors and Debtors in Possession*

# Exhibit 3

## Cure Notice

| In re: | ) | Chapter 11 |
|---|---|---|
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | ) | Case No. 22-30987 (MI) |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On April 12, 2022, ION Geophysical Corporation and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Court") a motion [Docket No. 21] (the "Motion") for the entry of an order (the "Bidding Procedures Order")[2] (i) approving (a) the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as Exhibit 1; (b) authorizing the Debtors to designate one or more stalking horse bidders (the "Stalking Horse Bidders") and offer each such bidder certain Bid Protections (as defined in the Motion); (c) setting the deadline for potential bidders to submit a proposal to purchase the Debtors' businesses or assets (the "Bid Deadline"), authorizing and scheduling an auction (the "Auction"), and authorizing and scheduling hearings with respect to the

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115). The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Bidding Procedures Order, and the Bidding Procedures, as applicable. Any summary of the Bidding Procedures Order or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

approval of a proposed sale transaction (the applicable "Sale Hearing"); (d) authorizing and approving the form and manner of the Sale Notice; (e) authorizing and approving the Cure Notice to Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "Cure Costs"); and (f) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "Assumption and Assignment Procedures"); (ii) authorizing the sale of certain of the Debtors' assets, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code following the sale process and completion of the Auction (collectively, the "Sale Transactions"); and (iii) granting related relief.(d) setting the deadline for potential bidders to submit a proposal to purchase the Debtors' businesses or assets (the "Bid Deadline"), authorizing and scheduling an auction (the "Auction"), authorizing and scheduling hearings with respect to the approval of a proposed sale transaction (the applicable "Sale Hearing"); (e) authorizing and approving the form and manner of the Sale Notice; (f) authorizing and approving the Cure Notice to Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "Cure Costs"); (g) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "Assumption and Assignment Procedures"); (ii) authorizing the sale of certain of the Debtors' assets, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code following the sale process and completion of the Auction (collectively, the "Sale Transactions"); and (iii) granting related relief.

2. Each of the Assigned Contracts that may be assumed and assigned in connection with the Sale Transactions with a Successful Bidder and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A** and **Exhibit B** hereto. The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Assigned Contracts.

3. The inclusion of any contract or lease on **Exhibit A** or **Exhibit B** shall not constitute or be deemed a determination or admission by the Debtors that such contract or other document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

4. Notwithstanding the inclusion of any lease or contract on **Exhibit A** or **Exhibit B**, a Successful Bidder is not bound to accept assignment of any Assigned Contract, and may amend the schedule of Assigned Contracts to remove any contract or lease.

5. If (a) the Debtors identify (i) additional contracts or leases to be assumed and assigned to a Successful Bidder or (ii) modifications that need to be made to a proposed Cure Cost previously stated in the Cure Notice, or (b) a Successful Bidder designates any additional contracts or leases not previously included on this Cure Notice for assumption and assignment, the Debtors shall promptly file with the Court and serve by first class mail on the applicable Contract Counterparty a Supplemental Cure Notice in accordance with the Bidding Procedures Order.

**Objections**

6. Any objection to the proposed assumption or assignment of an Assigned Contract identified on **Exhibit A** or **Exhibit B**, including any objection to the proposed Cure Cost, the provision of adequate assurance of future performance, an Assignment Objection (as defined in the Bidding Procedures Order), or a Rights Objection (as defined in the Bidding Procedures Order) must:

(a) be in writing;

(b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party;

(c) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection;

(d) conform to the Bankruptcy Rules and the Local Rules; and

(e) be filed with the Court no later than **[_____], 2022 at 4:00 p.m. (prevailing Central Time)**.

7. **IF NO OBJECTION IS TIMELY RECEIVED WITH RESPECT TO AN ASSIGNED CONTRACT (THE "<u>CONTRACT OBJECTION</u>"): (I) THE CONTRACT COUNTERPARTY TO SUCH ASSIGNED CONTRACT SHALL BE DEEMED TO HAVE CONSENTED TO THE ASSUMPTION BY THE DEBTORS AND ASSIGNMENT TO SUCCESSFUL BIDDER OF THE ASSIGNED CONTRACT, AND BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO SUCH ASSUMPTION AND ASSIGNMENT (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE BY THE SUCCESSFUL BIDDER); (II) ANY AND ALL DEFAULTS UNDER THE ASSIGNED CONTRACT AND ANY AND ALL PECUNIARY LOSSES RELATED THERETO SHALL BE DEEMED CURED AND COMPENSATED PURSUANT TO BANKRUPTCY CODE SECTION 365(B)(1)(A) AND UPON PAYMENT OF THE CURE COSTS SET FORTH IN THE CURE NOTICE FOR SUCH ASSIGNED CONTRACT; AND (III) THE CONTRACT COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OTHER CLAIMS RELATED TO SUCH ASSIGNED CONTRACT AGAINST THE DEBTORS AND THEIR ESTATES OR THE SUCCESSFUL BIDDER, OR THE PROPERTY OF ANY OF THE THEM, THAT EXISTED PRIOR TO THE ENTRY OF THE ORDER RESOLVING SUCH CONTRACT OBJECTION AND ANY SALE ORDER.**

**Sale Hearing**

8. The Debtors will seek to assume and assign the Assigned Contracts at the applicable hearing to approve the Sale Transactions (the applicable "Sale Hearing") that is scheduled to commence on **June 21, 2022 at 1:30 p.m. (prevailing Central Time)** before the Honorable Marvin Isgur of the United States Bankruptcy Court for the Southern District of Texas (the "Court"), 515 Rusk Street, Houston, TX 77002. Objections, if any, that cannot otherwise be resolved by the parties, will be heard at a hearing scheduled prior to any scheduled closing of the Sale Transactions, as determined by the Debtors in accordance with the Bidding Procedures Order.

**Additional Information**

9.      Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures, may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by the Debtors' claims and noticing agent, Epiq Corporate Restructuring LLC, located at https://dm.epiq11.com/IONGeophysical.

Dated: [___], 2022
Houston, Texas

**WINSTON & STRAWN LLP**

Katherine A. Preston (TX Bar No. 24088255)
800 Capitol St., Suite 2400
Houston, Texas 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
Email: kpreston@winston.com

and

Timothy W. Walsh (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
E-mail: twwalsh@winston.com

and

Daniel J. McGuire (admitted *pro hac vice*)
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-3733
Facsimile: (312) 558-5700
Email: dmcguire@winston.com

*Proposed Counsel to the Debtors and Debtors in Possession*