No: 11195





## Master Geophysical Service Agreement

This Master Geophysical Service Agreement ("Agreement"), dated this _22_ day of July, 2011, is between:

### GX TECHNOLOGY CORPORATION,
located at 2105 City West Boulevard, Suite 900, Houston, Texas, 77042
(the "Company")

### - AND –

Cobra Energy Services, S.A.
located at 14810 Park Almeda Dr., Houston, TX  77047
(the "Contractor")

The Company is in the business of performing data acquisition and processing projects for its customers. The Contractor is in the business of providing seismic data acquisition services. The Company desires for the Contractor to provide seismic data acquisition services to the Company in connection with data acquisition and processing projects undertaken by the Company, and the Contractor is agreeable to providing such services to the Company, in each case on the terms and conditions as set out in this Agreement.

**NOW THEREFORE,** in consideration of the mutual obligations and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Agreement (individually, a "Party" and collectively, the "Parties") hereby agree as follows:

1. **Engagement.**   The Company hereby agrees to engage the Contractor to provide the Company with seismic data acquisition services and such other services as the Company and the Contractor may agree upon from time to time ("Services"), and the Contractor hereby agrees to provide such Services to the Company. For each Service project to be undertaken by the Contractor under this Agreement, the Parties shall from time to time complete and sign a separate Supplement for such project ("Supplement"). Each Supplement shall contain the principal terms of the Service project, including, but not limited to: scope and description of the Services; project management; pricing, incentives, and similar issues; staffing; project timetable; critical milestones; and acceptance criteria. Neither Party shall be required to sign any Supplement except to the extent approved by each Party in such Party's sole discretion. Each Supplement shall be governed by the General Terms and Conditions of this Agreement

**EXHIBIT**
**Cobra 1**

as if this Agreement were set forth in full in each Supplement. The Contractor agrees that it will perform the Services in accordance with the terms of this Agreement and each Supplement.

2. **General Terms and Conditions**. The General Terms and Conditions that are attached to this Agreement are an integral part of this Agreement. Any capitalized term used in this Agreement shall have the meaning ascribed to such term in the particular part of this Agreement where such term is defined. In the event of any conflict between any provision contained in the General Terms and Conditions and any provision contained in the Supplement, the provision contained in the Supplement shall control.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed as of the day and year first above written.

**GX TECHNOLOGY CORPORATION**

By: _____

Name: _SHAWN LRIE_____

Title: _VP OPERATIONS_____

**Contractor:**

**COBRA ENERGY SERVICES, S.A.**

By: _____

Name: Ted Cooper   Marcus Pilliens

Title: President   Treasurer







## General Terms And Conditions
## to
## Master Geophysical Service Agreement

1. **Additional Terms**. Certain terms regarding the Services are more particularly described in one or more Supplemental Agreements ("Supplement(s)") signed by the Parties from time to time during the term of this Agreement.

2. **Performance of Services**.

   (a) The Contractor shall, at its cost, provide the personnel, equipment, and materials necessary to perform the Services. The Company agrees to provide the Contractor with all relevant and available information provided to the Company by its customer (the "E&P Customer") that may be required for the Contractor's performance of each Supplement and this Agreement unless otherwise agreed between the Parties.

   (b) The Company enters into this Agreement based on the Contractor's demonstrated ability to perform the Services. The Contractor warrants that it has, and will utilize for the Services, the technical competence, financial capacity, management skills, competent and qualified personnel and equipment and all necessary licenses, permits, authorizations and registrations necessary or required to perform the Services and the other duties and responsibilities of the Contractor under this Agreement. The Contractor warrants that the Services, and any labor, equipment, materials, or service related to the Services, shall (a) be free of any defect in title, design, materials, and workmanship; (b) be performed in accordance with all environmental, health and safety requirements applicable to the Services (including under any Master Contract, as defined in Section 3); (c) be performed in a safe, diligent, efficient and workmanlike manner; (d) be performed in accordance with the industry standards for professional care for similar activities, but in no event less that in accordance with prudent industry standards; and (e) be in conformance with all provisions and specifications of this Agreement.

   (c) In performing the Services, the Contractor agrees that it and its Representatives (as defined below) will comply fully with all applicable laws, statutes and

regulations, including, but not limited to, the United States Foreign Corrupt Practices Act ("FCPA") or anti-bribery laws of other countries, environmental laws, employment laws, safety regulations, securities laws and regulations, antitrust laws, intellectual property laws and any other applicable laws, statutes or regulations, and to conduct itself in keeping with high ethical standards. The Contractor further agrees that it and its Representatives will comply with all applicable safety and security regulations and policies while on the Company's premises and all other applicable policies of the Company and will use their best efforts to preserve the business of the Company and the good will of all employees, customers, suppliers and other persons having business relations with the Company. As used in this Agreement, "Representatives" shall mean a Party's affiliates, officers, directors, employees, subcontractors, agents and representatives, and "affiliates" shall mean persons or entities that directly, or indirectly through one or more intermediaries, control or are controlled by, or are under common control with, the Party.

(d)     The Contractor shall not directly or indirectly make any Prohibited Payments. As used in this Agreement, "Prohibited Payments" means an offer, gift or payment, or authorization or promise of an offer, gift or payment, of any money or thing of value to or for the benefit of any official or employee of any government (or of any department, agency or other instrumentality of any government) of any country or subdivision of any country, or any person acting in an official capacity on behalf of such government or instrumentality, or any political party or official of any political party, or any candidate for political office, for the purposes of influencing any act or decision of such person or party in his or its official capacity (including an act or omission to act in violation of his or its lawful duties), or inducing such person or party to use his or its influence to affect or influence to affect or influence any act or decision of such government or instrumentality, in order to assist the Contractor or the Company in obtaining or retaining business for or with, or directing business to, any person or entity related to the Services. (Solely for purposes of this Agreement and not as an admission under or interpretation of the FCPA or any statute or regulation of any country, the term "government instrumentality" shall be deemed to include any enterprise in which a government owns a substantial equity interest or which any government controls). In accordance with the FCPA, the Contractor shall not make any payment prohibited by the FCPA to any party for the purpose of securing business. The Contractor acknowledges that breach of this paragraph constitutes grounds for the Company to terminate this Agreement immediately. In such event, the Contractor agrees and acknowledges that the Contractor shall lose any right to receive compensation under this Agreement, whether already earned or not.

(e)     At no cost to the Company or the E&P Customer, the Contractor shall manage and enforce all manufacturers' and vendors' warranties with respect to all goods, equipment, and material utilized in the performance of the Services.

(f)     At no cost to the Company or the E&P Customer, and prior to demobilization, the Contractor shall promptly correct or re-perform any Services that are defective or fail to conform to the requirements or specifications of this Agreement. If the Contractor fails to re-perform or correct any defective Services as required by the Company or to fulfill its obligations to perform Services pursuant to the Agreement, then the Company shall have the right, but not the obligation, without prejudice to any other rights or remedies the Company may have, to correct such deficiencies or perform such Services by whatever reasonable method it may deem expedient.  In such case, the Company shall have right, but not the obligation, to deduct from any and all payments then or thereafter due the Contractor, all reasonable costs and expenses incurred by the Company in connection with correcting such deficiencies or performing such Services, including costs related to third parties or the Company's own employees up to the cost for similar services if they were performed by the Contractor expressly provided that the Contractor will not be liable for costs in excess of its charges for those Services hereunder.  The Company shall have the right at all times to immediately apply any retention against any amounts limited to the cost for provision of similar services by Contractor, incurred by the Company in correcting or re-performing any such defective Services, and the Contractor shall pay any remaining deficiency to the Company within thirty (30) days of the Company's invoice therefor.  Regardless of whether the Company elects to correct or re-perform any defective Services, the Contractor shall reimburse the Company for all prior payments made by the Company for Services performed but which do not meet the requirements or specifications of this Agreement that have not been corrected, unless these services have been prior approved by Company onboard representative.

(g)     The Company may designate one or more Company field representatives to ensure that the Services are carried out in conformance with this Agreement and the Company's objectives and goals and to represent the Company in all field activity.

(h)     The Contractor shall observe any drug, alcohol and search policies applicable to the Services (including those required under any Master Contract).

(i)     If, in the Company's reasonable determination, the acts or omissions of any of the Contractor's personnel interfere with the Contractor's operating efficiency or reflect adversely upon the Company's reputation, the Contractor shall, at the

Company's request, at its own expense promptly replace such personnel with another person suitably qualified to fill the position vacated.

(j)     If, in the Company's reasonable determination, any item of equipment furnished by the Contractor, either directly or indirectly through a subcontractor, is defective or inefficient or otherwise inadequate, the Contractor shall, upon the Company's request, promptly replace such item at the Contractor's expense, or provide documented evidence that the equipment is operating to manufacturers specifications. If at any time any equipment furnished by the Contractor shall for any reason become inoperable or fail to function reasonably adequately and efficiently, the Contractor shall promptly take all action necessary to repair or replace such equipment at its expense.

(k)     The Contractor shall, at its own expense, provide all transportation for all personnel and equipment involved in providing the Services, including transportation involved in mobilization, demobilization, travel to, from and within the Services area and any other transportation incidental to the Services hereunder. The Contractor shall, at its own expense, furnish board and quarters for all personnel furnished by the Contractor hereunder.

3.     **Compensation**.  In consideration for the Services provided by the Contractor, the Company shall pay the Contractor the compensation set forth in the applicable Supplement. Terms regarding timing, frequency and manner of payment that have not been defined in the Supplement shall be consistent with such terms contained in any applicable master contract between the Company and the E & P Customer ("Master Contract"). The Contractor agrees that the compensation set forth in the applicable Supplement represents the complete and final compensation that will be payable to the Contractor for the Services (including mobilization and demobilization) and that no additional compensation has been implied or represented.

4.     **Term**.  Unless terminated sooner pursuant to the provisions set forth in this Agreement, the term of this Agreement shall commence on the date hereof and shall continue until completion of the Services by the Contractor in accordance with this Agreement.

5.     **Expenses; Taxes**.

(a)     The Contractor acknowledges and agrees that its compensation pursuant to Section 3 above shall constitute all of the Contractor's compensation, and that the Contractor will not otherwise be reimbursed for any costs and expenses incurred by the Contractor in connection with providing the Services, including, but not limited to, applicable Taxes (as defined below), fees (including permit fees and costs and the Contractor's business license fees), charges, travel expenses,

expenses for fuel and chandelling the crew and other expenses incurred by the Contractor, unless specifically stipulated in an executed Supplement.

(b)     The Contractor shall promptly pay when due all obligations for labor and material. **The Contractor hereby waives its right to assert any liens and attachments, statutory, constitutional, common law or otherwise, on the facility or site of the Services and shall also discharge at once, or bond or otherwise secure against, all liens and attachments that are filed by its subcontractors and vendors on account of labor performed for the Contractor or materials, equipment and supplies furnished for the owners of the premises on which the Services are performed against all loss, damage, injury, liability and claims thereof resulting directly or indirectly from such liens and attachments.**

(c)     The Contractor acknowledges and agrees that it will be responsible for all sales, use, VAT, the Contractor's federal and state income tax, Social Security tax, unemployment insurance taxes, or other taxes and charges, including interest, additions and penalties (collectively, "Taxes"), arising out of the Contractor's activities under this Agreement or due upon any payments, services, materials or items to be provided by the Contractor as part of the Services. The Contractor shall be responsible for paying all such Taxes imposed, if any, on any services, materials, or items it consumes, acquires, or uses in the performance of its activities under this Agreement. The Company will neither pay unemployment taxes on, nor withhold employment taxes from, any compensation it pays the Contractor. Notwithstanding the foregoing, the Company shall have the right to withhold any and all taxes and other amounts from payments due to the Contractor under this Agreement to the extent that such withholding may be required by any governmental body claiming jurisdiction over any payment made to or earned by the Contractor hereunder, and payment by the Company to the respective governmental office of the amount of money so withheld will relieve the Company from any further obligation to the Contractor with respect to the amount so withheld. Company shall promptly provide Contractor with proof of payment of such withheld amount to governmental body. **The Contractor shall protect, indemnify and hold the Company, its affiliates, officers, directors, agents, employees and partners harmless from any and all claims or liability for all taxes assessed or levied by any governmental body against the Contractor or against the Company for or on account of any payment made to or earned by the Contractor hereunder. The Contractor shall further protect and hold the Company harmless from all taxes assessed or levied against or on account of wages, salaries or other benefits paid to the Contractor's employees and all taxes assessed or levied against or on the account of any property or equipment of the Contractor.**

6.    **Independent Contractor**.  The Services performed by the Contractor shall be as an independent contractor and not as an employee of the Company or the E&P Customer. Consequently, other than providing related information as requested from time to time by the Contractor, the Company will not provide the Contractor with any training with respect to the Services.  Similarly, except as otherwise agreed by the Parties, the Contractor is responsible for providing any equipment, materials, or supplies that the Contractor determines are necessary to perform the Services.  The Contractor is not entitled to the benefits provided by the Company to its employees, including, but not limited to, group insurance and participation in the Company's employee benefit and pension plans.  In the event the Contractor or its employees for any reason were to become eligible to participate in a Company-sponsored benefit program, the Contractor, on behalf of itself and its employees, hereby waives any such right to participate in the program.  This waiver of any right to participate in Company-sponsored employee benefit programs represents a material component of the terms of payment agreed to by the Parties.  Further, the Contractor is not an agent, partner, or joint venturer of the Company or the E&P Customer.  The Contractor shall not represent itself to third persons to be other than an independent contractor of the Company or the E&P Customer, nor shall the Contractor permit itself or its Representatives to offer or agree to incur or assume any obligations or commitments in the name of the Company or the E&P Customer or for the Company or the E&P Customer without the prior written consent and authorization of the Company or the E&P Customer, as the case may be.

7.    **Intellectual Property Rights**.

   (a)    All information, data, documents and materials provided by the Company to the Contractor, or acquired or learned by the Contractor from the Company's files, documents, employees or Representatives in connection with the Services, shall remain the sole and exclusive property of the Company.  The Contractor shall obtain no rights whatsoever, whether under applicable patent, copyright, trade secret laws or otherwise, in such information, data, documents or materials unless specifically provided in writing by the Company.

   (b)    All information, drawings, plans, specifications, designs, reports, computations, calculations and other documents prepared by or on behalf of the Contractor or its Representatives in furtherance of or in connection with the Services (collectively, the "Work Product") will be and shall remain the sole and exclusive property of the Company and shall be delivered to the Company upon its request.  The Company shall have full and unlimited right to use all of the same without any claim or right thereto by the Contractor or its Representatives for any additional compensation for such use.  The Contractor further agrees that the Work Product and all other information developed or secured by the Contractor during performance of the Services shall be kept strictly confidential and shall not be sold, traded, published or otherwise disclosed to anyone in any manner

whatsoever, including by means of photocopying or reproduction, without the Company's prior written consent. The Contractor shall obtain no rights whatsoever, whether under applicable patent, copyright, trade secret laws or otherwise, in such Work Product and information unless specifically provided in writing by the Company. The Contractor agrees to assign and hereby assigns to the Company all title, patents, patent rights, copyrights, mask work rights, trade secret rights and all other intellectual and industrial property rights of any sort anywhere in the world in connection with such Work Product. All works of authorship by the Contractor under this Agreement will be "works made for hire" to the extent allowed by law. Any assignment of copyright hereunder (and any ownership of a copyright as a work made for hire) includes all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as or referred to as "moral rights" (collectively "Moral Rights"). To the extent such Moral Rights cannot be assigned under applicable law and to the extent the following is allowed by the laws in the various countries where Moral Rights exist, the Contractor hereby ratifies and consents to any action of the Company that would violate such Moral Rights in the absence of such ratification/consent. The Contractor agrees to confirm any such ratifications and consents from time to time as requested by the Company. Similarly, if the Contractor, in connection with the Services, obtains access to third party information, data, documents and materials that are in the possession of the Company, the Contractor shall obtain no rights in such third party information, data, documents and materials. Irrespective of whether the Work Product, information, data, documents and materials is subject to the obligations of confidence imposed by Section 9, the Contractor shall make no copies, summaries or extracts thereof except as necessary in connection with this Agreement or as otherwise specifically authorized in writing by the Company, and the Contractor shall make no use of such Work Product, information, data, documents and materials except as specifically necessary in connection with the Services or as authorized in writing by the Company. Irrespective of whether the Work Product, information, data, documents and materials is subject to the obligations of confidence imposed by Section 9, upon completion of the Services, or the termination of this Agreement, the Contractor shall immediately return to the Company all such Work Product, information, data, documents and materials, as well as any and all copies, summaries or extracts thereof. The Contractor shall also immediately return to the Company all such Work Product, information, data, documents and materials, as well as any and all copies, summaries or extracts thereof, whenever requested by the Company. For purposes of this Agreement, "Work Product" also includes inventions (including, but not limited to, improvements, inventions, designs, formulas, works of authorship, trade secrets, technology, mask works, circuits, layouts, algorithms, computer programs, ideas, processes, techniques, know-how and data, whether or not patentable) that the Contractor makes, conceives, reduces to practice or develops (in whole or in part, either alone or jointly with others)

during the term of this Agreement in connection with performing Services or that relate to any other Work Product.

Notwithstanding the foregoing, in the event the Company has not paid Contractor in accordance with the payment terms of the relevant Supplement for fifty (50) days from invoice receipt ("Payment Default"), the Parties agree that Contractor may serve notice on the Company that Contractor shall retain the Work Product until the Payment Default has been paid in full, and the Company shall not challenge such notice or retention of its Work Product.

The Company acknowledges that in the course of its performance under this Agreement, the Contractor may elect to use products, software, materials and methodologies that were owned by or proprietary to the Contractor prior to the date of this Agreement ("Pre-existing Material"). The Company agrees that it shall not acquire any ownership rights in such Pre-existing Material under this Section 7(b). Subject to the terms of this Agreement, the Contractor grants to the Company a royalty-free, nonexclusive, irrevocable, worldwide license to use, duplicate and disclose, in whole or in part, any such Pre-existing Material that is delivered to the Company, unless specifically stipulated in an executed supplement to this agreement.

(c)     The Contractor shall not disclose or provide to the Company any information, ideas, concepts, improvements, discoveries, inventions or forms of expression of ideas that the Contractor does not own or otherwise have the right to disclose or provide to the Company. The Contractor represents and warrants to the Company that all information, ideas, concepts, improvements, discoveries, inventions or forms of expression of ideas disclosed or provided to the Company shall be free from third party claims of ownership and from third party intellectual property rights. **The Contractor shall defend, indemnify and hold the Company, its parent, affiliates, officers, directors, agents, employees and partners harmless from and against all claims, demands and causes of action brought by third parties (and all costs, expenses, damages, liabilities or judgments sustained or incurred by the Company in connection therewith, including the costs of investigation and reasonable attorneys' fees and legal costs) alleging or establishing (i) that the third party owns information, ideas, concepts, improvements, discoveries, inventions or forms of expression of ideas described or provided by the Contractor to the Company; (ii) that the Company's worldwide right to own, use, make, have made, license, sell or otherwise market information, ideas, concepts, improvements, discoveries, inventions or forms of expression of ideas disclosed or provided by the Contractor to the Company infringe the third party's intellectual property rights therein; or (iii) that the processes utilized by the Contractor in providing the Services to the Company infringe third party intellectual**

property rights or that the products provided by the Contractor to the Company infringe third party intellectual property rights (including a violation of the Process Patents Amendment Act of 1988).   The above indemnity shall not apply to any process or device that the Company requires the Contractor to use for the Services.

(d)  If the Contractor cannot perform the Services as a result of patent infringement litigation, the Company shall not be required to make further payment under this Agreement until the Services recommence.   Furthermore, if the Contractor cannot perform the Services as a result of patent infringement litigation or threat of patent infringement litigation, the Company may, at its option:

(i)  terminate the Agreement or the applicable Supplement; or

(ii)  with the Contractor's prior consent and at the sole cost of the Contractor, require the Contractor to obtain the right to continue using the alleged infringing product or to obtain the rights to comparable technology so that the Contractor can continue performing Services; or

(iii)  with the Contractor's prior consent and at the sole cost of the Contractor, obtain the right for the Company or the Contractor to continue using the alleged infringing product or to obtain the rights to comparable technology so that the Contractor can continue performing Services.

8.   **Confidentiality**.

(a)  The Contractor acknowledges that the business of the Company and its affiliates is highly competitive and that the Company's books, records and documents, information concerning the Company's strategies, plans, business, products, equipment, services and processes, procurement procedures and pricing techniques, the names of and other information (such as credit and financial data) concerning the Company's customers and business affiliates and any other confidential and/or proprietary information and/or trade secrets that have been developed or used by or on behalf of the Company or its affiliates or will be developed and that cannot be obtained readily by third parties from outside sources (collectively, "Confidential Information"), all comprise confidential business information and trade secrets of the Company that are valuable, special and unique proprietary assets of the Company.   The Contractor further acknowledges that protection of the Company's Confidential Information against unauthorized disclosure and use is of critical importance to the Company in maintaining its competitive position.   Accordingly, the Contractor hereby agrees that during the term of this Agreement and for a period of three (3) years thereafter, it will not (and it will ensure that its Representatives do not), make any

unauthorized disclosure of any Confidential Information of the Company, or make any use thereof, except solely for the benefit of, and on behalf of, the Company in the performance of the Services pursuant to this Agreement. The Contractor will safeguard the Confidential Information from unauthorized disclosure. The Contractor also agrees to preserve and protect the confidentiality of third party Confidential Information (including Confidential Information of the E&P Customer) to the same extent, and on the same basis, as the Company's Confidential Information. The Contractor's obligations under this Section 8 will not extend to information that (i) is already known by the Contractor prior to receipt from the Company, (ii) is or becomes part of the public domain through no act or omission of the Contractor or its Representatives, (iii) the Contractor can demonstrate through written evidence was independently developed by the Contractor without the use of or reference to any Confidential Information, (iv) becomes available to the Contractor on a non-confidential basis from a source other than the Company if such source was not subject to any restriction or duty of confidentiality or (v) is approved for release in writing by an authorized representative of the Company.

(b)     The Contractor will not (and will ensure that its Representatives do not) disclose to any person (other than its tax, legal and financial advisers who have a need to know) the terms of this Agreement or the results or accomplishments of its activities under this Agreement without the prior written consent of the Company.

(c)     If the Contractor or its Representatives are requested or required (by oral question, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process) to disclose any Confidential Information, the Contractor will promptly notify the Company of such request or requirement so that the Company may seek an appropriate protective order or waiver in compliance with the provisions of this Agreement. If, in the absence of a protective order or the receipt of a waiver hereunder, the Contractor or its Representatives are, in the opinion of the Contractor's legal counsel, compelled to disclose the Confidential Information, the Contractor may disclose only such of the Confidential Information to the party compelling disclosure as is required by law. The Contractor shall not be liable for the disclosure of Confidential Information pursuant to the preceding sentence unless such disclosure was caused by the Contractor or its Representatives and not otherwise permitted by this Agreement. The Contractor shall exercise its best efforts to obtain a protective order or other reliable assurance that confidential treatment will be accorded the Confidential Information so disclosed.

(d)     Subject to the express terms and conditions hereof, all written Confidential Information (including that portion of the Confidential Information that may be found in analyses, compilations, studies or other documents prepared by or for the

Contractor) will be returned to the Company immediately upon the Company's request, and no copies shall be retained by the Contractor or its Representatives. Oral Confidential Information and written Confidential Information not so requested or returned will be held by the Contractor and kept subject to the terms of this Agreement or destroyed. The Contractor shall be responsible for any breach of the terms of this Section 8 by its Representatives.

9.  **Protection of Company's Business Interest; Conflicts of Interest**. The Contractor agrees that during the term of this Agreement, the Contractor will not (and shall ensure that its Representatives will not), directly or indirectly, for itself or for others, (i) consult, advise, counsel, provide services for or otherwise assist any competitor of the Company in connection with any project or bid in connection with the Master Contract or (ii) serve any interest or do any act or thing that might conflict with the interests of the Company or any of its subsidiaries or affiliates in connection with the Master Contract. The Contractor shall be responsible for any breach of the terms of this Section 9 by its Representatives.

10. **Non-Solicitation**. The Contractor acknowledges that any attempt on the part of the Contractor to induce the Company's employees to leave the Company's employ, or any effort by the Contractor to interfere with the Company's relationship with its employees or other contractors, would be harmful and damaging to the Company. The Contractor agrees that during the term of this Agreement and a period of two (2) years thereafter, the Contractor will not, directly or indirectly, solicit for employment or hire or engage as an independent contractor or consultant any officers, directors or employees of the Company or the Company's affiliates.

The Company acknowledges that any attempt on the part of the Company to induce the Contractor's employees to leave the Contractor's employ, or any effort by the Company to interfere with the Contractor's relationship with its employees or other contractors, would be harmful and damaging to the Contractor. The Company agrees that during the term of this Agreement and a period of two (2) years thereafter, the Company will not, directly or indirectly, solicit for employment or hire or engage as an independent contractor or consultant any officers, directors or employees of the Contractor or the Contractor's affiliates.

11. **Indemnification.** Subject to the terms of this Agreement, Contractor expressly agrees that, save for the Company's and/or E & P Customer's willful misconduct, or gross negligence, it will look solely to its own insurance in the event that Contractor incurs or suffers any damages to its property or that of its agents, employees, representatives, contractors, invitees, affiliates, successors and assigns and Company will not be responsible for any such damages. By execution of any Supplement, Contractor expressly agrees to all of the Mutual Release, Defense and Indemnity Provisions of the Client Agreement contained in such Supplement, if any. To the extent not in conflict

with such provisions in an applicable Supplement or to the extent any Supplement shall be silent on such provisions, the Parties agree as follows:

(a)    The Contractor assumes all risk of personal injury or death to the Contractor's Representatives and all risk of damage to or loss of property furnished by the Contractor in connection with the  Services to be performed by the Contractor under this Master Agreement or any Supplement, and to the fullest extent permitted by law, the Contractor shall release, defend, indemnify and hold the E & P Customer and Company, their affiliates and its and their officers, directors, agents, employees and partners harmless from and against all liabilities, claims, damages, losses and expenses, including but not limited to the costs of investigation and reasonable attorneys' fees and legal costs (herein collectively called "Claims"), arising out of or connected with or alleged to arise from or be connected with (i) the  Services performed by the contractor, its subcontractors or vendors; (ii) contractor's, its subcontractors' or vendors' act of preparing or delivering personnel, materials or equipment to the location of the  Services; (iii) any property owned or furnished by the Contractor and its subcontractors or vendors relating to the  Services provided by the contractor, its subcontractors or vendors, including removal of wreckage; (iv) injury to or death of employees of the Contractor and its subcontractors and vendors relating to the Services provided by the contractor, its subcontractors or vendors; (v) pollution or contamination that originates from the equipment used by the Contractor or its subcontractors or vendors or from any property in the control of the Contractor or its subcontractors or vendors or arises out of or in connection with the operations of the Contractor or its subcontractors or vendors in providing the  Services; (vi) the Contractor's generation, transportation, handling, or disposal of any materials or substances regulated as "hazardous materials" or "hazardous wastes" under any Law, relating to the  Services provided by the contractor, its subcontractors or vendors; or (vii) any act or omission of the Contractor or the Contractor's subcontractors or vendors or their Representatives relating to the  Services provided by the contractor, its subcontractors or vendors. The Contractor shall assume and control the defense of, or settle, at its own expense, any demand, action or suit in which its indemnification obligation to the Company arises. Notwithstanding the foregoing, the Contractor does not indemnify or hold the E & P Customer and/or the Company harmless from and against any liabilities, claims, damages, losses and expenses, including but not limited to the costs of investigation and reasonable attorneys' fees and legal costs (herein collectively called "Claims"), arising from the E & P Company's and/or the Company's willful misconduct or gross negligence.

(b)    The Company assumes all risk of personal injury or death to the Company's representatives and employees, and all risk of damage to or loss of the Company's property in connection with any  Services performed under this Master

Agreement or any Supplement, and to the fullest extent permitted by law, the Company shall release, defend, indemnify and hold the E & P Customer and Contractor and their subcontractors, and their affiliates, and officers, directors, agents, employees and partners harmless from and against all liabilities, claims, damages, losses and expenses, including but not limited to the costs of investigation and reasonable attorneys' fees and legal costs (herein collectively called "Claims"), arising out of or connected with or alleged to arise from or be connected with the Company's and/or its representatives' and employees' activities or conduct, and/or with the Company's property on or in the vicinity of the premises of any Project. Notwithstanding the foregoing, the Company does not indemnify or hold the contractor harmless from and against any liabilities, claims, damages, losses and expenses, including but not limited to the costs of investigation and reasonable attorneys' fees and legal costs (herein collectively called "Claims"), arising from the contractor's willful misconduct or gross negligence.

(c)     Each Party shall release, defend, indemnify and hold the other Party and its affiliates and its and their officers, directors, agents, employees and partners harmless from and against all Claims of third parties that arise out of or result from any infringement of any patent, copyright, trademark or trade secret right, or other intellectual property right in connection with the    Services (an "Infringement Claim"). The Company or the Contractor (at the other Party's request) shall assume and control the defense of, or settle, at its own expense, any demand, action or suit on any Infringement Claim for which it is the indemnitor under the preceding provisions, and each Party shall timely notify the other Party of any assertion against it of any Infringement Claim and shall cooperate in good faith with the other Party to facilitate the defense of any such claim. No amounts shall be payable by a Party pursuant to this Section in respect of all claims settled or compromised without such Party's prior consent.

(d)     Each Party shall release, defend, indemnify and hold the other Party and its affiliates and its and their officers, directors, agents, employees and partners harmless from and against all Claims of third parties resulting from or arising out of any breach of any representation, warranty or covenant contained in this Master Agreement or any Supplement.

(e)     The indemnification provisions contained in this Section 11 shall survive the termination or expiration of this Master Agreement or any Supplement.

12.     **Consequential Damages.  Notwithstanding any other provisions of this Agreement, in no event shall either Party be liable to the other for damages from loss of use, loss of profits or other indirect, consequential or punitive damages.**

13.   **Insurance**.

(a)   At all times during the term of this Agreement, the Contractor shall, at its cost and expense, carry or cause to be carried and maintain in force at least the following insurance coverages with internationally recognized insurers reasonably satisfactory to the Company:

*Workers' Compensation and Employers Liability Insurance*: The Contractor shall comply with Workers' Compensation laws where the Services are performed, and maintain a Workers' Compensation and Employers Liability policy as required by the applicable laws of the country of operations and the states of residence of the Contractor's employees, including coverage under the Longshoreman's and Harbor Worker's Act, Death on the High Seas Act, and Jones Act. If the work is performed in a non-U.S. location, equivalent coverage must be provided.

*Commercial General Liability Insurance*: Commercial General Liability insurance, endorsed to provide coverage for explosion, collapse and underground hazards; Contractual Liability (particularly the applicable general indemnity provisions of this Agreement); Contractor's Protective Liability (if subcontracting is authorized); Products and Completed Operations (for a minimum of two years after acceptance of the Services); and Sudden and Accidental Pollution. Watercraft exclusions must be deleted (if the Services necessitate the use of watercraft of any kind.). The policy limits for such insurance shall be the aggregate limits of the Contractor's applicable primary, excess and umbrella policies, but such aggregate policy limits shall not be less than ▉▉▉▉▉ per occurrence.

*Automobile Bodily Injury and Property Damage Liability Insurance*: Automobile Liability insurance which shall include coverage for all owned, non-owned and hired vehicles used in the performance of the Services. The policy limits for such insurance shall be the aggregate limits of the Contractor's applicable primary, excess and umbrella policies, but not less than those required by applicable law nor less than ▉▉▉▉▉ combined single limit per occurrence.

*Marine Insurance*: If performance of the Services requires the Contractor to furnish watercraft, the Contractor shall maintain or require owners of such watercraft to maintain

(i)   Hull and Machinery Insurance on all vessels and barges, including the equipment to be supplied by the Contractor in the performance of this Agreement, in the amount equal to the full market value of each vessel, with navigation limits adequate for the vessel's trade; and

(ii)     Protection and Indemnity Liability insurance (including coverage for injuries to or death of masters, mates and crews, collision liabilities not covered under H&H, excess collision liabilities and pollution liabilities for all vessels used in the performance of the Services). The limits of liability of such insurance shall be an amount at least equal to the actual value of each vessel, but not less than ▮▮▮▮▮▮▮ per occurrence.  The phrase "as owner of the vessel", and all similar phrases purporting to limit the underwriters' liability to the value of the vessel or to that of an owner shall be deleted from the policy. The Contractor may cover its obligation for loss of life or bodily injury to the crew of the vessel by extension of the Workers' Compensation and Employer's Liability insurance under this Section 13(a). This policy shall provide that claims "in rem" shall be treated as claims against the Contractor.

*Aircraft Liability Insurance*:     If performance of the Services requires the Contractor to furnish aircraft (including helicopters), the Contractor shall maintain or require owners of such aircraft to maintain Aircraft Liability (Bodily Injury, including liability to passengers, and Property Damage) Insurance with an overall combined single limit per occurrence equal to the aggregate limits of the applicable primary, excess and umbrella policies, but not less than ▮▮▮▮▮▮▮.

(b)     The Contractor shall submit to the Company within thirty (30) calendar days after the Company notifies the Contractor that the Company has entered into the Master Contract with the E&P Customer, a Certificate of Insurance, in form satisfactory to the Company, evidencing that satisfactory coverage of the type and limits set forth above are in effect. Policies providing such coverages shall contain provisions that no cancellation or material changes in the policies shall become effective except on thirty (30) days advance written notice thereof to the Company.  Irrespective of the requirements as to insurance to be carried as provided for herein, the insolvency, bankruptcy or failure of any insurance company carrying insurance of the Contractor, or the failure of any insurance company to pay claims accruing, or the inadequacy of the limits of the insurance, shall not affect, negate or waive any of the provisions of the Agreement, including, without exception, the indemnity obligations of the Contractor. The Contractor acknowledges and agrees that neither the minimum insurance requirements as set forth above nor the actual amounts of insurance maintained by the Contractor shall in any way limit or reduce the Contractor's legal or contractual responsibilities to the Company or to others.

(c)     The Contractor agrees to require any policies of insurance (except Workers' Compensation and Professional Liability coverages) which are in any way related to the Services and that are secured and maintained by the Contractor or any

subcontractors, to include the Company, its affiliates, and its and their directors, officers, employees and agents, as additional insureds. Furthermore, (i) the Contractor hereby waives and releases all claims and rights of recovery against the Company or its affiliates or their directors, officers, employees and agents by reason of any peril insured or to be insured against under the policies of insurance required to be maintained by the Contractor pursuant to this Agreement, including any rights of recovery the Contractor may have or acquire because of deductible clauses in or inadequacy of limits of, any policies of insurance maintained by the Contractor, and (ii) the Contractor agrees to require all such policies of insurance that are in any way related to the Services and that are secured and maintained by the Contractor or its subcontractors, to include clauses providing that (A) each underwriter shall waive its rights of recovery, under subrogation or otherwise, against the Company, its affiliates, and their directors, officers, employees and agents and (B) the insurance is primary coverage with respect to all insureds and shall not consider any other insurance policies of the Company, its affiliates, and its and their directors, officers, employees and agents as contributory insurance.

(d)     If the Contractor does not satisfy all obligations of this Section 13 within the required time period, the Company shall have the option, but not the obligation, to elect to arrange on the Contractor's behalf all or any part of the insurance required in this Section 13. If the Company elects this alternative, it shall so state in a notice to the Contractor, and the Contractor's compensation under this Agreement shall be reduced by an amount equal to the cost of the insurance incurred by the Company.

(e)     If the Contractor subcontracts any part of the Services, the Contractor shall require its subcontractors to maintain insurance at the same level and types of coverage as required of the Contractor by this Agreement. The Contractor shall have its subcontractors furnish the same evidence of insurance required by the Contractor.

(f)     The Contractor and its subcontractors shall not begin Services under this Agreement until all of the insurance required of the Contractor and its subcontractors is in force and the necessary documents have been received by the Company.

(g)     In all cases where the Contractor's employees (for purposes of this Section, defined to include the Contractor's and its subcontractor's direct, borrowed, special or statutory employees) are covered by the Louisiana Workers' Compensation Act, La. Rev. Stat. Ann. 23:102 *et seq.*, the Parties agree that, pursuant to Section 23:106(A)(1) of such Act, all Services performed by the Contractor and its employees under the terms and conditions of this Agreement are an integral part of the Company's operations and are essential to the

Company's ability to generate its goods, products and services. Additionally, the Parties agree that the Company is the principal or statutory employer of the Contractor's employees for purposes of Section 23:1061(A)(3) of the Act. Irrespective of the Company's status as the statutory employer or special employer of the Contractor's employees under Section 23:1061(A)(3) of the Act, the Contractor shall remain primarily responsible for the payment of Louisiana Workers' Compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from the Company.

14.   **Company's Conflict of Interest.**   No director, employee or agent of the Contractor or of any subcontractor or vendor of the Contractor shall give to or receive from any director, employee or agent of the Company or any affiliate of the Company any commission, fee, rebate or any gift or entertainment of material cost or value in connection with the Services or enter into any business arrangement with any director, employee or agent of the Company or any affiliate of the Company other than as a representative of the Company or its affiliate, without prior written notification thereof to the Company. The Contractor shall promptly notify the Company of any violation of this Section 14 and any consideration received as a result of such violation shall be paid over or credited to the Company. Additionally, if any violation of this Section 14 occurring prior to the date of this Agreement resulted directly or indirectly in the Company's consent to enter into this Agreement with the Contractor, the Company may, at the Company's sole option, terminate this Agreement at any time and, notwithstanding any other provision of this Agreement, pay no compensation or reimbursement to the Contractor whatsoever for any Services performed after the date of termination. Any representative authorized by the Company may audit any and all records of the Contractor and any such subcontractor or vendor for the sole purpose of determining whether there has been compliance with this Section 14.

15.   **Termination of Agreement.**

(a)   The Company may terminate this Agreement and/or any Supplement effective immediately upon written notice to the Contractor in the event:

(i)   The Contractor fails to comply with any representation, warranty, covenant or obligation of this Agreement and such failure has not been cured within fifteen (15) calendar days after receipt of written notice of such failure from the Company;

(ii)   The Contractor becomes insolvent, becomes subject to any form of insolvency administration, makes an assignment for the benefit of creditors, admits in writing its inability to pay its debts as they become due or generally is not paying its debts as such debts become due;

(iii)    The Contractor willfully refuses without proper legal cause to perform the Services after having received seven (7) calendar days' written notice of such refusal from the Company;

(iv)    The Contractor willfully engages in conduct that is injurious to the Company;

(v)    The Contractor or an owner or principal of the Contractor is either charged with or convicted of violating any state, Federal or foreign criminal law with respect to safety, corruption, fraud or involving moral turpitude or any law relating to antitrust;

(vi)    the Master Contract is terminated for any reason; or

(vii)    the Company elects to terminates the Agreement or the applicable Supplement pursuant to Section 7(d)(i).

(b)    The Contractor may terminate this Agreement and/or any Supplement effective immediately upon written notice to the Company in the event:

(i)    the Company fails to comply with any representation, warranty, covenant or obligation of this Agreement and such failure has not been cured within seven (7) calendar days after receipt of written notice of such failure from the Contractor; or

(ii)    the Company becomes insolvent, becomes subject to any form of insolvency administration, makes an assignment for the benefit of creditors, admits in writing its inability to pay its debts as they become due or generally is not paying its debts as such debts become due.

(iii)    the Company willfully engages in conduct that is injurious to the Contractor,

(iv)    the Company or an executive officer of the Company is charged with or convicted of violating any state, federal or foreign criminal law with respect to safety, corruption, fraud or involving moral turpitude or any law relating to antitrust.

(c)    In addition to the termination rights described in Section 16(a), the Company may also terminate this Agreement or any Supplement without cause by giving the Contractor written notice of such termination at least thirty (30) days prior to the effective date of such termination.

(d)     Upon receipt of written notice from the Company of any termination (or upon Contractor notifying the Company of a termination), the Contractor shall (i) immediately discontinue all Services as directed by the Company, (ii) take actions as necessary, or that the Company may direct, for the protection and preservation of the Work Product, (iii) except for Services directed by the Company to be performed prior to the effective date of termination, terminate all existing subcontracts and purchase orders and enter into no further subcontracts or purchase orders regarding the Services, (iv) upon the effective date of termination, subject to the terms and conditions hereof, transfer title and deliver to the Company all Work Product (including work in process, completed work, supplies and other materials produced or acquired for the Services, as well as the completed or partially completed plans, drawings, information, and other property that, if this Agreement had been completed, would be required to be furnished to the Company). Termination of this Agreement or any Supplement shall not relieve any Party from any obligation accruing or accrued to the date of such termination, nor deprive a Party not in default of any remedy otherwise available to it. The foregoing notwithstanding, any use of or reliance on such work in process or uncompleted work products shall be at the Company's sole risk.

(e)     If this Agreement or any Supplement is terminated, and such termination occurs after commencement of any Services hereunder, the Company shall pay the Contractor for Services which have been satisfactorily performed in accordance with this Agreement to the date of termination for which the Contractor has not previously been paid by the Company. In the event such termination by the Company occurs prior to commencement of any Services, the Company shall be liable for the reasonable costs of the Contractor, including but not limited to, the Contractor's costs associated with proposal preparation, the purchase of equipment or materials or supplies, and the hiring or reassignment of employees.

(f)     In the event of a termination by the Contractor pursuant to Sections 15(b)(i) or (ii) or a termination by the Company pursuant to Section 15(c), the Company shall pay the Contractor for Services which have been satisfactorily performed in accordance with this Agreement to the date of termination for which the Contractor has not previously been paid by the Company (subject to the right of retainage, offset or withholding as set forth in this Agreement) and a demobilization fee as set forth in the applicable Supplement (or, if no demobilization fee is set forth in the Supplement, a demobilization fee to be agreed by the Parties for the purpose of reimbursing the Contractor its direct out-of-pocket costs related to the return of personnel, supplies and equipment, termination of subcontractors, reimbursement for necessary cancellation fees, non-refundable deposits and other amounts necessary to demobilize the project in an efficient manner).

(g)     In the event of a termination by the Company pursuant to Section 15 (a) (i), (ii), (iii), (iv), (v) and (vii)., the Company shall then be entitled, without prejudice to any other right or remedy, to perform the remainder of the Services by whatever reasonable method it may deem expedient. In such case, the Company shall, before it is entitled to seek any other remedy, deduct from any and all payments then or thereafter due the Contractor, all reasonable costs and expenses incurred by the Company associated with losses as a result of the termination. The Company shall have the right at all times to immediately apply any retention against any amounts incurred by the Company in performing any such Services. The Company shall also have the right, without further notice to the Contractor or any third party, to immediately draw down on any retention, performance bond, or guarantee for the purposes of completing the Services.

(h)     The obligations of the Parties set forth in Sections 5, 7, 8, 9, 10, 11, 15, 20 and 27 shall survive the expiration or termination of this Agreement or any Supplement. The indemnification provisions of this Agreement shall survive such termination relative to all claims and other indemnified matters, discovered or undiscovered, arising out of, in connection with, or incident to this Agreement.

(i)     Money damages would not be a sufficient remedy for any breach of Sections 7, 8, 9 or 10 of this Agreement by the Contractor or its Representatives, and the Company shall be entitled to specific performance and injunctive relief as remedies upon proof of any such breach. Such remedies shall not be deemed to be the exclusive remedies for a breach of this Agreement by the Contractor or its Representatives but shall be in addition to all other remedies available at law or in equity to the Company.

16.     **Assignment; Subcontractors.** The Contractor will not voluntarily or by operation of law assign or otherwise transfer the obligations incurred pursuant to the terms of this Agreement or any Supplement without the prior written consent of the Company. The Contractor shall not utilize the services of any individual, company or other entity as a subcontractor or an independent contractor to assist in performing the Services unless the Contractor obtains the prior written consent of the Company to utilize the services of such subcontractor or independent contractor in connection with the Services.

17.     **Currency.** Unless otherwise agreed, all monetary amounts referred to herein will be paid in United States dollars.

18.     **Notices.** All notices or other communications required or permitted under this Agreement or by law shall, unless otherwise provided herein, be in writing, shall be either personally delivered, sent by facsimile, or sent by registered, certified mail, or

recognized overnight courier, in each case to the address set forth at the beginning of this Agreement. Notices by fax shall be followed by written notice by hand delivery, recognized overnight courier, or certified or registered mail. Fax notices shall be effective upon receipt of confirmation of transmission; provided, however, that fax notices received after 5:00 p.m. (local time at the recipient's address) shall be effective on the next business day. All other notices shall be effective upon receipt; provided, however, that notices received after 5:00 p.m. (local time at the recipient's address) shall be effective on the next business day.

19. **Waiver**. Failure of the Company at any time to require performance by the Contractor of any provision hereof shall in no way affect the right of the Company hereafter to enforce the same. Nor shall any waiver by the Company of any breach of any provision hereof be taken or held to be a waiver of any succeeding breach of such provision or as a waiver of this provision itself.

20. **Applicable Law; Dispute Resolution**. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, excluding applicable conflict-of-law rules or principles. Either Party shall have the right to apply to a court to enjoin any breach of this Agreement. Excepting the right of a Party to seek such relief, all claims, disputes and matters in question arising out of this Agreement or the relationship between the Parties created by this Agreement, whether sounding in contract, tort or otherwise, shall be resolved by binding arbitration in Houston, Texas, administered by the American Arbitration Association (the "AAA") using the AAA rules for commercial disputes. If the claim under the dispute is US$1,000,000 or less, then the arbitration shall be conducted by one arbitrator. If the claim under the dispute is more than US$1,000,000, the arbitration shall be conducted by a panel of three arbitrators. Each party shall designate a representative, who need not be neutral, within 30 days of receiving notification of the filing with the AAA of a demand for arbitration. The two representatives so designated shall elect the arbitrator(s) from a panel of independent arbitrators proposed by the AAA. If the Contractor fails to designate a representative within the time specified or the Parties' representatives fail to designate the arbitrator(s) within 30 days of the representatives' appointments, the arbitrator(s) shall be appointed by the AAA. The Parties agree that the terms of this arbitration agreement are enforceable under the United States Federal Arbitration Act. The Parties further agree that any disputes relating to or in connection with the enforceability of this arbitration agreement shall be brought only in a Federal court in Houston, Texas, and each Party consents to the exclusive jurisdiction of the Federal courts in Houston, Texas for that purpose.

21. **Severability**. The terms in this Agreement shall be enforceable to the fullest extent permitted by law. If any such term or covenant or the application thereof to any person or circumstance shall be construed to be invalid or unenforceable, then such term shall be

construed in a manner as to permit its enforceability to the fullest extent permitted by law. The remaining provisions of this Agreement shall remain in full force and effect.

22. **Force Majeure**. For purposes of this Agreement, "Force Majeure" means any act, circumstance or event beyond the control of either of the Parties, including, but not limited to, earthquakes, hurricanes, fires, storms, tidal waves or other acts of nature, riots, strikes, lockouts, picketing, boycotts, insurrections, rebellions, civil disturbances, acts of terrorism, war and dispositions or orders of government authority, whether such authority be actual or assumed. Any failure by a Party to comply with this Agreement (except for the payment of money) shall be excused if and for so long as compliance by either Party is prevented by Force Majeure. In such event, the affected Party shall give written notice to the other Party by the fastest means of communication available, specifying the circumstances which such Party believes constitute Force Majeure and the estimated duration thereof. Such Party shall make all reasonable efforts to relieve such Force Majeure condition.

23. **Successors**. This Agreement automatically shall be binding upon and shall inure to the benefit of each Party's successors and permitted assigns.

24. **Other Agreements/Modifications**. This Agreement supersedes all other preceding agreements between the Parties and constitutes the entire agreement of the Parties regarding the performance of the Services. Neither this Agreement nor any Supplement may be amended, modified, superseded, canceled, renewed, or extended without a written instrument executed by both Parties.

25. **Representations**. The Contractor represents that it is not a party to any restrictive agreement limiting its activities in providing the Services. The Contractor further represents that at the time of the execution of this Agreement, the Contractor knows of no written or oral contract or of any other impediment that would inhibit or prohibit this arrangement with the Company.

26. **Advertising and Publicity**. The Company shall not use the name of the Contractor or of any of its employees in any advertising, publicity, or selling material without prior written approval of the Contractor. The Contractor shall not use the name of the Company, its affiliates or any of its or their employees in any advertising, publicity, or selling material without prior written approval of the Company.

27. **Records and Audit**. The Contractor and its subcontractors and vendors shall maintain true and correct records pertaining to the Services and this Agreement and shall retain all such records for at least 24 months after termination of this Agreement. The Company and any designated representatives of the Company shall have the right to audit all records of the Contractor and its subcontractors and vendors in connection with direct claims to the Company or its affiliates from subcontractors and vendors for non-payment

by the Contractor. The Company may, from time to time during the term of this Agreement and for a 24-month period after termination of this Agreement, perform an audit of all records of the Contractor and its subcontractors and vendors in connection with payments made on a cost reimbursement basis and the Contractor's procedures and controls with respect to such reimbursable costs. Upon completion of the audit, the Company shall pay the Contractor any compensation due hereunder as shown by the audit, and the Contractor shall return to the Company any amount that is shown by the audit to be due to the Company. The Contractor shall assist the Company in making the above audits.

28.  **Counterparts.**  This Agreement and any Supplement may be executed in multiple counterparts and each counterpart shall be deemed to be an original and all counterparts together shall constitute one and the same document.