IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| ION GEOPHYSICAL CORPORATION, et al., | § § § | Case No. 22-30987 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF BGP INC. AND BGP OFFSHORE TO DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING (I) SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; AND <u>(II) GRANTING RELATED RELIEF</u>**
**(Related to Docket Nos. 21 and 478)**

BGP Inc. and BGP Offshore ("**BGPO**") (collectively, "**BGP**") file this objection (the "**Objection**") to the *Debtors' Emergency Motion for Entry of an Order Approving (I) (A) Bidding Procedures and (B) Assumption and Assignment Procedures; (II) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; and (III) Granting Related Relief* ("**Sale Motion**") [Docket No. 21] and the *Asset Purchase Agreement* between the Debtors and TGS ASA (the "**APA**") [Docket No. 478 p.6–129] filed by the Debtors, and in support would show as follows:

## Background Facts

1. On April 12, 2022, the Debtors filed for relief under chapter 11 of the United States Bankruptcy Code. The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. The Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115). The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

1

subsequently entered an order authorizing the joint administration of the Debtors' bankruptcy cases.

2.     Also on April 12, 2022, the Debtors filed a motion (the "*Motion*") seeking entry of an order (the "*Bidding Procedures Order*") approving, among other things, certain bidding procedures, authorizing and scheduling an auction of certain of the Debtors' assets, and authorizing the sale of certain of the Debtors assets pursuant to 11 U.S.C. § 363(f) (the "*Sale Transactions*").

3.     On June 14, 2022, the Debtors filed the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Sale* [Docket No. 316] ("*Assumption Notice*") and on July 8, 20222 the Debtors filed the First Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Sale. [Docket No. 404] ("*Supplemental Assumption Notice*").  A number of agreements between BGP and the Debtors are identified on the Assumption Notice and the Supplemental Assumption Notice.

4.     On July 1, 2022, the Debtors filed the *Notice of Successful Bidders* [Docket No. 379], which identifies five successful bidders (collectively, the "*Purchasers*") for the following asset groups (each as defined by the Notice): (1) Marine Data and Processing Assets; (2) Software Assets; (3) Land Data Assets; (4) Devices Assets; and (5) Intellectual Property and Inventory Assets.

5.     On July 1, 2022, BGP filed its *Limited Objection and Reservation of Rights to Debtors' Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale* [Docket No. 382] (the "*Cure Objection*").  The Cure Objection is incorporate herein.

6. On July 22, 2022, the Debtors filed the *Notice of Filing of Asset Purchase Agreements*, which included, among other things, the APA between Debtors and TGS ASA (the "*APA*") [Docket No. 478 p.6–129] for the Debtors Marine Data and Processing Assets.

### BGP's Interests

7. BGPO is party to a number of prepetition contracts with the Debtors, and as the case may be a particular national oil company (collectively, the "*Agreements*"). On August 7, 2014, the Debtor executed a Master Cooperation Agreement with BGP Inc. The Master Cooperation Agreement sought to establish the basis for (a) cooperating to conduct 2D multi-client seismic data projects on a project by project basis (the "*Data*"), (b) ownership and/or licensing rights to any seismic data acquired, processed or interpreted from the projects, and (c) sharing of revenue from such projects. As projects arose, each specific project would have its own separate supplement to the Master Cooperation Agreement providing agreements specific to that particular project.

8. Unless a project supplement provided otherwise, the Master Cooperation Agreement provides that the Data[2] arising from any particular project is "jointly owned" by the Debtor and BGP Inc. The Master Cooperation Agreement contains a number of provisions restricting the transfer and/or sale of the Data without the other party's consent. The Master Cooperation Agreement also prohibits the transfer of one party's obligations under the contract without the express written consent of the other contract counter party.

9. The Master Cooperation Agreement further provides that in the event of one of the parties' bankruptcy the licensed data under the Master Cooperation Agreement shall be governed

---

[2] As defined in the Master Cooperation Agreement.

by section 365(n) of the Bankruptcy Code. Specifically, the Master Cooperation Agreement states, in pertinent part:

> It is intended that this Agreement and all rights and obligations thereto will survive and remain effective in the event that either Party voluntarily or involuntarily becomes subject to the protection of the United States Bankruptcy Code or any similar law under any jurisdiction outside of the United States. Each Party agrees that the rights to the Data licensed by the First Party to the Other Party under Section 2(d) of this Agreement herein constitute "intellectual property" as defined in Section 101 (35A) of the Bankruptcy Code and that the licensed Data under Section 2(d) of this Agreement shall be governed by Section 365(n) of the Bankruptcy Code. If the First Party voluntarily or involuntarily becomes subject to the protection of the Bankruptcy Code, and the First Party or the trustee in bankruptcy rejects the Agreement under Section 365 of the Bankruptcy Code, the Other Party shall have the right to: (a) treat the Agreement as terminated; or (b) retain the Other Party's rights under the Agreement, specifically including, without limitation, the right to exercise its rights granted herein to the Data licensed under Section 2(d) of this Agreement.

Master Cooperation Agreement § 13(g).

10. The Master Cooperation Agreement has a number of Amendments and there are at least two Supplements relating to specific projects involving the Debtors, BGP and certain national governments or oil companies to conduct seismic acquisition, processing and interpretation projects. The first project involves the National Oil Corporation of Libya ("***NOC***") and the second involves the National Petroleum Corporation of Namibia ("***NAMCOR***"). Based on information and belief, both of the project supplements have a number of Amendments and/or Supplemental Agreements. Under both projects, the respective national petroleum company owns the seismic data with the relationship between the Debtors and BGP spelled out in the agreements.

11. On February 1, 2021, the Debtor, BGP Inc. and BGPO executed a Novation Deed substituting BGPO for BGP Inc.

12. On July 22, 2022, the Debtors filed the APA with TGS, ASA ("***TGS***") purporting to sell certain survey assets, including 2D and reprocessing assets related to the NOC and

NAMCOR projects. None of BGP's agreements with the Debtors, and as the case may be the national oil company, are included on the APA's assigned contract list.

### Objection to Asset Sale

I. **There is a serious lack of information as to what is being sold and how BGP's interest in such assets is being treated.**

13. It is not clear what seismic data the Debtors are purportedly attempting to sell to TGS; however, to the extent that the Debtors are trying to sell seismic related assets to which BGP has an interest pursuant to the Master Cooperation Agreement, the Debtors have failed to provide sufficient notice of such sale and are therefore prohibited from selling free from BGP's interest.

14. It is unclear what seismic survey assets or products the Debtors are purporting to sell under the APA. The APA purports to be transferring, among other things: the 2D acquired NamibiaSPAN [Dkt 478 p.97] and LibyaSPAN [Dkt 478 p.97]; and the 2D Libya Reprocessing [Dkt 478 p.97]. The Debtors do not own the underlying seismic survey data. Pursuant to their respective agreements, NOC and NAMCOR own their respective seismic data. Moreover, the Debtors and BGP have certain licensing and co-licensing rights to market and sell the survey data. Pursuant to the Master Cooperation Agreement, BGP has an interest in such licensing rights and the Master Cooperation Agreement contains a consent requirement. To the extent the Debtors are seeking to sell the licensing and/or marketing rights in such surveys, the Debtors are prohibited from selling BGP's interest in such assets without proper due process.

15. The Debtors have failed to provide adequate notice to BGP of what of its assets, if any, the Debtors are seeking to sell.

**II.     The Debtors cannot sell BGP's interest in the 2D and reprocessing assets related to the NOC and NAMCOR projects without notice.**

16.     As previously noted, the Debtors have not provided sufficient information to allow BGP to identify with certainty the contracts proposed to be assumed.  There are a number of contracts between the Debtors and BGP on one side and governmental entities on the other. It appears that some of these contracts are listed in the APA, but the descriptions of the contracts and who is a party to the contact appears to be incomplete.

17.     Further, because the three party agreement with NAMCOR is purportedly being assumed, the Debtors owe and must pay the $2,664,050.00 in cure along with appropriate interest, fees and costs as set forth in BGP's Cure Objection.  A true and correct copy of BGP's Cure Objection is attached as **Exhibit 1**.

**III.    BGP has an interest in the survey data, including pursuant to section 365(n).**

18.     To the extent that the Debtors are seeking to sell assets in which BGP has in interest, such assets are subject to any and all rights BGP has to license and sell such data under the Master Cooperation Agreement, including pursuant to 11 U.S.C. § 365(n).

19.     For example, pursuant to the *Agreement for the Acquisition and Revenue Sharing of Exclusive Survey for NamibeSPAN Phase I Project* between NAMCOR, the Debtors and BGP (the "***NAMCOR Revenue Sharing Agreement***"), BGP is a "Equity Partner and Co-licensor of the Data in this Survey with equal rights to those of ION as defined in the Multi-Client Seismic Services, revenue Sharing and Brokerage Agreement and SCHEDULE 1 (the '***MC Agreement***')."

20.     There is no mention of this agreement on the list of assigned contract and this is part of the Debtors' co-license.  The co-license cannot be assigned without this agreement as the co-license does not exist independent of this agreement.  Any attempt to assign such co-license without assumption of this agreement is improper.

21. The Debtors can only sell what they own. To the extent the Debtors are purporting to sell property in which BGP has an interest, such action is improper.

22. Further, pursuant to the *Supplemental Agreement No. 002 to Master Cooperation Agreement BGP/GXT*, which involves the agreement with NOC, a Libyan entity, BGP is designated as a "co-licensor with equal rights to those of GXT . . . ."

23. The Master Cooperation Agreement provides that "[i]f the [Debtors] voluntarily or involuntarily becomes subject to the protection of the Bankruptcy Code, and the [Debtors] reject[] the [Master Cooperation] Agreement under Section 365 of the Bankruptcy Code, the [BGP] shall have the right to: (a) treat the Agreement as terminated; or (b) retain the [BGP's] rights under the [Master Cooperation] Agreement, specifically including, without limitation, the right to exercise its rights granted herein to the Data licensed under Section 2(d) of this [Master Cooperation] Agreement." BGS reserves this election to retain its rights under the Master Cooperation Agreement.

24. Thus, TGS—or any purchaser for that matter—will have to accept the Debtors rights to the specific survey data, subject to any and all rights that BGP may have under the Master Cooperation Agreement. Anything in the proposed motion or sale order purporting to sell free and clear of such rights is objectionable and should be denied. The Debtors' attempt to end run BGP's rights, is improper and is not permitted.

**Reservation of Rights**

25. BGP reserves the right to amend this objection as necessary to preserve its rights. BGP further reserves its right to object to any amendments to the Sale Transactions and/or the APA.

BGP Inc. and BGP Offshore request that the Court enter an order consistent with this objection and grant BGP Inc. and BGP Offshore such other relief as the Court deems just and proper.

Dated: July 25, 2022.

| | |
|---|---|
| Houston, Texas | Respectfully submitted, |
| | /s/ *Simon R. Mayer* |
| | Philip G. Eisenberg |
| | Texas Bar Number 24033923 |
| | Simon R. Mayer |
| | Texas Bar Number 24060243 |
| | **Locke Lord LLP** |
| | 600 Travis Street, Suite 2800 |
| | Houston, TX 77002 |
| | Telephone: 713-226-1200 |
| | Facsimile: 713-226-3717 |
| | Email: simon.mayer@lockelord.com |
| | |
| | ***Attorneys for BGP Inc. and BGP Offshore*** |