**AMERICAN ARBITRATION ASSOCIATION / INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION**

In the Matter of the Arbitration Between:

Cobra Acquisition Services, S.A.

("Cobra")

**Claimant**

v.

GX Technology Corporation

("GX Technology")

**Respondent**

January 19, 2022

## AMENDED DEMAND FOR ARBITRATION

### I.   INTRODUCTION

1.      Claimant, Cobra Acquisition Services S.A. ("Cobra"), hereby files this Amended Demand for Arbitration pursuant to Rule 4 of the AAA Commercial Arbitration Rules (the "Rules") against GX Technology Corporation ("GX Technology" and, together with Cobra, the "Parties").[1]  As detailed below, this case concerns GX Technology's breach of contract for seismic data services ("Services") rendered under a master services agreement and its supplements.  Cobra seeks in this proceeding compensation for all amounts owed, including finance fees, late payment penalties, pre- and post- award interest, and attorneys' fees and arbitration costs.

2.      The Parties to this arbitration, Cobra and GX Technology, entered into a Master Geophysical Services Agreement ("MSA") on July 22, 2011.[2]  Under the MSA, Cobra was obliged to periodically provide the Services to GX Technology.  In consideration for the Services, GX

---

[1]   In accordance with Rule 4(a) of the Rules, Cobra files its Demand for Arbitration along with the administrative filing fee and a copy of the applicable arbitration agreement.

[2]   **Exhibit 1**, Master Geophysical Services Agreement executed between GX Technology Corporation and Cobra Energy Services, on July 22, 2011 ("MSA").  Note that the original parties to the MSA were Cobra Energy Services, S.A, as "Contractor" and GX Technology Corporation as "Company."  On July 25, 2019, Cobra informed GX Technology that its rights and obligations under the MSA were assigned to a separate group entity named "Cobra Acquisition Services S.A."  Save for the bank account and wiring details, the MSA remained unaltered.  A copy of the relevant Assignment and Assumption Agreement between Cobra Energy Services S.A., and Cobra Acquisition Services, S.A., as well as Cobra's letter informing GX Technology of the assignment, are attached as **Exhibit 2**.

---

**EXHIBIT**

**C**

Technology was obliged to compensate Cobra as agreed by the Parties for each project undertaken under the MSA.

3.    The Services were divided into projects and memorialized in separate agreements ("Supplements") entered into under the umbrella of the MSA.  To date, the MSA has been supplemented numerous times.  Each supplement corresponds to individual energy projects in which GX Technology required from Cobra a specific set of seismic data.

4.    The relevant Supplements to this dispute are Supplements Nos. 6 and 13.  GX Technology is in Payment Default for services provided under Supplement No. 13 as of the date of this Demand for Arbitration, and also owes an additional amount under Supplement No. 6.

5.    Over the course of the last year-plus, Cobra has sent various good-faith communications to GX Technology informing of its defaults and inviting GX Technology to explore various avenues to settle the dispute.  While GX Technology has (i) acknowledged these communications, (ii) recognized most of the amounts owed, (iii) partially paid some of the amounts owed, and (iv) agreed to a restructured payment schedule, it has defaulted on its obligation to pay US$ 5,024,581.18 (plus interest) under the MSA and corresponding Supplement No. 13, and also owes an additional US$ 2,909,363 under the MSA and corresponding Supplement No. 6.  Cobra is left with no choice but to protect its rights and seek rightful compensation through this arbitration proceeding.

## II.    JURISDICTION AND PARTIES TO THE DISPUTE

### a.  The Arbitration Agreement

6.    The Parties have agreed in the MSA to arbitration administered by the American Arbitration Association ("AAA") and the AAA Rules, as reflected in Article 20:

> 20. **Applicable Law; Dispute Resolution:** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, excluding applicable conflict-of-law rules or principles. Either Party shall have the right to apply to a court to enjoin any breach of this Agreement.  Excepting the right of a Party to seek such relief, all claims, disputes and matters in question arising out of this Agreement or the relationship between the Parties created by this Agreement, whether sounding in contract, tort or otherwise, shall be resolved by binding arbitration in Houston, Texas, administered by the American Arbitration Association (the "AAA") using the AAA rules for commercial disputes.  If the claim under the dispute is US$ 1,000,000 or less, then the arbitration shall be conducted by one arbitrator.  If the claim under the dispute is more than US$ 1,000,000, the arbitration shall be conducted by a panel of three arbitrators.  Each party shall designate a representative, who

need not be neutral, within 30 days of receiving notification of the filing with the AAA of a demand for arbitration.   The two representatives so designated shall elect the arbitrator(s) from a panel of independent arbitrators proposed by the AAA.   If the Contractor fails to designate a representative within the time specified or the Parties' representatives fail to designate the arbitrator(s) within 30 days of the representatives' appointments, the arbitrator(s) shall be appointed by the AAA.   The Parties agree that the terms of this arbitration agreement are enforceable under the United States Federal Arbitration Act.   The Parties further agree that any disputes relating to or in connection with the enforceability of this arbitration agreement shall be brought only in a Federal Court in Houston, Texas, and each Party consents to the exclusive jurisdiction of the Federal courts in Houston, Texas for that purpose.

7.      In sum, the Parties have agreed to the following arbitration terms:

Applicable Law to the MSA and Supplements: Texas.
Arbitration Rules: AAA Commercial Arbitration Rules (effective as of October 1, 2013).
Arbitration Locale: Houston, Texas.
Characteristics of Arbitral Tribunal: Panel of three arbitrators.

### b.  The Parties and Counsel

8.      The Claimant is Cobra Acquisition Services, S.A.

9.      Cobra is an entity organized under the laws of Panama.   Cobra is a specialized provider of seismic data for off-shore energy projects.

10.      Cobra is represented in this arbitration by King & Spalding LLP.   All required notifications shall be sent to:

Marcus Pullicino – marcus.pullicino@cobracorp.com
Cobra Energy Services, S.A.
5555 San Felipe, Suite 2100
Houston, Texas 77056

Craig S. Miles – cmiles@kslaw.com
Arturo Oropeza Casas – aoropeza@kslaw.com
Jason Peters – jpeters@kslaw.com
Daniela E. Bravo – dbravo@kslaw.com

King & Spalding LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002
(713) 751-3200

11.     The Respondent is GX Technology Corporation.  GX Technology is a seismic imaging services provider.  The company's services include seismic acquisition, time processing, pre-stack depth and time imaging, 4D, and multi-component services.  GX Technology markets to oil & gas companies.

12.     At this time, Cobra is not aware of any external counsel representing GX Technology but understands that GX Technology may be reached at:

Matthew Powers - matt.powers@iongeo.com
Christopher T. Usher - chris.usher@iongeo.com
Michael Morrison - mike.morrison@iongeo.com
ION Geophysical Corporation
2105 CityWest Blvd., Suite 100
Houston, Texas 77042

## III.   APPOINTMENT OF CO-ARBITRATORS

13.     Cobra and GX Technology must appoint their respective co-arbitrators within 30 days of Cobra's initial filing on December 20, 2021, as set forth in Clause 20 of the MSA.  The co-arbitrators shall then select the chair from the AAA's National Roster or the ICDR's international roster.

## IV.   FACTUAL BACKGROUND AND NATURE OF CLAIM

### a.   The MSA

14.     The commercial relationship between Cobra and GX Technology is governed by the MSA executed on July 22, 2011.  The MSA was entered into to provide seismic data services for the development of individual energy projects.  Under the MSA, Cobra is obliged to perform certain duties to provide the Services. In so doing, Cobra is to provide all personnel, equipment, and materials necessary to provide the Services.

15.     In consideration for the Services, GX Technology is obliged to pay consideration as determined in each Supplement.  The terms and conditions of the MSA control over the individual Supplements.

16.     While the MSA gives GX Technology general intellectual property rights over the Work Product,[3] Cobra has the right to retain such Work Product in the event GX Technology has not

---

[3]     **Exhibit 1**, MSA, Art. 7 (b). ("All information, drawings, plans, specifications, designs, reports, computations, calculations and other documents prepared by or on behalf of the Contractor or its Representatives in furtherance of or in connection with the Services (collectively the 'Work Product') … For purposes of this Agreement 'Work Product' also includes inventions (including but not limited to, improvements, inventions, designs, formulas, works of authorship, trade secrets, technology, mask works, circuits, layouts, algorithms, computer programs, ideas, processes, techniques, know-how and data, whether or not patentable) that the Contractor makes, conceives,

paid Cobra in accordance with the payment terms of the relevant Supplement for fifty (50) days from invoice receipt.

### b. The Supplements

17.     The Supplements are meant to govern individual projects undertaken under the MSA. Accordingly, the Supplements set forth specific terms and conditions agreed by the Parties for the performance of the Services.  Between July 2011 and October 2020, the Parties entered into 14 different Supplements, with the objective of providing specific data for select energy projects.  The Supplements relevant to this dispute are Supplement No. 6[4] and Supplement No. 13.[5]  Under Supplement No. 6, Cobra was to make available the vessel M/V Discoverer and necessary equipment to allow GX Technology to acquire a 2D seismic program offshore Peru.  Under Supplement 13, Cobra was to make available the vessel M/V Hai Yang Shi You 760 and necessary equipment to allow GX Technology to acquire its GrandSPAN 2 seismic survey offshore Newfoundland, Canada.

### c. GX Technology's defaults under the MSA

18.     Cobra complied with all obligations under both Supplements.  GX Technology, by contrast, did not.  Under Supplement 13, GX Technology was obliged to make a payment to Cobra of US$ 4,674,029 (plus a finance charge of US$ 350,522.18, for a total of US$ 5,024,581.18) on October 24, 2021.  GX Technology expressly recognized this obligation in an email dated October 21, 2021, in which it proposed to pay down this amount over a series of installments through June 2022.[6]  Cobra did not agree to this restructured payment schedule and proceeded to issue a default notice.  In any event, GX Technology did not comply with its proposed restructuring, and missed its first proposed partial payment on December 15, 2021.  Thus, the full amount is and remains due, with interest accruing from October 24, 2021.

19.     With respect to Supplement No. 6, Cobra is reimbursed its costs through a combination of revenue sharing and cost recovery.  Cobra incurred costs of US$ 5,123,594, and has only been reimbursed US$ 2,214,231, leaving a deficit due and owing of US$ 2,909,363.  GX Technology wrongfully disputes its obligation to pay this amount, arguing that it is contingent on sales, but neither the terms of the MSA nor Supplement No. 6 impose any such condition on GX Technology's obligation to reimburse all of Cobra's costs incurred under Supplement No. 6.

---

reduces to practice or develops (in whole or in part, either alone or jointly with others) during the term of this Agreement in connection with performing Services or that relate to any other Work Product.").

[4]     Attached as **Exhibit 3**.

[5]     Attached as **Exhibit 4**.  Supplement No. 13 contains a scrivener's error reciting the date of the MSA as July 8, 2015, instead of the correct date of July 22, 2011.  The parties entered into an Acknowledgement Agreement Re: Scriveners Error on July 8, 2019.  *See* **Exhibit 5.**

[6]     **Exhibit 6**, E-mail from Mike Morrison to Marcus Pullicino, Oct. 21, 2021, with attached proposed payment schedule.

### V.   REQUEST FOR RELIEF

20.    Once an Arbitral Tribunal is constituted, Cobra will respectfully request an award granting it the following relief:

a)  A declaration that GX Technology has breached the MSA and the Supplements.

b)  A declaration that until GX Technology has paid all amounts due under the MSA and the Supplements, GX Technology is infringing Cobra's intellectual property associated with the Work Product for all Supplements.

c)  An order from the Tribunal directing GX Technology to pay all due amounts under the MSA and the Supplements, including pre- and post- award compound interest.

d)  All costs of this proceeding, including attorneys' fees and expenses.

Respectfully submitted, January 19, 2022

Craig S. Miles – cmiles@kslaw.com
Arturo Oropeza Casas – aoropeza@kslaw.com
Jason Peters – jpeters@kslaw.com
Daniela Bravo – dbravo@kslaw.com

King & Spalding LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002
(713) 751-3200