**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | Case No. 22-30987 (MI) |
| Debtors. | (Jointly Administered) |

**ORDER (I) APPROVING THE DEBTORS' DISCLOSURE STATEMENT AND CONFIRMING THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF ION GEOPHYSICAL CORPORATION AND ITS DEBTOR AFFILIATES AND (II) GRANTING RELATED RELIEF**

The Bankruptcy Court[2] having:

a.      entered, on May 9, 2022, the *Amended Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures With Respect to Confirmation of the Debtors' Joint Chapter 11 Plan, (III) Scheduling Certain Dates With Respect Thereto, (IV) Approving the Forms of Ballots and Notices In Connection Therewith, and (V) Granting Related Relief* [Docket No. 224] (the "Disclosure Statement Order"), pursuant to which the Bankruptcy Court conditionally approved the *Disclosure Statement For Joint Chapter 11 Plan of ION Geophysical Corporation and Its Affiliated Debtors* [Docket No. 23] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement");

b.      set June 27, 2022 at 5:00 p.m. (prevailing Central Time), which was most recently extended to July 25, 2022 at 5:00 p.m. (prevailing Central Time) pursuant to the *Order Approving the Debtors' Emergency Motion for Entry of an Order (I) Modifying Certain Plan Confirmation Dates and Deadlines and (II) Granting Related Relief* [Docket No. 428] (the "Amended Scheduling Order"), as the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115). The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan (as defined herein) attached hereto as **Exhibit A**, the Disclosure Statement (as defined herein), or the Disclosure Statement Order (as defined herein). The rules of interpretation set forth in Article I.B of the Plan apply to the Confirmation Order.

deadline for filing objections to final approval of the Disclosure Statement and confirmation of the Plan (the "Objection Deadline");

c.  set June 27, 2022 at 5:00 p.m. (prevailing Central Time), which was most recently extended to July 25, 2022 at 5:00 p.m. (prevailing Central Time) pursuant to the Amended Scheduling Order, as the deadline for voting on the Plan (the "Voting Deadline");

d.  set July 6, 2022 at 9:30 a.m. (prevailing Central Time), which was most recently rescheduled for August 18, 2022 at 1:30 p.m. (prevailing Central Time) pursuant to the *Order On Debtors' Emergency Motion to (I) Further Continue (A) the Confirmation Hearing, (B) the Hearing on the TGS Sale Transaction, and (C) the Hearing on the Shearwater Rejection Motion and (II) Modify Certain Plan Confirmation Dates and Deadlines* [Docket No. 604], as the date and time for the hearing to consider final approval of the Disclosure Statement and confirmation of the *First Amended Joint Chapter 11 Plan of ION Geophysical Corporation and Its Debtor Affiliates* [Docket No. 636] (as amended, supplemented, or otherwise modified from time to time, the "Plan," and such hearing to consider confirmation of the Plan and final approval of the Disclosure Statement, the "Confirmation Hearing") pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e.  reviewed: (i) the Plan; (ii) the Disclosure Statement; (iii) the *Disclosure Statement Supplement Relating to the First Amended Joint Chapter 11 Plan of ION Geophysical and Its Debtor Affiliates* [Docket No. 456] (the "Disclosure Statement Supplement"); (iv) the *Supplement for the First Amended Joint Chapter 11 Plan of ION Geophysical Corporation and Its Debtor Affiliates* [Docket No. 463], (as amended, including by the *First Amended Plan Supplement for the First Amended Joint Chapter 11 Plan of ION Geophysical Corporation and Its Debtor Affiliates* [Docket No. 637] and the *Second Amended Plan Supplement for the First Amended Joint Chapter 11 Plan of ION Geophysical Corporation and Its Debtor Affiliates* [Docket No. 656], the "Plan Supplement"); (v) the *Memorandum of Law in Support of Confirmation of First Amended Joint Chapter 11 Plan of ION Geophysical Corporation and Its Debtor Affiliates* [Docket No. 645] (the "Confirmation Brief"); (vi) the *Declaration of Mike Morrison, Executive Vice President and Chief Financial Officer of ION Geophysical Corporation, In Support of Confirmation of the First Amended Joint Chapter 11 Plan of ION Geophysical Corporation and Its Debtor* Affiliates [Docket No. 646] (the "Morrison Declaration"); (vii) the *Declaration of Stephenie Kjontvedt of Epiq Corporate Restructuring, LLC Regarding the Tabulation of Ballots Cast On First Amended Joint Chapter 11 Plan of ION Geophysical Corporation and Its Debtor Affiliates* [Docket No. 643] (the "Voting Declaration" and, together with the Morrison Declaration, the "Declarations"); (viii) the *Notice of Hearing to Consider (I) the Adequacy of the Debtors' Disclosure Statement, (II) Confirmation of the Plan and (III) Related Voting and Objection Deadlines* (the "Combined Hearing Notice"), the form of which is attached as Schedule 5 to the Disclosure Statement Order; (ix) the *Proof of Publication* [Docket No. 276] (the "Publication Affidavit"); (x) the *Affidavit of*

*Service of Solicitation Documents* [Docket No. 278] (the "<u>Solicitation Affidavit</u>") and together with the Publication Affidavit the "<u>Affidavits</u>"); and (xi) all Filed pleadings, exhibits, statements, and comments regarding approval of the Disclosure Statement and Confirmation, including all objections, statements, and reservations of rights;

f.      held the Confirmation Hearing on August 18, 2022 at 1:30 p.m. (prevailing Central Time);

g.      heard the statements and arguments made by counsel in respect of approval of Confirmation and having considered the record of these Chapter 11 Cases and taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases; and

h.      considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation.

NOW, THEREFORE, after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

**A.      Findings of Fact**.  The findings of fact and conclusions of law set forth herein, in the Plan, and in the record of the Confirmation Hearing, constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  All findings of fact and conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing in relation to Confirmation, including any rulings made on the record at the Confirmation Hearing, are hereby incorporated in this Confirmation Order.  To the extent any of the following constitutes findings of fact or conclusions of law, they are adopted as such.  To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Bankruptcy Court, it is adopted as such.

B.      **Jurisdiction, Venue, and Core Proceeding**. The Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to section 1334 of title 28 of the United States Code.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding within the meaning of section 157(b)(2) of title 28 of the United States Code.

C.      **Disclosure Statement**. The Disclosure Statement (as supplemented by the Disclosure Statement Supplement) contains (i) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (ii) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.  The filing of the Disclosure Statement with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b).

D.      **Ballots**.  The classes of Claims entitled to vote on the Plan (collectively, the "Voting Classes") are set forth below:

| Class | Claims |
|-------|--------|
| 3 | RCF Claims |
| 4 | Second Lien Notes Secured Claims |
| 5 | General Unsecured Claims |

As set forth and approved in the Disclosure Statement Order, the ballots the Debtors used to solicit votes to accept or reject the Plan from Holders in the Voting Classes adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for Holders in the Voting Classes to vote to accept or reject the Plan.  The Debtors' solicitation of votes from Holders in

Class 3, Class 4, and Class 5 was appropriate and done in accordance with the Disclosure Statement Order.

E.      **Notice**.  As evidenced by the Affidavits and the Voting Declaration, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan and final approval of the Disclosure Statement) have been given due, proper, adequate, timely, and sufficient notice of the Confirmation Hearing in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable non-bankruptcy rules, laws, and regulations, and such parties have had an opportunity to appear and be heard with respect thereto.

F.      **Solicitation**.  As described in and evidenced by the Affidavits and the Voting Declaration, transmittal and service of the solicitation materials (collectively, the "Solicitation") were timely, adequate, appropriate, and sufficient under the circumstances.  The Solicitation (i) was conducted in good faith and (ii) complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and all other applicable non-bankruptcy rules, laws, and regulations applicable to the Solicitation.

G.      **Voting Record Date**.  The solicitation materials and the Plan were distributed to Holders in the Voting Classes that held a Claim as of May 4, 2022 (the "Voting Record Date"). The establishment and notice of the Voting Record Date was reasonable and sufficient.

H.      **Vote Tabulation**.  As set forth in the Plan, the Disclosure Statement, and this Confirmation Order, Holders of Claims in Class 3, Class 4, and Class 5 were eligible to vote to accept or reject the Plan in accordance with the Solicitation and Voting Procedures.  Holders of Claims in Class 1 and Class 2 are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.  Holders of Intercompany Claims in

Class 6 of the Plan and Holders of Intercompany Interests in Class 7 of the Plan are Unimpaired and conclusively presumed to have accepted the Plan or are Impaired and deemed to reject the Plan, and, in either event, are not entitled to vote to accept or reject the Plan.  Holders of Interests in Class 8 and Class 9 are Impaired and deemed to reject the Plan.   As described in the Voting Declaration, the Holders of Claims in Class 3, Class 4, and Class 5 have voted to accept the Plan in the numbers and amounts required by section 1126 of the Bankruptcy Code.  Notwithstanding the deemed rejection of the Plan by Class 8 and Class 9, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

**I.**      All procedures used to tabulate the ballots were fair, reasonable, and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and all other applicable non-bankruptcy rules, laws, and regulations.

**J.**      **Service of Opt-Out Form**.  The process described in the Voting Declaration and the Solicitation Affidavit that the Debtors and the Solicitation Agent followed to identify the relevant parties on which to serve the applicable ballot or notice containing an opportunity to opt out of the Third-Party Releases (as defined herein) (each, an "Opt-Out Form") and to distribute the Opt-Out Forms (i) is consistent with the industry standard, and (ii) was reasonably calculated to ensure that each Holder of Claims or Interests in each Class was informed of its ability to opt out of the Third-Party Releases and the consequences for failing to timely do so.  For the avoidance of doubt, any party that elected in the Opt-Out Form to opt out of the Third-Party Releases prior to any deadline to submit a ballot, whether under any original or extended deadline, shall be neither a Released Party nor a Releasing Party under the Plan.

**K.**     **Modifications to Plan**.  Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan made after solicitation of the Plan or in this Confirmation Order (including those modifications announced on the record of the Confirmation Hearing) constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim under the Plan.  Notice of these modifications was adequate and appropriate under the facts and circumstances of the Chapter 11 Cases.  In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims or Interests be afforded any further opportunity to change previously cast acceptances or rejections of the Plan.  Accordingly, the Plan is properly before this Bankruptcy Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

**L.**     **Settlement of Claims and Interests**. Article IV.A of the Plan describes certain settlements entered into by and among the Debtors and other parties in interest.  Pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code and in consideration for the distributions and other benefits provided under the Plan, any and all compromise and settlement provisions of the Plan constitute good-faith compromises, are in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable.  The settlements and compromises pursuant to and in connection with the Plan are substantively fair based on the following factors, as applicable: (i) the balance between the litigation's possibility of success and the settlement's future benefits; (ii) the likelihood of complex and protracted litigation and risk and difficulty of collecting on the judgment; (iii) the proportion of creditors and parties in

interest that support the settlement; (iv) the competency of counsel reviewing the settlement; (v) the nature and breadth of releases to be obtained by officers and directors; and (vi) the extent to which the settlement is the product of arm's-length bargaining.

M.     **Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action**.  Article VIII.C of the Plan describes certain releases granted by the Debtors and the Estates (the "Debtor Releases").  Such releases are a necessary and integral element of the Plan, and are fair, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims and Interests. The Debtor Releases are: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good-faith settlement and compromise of the Claims released by Article VIII.C of the Plan; (iii) given, and made, after due notice and opportunity for hearing; (iv) appropriately tailored under the facts and circumstances of the Chapter 11 Cases; and (v) a bar to any of the Debtors and the Estates asserting any Claim or Cause of Action released by the Debtor Release.

N.     Article VIII.D of the Plan describes certain releases (the "Third-Party Releases") granted by the Releasing Parties which include: (i) the Debtors; (ii) the Plan Administrator; (iii) the DIP Lenders; (iv) the RCF Agent, (v) the Second Lien Notes Trustee; (vi) the RCF Lenders; (vii) the Second Lien Noteholders; (viii) the Supporting Creditors; (ix) the Unsecured Notes Trustee; (x) all Holders of Claims or Interests that vote to accept the Plan; (xi) all Holders of Claims or Interests that are deemed to accept the Plan who do not affirmatively opt out of the releases provided by the Plan; (xii) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (xiii) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (xiv) all current and former Affiliates of

each Entity in clause (i) through (xiii); and (xv) all Related Parties of each Entity in clause (i) through (xiv).

O.       The Third-Party Releases are consensual with respect to the Releasing Parties and such parties were provided notice of the Chapter 11 Cases, the Plan, and the deadline to object to Confirmation of the Plan, received the Combined Hearing Notice, and were properly informed that the Holders of Claims against or Interests in the Debtors that did not check the "opt-out" box on the applicable ballot or Opt-Out Form attached to the Non-Voting Status Notices returned in advance of the Voting Deadline (as extended from time to time) would be deemed to have consented to the release of all Claims and Causes of Action against the Debtors and the Released Parties as set forth in Article VIII.D of the Plan.  The Combined Hearing Notice was additionally published in *The New York Times* (national edition) on May 20, 2022 [Docket No. 276].   The release provisions of the Plan are conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, the Master Ballots, the Combined Hearing Notice, and the Non-Voting Status Notices.

P.       The Third-Party Releases are: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Releases; (iii) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders, and important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in these Chapter 11 Cases; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; (vi) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released by the Third-Party Release against any of the Released Parties;

and (vii) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

**Q.**    The exculpation, described in <u>Article VIII.F</u> of the Plan (the "<u>Exculpation</u>"), is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good faith, arm's-length negotiations with key constituents, and is appropriately limited in scope.

**R.**    The injunction provisions set forth in <u>Article VIII.F</u> of the Plan (the "<u>Injunction</u>") are necessary to implement, preserve, and enforce the Debtor Releases, the Third-Party Releases, and the Exculpation, and are narrowly tailored to achieve these purposes.

**S.**    <u>Article IV.S</u> of the Plan provides that the Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Plan Administrator's rights to, on behalf of the Debtors, commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in <u>Article VIII</u> of the Plan, which shall be deemed released and waived by the Debtors as of the Effective Date.   The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.   The Schedule of Retained Causes of Action provides adequate disclosure with respect to the Retained Causes of Action that shall be preserved.   The Plan and the Plan Supplement, including the descriptions of the Retained Causes of Action contained in the Plan and the Schedule of Retained Causes of Action and the potential defendants therein, are specific and unequivocal with respect

to the Causes of Action to be preserved and retained by the Plan Administrator and comply with the standards set forth in *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355 (5th Cir. 2008) and its progeny.  All parties in interest received adequate notice with respect to such Retained Causes of Action.  The provisions regarding Retained Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and Holders of Claims and Interests.

      **T.**     The release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in <u>Article VIII.B</u> of the Plan (the "<u>Lien Release</u>"), except as otherwise expressly provided in the Plan, the DIP Documents, the Asset Purchase Agreement(s), and this Confirmation Order, is necessary to implement the Plan. The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

      **U.**     **Good Faith**.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so determining based on the evidence presented to this Bankruptcy Court, including the Declarations, the Plan, the Disclosure Statement and the other motions and pleadings filed and the testimony elicited at the Confirmation Hearing, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the process leading to Confirmation, and the transactions to be implemented pursuant thereto.  These Chapter 11 Cases were commenced, and the Plan was proposed, in good faith and with the legitimate purpose of allowing the Debtors to maximize value and emerge from bankruptcy.  The Plan is the product of good-faith, arm's-length negotiations by and among the Debtors, the Supporting Creditors, and the Committee, among others.

V.      **Satisfaction of Confirmation**. Based on the foregoing, the Debtors, as proponents of the Plan, have met their burden of proving by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation, that the Plan satisfies all applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code required for Confirmation.

## **ORDER**

IT IS HEREBY ORDERED THAT:

1.      **Disclosure Statement**. The Disclosure Statement is approved in all respects on a final basis.

2.      **Confirmation of the Plan**. The Plan is confirmed pursuant to section 1129 of the Bankruptcy Code.

3.      Any and all objections to the Plan that have not been withdrawn, waived, settled, or resolved prior to this Confirmation Hearing or otherwise resolved on the record of the Confirmation Hearing or in this Confirmation Order are hereby overruled in their entirety on the merits.

4.      The documents contained in the Plan Supplement are integral to the Plan, in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and are approved by the Bankruptcy Court, and the Debtors and the Plan Administrator (as applicable) are authorized to take all actions required under the Plan and the Plan Supplement to effectuate the Plan, the Plan Supplement, and the Restructuring Transactions.

5.      The terms of the Plan and the Plan Supplement are incorporated herein by reference and are an integral part of this Confirmation Order. The terms of the Plan, the Plan Supplement, and all other relevant and necessary documents shall be effective and binding as of the Effective Date on all parties in interest, including the Debtors, the Plan Administrator, and all Holders of

Claims and Interests. The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

6.      The Debtors shall cause to be served a notice of the entry of this Confirmation Order and occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (the "Confirmation Notice"), upon (a) all parties listed in the creditor matrix maintained by the Solicitation Agent and (b) such additional persons and entities as deemed appropriate by the Debtors, no later than five business days after the Effective Date. The Debtors shall cause the Confirmation Notice to be published in the *New York Times* (national edition) as soon as reasonably practicable after the Effective Date.  Mailing and publication of the Confirmation Notice in the manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c).  No further notice is necessary.  The Confirmation Notice will have the effect of an order of the Bankruptcy Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

7.      **Settlement of Claims and Interests**. The compromises and settlements set forth in the Plan and Confirmation Order, including those set forth in Article VIII.A of the Plan, are approved and will be effective immediately and binding on all parties in interest on the Effective Date.

8.      **Releases, Exculpation, and Injunction**.  Pursuant to Bankruptcy Rule 3020(c)(1), the following provisions of the Plan are hereby approved and will be immediately effective on the Effective Date, subject to Article VIII.G of the Plan, without further order or action by the

Bankruptcy Court, any of the parties to such releases, or any other Entity: (a) Lien Release (Article VIII.B of the Plan); (b) Debtor Releases (Article VIII.C of the Plan); (c) Third-Party Releases (Article VIII.D of the Plan); (d) Exculpation (Article VIII.E of the Plan), and (e) Injunction (Article VIII.F of the Plan).

9. **Sources of Consideration for Plan Distributions**. The Debtors shall fund distributions under the Plan, as applicable, with: (a) the Debtors' Cash on hand; (b) the Sale Proceeds; (c) any other proceeds derived from, or on account of, the Plan Administrator Assets. Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

10. **Restructuring Transactions**. The Debtors and the Plan Administrator, as applicable, are authorized to take any and all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan or Confirmation Order, including the Restructuring Transactions set forth in Article IV of the Plan

11. **Vesting of Assets**. On the Effective Date, the Plan Administrator Assets shall vest automatically in the Debtors under the control of the Plan Administrator free and clear of all Liens, claims, encumbrances, and other interests. The vesting of control over the Plan Administrator Assets to the Plan Administrator shall be made for the benefit and on behalf of holders of Claims receiving a distribution from proceeds of the Plan Administrator Assets. For the avoidance of doubt, the vesting of the control of the Plan Administrator Assets with the Plan Administrator shall not constitute a transfer of ownership of the Plan Administrator Assets to the Plan Administrator. Except as otherwise expressly provided in the Plan or this Order, the Plan Administrator is (a) not

agreeing to, and shall not be deemed to assume the obligation to, perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Entity relating to or arising out of the operations or the assets of the Debtors on or prior to the Effective Date, (b) is not, and shall not be, a successor to the Debtors or by reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date, and (c) shall not have any successor, transferee, or similar liability of any kind or character. In connection with the appointment of the Plan Administrator, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Plan Administrator will vest in the Debtors under the control of the Plan Administrator and its representatives, and the Debtors and the Plan Administrator are authorized to take all necessary actions to effectuate the transfer of such privileges.

12. **The Plan Administrator**.  The appointment of Wilmington Savings Fund Society, FSB ("WSFS"), or an entity owned or controlled by WSFS, as Plan Administrator is approved in all respects.  The compensation of the Plan Administrator as set forth in the Plan Supplement is approved in all respects.  Upon the occurrence of the Effective Date, the Plan Administrator shall be vested with all powers and authority set forth in the Plan to undertake the actions set forth in the Plan for its implementation and in furtherance thereof, but solely to that extent, the Plan Administrator shall: (a) be deemed to have been appointed as the Debtors' representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Plan Administrator Assets; (b) have all powers of a debtor-in possession pursuant to sections 1106(a)(6) and (7) and 1107 of the Bankruptcy Code; (c) have all applicable powers of a trustee set forth in section 704(a) of the Bankruptcy Code; and (d) be able to assert all rights of the Debtors under section 558 of the Bankruptcy Code.  To the extent necessary, the Plan Administrator shall be deemed to be a judicial

substitute for the applicable Debtors as the party-in-interest in the Chapter 11 Cases, under the Plan, or in any judicial or other proceeding or appeal to which any of the Debtors is a party. For the avoidance of doubt, the Plan Administrator shall not be deemed an officer or director of any Debtor or non-Debtor subsidiary. The Plan Administrator shall provide a report of the Plan Administrator's activity to the Required Supporting Creditors on a monthly basis for the first three (3) months following the Effective Date and then on a quarterly basis thereafter, or more frequently as may be reasonably requested by the Required Supporting Creditors, which report shall include: (a) a summary of all distributions made in accordance with the Plan during the preceding quarter; (b) all Plan Administrator Assets transferred to and accepted by the Plan Administrator during the preceding quarter (other than Plan Administrator GUC Assets); (c) a summary of any and all pending D&O Claims that are Plan Administrator GUC Assets; (d) a summary of any amounts released from the Disputed Claims Reserve or Wind-Down Budget to be treated as Second Lien Notes Distributable Cash under the terms of the Plan; and (e) financial statements, including all fees, income, and expenses paid from the Wind-Down Budget during the preceding quarter. Other than the duties and obligations of the Plan Administrator specifically set forth in the Plan and the Confirmation Order, the Plan Administrator shall have no duties or obligations. On the Effective Date, the directors, managers, or officers of the Debtors shall be deemed to have resigned.

13.    **Wind-Down**. On and after the Effective Date, the Plan Administrator will be authorized and directed to implement the Plan and any applicable orders of the Bankruptcy Court and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Estates. On and after the Effective Date, the Plan Administrator shall cause the Debtors to comply with, and abide by, the terms of any Asset Purchase Agreement(s) and take

such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.  Except to the extent necessary to complete the liquidation and wind-down of any remaining assets or operations, from and after the Effective Date, the Debtors (a) for all purposes, shall be deemed to have withdrawn their business operations from any state or province in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action to effectuate such withdrawal, (b) shall be deemed to have cancelled pursuant to the Plan all Interests, and (c) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

14.     **Disputed Claims Reserve.**  On or before the Effective Date (or, with the reasonable consent of the Plan Administrator, as soon thereafter as is reasonably practicable), the Debtors shall fund the Disputed Claims Reserve as set forth in the Plan; *provided* that the Plan Administrator may adjust the Disputed Claims Reserve, in its sole discretion, following the applicable Claims Bar Date or Administrative Claims Bar Date subject to the terms of the Plan and this Confirmation Order.

15.     **GUC Recovery Reserve.**  On or before the Effective Date (or, with the reasonable consent of the Plan Administrator, as soon thereafter as is reasonably practicable), the Debtors shall fund the GUC Recovery Reserve as set forth in the Plan.

16.     **Cancellation of Notes, Instruments, Certificates, and Other Documents**.  On the Effective Date, except to the extent otherwise provided in the Plan or the Confirmation Order, all notes, instruments, certificates, credit agreements, indentures, and other documents evidencing Claims or Interests shall be cancelled and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, and of no force or effect without any

need for a Holder to take further action with respect thereto. Holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan. Notwithstanding such cancellation or anything to the contrary in the Plan or the Confirmation Order, the DIP Documents, the RCF Credit Documents, the Second Lien Notes Indenture, the Unsecured Notes Indenture, and any other agreement, instrument, or document related to the foregoing shall continue in full force and effect to the extent necessary to: (1) allow Holders of Claims to receive Plan Distributions; (2) allow the DIP Agent, the RCF Agent, the Second Lien Notes Trustee, and the Unsecured Notes Trustee to seek and/or receive compensation and/or reimbursement of fees and expenses in accordance with the Plan, the DIP Orders, or any other order of the Bankruptcy Court; (3) preserve all rights, remedies, indemnities, powers, and protections of the DIP Agent, the RCF Agent, the Second Lien Notes Trustee, and the Unsecured Notes Trustee for their own respective accounts (including all rights to payment of fees and expenses) and any exculpations of the DIP Agent, the RCF Agent, the Second Lien Notes Trustee, and the Unsecured Notes Trustee (which rights, remedies, indemnities, powers, protections and exculpations shall survive and remain in full force and effect, and not be released or affected in any way by the terms of the Plan or the Confirmation Order); (4) allow the DIP Agent, the RCF Agent, the Second Lien Notes Trustee, and the Unsecured Notes Trustee to enforce any rights and obligations owed to each of them under the DIP Orders, the Plan, or the Confirmation Order, and (5) permit the DIP Agent, the RCF Agent the Second Lien Notes Trustee, and the Unsecured Notes Trustee to perform any functions that are necessary to effectuate any of the foregoing. On the Effective Date, the DIP Agent, the RCF Agent and the Second Lien Notes Trustee, and the Unsecured Notes Trustee and their respective agents, successors, and assigns shall

be fully relieved from all of their duties and obligations under the DIP Documents, RCF Credit Documents, the Second Lien Notes Indenture, and the Unsecured Notes Indenture.

17.     **Preservation of Causes of Action**.   Except as provided in the Plan, this Confirmation Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Plan Administrator will retain and may enforce any Retained Causes of Action against any Entity.   The Plan Administrator may pursue any such Retained Causes of Action in accordance with the Plan.   The Debtors' inclusion or failure to include or describe with sufficient specificity any Retained Causes of Action on the Schedule of Retained Causes of Action shall not be deemed an admission, denial or waiver of any Retained Causes of Action that the Debtors or Estates may hold.  No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to the Retained Causes of Action upon or after the entry of this Confirmation Order or the Effective Date of the Plan based on the Plan or this Order, including any argument of waiver on account of the failure to include or describe with sufficient specificity any Retained Cause of Action on the Schedule of Retained Causes of Action.

18.     **Corporate Action**.   Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken on or prior to the Effective Date, ratified (without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtors or any other Entity), including:  (a) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; (b) implementation of the Restructuring Transactions; and (c) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated, by the Plan.  All matters

provided for in the Plan involving the corporate structure of the Debtors and any corporate action required by the Debtors or the Plan Administrator in connection therewith shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by Holders of Claims or Interests, the security holders, directors, managers, authorized persons, the Plan Administrator, or officers of the Debtors.  On or before the Effective Date, the appropriate officers of the Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effectuate the Restructuring Transactions) in the name of and on behalf of the Debtors, including any and all other agreements, documents, Securities, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by Article IV.L of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

19.     **Distributions**. The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Disbursing Agent shall make all distributions required under the Plan and the timing of distributions required under the Plan shall be made in accordance with and as set forth in the Plan.  The Plan Administrator shall use commercially reasonable efforts to make initial distributions to Holders of Allowed DIP Claims, RCF Claims, and Second Lien Notes Secured Claims within thirty (30) days of the Effective Date.

20.     **Claims Register**. Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Plan Administrator without the Plan Administrator having to File an application, motion,

complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

21.     **No Action Required**. No action of the directors, partners, managers, members, stockholders or equity holders of the Debtors or the Plan Administrator, as applicable, is required to authorize the Debtors and the Plan Administrator, as applicable, to issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.  Subject to the terms of <u>Article IV.O</u> of the Plan, on and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Restructuring Transactions in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

22.     **Release of Non-Debtor Loan Parties**.  On the Effective Date, the RCF Lenders and the Second Lien Noteholders shall be deemed, and, to the extent applicable, shall be deemed to have directed the RCF Agent and the Second Lien Notes Trustee (as applicable, and solely in their capacities as such) to, release any and all obligations of, security interests in, and claims against each Non-Debtor Loan Party (including any indebtedness, guaranty, or other obligations under the RCF Credit Documents or the Second Lien Notes Indenture).

23.     **Release of Liens**.  After the Effective Date, a certified copy of this Confirmation Order may be filed with the appropriate clerk or recorded with the recorder of any federal, state,

province, county, or local authority, whether foreign or domestic, to act to cancel any of the claims, liens, and other encumbrances of record, including those against the Non-Debtor Loan Parties.

24.     **Enforceability of Plan**. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, upon the Effective Date, the provisions of this Confirmation Order and the Plan shall apply and be binding and enforceable notwithstanding any otherwise applicable non-bankruptcy law.

25.     **Rejection of Contracts and Leases**. The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

26.     On the Effective Date, except as otherwise provided in the Plan, each Executory Contract or Unexpired Lease not rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (a) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement, or otherwise is specifically described in the Plan to not be rejected; (b) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (c) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the any Sale Transaction; or (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan.

27.     **Approval of Consents and Authorization to Take Acts Necessary to Implement Plan**.  This Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

28.     **Notice of Subsequent Pleadings**.  Except as otherwise provided in the Plan or this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date will be limited to the following parties:  (a) the Plan Administrator and its counsel; (b) the U.S. Trustee; (c) the RCF Agent and counsel thereto; (d) the RCF Lenders and counsel thereto; (e) the Second Lien Noteholders and counsel thereto; (f) the Second Lien Notes Trustee and counsel thereto; and (g) any party known to be directly affected by the relief sought by such pleadings; and (h) any party that specifically requests additional notice in writing to the Debtors or the Plan Administrator, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date.  The Solicitation Agent shall not be required to file updated service lists.

29.     **Utility Order**.  On or as soon as reasonably practicable after the Effective Date, the Plan Administrator is authorized to withdraw the funds held in the segregated escrow account pursuant to the *Order (A)(I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Services, and (III) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests and (B) Granting Related Relief* [Docket No. 66] (the "Utility

Order") and the Debtors and the Plan Administrator shall have no further obligations to comply with the Utility Order.

30.     **Texas Comptroller**.  Notwithstanding anything to the contrary in the Plan or the Confirmation Order, all rights of the Texas Comptroller of Public Accounts (the "Texas Comptroller") related to any tax Claims timely filed by the Texas Comptroller against the Debtors or any other tax claims against non-Debtor third parties are reserved and all parties reserve all rights related thereto. The Texas Comptroller shall not be a Releasing Party under the Plan.  Nothing provided in the Plan or Confirmation Order shall affect or impair any valid statutory or common law setoff rights of the Texas Comptroller with respect to the Debtors in accordance with 11 U.S.C. § 553.  Nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of any valid post-Effective Date interest on the Texas Comptroller's Allowed tax Claims against the Debtors. The Texas Comptroller may amend its tax Claims in accordance with applicable law to reflect the results of the actual assessment of tax liabilities against the Debtors without further consent of the Bankruptcy Court.  For the avoidance of doubt, the matters preserved by this paragraph are subject to all rights and defenses available under applicable law.

31.     **Texas Tax Authorities**.  In resolution of the objections to the Plan filed by Cypress-Fairbanks Independent School District, Harris County, Alief Independent School District, and the City of Houston (collectively, the "Texas Tax Authorities") and notwithstanding anything to the contrary in the Plan or this Confirmation Order, with respect to the ad valorem property tax claims (the "Tax Claims") of the Texas Tax Authorities, any such Allowed Tax Claims shall be treated as Other Secured Claims and shall be paid on the later of (i) the date any such Allowed Tax Claims become due pursuant to the Texas Tax Code (subject to any applicable extensions, grace periods, or similar rights under the Texas Tax Code) and (ii) the Effective Date.  To the extent the

Texas Tax Code provides for interest and/or penalties with respect to any portion of the Allowed Tax Claims, such interest and/or penalties shall be included in the Allowed Tax Claims. Further, the liens securing the Allowed Tax Claims shall be retained against the Debtors' personal property to the extent not otherwise sold and to the ad valorem tax reserve established pursuant to the orders approving the Sale Transaction(s) identified in the Notice of Successful Bidders, with such liens retained until the applicable Allowed Tax Claims are paid in full.  All rights and defenses of the Debtors and the Plan Administrator under applicable law are reserved and preserved with respect to such Tax Claims.  The Texas Tax Authorities are allowed to amend their claims after the applicable bar date to reflect the final 2022 tax amounts without having to receive prior authorization from the Court, the Debtors, or the Plan Administrator.

32.    **Insurance**.  Nothing in the Plan or this Confirmation Order will prejudice the rights of insureds under policies that also insure the Debtors.

33.    Notwithstanding anything to the contrary in this Confirmation Order, the Plan, or any notice related thereto, the LINA Policies (as defined in the *Objection Of Life Insurance Company of North America to Joint Chapter 11 Plan Of Reorganization And Disclosure Statement Of ION Geophysical Corporation And Its Debtor Affiliates* [Docket No. 501] (the "LINA Objection")), shall be assumed under the Plan, and, in lieu of any Cure Claim, all obligations due and unpaid under the LINA Polices accruing prior to the Effective Date shall be unimpaired and reinstated, and nothing in this Confirmation Order or section 365 of the Bankruptcy Code shall affect such obligations.  This fully resolves the LINA Objection.

34.    **Angola Geoscience Service**.  Notwithstanding anything to the contrary in the Plan, nothing shall modify the rights, if any, of Angola Geoscience Service to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law and

the Debtors' and the Plan Administrators' rights and defenses with respect thereto are expressly reserved.

35.     **Directorate General of Hydrocarbons**.  Notwithstanding anything to the contrary in the Plan, this Confirmation Order, or any other order entered on the *Debtors' Emergency Motion for Entry of an Order Approving (I)(A) Bidding Procedures and (B) Assumption and Assignment Procedures; (II) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; and (III) Granting Related Relief* [Docket No. 21], nothing shall modify the rights, if any, of the Directorate General of Hydrocarbons, a/k/a the Ministry of Petroleum & Natural Gas, Government of India to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law and the Debtors' and the Plan Administrators' rights and defenses with respect thereto are expressly reserved.  The deadline for the Debtors to elect to reject or assume and assign the data license agreements to third parties relating any Surveys relating to the 2005 Agreement and 2008 Agreement (each as defined in the objection of DGH filed at [Docket No. 486]) (collectively, the "DGH Data and Surveys"), including, without limitation: (i) the ConocoPhillips New Ventures Ltd. Agreement dated 12/17/2013 (page 104); (ii) the Energy World Development Ltd Agreement dated 6/1/2006 (page 106); (iii) the Oil India Agreements dated 8/7/2006 and 6/7/2007 (page 112); or (iv) the license agreements otherwise related to the revenue streams reflected on the sales statements submitted to GX Technology Corporation in connection with its an affidavit on oath (dated October 15, 2019) before the Delhi High Court is hereby extended until the Effective Date and may be further extended upon proper motion to the Court.

36.   **INOVA**.  For the avoidance of doubt none of the following assets are being sold and none of the following executory contracts are being assumed and assigned to a non-Debtor third-party pursuant to the Confirmation Order:

(a)   the conveyance, assignment, or transfer of any rights or interests in, to, or against the *Joint Venture Agreement* dated March 24, 2010 involving the Debtor(s) and INOVA Geophysical Equipment Ltd.  (as identified in Docket Nos. 316, 404, 470, and/or any amendments thereto);

(b)   any rights or interest in, to, or against any executory contracts to which any of the Debtors is a party and any of the following also is party (collectively the "INOVA Entities"): INOVA Geophysical, Inc., INOVA Geophysical (UK) Limited, INOVA Exploration Holdings, S.a.r.l. INOVA Systems Corporation, INOVA Ltd., INOVA Geophysical FZE (formerly ARAM Systems Middle East FZE), INOVA (Xfan) Geophysical Equipment Limited, Input/Output Services CIS, LLC; and

(c)   the conveyance, assignment, or transfer of any interest in the equity interest or similar interest of the Debtors, or any other person or any entity, with respect to any of the INOVA Entities.

37.   Notwithstanding the foregoing, nothing shall prevent (a) the Debtors from assuming or rejecting any of the foregoing executory contracts pursuant to the Plan or (b) the Plan Administrator from administering the foregoing pursuant to the Plan to the extent they are Plan Administrator Assets.  Any valid rights of the INOVA Entities pursuant to section 365(n) of the Bankruptcy Code are hereby preserved and any rights and defenses of any party available under applicable law with respect thereto are also preserved.

38.    **TGS**.   Notwithstanding anything to the contrary in the Plan or this Confirmation Order:  (i) The Stock and Asset Purchase Agreement among the Debtors and TGS ASA (the "SAPA"), the *Order (I) Approving (A) the Sale of Certain of the Debtors' Marine Data and Processing Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (II) Granting Related Relief* (the "TGS Sale Order"), and the Debtors' and other sellers' obligations therein, are not altered, impaired, amended, rejected, discharged, or otherwise affected by the Plan or Confirmation Order; and (ii) to the extent of any conflict between the Plan and Confirmation Order, on the one hand, and the SAPA and TGS Sale Order, on the other, the terms of the SAPA and Sale Order shall control.  For the avoidance of doubt, and without limitation to the preceding sentence: (v) TGS ASA, its Affiliates, and their Related Parties are not "Releasing Parties" under the Plan; (w) the assets sold pursuant to the terms of the SAPA and TGS Sale Order are not part of the GUC Recovery Pool, Plan Administrator Assets, Plan Administrator GUC Assets, or any other assets available for liquidation, distribution, or other administration under the Plan; (x) the Debtors, the Plan Administrator, and any other party purporting to act on behalf of the Debtors or their bankruptcy estates, may not pursue any claim or cause of action sold, transferred, assigned, or released under the terms of the SAPA or any related agreement or document executed in connection with such SAPA (the "TGS Assigned Claims"); and (y) any and all releases and injunctions in the Plan, including those set forth in Article VIII of the Plan, and Confirmation order shall not release, enjoin, or otherwise impair any TGS Assigned Claims.

39.    **BGP**.   No provision of the Plan or this Confirmation Order shall be deemed to affect or determine the ownership rights, if any, of BGP Inc., China National Petroleum Corporation ("BGP Inc.") and BGP Offshore ("BGPO" and together with BGP Inc.,

"BGP") under (i) that certain Master Cooperation Agreement executed between BGP Inc. and ION on August 7, 2014 (the "Master Cooperation Agreement"), (ii) the Novation Deed dated as of February 1, 2021, substituting BGPO for BGP Inc., and (iii) all agreements and other documents related to the Master Cooperation Agreement (collectively, the "BGP Agreements") or its right to receive revenues, whether prepetition or postpetition, under the BGP Agreements, and all of BGP's claims and rights against the Debtors are fully preserved.

40.     **Miscellaneous**. After the Effective Date, the Plan Administrator shall have no obligation to file with the Bankruptcy Court or serve on any parties reports that the Debtors were obligated to file under a Bankruptcy Court order, including ordinary course professional reports, reports to any parties otherwise required under "first" and "second" day orders entered in these Chapter 11 Cases, and monthly or quarterly reports for Professionals. The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator. The Plan Administrator shall no longer have the obligation to file quarterly reports with respect to a Debtor once such Debtor's case is converted, dismissed, or a final decree has been entered by the Bankruptcy Court.

41.     Except as otherwise set forth herein, this Bankruptcy Court retains jurisdiction over all matters arising out of or related to these Chapter 11 Cases and the Plan, including the matters set forth in Article XI of the Plan.

42.     Except as otherwise provided herein, this Confirmation Order supersedes any Bankruptcy Court order issued prior to the date of Confirmation that may be inconsistent with this Confirmation Order. In the event of any inconsistency between the Plan (including the Plan Supplement) and this Confirmation Order, this Confirmation Order shall control. Except as set

forth in the Plan, in the event of any inconsistency among the Plan and any document or schedule included in the Plan Supplement, the Plan Supplement shall control.

43.    If Consummation does not occur, the Plan and all settlements contained therein shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

44.    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

45.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, the terms and conditions of this Confirmation Order shall be effective and enforceable immediately upon its entry.  Each term and provision of the Plan, and the transactions related thereto as it heretofore may have been altered or interpreted by the Bankruptcy Court is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified except as provided by the Plan or this Confirmation Order; and (c) nonseverable and mutually dependent.

46.    Subject to the terms of the Plan the Debtors are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Article X.A of the Plan, without further order of this Bankruptcy Court.

47.    This Confirmation Order is a final order, and the period in which an appeal must be filed shall commence upon the entry hereof.

48.     Notwithstanding Bankruptcy Rule 3020(e), the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry.


Signed: _____, 2022


_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**Plan**

[Filed at Docket No. 636]

**<u>Exhibit B</u>**

**Notice of Confirmation and the Effective Date**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ION GEOPHYSICAL CORPORATION, *et al.*,[3] | ) | Case No. 22-30987 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**NOTICE OF (A) ENTRY OF ORDER (I) APPROVING
DEBTORS' DISCLOSURE STATEMENT AND CONFIRMING THE FIRST
AMENDED JOINT CHAPTER 11 PLAN OF ION GEOPHYSICAL CORPORATION
AND ITS DEBTOR AFFILIATES AND (II) GRANTING RELATED RELIEF, AND (B)
OCCURRENCE OF EFFECTIVE DATE**

**TO ALL CREDITORS, INTEREST HOLDERS, AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on [●], 2022, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), entered an order [Docket No. [●]] (the "Confirmation Order") confirming the *First Amended Joint Chapter 11 Plan of ION Geophysical Corporation and Its Debtor Affiliates* [Docket No. [●]] (with all supplements and exhibits thereto, the "Plan"),[4] attached as **Exhibit A** to the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on [●], 2022.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Article V.B of the Plan, Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Plan Administrator, the Estates, or their property, without the need for any objection by the Plan Administrator or further notice to, or action, order, or approval**

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115). The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

[4] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan or the Confirmation Order, as applicable.

of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of such Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Proof of Claim to the contrary.

**PLEASE TAKE FURTHER NOTICE** that, except with respect to Administrative Claims that are Professional Fee Claims or as otherwise set forth in the Plan, requests for payment of an Allowed Administrative Claim other than requests for payment of Administrative Claims must be Filed with the Bankruptcy Court no later than 30 days after the Effective Date (the "Administrative Claims Bar Date"). **Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Plan Administrator, the Estates, or the property of any of the foregoing, and such Administrative Claims shall be deemed released as of the Effective Date without the need for any objection from the Debtors or the Plan Administrator or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.**

**PLEASE TAKE FURTHER NOTICE** that, unless otherwise ordered by the Bankruptcy Court, all final requests for payment of Professional Fee Claims must be Filed with the Bankruptcy Court no later than 45 days after the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors or the Plan Administrator, as applicable, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**PLEASE TAKE FURTHER NOTICE** that the Plan, the Plan Supplement, the Confirmation Order, and copies of all documents filed in these chapter 11 cases are available free of charge by visiting https://dm.epiq11.com/IONGeophysical, by calling (855) 604-1746 (domestic) or +1 (503) 597-7702 (international), or by email at IONGeoInfo@epiqglobal.com. Copies of any pleadings or papers filed with the Court may be obtained by visiting the Court's website at https://ecf.txsb.uscourts.gov in accordance with the procedures and fees set forth therein.

---

**IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE,**
**PLEASE CONTACT EPIQ CORPORATE RESTRUCTURING, LLC BY CALLING**
**855-604-1746 (TOLL FREE)**

---

Dated: _____, 2022
Houston, Texas

**WINSTON & STRAWN LLP**

/s/ _____
Katherine A. Preston (TX Bar No. 24088255)
800 Capitol St., Suite 2400
Houston, Texas 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
Email: kpreston@winston.com

and

Daniel J. McGuire (admitted *pro hac vice*)
Laura Krucks (admitted *pro hac vice*)
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: dmcguire@winston.com
          lkrucks@winston.com

and

Timothy W. Walsh (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
E-mail: twwalsh@winston.com

*Counsel to the Debtors and Debtors in Possession*