## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ION GEOPHYSICAL CORPORATION, *et al.*,[1] | ) | Case No. 22-30987 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

### ORDER (I) APPROVING (A) THE SALE OF CERTAIN OF THE DEBTORS' MARINE DATA AND PROCESSING ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES AND (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (II) GRANTING RELATED RELIEF

Upon the *Debtors' Emergency Motion for Entry of an Order Approving (I)(A) Bidding Procedures and (B) Assumption and Assignment Procedures; (II) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; and (III) Granting Related Relief* [Docket No. 21] (the "Motion"),[2] filed by the above-referenced debtors and debtors in possession (collectively, the "Debtors") seeking, among other things, entry of an order (the "Order") (i) authorizing the sale of the Debtors' assets that are Transferred Assets and Transferred Equity Interests (the "Assets") subject to the terms of the SAPA free and clear of all Liens, Claims, and Interests (as defined below), other than Assumed Liabilities and as otherwise provided in the applicable asset purchase agreement; (ii) authorizing the assumption and/or assignment of certain contracts identified on Schedule 2.02(a)(1)(iv) of the SAPA, as may be modified or amended (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ION Geophysical Corporation (6646); I/O Marine Systems, Inc. (3230); ION Exploration Products (U.S.A.), Inc. (1394); and GX Technology Corporation (0115). The location of the Debtors' service address is 4203 Yoakum Blvd., Suite 100, Houston, Texas 77006.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the SAPA (as defined herein), as applicable.

"Assigned Contracts"); and (iii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the *Declaration of Jakub Mleczko in Support of (I) Motion for Entry of Order Authorizing Debtors to Obtain Senior Secured Superpriority Postpetition Financing and Use Cash Collateral, and (II) Motion for Entry of Order Approving Bid Procedures* [Docket No. 6], *Declaration of David Hajovsky in Support of Debtors' Emergency Motion for Entry of an Order Approving (I)(A) Bidding Procedures and (B) Assumption and Assignment Procedures; (II) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; and (III) Granting Related Relief* [Docket No. 648], the *Declaration of Jakub Mleczko In Support of the Sale Transactions* [Docket No. 603], the *Declaration of Mike Morrison, Executive Vice President and Chief Financial Officer of ION Geophysical Corporation, In Support of (I) the Debtors' Proposed Sale Transactions and (II) the Shearwater Rejection Motion* [Docket No. 652], and the *Declaration of Ken Williamson, Executive Vice President of Innovation & Strategic Marketing for ION Geophysical Corporation In Support of the Debtors' Proposed Sale Transactions* [Docket No. 654] (collectively, the "Sale Declarations"); and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary; and the Court having entered the *Order (I) Approving (A) Bidding Procedures and (B) Assumption and Assignment Procedures and (II) Granting Related Relief* [Docket No. 174] (the "Bidding Procedures Order"); and the Sellers having determined that the highest or otherwise best offer for

the Sellers' marine data and processing assets was made by TGS ASA ("TGS" or the "Buyer," and such offer, the "Successful Bid")[3]; and upon the Buyer and Sellers having agreed to the terms of that certain Stock and Asset Purchase Agreement (together with all other agreements, documents, instruments, deliverable thereunder or attached thereto or referenced therein, and as may be amended, modified, or supplemented, the "SAPA")[4] with respect to the sale of the Transferred Assets and Transferred Equity Interests (the "Sale Transaction"); and the Court having conducted a hearing on August 18, 2022, (the "Sale Hearing") to consider the relief requested in the Motion as set forth in this Order; and all parties in interest having been heard or having had the opportunity to be heard regarding the Motion, the Sale Transaction, the SAPA, and all relief set forth herein; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled on the merits; and upon the record of the Sale Hearing and all of the proceedings had before this Court; and the Court having determined that the legal and factual basis set forth in the Motion establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their respective estates; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary, it is HEREBY FOUND AND DETERMINED THAT:

A.     **Findings and Conclusions**. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

---

[3] As set forth in the SAPA, the term "Buyer" as used herein shall include one or more of TGS ASA's Affiliates that may acquire the Transferred Assets or Transferred Equity Interests at the closing of the Sale Transaction.

[4] A copy of the SAPA is attached hereto as **Exhibit 1**.

B.      **Jurisdiction**. The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 1334. Without limiting the generality of the foregoing, this Court has exclusive in rem jurisdiction over the Assets pursuant to 28 U.S.C. § 1334(e), as such interests are property of the Debtors' chapter 11 estates, and, as a result of such jurisdiction, this Court has all necessary power and authority to grant the relief contained herein.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b), and as such, this Court has the authority to enter a Final Order.

C.      **Venue**. Venue of these chapter 11 cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D.      **Statutory Predicates**. The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, and Rules 2002, 6004, 6006, 9006, 9007, 9008, 9014, and 9019 of the Bankruptcy Rules, and the Complex Case Procedures.

E.      **Bidding Procedures**. On May 3, 2022, the Court entered the Bidding Procedures Order approving, among other things, (i) the Bidding Procedures, (ii) authorizing the Debtors to designate Stalking Horse Bidders and offer such bidders certain bid protections; (iii) scheduling the Bid Deadline, the Auction (as necessary), the applicable Sale Hearing to consider the sale of the Assets, (iv) establishing procedures for noticing and determining monetary liabilities related to the Assigned Contracts that must be satisfied pursuant to section 365 of the Bankruptcy Code (the "Cure Costs"), (v) approving the form and manner of notice of all procedures, protections, schedules, and agreements, and (vi) granting related relief.  The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair, and reasonable opportunity for any person to make a higher or otherwise better offer to

purchase the Assets.  The Sellers conducted the sale process without collusion and in accordance with the Bidding Procedures.

F.      **Notice and Opportunity to Object**.  As evidenced by the affidavits of service filed with the Court [Docket Nos. 40, 115, 211, 257, 319, 335, 384, 418, 444, 468, 539, 543, 562, 578], and as demonstrated by the evidence presented at the Sale Hearing, proper, timely, adequate, and sufficient notice of the Motion, the contracts to be potentially assumed and/or assigned in connection with the Sale Transaction, including the Assigned Contracts, the Auction, the Sale Hearing, the Sale Transaction, and the deadlines related thereto was provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, and 9014 and in compliance with the Bidding Procedures Order, to each party entitled to such notice, including, as applicable: (a) the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition revolving credit facility and counsel thereto; (d) the indenture trustee for the Debtors' 8.00% secured second priority notes and counsel thereto; (e) the indenture trustee for the Debtors' 9.125% unsecured notes; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for states in which the Debtors conduct business; (j) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in any of the Debtors' assets; (k) all counterparties to the Assigned Contracts; (l) all of the Debtors' creditors; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The notices described above and in the Motion and the Bidding Procedures Order were good, sufficient, and appropriate under the circumstances and no other or further notice of the Motion, the Auction, the Sale Transaction, the Sale Hearing, the potential

assumption and/or assignment of the Assigned Contracts, or the related Cure Costs is, or shall be, required.

G.      Service of the Sale Notice was provided to all parties in interest, including those with one or more alleged preferential purchase rights contained in an Assigned Contract or other Purchased Contract (the "Preferential Purchase Rights"), and those with one or more rights based on any alleged approval or consent right or anti-assignment provision contained in an Assigned Contract ("Consent Rights") with a reasonable and adequate opportunity to object.

H.      The Sale Notice, substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "Sale Notice"), provided all interested parties with timely and proper notice of the Sale Transaction, Bid Deadline, Auction, and Sale Hearing.  A reasonable opportunity to object and/or to be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code and the Bankruptcy Rules.  Accordingly, no further notice of the Motion or the Sale Hearing is necessary or required.

I.      The Debtors served notice substantially in the form attached to the Bidding Procedures Order as Exhibit 3 (the "Cure Notice") on all parties required to receive such notice under the Bidding Procedures Order, and such parties have been afforded a reasonable and fair opportunity to file an objection to the assumption and/or assignment of any Assigned Contract (an "Assigned Contract Objection").

J.      The notice described in the foregoing paragraphs is good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures, the assumption and/or assignment of the Assigned Contracts, the Auction, the Sale Hearing, the Sale Transaction, the Cure Costs, the deadlines to submit Assigned Contract

Objections, the deadline to submit objections to the Sale Transaction, and all other deadlines related thereto is or shall be required.

K.      **Assets Property of the Estate**. The Assets sought to be sold and assigned by the Debtors to the Buyer pursuant to the SAPA are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

L.      **Sufficiency of Marketing**.  As demonstrated by the Motion, the Sale Declarations, and the evidence set forth at the Sale Hearing, the Debtors and their professionals adequately marketed the Transferred Assets and Transferred Equity Interests and conducted the marketing and sale process as set forth in and in accordance with the Motion, the Bidding Procedures Order, and the Bidding Procedures and conducted a fair and open sale process.  The sale process and the Bidding Procedures were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Assets, and the process conducted by the Debtors pursuant to the Bidding Procedures Order obtained the highest or otherwise best value for the Assets, and there was no other transaction available or presented that would have yielded a higher or better result for the Assets.  Based upon the record of these proceedings, all creditors and other parties in interest and all potential bidders have been afforded a reasonable and fair opportunity to bid for the Assets, seek to exercise any alleged Preferential Purchase Rights, or file an Assigned Contract Objection and/or an objection to the Sale Transaction.  The marketing process undertaken by the Sellers and their professionals and each of their respective agents and other representatives with respect to the Transferred Assets and Transferred Equity Interests has been adequate and appropriate and reasonably calculated to maximize the value for the benefit of all of the Debtors' stakeholders in all respects.

M.      **Highest or Otherwise Best Offer**.  Pursuant to the SAPA and as further described below, the Buyer has offered to purchase the Transferred Assets and Transferred Equity Interests in exchange for (i) $34 million in cash (subject to certain purchase price adjustments as provided in the SAPA) and (ii) the assumption of all Assumed Liabilities (as defined in the SAPA).

N.      The Debtors determined, in a valid and sound exercise of their business judgment and after a robust and extensive marketing process, the transactions contemplated by the SAPA represented the highest or otherwise best bid.  Therefore, the Buyer's bid was designated the Successful Bid for the Transferred Assets and Transferred Equity Interests.  The Bidding Procedures have been complied with in all respects by the Debtors and the Buyer and afforded a full, fair, and reasonable opportunity for any entity or person to make a higher or otherwise better offer for the Transferred Assets and Transferred Equity Interests.

O.      The Debtors have demonstrated that (i) the Successful Bid as reflected in the SAPA is the highest or otherwise best offer for the Transferred Assets and Transferred Equity Interests, (ii) the SAPA and the closing thereon presents the best opportunity to realize the maximum value of the Transferred Assets and Transferred Equity Interests, and (iii) the Debtors' entry into the SAPA and consummation of the Sale Transaction is a sound exercise of the Debtors' business judgment.

P.      **SAPA**.  The Sellers and the Buyer entered into the SAPA, attached hereto as **Exhibit 1**.

Q.      **Business Justification; Fiduciary Duties**. The Debtors have demonstrated that entry into and consummation of the SAPA constitute the exercise by the Debtors of sound business judgment, and such acts are in the best interests of the Debtors, their estates, and creditors, and all parties in interest.  The Court finds that the Debtors have articulated good and sufficient business

reasons justifying the sale of the Assets to the Buyer pursuant to the terms and conditions set forth in the SAPA.

R.      The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and/or assign the Assigned Contracts to the Buyer in connection with the consummation of the Sale Transaction, and the assumption and/or assignment of the Assigned Contracts is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The Assigned Contracts being assigned to the Buyer are an integral part of the Sale Transaction and, accordingly, their assumption and/or assignment is reasonable and an enhancement to the value of the Debtors' estates.

S.      The Debtors' decision to enter into the SAPA and consummate the Sale Transaction constitutes a proper exercise of the fiduciary duties of the Debtors and their directors and officers. Because the entry into and consummation of the SAPA constitutes the exercise by the Debtors of sound business judgment, the Debtors, their respective current and former members, managers, officers, directors, employees, advisors, professionals or agents, shall have or incur no liability to the estates or any holder of a Claim against or interest in the Debtors for any act or omission in connection with, related to, or arising out of the negotiations of the SAPA or the consummation of the Sale Transaction contemplated thereunder, other than liability of the Debtors arising out of or relating to any willful misconduct or fraud, in each case as determined by a court of competent jurisdiction.

T.      **Corporate Authority**. The Debtors (i) have full corporate or other organizational power and authority to execute the SAPA and all other documents contemplated thereby, (ii) have all of the power and authority necessary to consummate the Sale Transaction, and (iii) have taken all corporate or other organizational action necessary to authorize and approve the SAPA and any

actions required to be performed by the Debtors to consummate the Sale Transaction. No further consents or approvals of the Debtors are required for the Debtors to consummate the Sale Transaction.

U.      **Arm's-Length Sale and Buyer's Good Faith**. The SAPA was negotiated and is undertaken by the Sellers and Buyer at arm's length, without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code. The Buyer (i) recognizes that the Debtors were free to deal with any other party interested in acquiring the Assets, (ii) complied with the Bidding Procedures Order in all respects, and (iii) willingly subjected its bid to the competitive Bidding Procedures. All payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale Transaction have been disclosed, and the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction. As a result of the foregoing, the Buyer is a "good faith" Buyer within the meaning of section 363(m) of the Bankruptcy Code, and as such, is entitled to all of the protections afforded thereby, including in the event this Order or any portion thereof is reversed or modified on appeal.

V.      **No Fraudulent Transfer**. The total consideration provided by the Buyer pursuant to the SAPA constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any other applicable law, and may not be avoided under section 363(n) of the Bankruptcy Code or any other applicable law. The SAPA was not entered into, and the Sale Transaction is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Sellers under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable

law.  Neither the Sellers nor the Buyer has entered into the SAPA or is consummating the Sale Transaction with any fraudulent or otherwise improper purpose.

W.      **Free and Clear Transfer Required by Buyer**.  The Buyer would not have entered into the SAPA and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their estates, their creditors, their employees, and other parties in interest, if the sale of the Assets was not free and clear of the Liens, Claims, and Interests (other than Assumed Liabilities and as otherwise provided in the SAPA) or if the Buyer would be liable for such Liens, Claims, and Interests, including, without limitation and as applicable, liabilities that are not expressly assumed by the Buyer as set forth in the SAPA or pursuant to this Order.

X.      The transfer of the Assets is a legal, valid, and effective transfer of all of the legal, equitable, and beneficial right, title, and interest in and to the Assets free and clear of the Liens, Claims, and Interests, except for Assumed Liabilities and as otherwise provided in the SAPA.

Y.      **Satisfaction of Section 363(f) Standards**.  The Debtors are authorized to sell the Assets free and clear of the Liens, Claims, and Interests, other than Assumed Liabilities and as otherwise provided in the SAPA (with the Liens, Claims, and Interests attaching to the proceeds with the same nature, validity, priority, extent, perfection, and force and effect that the Liens, Claims, and Interests encumbered the Assets immediately prior to the entry of this Order) because, with respect to each creditor or other person or entity asserting a Lien, Claim, or Interest, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Each creditor or other person or entity asserting a Lien, Claim, or Interest in the Assets (i) has, subject to the terms and conditions of this Order, consented to the Sale Transaction or is deemed to have consented to the Sale Transaction, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, Claim, or Interest, or (iii) otherwise falls

within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of the Liens, Claims, and Interests who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction or the Motion are deemed to have consented to the Motion and Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.  Creditors or other persons or entities asserting a Lien, Claim, or Interest in or against the Assets could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, Claim, or Interest.

Z.     **No Successor Liability**. Neither the Buyer nor any of its affiliates are successors to the Sellers or their estates by reason of any theory of law or equity, and neither the Buyer nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Sellers and/or their estates except to the extent explicitly provided in the SAPA.

AA.    **Assigned Contracts**.  Each and every provision of the Assigned Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Assigned Contract has been or will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code. All counterparties of the Assigned Contracts that did not or do not timely file an objection to the assumption and/or assignment of the Assigned Contract(s) to which they are a counterparty are deemed to consent to the assumption and/or assignment by the Debtors of their Assigned Contract to the Buyer, and the Buyer shall enjoy all of the rights and benefits under each such Assigned Contract as of the applicable date of assumption and/or assignment without the necessity of obtaining such non-debtor party's consent to the assumption or assignment thereof.  Upon the assignment and sale to the Buyer in accordance with the terms of the SAPA, the Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order, and shall be assigned and transferred to the Buyer,

notwithstanding any provision in the Assigned Contracts prohibiting or otherwise restricting assignment or transfer, and the Debtors, their estates, or any of their affiliates, predecessors, successors, or assigns, shall have no further liability or obligation under the Assigned Contracts. To the extent any Assigned Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Buyer in accordance with the terms of the SAPA. Other than with respect to Assumed Liabilities, the Buyer shall have no liability or obligation for any (i) defaults or breaches under any Assigned Contract that relate to acts or omissions that occurred in the period, or otherwise arose, prior to the Closing Date and (ii) claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including, any right of recoupment) with respect to any Assigned Contract, that relate to any acts or omissions that arose or occurred prior to the Closing Date.

BB.     **Cure Costs and Adequate Assurance**. Pursuant to the SAPA, the Cure Costs will be paid by the Buyer in accordance with the terms of the SAPA. The Buyer has demonstrated adequate assurance of future performance of each Assigned Contract within the meaning of section 365 of the Bankruptcy Code that is assumed by the Buyer or any of its permitted assignees to which such Assigned Contract is assumed and/or assigned by the Debtors, including a promise to perform the Debtors' obligations under such Assigned Contract for periods at or after the Closing Date. The Cure Costs are deemed the amounts necessary to "cure" (within the meaning of section 365(b)(l) of the Bankruptcy Code) all "defaults" (within the meaning of section 365(b) of the Bankruptcy Code) under such Assigned Contracts that are assumed. The Buyer's payment of Cure Costs in accordance with the terms of the SAPA and promise under the SAPA to perform the obligations under the Assigned Contracts as of the Closing Date, after the Closing Date, shall constitute adequate assurance of future performance under such Assigned Contracts. Any

objections to the Cure Costs, to the extent not otherwise resolved, are hereby overruled.  To the extent that any counterparty failed to timely object to its Cure Cost or to raise any other alleged default or breach of contract, such counterparty is deemed to have consented to such Cure Cost and to the assignment of its respective Assigned Contract(s) to the Buyer and to have waived any other defaults or breaches.  The Court finds that with respect to all Assigned Contracts, the payment of the Cure Costs as provided in the SAPA is reasonable and appropriate and is deemed to fully satisfy the Debtors' obligations under sections 365(b) and 365(f) of the Bankruptcy Code.  Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to the Buyer, of each Assigned Contract to be assumed and/or assigned to the Buyer as of Closing.

CC.    **Assets Assignable**.  Each and every provision of the documents governing the Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Assets, if any, have been or will be satisfied or are otherwise unenforceable under sections 363 or 365 of the Bankruptcy Code, as applicable.

DD.    **BGP**.  ION Geophysical Corporation and its subsidiary GX Technology Corporation (collectively, "ION")) and BGP Inc., China National Petroleum Corporation ("BGP Inc.") and BGP Offshore ("BGPO" and together with BGP Inc., collectively, "BGP") are parties to a number of agreements, including a Master Cooperation Agreement executed between BGP Inc. and ION on August 7, 2014 (the "Master Cooperation Agreement").  On February 1, 2021, GXT, BGP Inc., and BGPO executed a Novation Deed substituting BGPO for BGP Inc.

EE.    BGP has filed objections to the Motion [Docket Nos. 382 and 482], asserting that (i) BGP owns an undivided joint ownership interest in certain data and revenues under the Master

14

Cooperation Agreement that the Debtors sought to sell and assign to TGS and (b) the Master Cooperation Agreement prohibits assignment of the agreement without consent of the relevant counterparty.

FF.     **Cobra Acquisition Services, S.A.**  Cobra Acquisition Services, S.A. ("Cobra") filed an objection to the proposed sale of certain assets under the SAPA [Docket No. 374] (the "Cobra Objection").  Cobra and the Buyer have resolved the Cobra Objection as set forth in that certain Term Sheet dated August 16, 2022.  As such, Cobra has withdrawn the Cobra Objection.

GG.     **Time of the Essence**.  Time is of the essence in consummating the Sale Transaction.  In order to maximize the value of the Debtors' assets, it is essential that the sale and assignment of the Debtors' assets occur within the time constraints set forth in the SAPA.  Good and sufficient reasons for approval of the SAPA have been articulated by the Debtors.  The Debtors and the Buyer, being a good faith Buyer under section 363(m) of the Bankruptcy Code, may close the transactions contemplated by the SAPA at any time after entry of this Order subject to the terms and conditions of the SAPA.

HH.     **No Sub Rosa Plan**.  The SAPA and the Sale Transaction do not constitute a sub rosa chapter 11 plan.  The SAPA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a chapter 11 plan for the Debtors.

II.     **Final Order; Immediate Effect**.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and, sufficient cause having been shown, waives any such stay, and expressly directs entry of judgment as set forth herein.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

1.      **Objections Overruled**.  All objections, if any, with regard to the relief sought in the Motion or the sale of the Assets on the terms set forth in the SAPA that have not been withdrawn, waived, settled, or otherwise dealt with herein are hereby overruled on the merits, with prejudice.  All objections to the entry of this Order or to the relief granted herein that were not timely filed are hereby forever barred.

2.      **Approval of Sale Transaction**.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Motion is granted and the relief requested therein with respect to the Sale Transaction is granted and approved in its entirety, and the SAPA is hereby approved.  The Debtors have satisfied all requirements of sections 363(b) and 363(f) of the Bankruptcy Code, and all other requirements and standards applicable to a sale outside the ordinary course of business, free and clear of the Liens, Claims, and Interests (other than Assumed Liabilities and as otherwise provided in the SAPA).

3.      Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Debtors are authorized to take any and all reasonable actions necessary to consummate the Sale Transaction, including the sale, transfer, and assignment of all of the Debtors' right, title, and interest in, to, and under the Assets to the Buyer free and clear of the Liens, Claims, and Interests (other than Assumed Liabilities and as otherwise provided in the SAPA) in accordance with the terms of the SAPA and the terms of this Order. The relevant Debtors, as well as their directors, officers, employees, and agents, are authorized to execute, deliver, and perform their obligations under and comply with the terms of the SAPA and to consummate the Sale Transaction, including by taking any and all actions as may be reasonably necessary or desirable to implement the Sale Transaction and each of the transactions contemplated thereby pursuant to and in accordance with

the terms and conditions of the SAPA and this Order.  For the avoidance of doubt, all persons and

entities are prohibited and enjoined from taking any action to adversely affect or interfere with the

ability of the Debtors to transfer the Assets to Buyer in accordance with the SAPA and this Order.

4.     The relevant Debtors, their affiliates, and their respective directors, officers,

employees, and agents, are authorized to execute and deliver, and authorized to perform under,

consummate, and implement all additional notices, assumptions, conveyances, releases,

acquittances, instruments and documents that may be reasonably necessary or desirable to

implement the SAPA, including the transfer and, as applicable, the assignment of all the Assets,

the assumption of the Assumed Liabilities, and the assumption and/or assignment of all the

Assigned Contracts, and to take all further actions as may be (i) reasonably requested by Buyer for

the purpose of assigning, transferring, granting, conveying, and conferring to Buyer, or reducing

to Buyer's possession, the Assets and/or (ii) necessary or appropriate to the performance of the

obligations contemplated by the SAPA, pursuant to which Buyer would provide to the Debtors

certain ordinary course services and services necessary for the Debtors' ongoing administration of

these chapter 11 cases and Sellers (as defined in the SAPA) may provide certain ordinary course

services, on terms as mutually agreed to between Sellers and Buyer, necessary to the transition of

the Assets to Buyer, all without further order of this Court.

5.     The Debtors are further authorized, but not directed, to pay, without further order

of the Court, whether before, at or after Closing, any expenses or costs required to be paid to

consummate the Sale Transaction or for the Sellers to perform their obligations in accordance with

the SAPA.

6.     **Sale and Transfer of Assets Free and Clear**.  Pursuant to sections 105(a), 363(b),

363(f), and 365(b) of the Bankruptcy Code, the Debtors are authorized to transfer, and upon the

Closing shall transfer to the Buyer all of the Debtors' right, title, and interest in and to, and possession of, the Assets, which shall be immediately vested in Buyer, and, to the extent provided in the SAPA and this Order, such title to the Assets shall be transferred to Buyer free and clear of the Liens, Claims, and Interests (other than Assumed Liabilities and as otherwise provided in the SAPA), including without limitation:

(a) liens (including, without limitation, mechanics', materialmens', and other consensual and non-consensual liens and statutory liens) mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, demands, encumbrances, easements, and servitudes;

(b) interests, obligations, liabilities, demands, guaranties, options, restrictions, and contractual or other commitments;

(c) rights, including, without limitation, rights of first refusal, rights of offset (except for offsets exercised prior to the Petition Date), contract rights, and recovery;

(d) decrees of any court or foreign or domestic government entity (to the fullest extent permitted by law);

(e) charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, marketing, licensing, receipt of income or revenue (including any claim or demand that the Buyer must share income or revenue with a third party) or other exercise of any attributes of ownership of the Assets, including, without limitation, marketing or licensing rights or consent of any Person to market, license, assign or transfer any of the Assets;

(f) debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or any of the Debtors' predecessors or affiliates;

(g) claims (as that term is defined in the Bankruptcy Code), including claims for reimbursement, contribution claims, indemnity claims, exoneration claims, alter-ego claims, environmental claims (to the fullest extent allowed by applicable law), Environmental Liabilities, employee claims, including claims that may be secured or entitled to priority under the Bankruptcy Code, tax claims, reclamation claims, and pending litigation claims;

(h) matters of any kind or nature whatsoever, whether at law or in equity and whether known or unknown, choate or inchoate, filed or unfiled, scheduled

or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or nonmaterial, disputed or undisputed, whether arising prior to or during the Debtors' bankruptcy cases, and whether imposed by agreement, understanding, law, equity, or otherwise;

(i)     any other liens, Liens, Debts, debts, Liabilities, liabilities, claims, charges, security interests or encumbrances of any kind whatsoever

in each case, whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the Closing Date (each, a "<u>Lien, Claim, or Interest</u>," and collectively, the "<u>Liens, Claims, and Interests</u>").  The Liens, Claims, and Interests (other than Assumed Liabilities and as otherwise provided in the SAPA) shall attach to the proceeds with the same nature, validity, priority, extent, perfection, and force and effect that such Liens, Claims, and Interests encumbered the Assets immediately prior to the entry of this Order, subject to any Claims, defenses, and objections, if any, that the Debtors or their estates may possess with respect thereto.

7.     **Binding Effect of Order**.  This Order and the SAPA shall be binding in all respects upon the Sellers, the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders of the Liens, Claims, and Interests in, against, or on all or any portion of the Assets (whether known or unknown), the Buyer and all successors and assigns of the Buyer, notwithstanding the dismissal of any of the Debtors' cases or any subsequent appointment of any trustees, examiners, "responsible persons," or other fiduciaries in these chapter 11 cases or upon a conversion to case under chapter 7 of the Bankruptcy Code, and the SAPA shall not be subject to

rejection or avoidance under any circumstances.  If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide, or be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Order, including the Assets and all other rights granted to the Buyer hereunder, shall remain effective and, notwithstanding such dismissal, shall remain binding on all the Debtors' creditors, parties to the Assigned Contracts, and all other parties in interest.  The SAPA, this Order, and the Debtors' obligations therein and herein shall not be altered, impaired, amended, rejected, discharged, or otherwise affected by any chapter 11 plan proposed or confirmed in these bankruptcy cases, any order confirming any chapter 11 plan, or any subsequent order of this Court without consent of the Debtors and the Buyer, which shall not be unreasonably withheld, to the extent of any conflict between this Order or the SAPA and such future plan or order, the terms of this Order and the SAPA shall control.

8.     **No Material Modifications**.  The SAPA and any related agreements, documents, or other instruments in effect as of the date hereof may be modified, amended, or supplemented through a written document signed by the parties thereto in accordance with the terms thereof without further order of this Court; *provided*, *however*, that any such modification, amendment, or supplement does not have a material or an adverse effect on the Debtors or their estates.  For the avoidance of doubt, all other modifications, amendments, or supplements that have a material or an adverse effect on the Debtors' estates or their creditors shall require Court approval.

9.     **No Bulk Sales**.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the SAPA, Sale Transaction, the Motion, or this Order.

10.     **Valid Transfer**.  Effective upon the Closing, the transfer to the Buyer of the Debtors' right, title, and interest in the Assets pursuant to the SAPA shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Debtors' right, title, and interest in the Assets, and

vests with or will vest in the Buyer all right, title, and interest of the Debtors in the Assets, free and clear of the Liens, Claims, and Interests, other than Assumed Liabilities and as otherwise provided in the SAPA.

11.     **Good Faith Buyer**. The Sale Transaction contemplated by the SAPA is undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and the Buyer has acted without collusion in undertaking the Sale Transaction contemplated by the SAPA. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the sale of the Assets to the Buyer (including the assumption and/or assignment by the Debtors of any of the Assigned Contracts), unless such authorization is duly stayed pending such appeal.  The Buyer is a Buyer in good faith of the Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

12.     The SAPA and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code.  None of the Debtors, the Buyer, or any of their respective affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective current and former members, managers, officers, directors, employees, advisors, professionals, agents, predecessors, successors or assigns have engaged in any conduct that would cause or permit the SAPA or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

13.     **Governmental Authorization to Effectuate Sale and Assignments**.  Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction.  Except as otherwise provided in this Order, to the greatest

extent available under applicable law upon the Closing, the Buyer shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing.  No governmental unit may revoke or suspend any lawful right, license, trademark, or other permission relating to the use of the Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale Transaction.  For the avoidance of doubt, the Sale Transaction authorized herein shall be of full force and effect, regardless of whether the Debtors or any of their affiliates lack good standing in any jurisdiction in which such entity is formed or is authorized to transact business.

14.     **Authorization to Assign**. Notwithstanding any provision of any contract governing the Assets, including any Assigned Contract to be assumed and/or assigned to the Buyer as of the Closing, pursuant to section 365(f) of the Bankruptcy Code or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of Assets, including any Assigned Contract, at or after the Closing, the Debtors are authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (i) assign the Assets to the Buyer and (ii) assume and/or assign the Assigned Contracts to the Buyer as of the Closing, in each case, which assignments shall take place on and be effective as of the Closing or such other date after the Closing Date, in each case, as provided in the SAPA, the Bidding Procedures Order, or as otherwise provided by a separate order of this Court.

(a)     There shall be no accelerations, assignment fees, increases, or any other fees charged to the Buyer or the Debtors as a result of the assignment of the Assets or the assumption and/or assignment of the Assigned Contracts.

(b)     The Debtors have met all of the requirements of section 365(b) of the Bankruptcy Code for each of the Assigned Contracts that are to be assumed and/or assigned to the Buyer as of Closing.  Notwithstanding the foregoing, unless required by the Buyer under the SAPA for the Debtors to assume and/or assign any Assigned Contract, no Debtor shall be required by the Court to assume and/or assign any Assigned Contract, and, if no such assumption and/or assignment occurs, no Cure Costs shall be due and no adequate assurance of future performance shall be required with respect to any such Assigned Contract.

(c)     The Debtors' assumption and/or assignment of the Assigned Contracts is subject to the consummation of the Sale Transaction with the Buyer. To the extent that any objection by a counterparty to any Assigned Contract, including an objection related to the applicable Cure Cost, is not resolved prior to the Closing, the Buyer, may, without any further approval of the Court or notice to any party, elect to (a) not have the Debtors assume and/or assign such Assigned Contract to it, or (b) have the Debtors postpone the assumption of such Assigned Contract until the resolution of such objection; *provided*, *however*, that the Debtors, with the consent of the Buyer, and the relevant non-debtor counterparty under each Assigned Contract shall have authority to compromise, settle, or otherwise resolve any objections to proposed Cure Costs without further order of, or notice to, this Court, with any such agreed upon Cure Costs being paid to the appropriate counterparty by the Buyer as a condition subsequent to such assumption and/or assignment of the relevant Assigned Contract.  Subject to the terms of the SAPA, the Buyer is entitled to retain the Purchase Price Holdback Amount pending resolution of all objections relating to Cure Costs.

15.     **Assigned Contracts**. As of the Closing, subject to the provisions of this Order and in accordance with the SAPA, the Buyer shall succeed to the entirety of the Debtors' rights and obligations in the Assigned Contracts first arising and attributable to the time period occurring on or after the Closing Date and shall have all rights thereunder.

(a)     Upon Closing, (a) all defaults (monetary and non-monetary) under the Assigned Contracts shall be deemed cured and satisfied in full through the payment of the Cure Costs, (b) no other amounts will be owed by the Debtors, their estates, or, other than the Assumed Liabilities, the Buyer with respect to amounts first arising or accruing during, or attributable or related to, the period before Closing with respect to the Assigned Contracts, and (c) any and all persons or entities shall be forever barred and estopped from asserting a Claim against the Debtors, their estates, the Buyer, or the Assets that any additional amounts are due or defaults exist under the Assigned Contracts that arose or accrued, or relate to or are attributable to the period before the Closing Date (other than Claims against Buyer with respect to

the Assumed Liabilities). The Buyer's promise, pursuant to the terms of the SAPA to pay the Cure Costs and the Buyer's promise to perform the Debtors' obligations under the Assigned Contracts for the period on or after the Closing Date shall constitute adequate assurance of Buyer's future performance under the Assigned Contracts being assigned to it as of the Closing within the meaning of sections 365(b)(l)(C) and (f)(2)(A)-(B) of the Bankruptcy Code.

(b)     Upon assumption of those Assigned Contracts to be assumed by the Debtors and/or assigned to the Buyer as of the Closing, such Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order, and shall be assigned and transferred to the Buyer, notwithstanding any provision in such Assigned Contract or other restrictions prohibiting assignment or transfer.  To the extent any Assigned Contract is assumed and/or assigned to the Buyer under this Order, such assumption and/or assignment will not take effect until the Closing.  Furthermore, other than the Assigned Contracts, no other contract shall be deemed assumed by the Debtors and/or assigned to the Buyer pursuant to section 365 of the Bankruptcy Code.  The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of such Assigned Contract.

(c)     All counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Buyer, and shall not charge the Debtors or the Buyer for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale Transaction.

16.     Notwithstanding the foregoing, the Debtors may, at the Buyer's direction, amend the list of Assigned Contracts to add or remove any Assigned Contract to or from such list of Assigned Contracts of the Sale Transaction in accordance with the terms of the SAPA and the Bidding Procedures Order.

17.     All Cure Costs that have not been waived shall be determined in accordance with the Bidding Procedures Order or this Order and paid by Buyer in accordance with the terms of the SAPA.  Assumption and payment of the Cure Costs by Buyer shall be in full satisfaction and cure of any and all defaults under the Assigned Contracts and is deemed to fully satisfy the Debtors'

obligations under sections 365(b) and 365(f) of the Bankruptcy Code. Upon the assumption by a Debtor and the assignment to Buyer of any Assigned Contract, and the payment of any applicable Cure Costs, each non-Debtor counterparty to such Assigned Contract is forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Buyer, their Affiliates, successors, or assigns, or the property of any of them, any default existing as of the Closing, and (ii) exercising any rights or remedies against any Debtor or Buyer based on an asserted default that occurred on, prior to, or as a result of, the Closing, including the type of default specified in section 365(b)(1)(A) of the Bankruptcy Code.   Buyer has provided adequate assurance of future performance under the Assigned Contracts within the meaning of sections 365(b)(1)(c) and 365(f)(2)(B) of the Bankruptcy Code.  Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to Buyer, of each of the Assigned Contracts.

18.     To the extent a non-Debtor counterparty to an Assigned Contract fails to timely object to a Cure Cost, such Cure Cost has been and shall be deemed to be finally determined and any such non-Debtor counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time. Consistent with the Bidding Procedures Order, the non-Debtor counterparty to an Assigned Contract is forever bound by the applicable Cure Cost and, upon payment of such Cure Cost as provided herein and in the SAPA, is hereby enjoined from taking any action against the Buyer with respect to any claim for cure under such Assigned Contract.  To the extent no timely Assigned Contract Objection has been filed and served with respect to an Assigned Contract, the non-Debtor counterparty to such Assigned Contract is deemed to have consented to the assumption and/or assignment of such Assigned Contract to Buyer.

25

19.     Without limiting the foregoing, each person or entity who holds or is the beneficiary of a Preferential Purchase Right or Consent Right will be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the assets to be sold, assumed, and/or assigned in connection with the Sale Transaction, free and clear of the Liens, Claims, and Interests, including Consent Rights and Preferential Purchase Rights (other than Assumed Liabilities and as otherwise provided in the SAPA), and from asserting any alleged Preferential Purchase Rights with respect to the Sale Transaction, and (ii) deemed to consent to and approve the transfer, sale, and/or assumption and/or assignment of the Debtors' right, title, and interest in, to and under such Assets free and clear of the Liens, Claims, and Interests, including Consent Rights and Preferential Purchase Rights (other than Assumed Liabilities and as otherwise provided in the SAPA).

20.     **Assigned Contract Objections**.  If a counterparty to any Assigned Contract files an Assigned Contract Objection to the assumption and/or assignment of such Assigned Contract to Buyer, then such contract shall be deemed a "Disputed Contract."  The Debtors, with the consent of the Buyer, shall be authorized to resolve or settle any objections to the assumption and/or assignment of Disputed Contracts in accordance with the terms of the SAPA and this Order, including with respect to Cure Costs or necessary consents, without need for any further order or action from this Court.

21.     **No Successor Liability**.  The Buyer has given substantial consideration under the SAPA, which consideration shall constitute valid, valuable, and sufficient consideration for the absolution from any potential claims of successor liability of the Buyer to the greatest extent allowed by applicable law.

22.     **Surrender of Possession**. Any and all Assets in the possession or control of any person or entity, including any vendor, supplier, or employee of the Debtors shall be transferred to the Buyer free and clear of the Liens, Claims, and Interests (other than Assumed Liabilities and as otherwise provided in the SAPA), with such Liens, Claims, and Interests attaching to the proceeds with the same nature, validity, priority, extent, perfection, and force and effect that such Liens, Claims, and Interests encumbered the Assets immediately prior to the entry of this Order, and shall be delivered to the Buyer and deemed delivered at the time of Closing (or such other time as provided in the SAPA), with such costs of delivery allocated in accordance with the SAPA.

23.     **Texas Tax Authorities**.  Notwithstanding anything to the contrary in this Order, the asset purchase agreements, or any other applicable documents in these chapter 11 cases, any valid, perfected, enforceable, senior, and nonavoidable statutory liens (the "Tax Liens") of Cypress-Fairbanks Independent School District, Harris County, Alief Independent School District, and the City of Houston (collectively, the "Texas Tax Authorities") shall attach to the proceeds of the sale of any of the Debtors' assets  that are subject to such Tax Liens, if any, to the same extent and with the same priority as such Tax Liens attached to the Debtors' assets immediately prior to the closing of such sale.  From the proceeds of the sale of any of the Debtors' assets subject to the Tax Liens, the amount of $156,000 shall be set aside by the Debtors in either a segregated account or as part of the Disputed Claims Reserve established pursuant to the *First Amended Joint Chapter 11 Plan of ION Geophysical Corporation and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "Plan") as adequate protection for the asserted secured claims of the Texas Tax Authorities.  These funds may be distributed only upon agreement between the Texas Tax Authorities and the Debtors, by subsequent order of the Court, duly noticed to the Texas Tax Authorities, or upon resolution and payment of any allowed secured claims of

the Texas Tax Authorities. To the extent any sale transaction results in a proration of ad valorem tax liability for the periods in which the Debtors and the purchaser own the assets, the Texas Tax Authorities shall retain their respective Tax Liens against the assets, until such time as the taxes are paid in full, including any accrued penalties and interest. Except as expressly provided herein, the Texas Tax Authorities' rights with respect to any sale of the assets are fully preserved. All parties' rights to object to the priority, validity, amount and extent of the claims and liens asserted by the Texas Tax Authorities and the Tax Liens are fully preserved.

24.    **Life Insurance Company of North America**.  Notwithstanding anything to the contrary in this Order, or any notice related thereto, unless Life Insurance Company of North America ("LINA") and the Debtors agree otherwise, the LINA Policies (as defined in the *Objection of Life Insurance Company of North America to Debtors' Emergency Motion for Entry of an Order Approving (I) (A) Bidding Procedures and (B) Assumption and Assignment Procedures; (II) Sale Of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; and (III) Granting Related Relief* [Docket No. 359] (the "LINA Sale Objection")) shall not be assumed and assigned to the Buyer. This fully resolves the LINA Sale Objection and the *Objection of Life Insurance Company of North America to Second Supplemental Notice Of Cure Costs And Potential Assumption And Assignment Of Executory Contracts And Unexpired Leases In Connection With Sale* [Docket No. 497].

25.    **INOVA**.  For the avoidance of doubt none of the following assets are being sold and none of the following executory contracts are being assumed and assigned to the Buyer:

(a)    the conveyance, assignment, or transfer of any rights or interests in, to, or against the *Joint Venture Agreement* dated March 24, 2010 involving the Debtor(s) and INOVA Geophysical Equipment Ltd. (as identified in Docket Nos. 316, 404, 470, and/or any amendments thereto);

(b)    any rights or interest in, to, or against any executory contracts to which any of the Debtors is a party and any of the following also is party (collectively

the "INOVA Entities"): INOVA Geophysical, Inc., INOVA Geophysical (UK) Limited, INOVA Exploration Holdings, S.a.r.l. INOVA Systems Corporation, INOVA Ltd., INOVA Geophysical FZE (formerly ARAM Systems Middle East FZE), INOVA (Xfan) Geophysical Equipment Limited, Input/Output Services CIS, LLC; and

(c)     the conveyance, assignment, or transfer of any interest in the equity interest or similar interest of the Debtors, or any other person or any entity, with respect to any of the INOVA Entities.

26.     **Directorate General of Hydrocarbons**.  Notwithstanding anything to the contrary in the Motion, the SAPA, or this Order, or any other order entered on the Sale Motion: (a) the Debtors will not sell, transfer, or assign to the Buyer or any other purchaser either (i) any data owned by the Directorate General of Hydrocarbons, a/k/a the Ministry of Petroleum & Natural Gas, Government of India ("DGH"), including without limitation the Data subject to the 2005 Agreement and the 2008 Agreement (each as defined in the objection of DGH filed at [Docket No. 486]) or (ii) any Surveys relating to the 2005 Agreement and 2008 Agreements (collectively, the "DGH Data and Surveys"); and (b) the Debtors will not assume and assign or otherwise transfer or sell to the Buyer or any other purchaser any license agreement relating to the DGH Data and Surveys, or revenues arising thereunder, including without limitation: (i) the ConocoPhillips New Ventures Ltd. Agreement dated 12/17/2013 (page 104); (ii) the Energy World Development Ltd Agreement dated 6/1/2006 (page 106); (iii) the Oil India Agreements dated 8/7/2006 and 6/7/2007 (page 112); or (iv) the license agreements and revenue streams reflected on the sales statements submitted to GX Technology Corporation in connection with its an affidavit on oath (dated October 15, 2019) before the Delhi High Court.

27.     **No Effect on Governmental Regulatory Authority**.  Except with respect to the assumption and assignment of the Assigned Contracts to the Buyer in accordance with the SAPA and this Order, nothing in this Order or the SAPA (i) releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be

subject to as the post-sale owner or operator of property after the date of entry of this Order; (ii) authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law; or (iii) divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order. For the avoidance of doubt, the matters preserved by this paragraph are subject to all rights and defenses available under applicable law.

28.  **Oracle**.  No provision of this Order or any agreement between the Debtors and the Buyer shall authorize (a) the transfer of any Oracle America, Inc. ("Oracle") license agreement to any third party; or (b) use of any Oracle license agreement that is inconsistent with the relevant license grant including, but not limited to, exceeding the number of authorized users, shared use or license splitting, absent Oracle's express prior written consent. The Oracle license agreements shall remain in full force and effect for the exclusive benefit of the Debtors.

29.  **Chevron**.  Notwithstanding anything to the contrary in this Order, the SAPA, the Closing, the Plan, or any other order entered in these chapter 11 cases, the Debtors' agreements with Chevron U.S.A. Inc. and its Affiliates (as defined in the International Master Agreement No. IMA/179 (GXT No. 11107-00)), Chevron Nigeria Limited, and Chevron FEA International Ventures Ltd., and each of their applicable affiliates, subsidiaries and divisions (collectively, "Chevron") that are scheduled to be assumed and assigned to Buyer, including (i) International Master Agreement No. IMA/179 (GXT No. 11107-00); (ii) Data Processing Services Contract No. CW1662744; (iii) Geophysical Data-Use License No. 1052; (iv) Master Geophysical Data-Use License No. 10531; (v) Domestic Master Seismic Processing Agreement; (vi) License Order No.

CW1165359; (vii) Seismic Data Processing Services Contract No. ARTS-2021-CW1857240; (viii) License Order No. 2022.004400 GXT Supplement No. 11107-36; (ix) License Order GXT Supplement No. 11107-32, CW 1771319; and (x) any and all associated license orders, work orders, service orders, call-outs, amendments, supplements or addenda to any of the foregoing, (collectively the "Chevron Agreements") are deemed assumed and assigned to the Buyer upon the occurrence of the Closing.  Until the Closing, the Debtors, and on and after the Closing, the Buyer, shall continue to have and perform the obligations under the Chevron Agreements in accordance with their terms.  Except as provided herein, all rights and claims of the parties under the Chevron Agreements are expressly preserved and nothing in, about or related to these chapter 11 cases (including but not limited to this Order, the SAPA, the Closing, the Plan, or any other order entered in these chapter 11 cases) shall prevent the parties from maintaining, asserting or pursuing any right, claim or defense against the other party arising under the Chevron Agreements, including but not limited to audit rights or claims arising from any audit, indemnification rights, and setoff and recoupment rights, *provided, however*, that to the extent any claim or defense pertains to a known purported monetary default by the Debtors that arose under the applicable Chevron Agreement prior to the date of this Order, such claim or defense is not preserved with respect to such known monetary default and shall be deemed cured upon Closing.  Notwithstanding anything to the contrary in this Order but subject to the immediately preceding provision, any document or agreement attached to or referenced in this Order, the SAPA, the Closing, the Plan, or any other order entered in these chapter 11 cases, nothing releases any entity from any claim, defense or Cause of Action of Chevron; *provided, however*, that as of the date of this Order, Chevron represents to Buyer that it is not aware of any monetary default by the Debtors or of facts giving

rise to a potential claim by Chevron against the Debtors arising from Debtors' non-performance of any Chevron Agreements assigned to the Buyer.

30. **MGAI**. Pursuant to the SAPA, the Buyer is not acquiring the Sellers' (or any other) interest in the BlackseaSPAN survey, nothing in this Order or the SAPA entitles Buyer to have, possess or retain any data or derivatives therefrom or in connection therewith. Neither the Debtors not the Buyer will contest MGAI's right to obtain the survey (and all derivatives therefrom and in connection therewith) from the party holding such data. This resolves the objection of MGAI LLP filed at Docket No. 491.

31. **Instituto National de Petroleo of Mozambique**. Pursuant to the SAPA, the Buyer is not acquiring the Sellers' (or any other) interest in the Mozambique T4 survey or Mozambique related data from the EastAfricaSpan survey, and nothing in this Order or the SAPA entitles Buyer to have, possess or retain any rights, data or derivatives therefrom or in connection therewith. Neither the Debtors nor the Buyer will contest the Instituto National de Petroleo of Mozambique's ("INP's") right to obtain the survey (and all derivatives therefrom and in connection therewith) from the party holding such data. This resolves the objections filed by INP at Docket Nos. 566 and 584.

32. **WesternGeco, LLC**. Pursuant to the SAPA, the Buyer is not acquiring the Sellers' (or any other) interest in the Mozambique T4 survey, and nothing in this Order or the SAPA entitles Buyer to have, possess or retain any data or derivatives therefrom or in connection therewith. This resolves the objection filed by WesternGeco, LLC at Docket Nos. 563.

33. **BGP**. BGP and TGS have reached an agreement that resolves BGP's objection to the Motion, the terms of which are reflected in a Term Sheet executed by BGP and TGS, dated as of August 16, 2022, which may be terminated if certain events do not occur, including entry of

this Sale Order (the "BGP/TGS Term Sheet") .  However, if a Party gives notice terminating the BGP/TGS Term Sheet for any reason prior to the closing and consummation of the Sale Transaction, (i) the obligations and agreements of BGP and TGS under the BGP/TGS Term Sheet shall be null and void in all respects, and (ii) all rights, claims, objections, and defenses of the Debtors, BGP, and TGS shall be preserved with respect to all issues that have been or could have been raised in these chapter 11 cases, including without limitation, the Sale Transaction, confirmation of the Debtors' chapter 11 plan, and any administrative claims, claims for revenue or ownership thereof, or any other claims of any nature whatsoever that have been asserted or could be asserted against the Debtors by BGP.

34.     **Barbados.** Pursuant to the SAPA, the Buyer is not acquiring the Sellers' (or any other) interest in the Barbados Reprocessing data, and nothing in this Order or the SAPA entitles Buyer to have, possess or retain any data or derivatives therefrom or in connection therewith. Neither the Debtors nor the Buyer will contest the Government of Barbados's ("Barbados"), right to obtain the Barbados Reprocessing data (and all derivatives therefrom and in connection therewith) from the party holding such data.  This resolves the objection filed by the Government of Barbados at Docket No. 488. The Debtors will, within 10 business days of the Effective Date of the Plan, provide the Barbados, Triton, or such other third party as the Debtors and Barbados may agree with a copy of the data from the Geological Study Agreement between the Debtors and Barbados and (ii) documentation demonstrating what, if any, dollar amounts the Debtors records reflect were collected during the pendency of these chapter 11 cases with respect to the Barbados Geological Study Agreement. This resolves the objections filed by the Government of Barbados at Docket Nos. 498 and 593.

35.     **Retention of Jurisdiction**. The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order, the Sale Transaction, and the Bidding Procedures Order.

36.     **Immediate Effect**. Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable on the date that is 72 hours after (a) all deadlines to file an Assigned Contract Objection to the assumption and assignment of the Assigned Contracts have lapsed, and (b) all timely filed Assigned Contract Objections, if any, have been resolved (i) in accordance with the terms of the SAPA and the Bidding Procedures Order, or (ii) pursuant to an order of this Court.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Buyer are free to close the Sale Transaction under the SAPA at any time pursuant to the terms thereof.

37.     **Failure to Specify Provisions**. The failure to specifically reference any particular provisions of the SAPA or other related documents in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the SAPA and other related documents be authorized and approved in their entirety.

38.     **Satisfaction of Conditions Precedent**. Neither the Buyer nor the Debtors shall have an obligation to close the Sale Transaction until all conditions precedent in the SAPA to each of their respective obligations to close the Sale Transaction have been satisfied or waived in accordance with the terms of the SAPA.

39.     **Provisions Non-Severable**. The provisions of this Order are non-severable and mutually dependent.

Dated: _____, 2022
          Houston, Texas

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**SAPA**